# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

 --------------------------------x
 UNITED STATES OF AMERICA,        :      15-CR-637 (KAM)
                                  :
         Plaintiff,               :      United States Courthouse
                                  :      Brooklyn, New York
         -against-                :
                                  :      July 14, 2016
 MARTIN SHKRELI, ET AL.           :      1:00 p.m.
                                  :
         Defendants.              :
 --------------------------------x

         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE KIYO A. MATSUMOTO
                   UNITED STATES DISTRICT JUDGE

 APPEARANCES

 For the Plaintiff:      ROBERT L. CAPERS
                         UNITED STATES ATTORNEY
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

                         BY:  WINSTON M. PAES,
                              Assistant United States Attorney
                              JACQUELYN M. KASULIS,
                              Assistant United States Attorney
                              ALIXANDRA E. SMITH,
                              Assistant United States Attorney

 For Defendant Shkreli:  BRAFMAN & ROSS, P.C.
                              767 Third Avenue - 26th Floor
                              New York, New York 10017

                         BY:  BENJAMIN BRAFMAN, ESQ.
                              MARC A. AGNIFILO, ESQ.
                              ANDREA L. ZELLAN, ESQ.

 For Defendant Greebel:  GIBSON DUNN & CRUTCHER, LLP
                              200 Park Avenue
                              New York, New York 10166

                         BY:  REED M. BRODSKY, ESQ.
                              WINSTON Y. CHAN, ESQ.
                              LISA H. RUBIN, ESQ.

 Court Reporter:         LINDA A. MARINO, RPR
                              (718) 613-2484
```
Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription

1      THE COURTROOM DEPUTY:  Will the parties for the
2  Shkreli matter move forward, please?
3      This is criminal status conference, 15-CR-637, USA
4  v. Martin Shkreli and Evan Greebel.
5      Will counsel on behalf of the Government state your
6  appearances, please?
7      MR. PAES:  Winston Paes, Jacquelyn Kasulis, and
8  Alixandra Smith for the Government.  Also seated at the
9  Government's table are Special Agents Michael Braconi and
10 Christopher Delzotto.
11     Good afternoon, your Honor.
12     THE COURT:  Good afternoon.
13     THE COURTROOM DEPUTY:  Will counsel for Martin
14 Shkreli please state your appearance?
15     MR. BRAFMAN:  Benjamin Brafman, Marc Agnifilo, and
16 Andrea Zellan for Mr. Shkreli, who is present.
17     Good afternoon, your Honor.
18     THE COURT:  Good afternoon.
19     THE COURTROOM DEPUTY:  And counsel for Defendant
20 Evan Greebel.
21     MR. CHAN:  Good afternoon, your Honor.  Winston
22 Chan, Lisa Rubin, and Reed Brodsky, Gibbs & Dunn, for our
23 client, who is present, Evan Greebel.
24     THE COURT:  Good afternoon.
25     We had scheduled this status conference about a

1   month ago.  I think the goal was to find out what motions, if
2   any, the defense wish to file and possibly set a trial date.
3               MR. BRAFMAN:  Yes, your Honor, if I may.
4               THE COURT:  Yes.
5               MR. BRAFMAN:  I want to discuss several issues and
6   then also suggest the motions we intend to file and also ask
7   to be heard on a trial date.
8               I had filed a letter request to the Government
9   insisting that they provide us with what I believe to be Brady
10  material which was in their possession.  It was followed up
11  with a telephone call with Mr. Paes.  And I don't know if
12  others were on that call, but I know it was Mr. Paes and I.
13              And as a consequence of that call, where we
14  specifically outlined to him those people who we believe,
15  based on our investigation, had provided exculpatory material,
16  we received a letter last night from the Government advising
17  us that several productions would be made that, in their view,
18  contained Brady material and that the pieces or, in our view,
19  maintained Brady material, these were the specific references
20  we indicated in our letter, and they explained that they were
21  going to produce the material itself by FedEx today.
22              I'm not suggesting any wrongdoing by their
23  production, I'm just concerned that it required a specific
24  inquiry by me with specific references to the people involved
25  to prompt this production.  And this is months after I think

1   this material was in the Government's possession.  So, the
2   implication that the Government is aware of its Brady
3   obligations, which I routinely get, suggests to me that they
4   may not fully understand the scope of the Brady material that
5   this case involves because the charges are unique.
6          And while some of the people are Government
7   witnesses, based on our investigation it appears that they
8   have perhaps good things to say about Mr. Shkreli and perhaps
9   also some not so good things, but that doesn't mean that the
10  good things should be maintained in the Government's
11  possession until we specifically ask for it.
12         So, we now have a beginning.  My request is that the
13  Government scour its information and provide to us whatever
14  additional material they believe to be included in Brady
15  material; and if they're not sure, I'd ask for them to produce
16  the material for your Honor's in camera review so that you can
17  make the distinction.
18         Judge, we have a number of fairly unique motions
19  that are going to have to be filed and --
20         MR. PAES:  May I address that before we move on to
21  the motions?
22         THE COURT:  Do you mind, Mr. Brafman?
23         MR. BRAFMAN:  Not at all.
24         THE COURT:  Mr. Paes, go ahead.
25         MR. PAES:  So, I don't know if Mr. Brafman read the

1    letter completely, but there are no future productions to come
2    with respect to that.  What we did was --
3               THE COURT:  There are no future productions.
4               MR. PAES:  No.
5               THE COURT:  So, you don't believe that Mr. Brafman's
6    prompting for Brady material which resulted in the production
7    would be warranted by further prompting and requests at which
8    point the Government may produce additional information?
9               MR. PAES:  No, your Honor.
10              Just to be clear, there's one individual who the
11   Government had already produced information about him; one of
12   the consultants, Mr. Rosenfeld.  That material was produced to
13   the defense before we received the request, which was a pretty
14   standard request, by Mr. Brafman seeking Brady material.
15              Following that, we had a conversation about that.  I
16   informed Mr. Brafman about Mr. Rosenfeld and the fact that we
17   already turned it over.  I thought that was what triggered his
18   letter.  And at that point, he mentioned that there are a
19   couple of additional individuals who he believed contained
20   Brady.
21              What we did, I said to him at that point I don't
22   believe so, but we'll go back and we'll look at the
23   statements.  And what we did, as we said in our letter, which
24   I believe we sent a copy to the Court too, was that we
25   summarized the information that would be helpful to the

1    defense.  Like I said, I don't think the Government believes

2    it's Brady, but we summarized the information to -- for the

3    defense with respect to the other individuals.

4           And we also provided separately in connection with

5    the motions that they may want to do the statements of the

6    co-defendant as well because that's something else Mr. Brafman

7    had raised, as saying there could be Brady within that

8    information.  So, what we did was we provided both defendants'

9    statements of the other defendants, which we hadn't done

10   previously.

11          There's no additional production to be made.  We

12   provided them with the statements that these individuals made

13   that Mr. Brafman alluded to, and that's what it is.  They

14   obviously are free to go ahead and follow-up with those

15   individuals if they want to or do whatever they want to do.

16   To the extent that they are unable to get additional

17   information from them, we've already provided them with that

18   information.

19          So, I don't know what additional productions

20   Mr. Brafman's responding to, but, obviously, the Government

21   has turned over everything that we have in our possession in

22   terms of Rule 16 discovery.  We haven't withheld anything from

23   them.

24          THE COURT:  I think the concern that I heard

25   Mr. Brafman articulate was that it was only with prompting and

1   identifying specific areas and individuals that you then came

2   forward with additional information, with the exception of

3   Mr. Rosenfeld.

4           MR. PAES:  Correct.

5           THE COURT:  And as you said, it was prompted by the

6   production of Mr. Rosenfeld's information on April 28.

7           MR. PAES:  But the point being, your Honor --

8           THE COURT:  The point is he doesn't want to have to

9   ask you piece-by-piece and hope that you'll come up with

10  something more.  He's asking that the Government take a very

11  proper active stance and go through the information and

12  examine, whether or not it's Brady, but you acted in excess of

13  caution, that you would proceed in excess of caution and hand

14  over additional information.

15          MR. PAES:  That's fine, your Honor.  And I think

16  I've said to you -- in fact, when Mr. Brafman called me, I

17  said:  Look, I don't think it is, but I will go back and I

18  will check and we'll review out materials.

19          And that's when we came up the information that we

20  provided, including an individual that Mr. Brafman had not

21  mentioned to us -- one of the other consultants -- and we

22  provided that information to Mr. Brafman as well.

23          So, to the extent there's additional information,

24  we'll look for it and, obviously, will provide it to

25  Mr. Brafman.

1        The idea that in some ways they were prejudiced by

2   this at a time when -- given when the case was superceded,

3   when there was indictment, and the fact that there's no trial

4   date set, I'm not sure what Mr. Brafman is alluding to in the

5   sense that it's been so long and the Government has had this

6   material.

7        We have, obviously, been making a lot of discovery

8   productions over this entire time frame.  And when Mr. Brafman

9   mentioned something, we took a second look and provided

10  information which we don't believe is Brady but, nonetheless,

11  we provided to him in an abundance of caution.

12       MR. BRAFMAN:  Your Honor, I happen to like Mr. Paes.

13  I don't want this to sound inappropriate.

14       It's sort of inconceivable to me that I just hit on

15  the two very people whom had provided the Government what we

16  firmly believe to be exculpatory material.  And even in the

17  way they characterize in their letter of last night the

18  material, it's clearly exculpatory because the question in

19  this case, perhaps one of hearts of this case, is whether

20  these consulting agreements were or were not real consulting

21  agreements.

22       And when a person comes into the Government office

23  and in the first interview with the FBI was the Government

24  agent said that he or she was a consultant, that they acted as

25  a consultant, if that's not Brady material there is no Brady

1  material.
2          So, I don't want to have keeping up with names that,
3  in my judgment, are essentially people who have inferred
4  through either their counsel or to us as a result of our
5  investigation.  I think the Government has the obligation to
6  look through this material, and they obviously didn't until I
7  prompted them to do it.  And then, to their credit, they
8  turned it over.
9          But this is material that's been in their possession
10 for six months, maybe longer than that.  And all I am saying,
11 Judge, is that this kind of material is the difference
12 sometimes between an acquittal and a conviction, and it also
13 gives us more time to investigate these matters once we have
14 that information.  That's all I want is...
15         THE COURT:  I would just urge the Government to
16 remain very vigilant and diligently review the documents and
17 provide any additional material.
18         I would note, Mr. Brafman, just as set forth in the
19 Government's letter dated July 13 -- we just received this
20 about an hour ago -- it appears what happened, they did
21 voluntarily produce information on April 28 regarding one
22 individual, which, in their view, provided some exculpatory
23 information.
24         MR. PAES:  Yes.
25         MR. BRAFMAN:  Yes.

1  THE COURT: And they also gave you additional
2  information regarding two other individuals. And I think it
3  could be debatable whether this is exculpatory to the extent
4  that you're asserting that some of these consulting agreements
5  with certain individuals were shams or not shams. It appears
6  that at least with two of the three there were no consulting
7  services provided.
8  Is that correct, Mr. Paes?
9  MR. PAES: Correct, your Honor. And the Government
10 believes there were no consulting services provided by any of
11 the four, but, obviously, because Mr. Rosenfeld said there
12 were, we provided that information.
13 MR. BRAFMAN: Your Honor, just so you don't sign off
14 on this --
15 THE COURT: I'm not signing off on anything.
16 MR. BRAFMAN: I understand that.
17 But it's been my experience in many, many cases that
18 what actually happened is not determined until a trial, when a
19 witness is not just sitting in a room with agents who are
20 essentially explaining that if you lie to the Government you
21 could be prosecuted, but, rather, when they are cross-examined
22 in a public courtroom, confronted with e-mails and documents,
23 when the full storey actually comes out.
24 So, for Mr. Paes to conclude these consulting
25 agreements were a sham, that's the view of the Government.

1  And Mr. Shkreli, as your Honor has reminded us, is presumed
2  innocent, and we intend to vigorously defend the case.  But I
3  think I've made my point.  Let me move on, if I can.
4           THE COURT:  I think Mr. Brodsky wants to be heard.
5           MR. BRODSKY:  Yes, your Honor.  Just to go in order,
6  I wanted to follow up on this point.
7           When we received the Government's letter last
8  evening, we did go back and look at the Bates-numbered range
9  for the first individual that's mentioned here in the letter,
10 Mr. Rosenfeld, which is R024568 to 26471, and we did go look
11 at those documents.
12          And unless we missed something -- and the discovery
13 is three million pages or thereabout, so we could have missed
14 something in reviewing last night -- we did not see any
15 statements that Mr. Rosenfeld made to the Government.  In
16 fact, what we saw were a series of e-mails that Mr. Rosenfeld
17 had where he was saying he provided services.  But there was
18 not a single note from the FBI of an interview with
19 Mr. Rosenfeld or an FBI report in Mr. Rosenfeld's statements.
20          If the government has a report of Mr. Rosenfeld
21 coming into the U.S. Attorney's Office or the SEC and saying
22 that he provided real services, that the consulting agreement
23 he had with Retrophin was real and he maintained that, we
24 believe that's core Brady.
25          With all due respect, Mr. Shkreli has the charges

1    against him.  Mr. Greebel is charged in two --

2              THE COURT:  Do you have a cell phone on near that

3    speaker?

4              MR. BRODSKY:  It's off.

5              THE COURT:  Anyone else on that table have a cell

6    phone?

7              MR. BRODSKY:  Mr. Greebel is charged in two counts,

8    two conspiracy counts of eight.  Court Seven -- this goes to

9    Count Seven -- is absolutely core Brady because Mr. Greebel

10   was outside counsel to Retrophin.  And if a person who

11   submitted a consulting agreement, signed a consulting

12   agreement with Retrophin, is maintaining it wasn't a sham, the

13   outside counsel for the company, that's core Brady to his

14   defense that he had every reason to believe this individual

15   who says it was real services was providing real services was

16   actually providing real services.

17             And, so, I do believe it's core Brady for

18   Mr. Greebel.  I am concerned that if the view is that that is

19   not Brady, there's more there.

20             I also believe the Government should look at our

21   letter that we submitted with 31 specific requests and

22   produce, among other things, Mr. Rosenfeld's statements to the

23   Government.  Because it appears to us that they're not going

24   to call Mr. Rosenfeld because they don't like his testimony or

25   they don't believe his testimony or for whatever reason; and,

1  therefore, will he ever get Mr. Rosenfeld's statements to the

2  FBI unless the Government produces them.

3          Thank you, your Honor.

4          MR. PAES:  Your Honor, first of all, we obviously

5  said Mr. Rosenfeld's information was Brady, despite what

6  Mr. Brodsky just said.

7          THE COURT:  The FBI statement.

8          MR. PAES:  We provided that information in the

9  letter as to what he said that was exculpatory.

10         THE COURT:  What about the 302s?

11         MR. PAES:  All 302s in this case, your Honor, it's

12 our practice -- in my practice personally and our practice in

13 our section -- we turn over, contrary again to what

14 Mr. Brodsky just said, all 302s regardless of whether we call

15 the witness or not.  If there's a 302 that's part of this

16 investigation, that will be turned over as 3500 material at

17 the appropriate time.  So we're not going to withhold any 302s

18 in this case.  Everything that was done, whether we called the

19 witness or not, is going to be turned over.  And, so, they

20 will receive Mr. Rosenfeld's 302 at the particular time.

21         In terms of our obligations, what we've done is

22 we've provided the exculpatory information from that 302 to

23 the defense, and that's what we're obligated to do under the

24 law.

25         MR. BRAFMAN:  Your Honor, I don't want to beat this

14
USA v. Shkreli, et al.

1  to death, but as understand the Brady obligation is not to

2  lump it into the 3500 material that very often is produced

3  shortly before the trial.  If their position is they're going

4  to turn over all 302s, that's great, glad to hear that may be

5  a policy change, but that Brady material, especially with

6  respect to the witnesses we have identified, their obligation

7  is to turn it over now.

8              THE COURT:  I think that's what he's saying, though.

9  He's saying you'll get your 302s at the appropriate time.  To

10 the extent that the 302s contain Brady information, you'll get

11 it soon, if you haven't already got it.

12             MR. PAES:  Summarized, your Honor, like we've

13 already done.

14             MR. BRAFMAN:  No, no, no.  He's not saying that,

15 Judge.  He's saying he's already complied with his Brady

16 information by summarizing the information.

17             What I'm suggesting is if they have a 302 of

18 Mr. Rosenfeld giving the substance of what's summarized there,

19 we should have that 302 now, not with the other 3500 material.

20             MR. PAES:  Your Honor, like I said, I think

21 information that's relevant with respect to what is considered

22 Brady has been provided.

23             Now if Mr. Brafman is saying we've somehow -- you

24 know, he doesn't trust the fact that we have summarized the

25 Brady information appropriately for him, we're happy to turn

```
 1   it over to the Court to look at the 302 to determine that.
 2   But I think that would be something I don't think, you know,
 3   Mr. Brafman has basis to say that.  But we're happy to turn it
 4   over to the Court if Mr. Brafman is suggesting that our
 5   summary of what Mr. Rosenfeld said in that 302 doesn't
 6   properly encapsulate the information.
 7             MR. BRAFMAN:  Why do you want to burden the Court?
 8             What is the prejudice to the Government if you've
 9   already summarized the information and if it's accurately
10   summarized?
11             Just give us the 302 now.
12             MR. PAES:  Well, we are, though, like I said, I
13   think this is based on what our obligations are.  We provided
14   the information.  There may be other information in there that
15   the Government doesn't want to disclose and is not obligated
16   to disclose at that point.  That's the point.
17             A lot of this is obvious, and I understand it.  And
18   defense lawyers do this in every case.  They want to
19   understand exactly -- and, in fact, this was raised even
20   previously -- what all the Government witness have said and so
21   that they can get the information ahead of time.  There's a
22   reason why the criminal laws provide that kind of information
23   should not be provided in advance for a number of reasons,
24   with respect to making up, you know, defenses or kind of
25   tampering, things along those lines --
```

1    THE COURT:  The biggest reason, frankly, is the
2 Second Circuit clearly told District Courts that we don't have
3 the authority to order production of 3500 material before the
4 times set forth in statute.  As a matter of custom and
5 practice, the U.S. Attorney's Office, at least in the Eastern
6 District, do try to provide it in advance of the time
7 prescribed in the statute.
8    But I would just urge the Government to please put
9 them at ease, review the documents, and provide additional
10 materials.  If you have a sense that it may be Brady or
11 exculpatory, err in favor of providing it.
12    MR. PAES:  Yes, your Honor.  We will take a close
13 look at all the 302s and reassess.  If there's something that
14 even comes close to the line, we'll be happy to provide it.
15    MR. CHAN:  Can I just add that part of the reason
16 why he's saying that there's appropriate disclosure here of
17 Brady material -- we're not asking for early 3500 material --
18 the appropriate disclosure of Brady in this particular context
19 requires attention to the specific wording of what was said by
20 these consultants to the Government.
21    And, so, while paraphrasing in certain instances may
22 be sufficient under the law, here the specific circumstances
23 of the wording chosen by the witness when they first told the
24 Government that the services they did were legitimate, the
25 full scope of it, how long, this practice versus that

1  practice, all of that is Brady, and, I submit, not fulfilled
2  simply with the summary that we got, which is two or three
3  sentences long.
4              MR. PAES:  May I address that as well?
5              Because I think for the Government to turn over the
6  302s in this case or the actual statements even beyond what
7  we've done, in fact, all our Brady obligations would require
8  us to do is say:  You may want to talk to this individual.  We
9  went above and beyond that and actually summarized the
10  information, which is beyond what's required in the law.
11             Now if the defense is saying for some reason that
12  they are unable to get to these individuals who we've
13  identified and not talk to them, you know, that's a different
14  scenario where if there's anything additional with respect to
15  what Mr. Chan is stating with respect to timing, we can copy
16  and paste that paragraph if that's what would be helpful to
17  them.
18             But there's not a showing here at all that
19  Mr. Rosenfeld, for example, who, by the way, has been involved
20  in civil litigation and arbitrations, which defense in the
21  case, I know Mr. Shkreli, is part of in some of those matters,
22  they're aware of this information.  So, the idea that all of a
23  sudden this is coming as some kind of surprise to them with
24  respect to Mr. Rosenfeld I think is not accurately stating
25  their knowledge of what Mr. Rosenfeld had said in light of the

1    litigation that they all know is going on.

2              THE COURT:  Mr. Brafman and Mr. Brodsky, given the

3    Government's commitment to reviewing, again, I'm not sure what

4    more you want me to do.  I can't order them to give you the

5    3500 materials now.  But I will be open to addressing any

6    other issues if this comes up in the future.  They've made a

7    commitment, they'll fulfill their obligations, they'll do

8    their best, they'll err on the side of disclosure.

9              You're not asking me, I don't think, Mr. Brafman or

10   Mr. Brodsky, to review their 302s or other statements and

11   decide whether it's Brady, are you?

12             MR. BRAFMAN:  Not at this time.

13             MR. BRODSKY:  Not at this time, your Honor.  Thank

14   you for your attention to it.

15             THE COURT:  Okay.

16             MR. BRODSKY:  We trust the Government will go

17   through the materials, as you suggested to them.  At some

18   point in the future if we develop the information that shows

19   that more Brady should be turned over, we know that we can

20   come back to your Honor.

21             MR. BRAFMAN:  Your Honor, at the last conference, at

22   the last conference your Honor asked that we suggest a trial

23   date and, also, obviously, motion schedule, and I'll so

24   indicate the kinds of motions that we'll be filing.

25             What I'd like to do is start with telling your Honor