AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| United States of America | ) |
|---|---|
| v. | ) |
| Martin Shkreli | ) Case No. 1:15-cr-00637-KAM-1 |
| | ) |
| Defendant | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To: Katten Muchin Rosenman, LLP. Attn: Michael I. Verde
*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

| Place: Brafman & Associates, P.C.<br>767 3rd Ave., 26th Floor<br>NY, NY 10017 | Date and Time:<br>June 26, 2017<br>9:00 A.M. |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: SEP 28 2016     (SEAL)

**DOUGLAS C. PALMER**
CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Martin Shkreli, who requests this subpoena, are:
Andrea Zellan, Brafman & Associates, P.C., 767 3rd Ave, 26th Floor NY, NY 10017; 212.750.7800; azellan@braflaw.com

### Notice to those who use this form to request a subpoena

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B (07/16) Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 3)

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

## RIDER to SUPBOENA ISSUED SEPTEMBER 28, 2016 TO KATTEN MUCHIN ROSENMAN, LLP

1. For the period from September 1, 2009 through December 17, 2015 any and all retainer agreements between Katten Muchin Rosenman LLP ("Katten") and Martin Shkreli.

2. For the period from September 1, 2009 through December 17, 2015 any and all retainer agreements between Katten Muchin Rosenman LLP ("Katten") and MSMB Capital and its affiliates and MSMB Healthcare and its affiliates.

3. For the period from September 1, 2009 through October 14, 2014 any and all retainer agreements between Katten and Retrophin.

4. For the period from September 1, 2009 through December 17, 2015:
    a. any and all billing records from Katten to Martin Shkreli;
    b. any and all billing records to MSMB Capital and its affiliates and MSMB Healthcare and its affiliates;
    c. any and all internal Katten communication or correspondence regarding billing to Martin Shkreli;
    d. any and all internal Katten communication or correspondence regarding billing to MSMB Capital and its affiliates, and MSMB Healthcare and its affiliates;
    e. any and all communication or correspondence between Katten and outside parties regarding billing to Martin Shkreli;
    f. any and all communication or correspondence between Katten and outside parties regarding billing to MSMB Capital and its affiliates, and MSMB Healthcare and its affiliates.

5. For the period from September 1, 2009 through October 14, 2014:
    a. any and all billing records from Katten to Retrophin;
    b. any and all internal Katten communications or correspondence regarding billing to Retrophin;
    c. any and all communication or correspondence between Katten and outside parties regarding billing to Retrophin.

6. For the period from September 1, 2009 through December 17, 2015, any and all filings made by Katten on behalf of Martin Shkreli, including but not limited to:
    a. Filings with any court;
    b. Filings with the Securities and Exchange Commission;
    c. Filings with any administrative agency;
    d. Filings in any arbitration proceeding.

1

7. For the period from September 1, 2009 through December 17, 2015, any and all filings made by Katten on behalf of MSMB Capital and its affiliates, MSMB Healthcare and its affiliates, including but not limited to:
    a. Filings with any court;
    b. Filings with the Securities and Exchange Commission;
    c. Filings with any administrative agency;
    d. Filings in any arbitration proceeding.

8. For the period from September 1, 2009 through October 14, 2014, any and all filings made by Katten on behalf of Retrophin, including but not limited to:
    a. Filings with any court;
    b. Filings with the Securities and Exchange Commission;
    c. Filings with any administrative agency;
    d. Filings in any arbitration proceeding.

9. For the period from September 1, 2009 through December 17, 2015 any and all correspondence between Katten and Martin Shkreli, including but not limited to:
    a. Electronic mail;
    b. "Twitter" messages;
    c. All attachments to any electronic mail or "Twitter" messages;
    d. Instant messaging records;
    e. Texting records.

10. For the period from September 1, 2009 through December 17, 2015 any and all correspondence between Katten and MSMB Capital and its affiliates and MSMB Healthcare and its affiliates , including but not limited to:
    a. Electronic mail;
    b. "Twitter" messages;
    c. All attachments to any electronic mail or "Twitter" messages;
    d. Instant messaging records;
    e. Texting records.

11. For the period from September 1, 2009 through October 14, 2014, any and all correspondence between Katten and Retrophin, including but not limited to:
    a. Electronic mail;
    b. "Twitter" messages;
    c. All attachments to any electronic mail or "Twitter" messages;
    d. Instant messaging records;
    e. Texting records.

12. For the period from September 1, 2009 through December 17, 2015 any and all internal Katten communication related to Martin Shkreli, including but not limited to:
    a. Legal memoranda;
    b. Electronic mail among and between lawyers and other employees of Katten;
    c. Instant messages among and between lawyers and other employees of Katten;
    d. Memorializations of telephone conversions;
    e. Memorializations of legal advice given to Martin Shkreli.

13. For the period from September 1, 2009 through December 17, 2015 any and all internal Katten communication related to MSMB Capital and its affiliates and MSMB Healthcare and its affiliates, including but not limited to:
    a. Legal memoranda;
    b. Electronic mail among and between lawyers and other employees of Katten;
    c. Instant messages among and between lawyers and other employees of Katten;
    d. Memorializations of telephone conversions;
    e. Memorializations of legal advice given to MSMB Capital and its affiliates and MSMB Healthcare and its affiliates.

14. For the period from September 1, 2009 through December 17, 2015 any and all internal Katten communication related to Retrophin, including but not limited to:
    a. Legal memoranda;
    b. Electronic mail among and between lawyers and other employees of Katten;
    c. Instant messages among and between lawyers and other employees of Katten;
    d. Memorializations of telephone conversions;
    e. Memorializations of legal advice given to Retrophin.

15. For the period from September 1, 2009 through October 14, 2014 any and all documents related to Martin Shkreli's actions on behalf of Retrophin, including but not limited to:
    a. any and all Board Meeting Minutes;
    b. any and all documents prepared in anticipation of the reverse merger with Desert Gateway;
    c. any and all documents related to the merger with Desert Gateway;
    d. Any and all worksheets regarding Retrophin share distributions, including but not limited to capitalization tables and documents related to the preparation of capitalization tables;
    e. any and all documents related to any settlement agreement reached or contemplated by Retrophin;
    f. any and all documents related to any consulting agreement reached or contemplated by Retrophin;
    g. any and all documents related to MSMB Capital's investment in Retrophin;

3

    h. any and all documents related to MSMB Healthcare's investment in Retrophin;
    i. any and all documents related to MSMB Capital's negotiated resolution with FINRA and Merrill Lynch;
    j. any and all documents related to any and all individual investors in Retrophin before the reverse merger, and after the reverse merger.

16. For the period from September 1, 2009 through October 14, 2014 any and all documents related to Martin Shkreli's actions on behalf of MSMB Capital and affiliates and MSMB Healthcare and its affiliates, including but not limited to:
    a. any and all operating agreements;
    b. any and all partnership agreements;
    c. any and all documents related to any litigation, whether its civil litigation, or administrative actions before FINRA, the SEC or an arbitrator;
    d. any and all correspondence whether its by regular mail, electronic mail, instant message, or twitter;
    e. any and all correspondence related to the wind-down, liquidation, closing of MSMB Capital and the wind-down, liquidation, closing of MSMB Healthcare.