UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

MARTIN SHKRELI, and
EVAN GREEEBEL,

              Defendants.

No. 15-CR-00637 (KAM)

ECF Case

### KATTEN MUCHIN ROSENMAN LLP'S RESPONSE TO DEFENDANT MARTIN SHKRELI'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

### INTRODUCTION

Katten Muchin Rosenman LLP ("Katten") hereby responds to the Motion to Compel filed by Defendant Martin Shkreli ("Shkreli") on October 27, 2016 (the "Motion to Compel" (Dkt. No. 103)), which sought to compel Katten to produce documents demanded by a Subpoena that was served by Defendant on Katten on September 28, 2016 (the "Subpoena"). The Subpoena, which is not returnable until June 26, 2017, demands a broad range of Katten's emails and documents relating to Katten's representation of various entities affiliated with "MSMB Capital," "MSMB Healthcare," and "Retrophin," over a period of more than three years. Because Katten was counsel to each of these entities, a large portion of the requested documents are presumptively privileged. This presents a series of difficulties for Katten. First, Katten has not represented any of these entities since 2014, and is not in a position to determine who presently has authority to either assert or waive privilege on their behalf. Second, many of the emails and documents requested appear likely to be subject to conflicting claims of standing and privilege, which Katten cannot possibly adjudicate. Third, many of the emails and documents

1

sought by the Subpoena have already been produced by Retrophin, subject to a limited waiver, possibly mooting their privilege claims over the documents, and making production by Katten unnecessary. Finally, Katten understands that Shkreli has sought to expedite production of these documents in order to evaluate a possible advice of counsel defense, increasing the complexity of the standing and privilege issues attendant to Katten's communications with him.

Katten has gathered all of its emails and records concerning its representation of the MSMB and Retrophin entities, and stands ready to produce responsive material in its possession now even though production is not due until June 2017. However, Katten respectfully requires direction from the Court before doing so.

## FACTUAL BACKGROUND

Between 2011 and 2014, Katten represented many different MSMB and Retrophin entities.[1] In the course of this representation, Katten advised on the formation of Retrophin, Inc. and its predecessor Retrophin LLC, as well as the conversion of investments in MSMB into shares of Retrophin. Katten also advised Shkreli in his role as executive of many of these companies, as well as represented him at his testimony before the United States Securities and Exchange Commission. In the course of this representation, Katten amassed in excess of 175,000 emails and documents, representing nearly 600,000 pages of material. Katten initiated a document hold over this material in October 2014, when it became apparent that Katten was being replaced as Retrophin's counsel.

---

[1] The list of such entities includes MSMB Capital Management LLC, MSMB Healthcare LP, AMAG Pharmaceuticals Inc., Retrophin LLC, Retrophin Inc., Retrophin Therapeutics I, Inc., Retrophin Therapeutics II, Inc., Retrophin Pharmaceutical, Inc., Kyalin Biosciences, Inc., Manchester Pharmaceuticals LLC; RTRX International C.V. Retrophin Therapeutics International, LLC, Retrophin Therapeutics International, Coop, Retrophin International, LLC, Retrophin Therapeutics International IB.V., and Retrophin Therapeutics International IIB.V.

2

A significant portion of this material is potentially responsive to the Subpoena, given the Subpoena's broad sweep (*e.g.* "all internal Katten communication related to Retrophin"). However, the vast majority of the work performed by Katten involved transactions on behalf of MSMB and Retrophin, and so only a relatively small portion of this material is likely to be relevant to the discrete issues in this case. Most of the Subpoena's requests call for documents that are presumptively privileged, such as those calling for "any and all correspondence" between Katten and Shkreli, Retrophin, or MSMB. Additionaly, any effort to identify and produce emails and documents that are clearly not privileged, (*e.g.*, because they include third parties, etc.), would not serve Shkreli's need to expedite Katten's production because such material is unlikely to be relevant to an advice of counsel defense.

Further, when Katten was replaced as Retrophin's counsel in November 2014, Retrophin's new counsel, Cooley LLP ("Cooley"), requested Katten's files on a number of issues, including many of the issues central to this case. As these were client files being provided to successor counsel, there were no privilege considerations, and Katten produced these documents in their totality. Cooley requested little in the way of emails from Katten, which Katten assumed was because Retrophin was already in possession of these emails, as they were sent to/from Retrophin domains. When the Government requested documents from Katten pursuant to a Grand Jury subpoena on May 2, 2015, the Government also provided Katten with a September 30, 2015 letter from Cooley to the Government, which waived Retrophin's attorney-client privilege over certain communications with Katten related to the "Fearnow shares," and settlement and consulting agreements with certain MSMB investors. That same letter preserved Retrophin's privilege for all other matters. (A copy of this letter is attached as Exhibit A). It is for these reasons that Katten believes that many of the responsive documents in its possession,

3

and are directly relevant to this case, have already been produced by Retrophin to the Government, who in turn provided them to the Defendants.

Throughout this case, Katten has been in contact with the Government as well as counsel for Defendants Shkreli and Evan Greebel ("Greebel"), concerning access to Katten's emails and documents. Katten has explained to each the dilemma it faced in trying to identify and adjudicate competing privilege claims among its former clients, and Katten has suggested that judicial intervention would ultimately be required. As suggested in Shkreli's Motion to Compel, the Subpoena was the result of these collaborative discussions.

## ADJUDICATION OF COMPETING PRIVILEGE CLAIMS

It is axiomatic that the client and not the attorney holds the attorney-client privilege. *U.S. v. Martoma*, 962 F. Supp. 2d 602, 604 (S.D.N.Y. 2013) ("The attorney-client privilege 'can be asserted only by the client' ... "); *See also Tribune Co. v. Purcigliotti*, 1997 WL 10924, at *4 (S.D.N.Y. Jan. 10, 1997) ("The attorney-client privilege belongs solely to the client and thus may be waived only by the client ... ").; *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987). Katten cannot assert or waive privilege without instruction from its client, but has not represented these entities for at least two years, and is not certain who is currently authorized to speak for these entities on this issue. Even if that could be determined, many of these documents appear likely to be subject to overlapping or conflicting claims of privilege, which would place Katten in the ethically untenable position of deciding which former client's direction to refuse in making the production. In short, these issues of standing and privilege will have to be briefed by the parties and adjudicated by the Court.

As a practical matter, Katten respectfully suggests that the Court consider an effort to first identify the emails and documents that have not already been produced, and then determine

whether there are in fact conflicting claims of waiver or privilege over those documents. To that end, Katten has alerted Cooley, Retrophin's current counsel, of the Subpoena, and has requested that Retrophin inform Katten of its position regarding privilege over this material. Katten would have done the same for the MSMB entities, but most of these entities effectively ceased operations years ago and Katten could not determine with certainty who has the authority to speak for them now.

Katten stands ready to do what it can to assist the Court in resolving these issues in an efficient manner. There may also be other methods by which we could reduce the privilege issues complicating Katten's response to this subpoena, however a discussion of these methods would necessarily include information that Katten obtained in the course of its representation of these entities. Katten is therefore not at liberty to address these methods in a public filing, without the risk of breaching its confidentiality and privilege obligations to its various former clients.

## CONCLUSION

For the foregoing reasons, Katten presumptively asserts privilege over the documents requested by the Subpoena pending the Court's direction. Katten respectfully suggests that a conference with the Court and the parties be scheduled to decide the most efficient way to address the issues of standing and privilege attendant to Katten's production.

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: _____
Michael I. Verde
Elizabeth D. Langdale

                                                6

                                                575 Madison Avenue
                                                New York, New York 10022
                                                (212) 940-8800 (phone)
                                                (212) 940-8776 (fax)
                                                michael.verde@kattenlaw.com
                                                elizabeth.langdale@kattenlaw.com

To: All Counsel of Record (Via ECF)