

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMK:AES
F. #2014R00501

271 Cadman Plaza East
Brooklyn, New York 11201

December 12, 2016

<u>By Hand and ECF</u>

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Martin Shkreli
     <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

  The government writes in response to the filings made by Marek Biestek on December 2, 2016 (Docket No. 123), Retrophin, Inc. ("Retrophin") on November 27, 2016 (Docket No 119) and December 5, 2016 (Docket No. 125), and the defendant Martin Shkreli on November 23, 2016 (Docket No. 116) and December 5, 2016 (Docket No. 126), as well as the Court's Orders dated November 30, 2016 (Docket No. 120) and December 6, 2016. These filings all relate to Shkreli's motion to compel Katten Muchin Rosenman LLP ("Katten") to produce documents in its possession (Docket No. 103).

  For the reasons detailed below, the government respectfully requests that the Court clarify its December 6, 2016 order to require Shkreli to produce a privilege log detailing any Katten documents Shkreli or Biestek seek to withhold, and include the basis for withholding such documents. In addition, the government advises the Court that it may seek to challenge the assertion by Shkreli and/or Biestek of corporate or personal privileges over certain of the Katten documents, either because (1) the documents are not in fact privileged, (2) the assertion of the waiver in question is improper, or (3) Shkreli decides to advance an advice-of-counsel defense.

**I. Background**

  The parties, along with Katten and Retrophin, attended a status conference on November 22, 2016, to discuss certain issues raised by Shkreli's motion. Shkreli represented at that status conference that he was waiving the attorney-client privilege on behalf of the MSMB entities (including MSMB Capital Management LP and MSMB Capital Management LLC (the "MSMB Capital Entities") and MSMB Healthcare Management LP and MSMB Healthcare

Management LLC (the "MSMB Healthcare Entities")), such that documents in Katten's possession in which Katten provided legal advice to the MSMB entities would be produced to all parties. (See Transcript of November 28, 2016 Hearing, attached hereto as Exhibit A, at 5-6). The government relied on this waiver and, as a result, did not raise certain issues at the status conference that it had planned to raise had no waiver been made.

Over the past two weeks, however, Shkreli appears to have first qualified, and then fully withdrawn the waiver. First, in a filing on November 23, 2016, Shkreli stated that Marek Biestek "does not waive his attorney-client privilege as to MSMB." (Docket No. 116 at 2). Shkreli appeared to maintain that although he had waived the corporate privilege as to the MSMB entities, as well as his personal privilege, Biestek's assertion of the attorney-client privilege somehow invalidated Shkreli's waiver – ostensibly because Biestek could also waive the corporate privilege for those entities, although Shkreli failed to provide clarity on this issue. (Id.).

The government subsequently filed a letter on November 23, 2016, requesting that Biestek set forth the basis for his assertion of the attorney-client privilege on behalf of the MSMB entities. (Docket No. 118). On December 2, 2016, Biestek filed a letter in which he claimed that he was "authorized to act on behalf" of the MSMB Capital Entities and could thus control the corporate privilege for such entities; he also contended that he "might" be able to assert a personal privilege over certain documents related to the MSMB Capital Entities. (Docket No. 123 at 4-6). Biestek did not make any claim of privilege on behalf of the MSMB Healthcare Entities. (Id.) As a result, the government understood as of December 2, 2016, that (1) Shkreli – who all parties, including Biestek, agree is the only individual who controls the privilege for the MSMB Healthcare entities – had waived privilege with respect to those entities, such that those documents could be released to all parties, and (2) but for Biestek's attempt to assert a corporate or personal privilege in connection with the MSMB Capital Entities, all other privileges had been waived by Shkreli for those documents. Given that set of circumstances, the government planned to provide the Court with information and caselaw demonstrating that Biestek does not control the corporate privilege for the MSMB Capital Entities.

However, in a filing on December 5, 2016, Shkreli now states that neither he nor Biestek has waived the attorney-client privilege for "the MSMB documents." Shkreli does not distinguish between the MSMB Capital Entities and the MSMB Healthcare Entities in this filing; does not clarify whether he is asserting the corporate privilege on behalf of these entities or a personal privilege related to certain documents; and does not acknowledge that Biestek has admitted that he does not control the corporate privilege for the MSMB Healthcare Entities and cannot assert a personal privilege in connection with any documents related to these entities.

In light of these significantly changed circumstances and the lack of specificity provided by Shkreli regarding the nature of the privileges he seeks to assert, the government seeks to bring to the Court's attention certain issues it had initially planned to raise at the November 22, 2016 status conference. Specifically, the government seeks to (1) clarify the categories of Katten documents that Shkreli may seek to withhold based on his current assertions of privilege, (2) clarify that the Court's December 5, 2016 order requires Shkreli and Biestek (along with Retrophin) to provide a privilege log detailing all Katten documents that are withheld

and the basis thereof, (3) address the government's ongoing concerns with Biestek's attempt to assert a corporate or personal privilege over certain of the Katten documents, and (4) discuss the implications of Shkreli's non-waiver on behalf of the MSMB entities for a potential advice-of-counsel defense.

**II.     Shkreli's Assertion of Privilege over Certain Katten Documents**

    **A.     General Process for Review and Production of Katten Documents**

As the government understands the Court's November 30, 2016 and December 5, 2016 orders, the following is the general structure for the review and production of the Katten documents sought by Shkreli's subpoena:

(1) Katten will provide Shkreli with all responsive documents in December 2016, and Shkreli will review those responsive documents.

(2) Shkreli will hold back entirely (from Retrophin, the government and the defendant Evan Greebel) the following categories of documents:

    (a) documents for which Shkreli determines that a corporate privilege can be asserted on behalf of the MSMB Capital Entities;

    (b) documents for which Biestek determines that a corporate privilege can be asserted on behalf of the MSMB Capital Entities (to the extent this is different than (a));

    (c) documents for which Shkreli determines that a corporate privilege can be asserted on behalf of the MSMB Healthcare Entities;

    (d) documents for which Shkreli determines he can assert a personal privilege; and

    (e) documents for which Biestek determines he can assert a personal privilege (which are limited, pursuant to Biestek's filing, to documents related to the MSMB Capital Entities (see Docket No. 123 at 4)).

(3) Shkreli and Retrophin will meet-and-confer with respect to the remaining Retrophin documents, to determine:

    (a) documents which fall into the scope of Retrophin's existing waivers (as set forth in the original limited waiver (see Docket No. 106, Exhibit A))

3

and all documents related to the $900,000 promissory note between MSMB Healthcare and Retrophin (see Docket No. 119 at 2);[1]

    (b)    additional documents for which Retrophin will agree to waive privilege pursuant to Shkreli's request (to the extent Shkreli can convince Retrophin such documents are necessary to his defense and related to the criminal case);

    (c)    documents for which Shkreli seeks a waiver from Retrophin, but which Retrophin disagrees that a waiver is appropriate; and

    (d)    documents over which Retrophin will continue to assert privilege for which Shkreli has no objection.

At the end of this process, documents in categories (3)(a) and (3)(b) will be provided to all parties. Retrophin will create a privilege log of documents in category (3)(c), and then Retrophin and Shkreli will seek a determination from the Court about the status of the documents in that category.

**B.    Specific Concerns Related to Katten Documents that Shkreli May Withhold Due to the Assertion of Corporate or Personal Privileges**

At this time, the government does not have any concerns about the process with respect to the Retrophin documents in Katten's possession. The government does, however, have a number of concerns with respect to the process for determining which documents fall in categories (2)(a)-(2)(e). First, that process is currently entrusted entirely to Shkreli and to Biestek, both of whom have an incentive to withhold from the government (in connection with the criminal case) and from Retrophin (in connection with Shkreli's various civil actions) documents that are damaging to them, and to release documents that are favorable to them. Second, as detailed above, there has been a lack of specificity about which privileges Shkreli and Biestek are actually seeking to assert, and so there is not a clear basis on which the government or other parties could challenge those assertions. And third, it is possible that in some instances an MSMB entity <u>and</u> Retrophin may be able to claim privilege over different portions of a single document (for example, an email communication in which a Katten attorney gives legal advice to an MSMB entity in one part of the email and legal advice to Retrophin in another part of the email), which Retrophin should have the opportunity to assess. This is especially important for internal Katten documents (that is, communications between Katten attorneys), which Retrophin may never have received.

These concerns are particularly acute because the Court's original November 30, 2016 order was drafted <u>before</u> Shkreli rescinded his waiver of privilege. As a result, that order

---

[1] In Retrophin's December 9, 2016 filing, Retrophin advised that it was continuing to confer with Shkreli regarding the scope of its waivers, and that such discussions might result in further expansion of its waivers. (See Docket No. 130 at 1).

was drafted before it was clear that Shkreli would be seeking to hold back documents related to the MSMB Capital Entities and the MSMB Healthcare Entities, and did not include any safeguards with respect to that process.  In the Court's December 6, 2016 order – which was filed shortly after Shkreli rescinded his waiver –  the Court does note that it will wait to rule on the admissibility of documents until "Retrophin, MSMB and Biestek have identified and provided privilege logs regarding documents over which privileges are asserted."

       To that end, the government requests clarification of the Court's December 6, 2016 order.  Specifically, the government respectfully requests that the Court order that, along with Biestek, Shkreli be required to also create a privilege log for all documents that he seeks to withhold.  Such log should make clear into which of the (2)(a)-(2)(e) categories each document falls (e.g., related to MSMB Capital Entities or MSMB Healthcare Entities, corporate vs. personal privilege, whether privilege is asserted by Shkreli or Biestek).  This will allow the government (along with Greebel and/or Retrophin) to determine whether it will seek to challenge the assertion of the privilege over any withheld documents or categories of documents.

       Finally, it is important to note that the government does not believe that Shkreli or Biestek has the right to withhold documents related to (1) the subjects addressed in Judge Weinstein's December 3, 2015 order, or (2) documents which were sent or received on Retrophin's servers.

       With respect to the former category – which includes documents related to the backdating of agreements by Shkreli, Biestek and others in order to create a fraudulent interest in Retrophin for MSMB Capital; documents related to the manipulation of Retrophin's capitalization table for the benefit of the MSMB entities; and documents that touch upon consulting and settlement agreements between defrauded MSMB Capital investors and Retrophin – Judge Weinstein has <u>already</u> ruled that such documents are not subject to either a corporate or personal privilege (in part due to the operation of the crime-fraud exception).  See <u>In re Grand Jury Investigation</u>, 15-MC-2227 (JBW), Docket No. 5 at ¶¶ 6-7.  Such order also would extend to additional Katten documents related to these subjects, including communications among Katten attorneys.

       With respect to the latter category, Retrophin set forth in its November 27, 2016 filing the reasons why the use of Retrophin's servers by Shkreli and Biestek to conduct business on behalf of the MSMB entities constituted a waiver of the corporate privilege for those communications.  (<u>See</u> Docket No. 119 at n.1).  The government agrees with this assessment and may provide additional briefing on the subject as necessary.

### III.   Biestek's Attempts to Assert the Attorney-Client Privilege over Certain Katten Documents

       To the extent that Shkreli continues to assert the corporate privilege on behalf of the MSMB Capital Entities, Biestek's attempt to also assert the corporate privilege and/or a personal privilege related to the MSMB Capital Entities is a moot issue.  However, the government anticipates that Shkreli may seek to waive the corporate privilege at some point in the future, either to (1) utilize documents that would otherwise be subject to the privilege at trial,

5

or (2) pursue an advice-of-counsel defense (as detailed below in Section IV).  At that point, Biestek's attempt to assert the corporate and/or personal privilege will become relevant.  Given the need to keep the case on track for the scheduled trial date, the government sets forth its general response to Biestek's attempts to assert privileges related to the MSMB Capital Entities below, and can supplement this filing if it becomes necessary for the Court to rule on this issue.

    A.    **Biestek Cannot Assert Corporate Privilege on Behalf of MSMB Capital Entities**

        In his December 2, 2016 filing, Biestek asserts that both he and Shkreli "are authorized to act on behalf" of the MSMB Capital Entities, and that, as such, either he or Shkreli has the capacity to assert or waive the corporate privilege on behalf of the MSMB Capital Entities.  (Docket No. 123 at 4).  Biestek further states that he is not waiving the corporate privilege on behalf of the MSMB Capital Entities, and that if Shkreli waives such privilege (and seeks to have the documents released to third parties), he will seek further briefing on the issue because "[p]reliminarily, there appears to be ample support in the case law to suggest under such circumstances, both individuals may need to waive privilege for the documents to be disclosed to third parties."  (Id. at 3, note 3).

        Based on his filing, Biestek appears to assert that if Shkreli waives the corporate privilege on behalf of the MSMB Capital Entities, Biestek also has the ability to assert the corporate attorney-client privilege on behalf of the MSMB Capital Entities, and therefore prevent the disclosure to third parties of privileged documents for the MSMB Capital Entities held by Katten.  In his filing, Biestek contends he can assert the corporate attorney-client privilege on behalf of the MSMB Capital Entities due to a single "administrative task" he undertook in 2009 "at the instruction of Shkreli":  specifically, he was directed by Shkreli to file two incorporation forms to establish the MSMB Capital Entities, and those two forms list Biestek as the company's corporate officer.  (See Docket No. 123 at 3-4).  However, in all other respects, Biestek contends that he did not act to control or otherwise serve as an officer or manager of the MSMB Capital Entities.  For example, Biestek describes his role at the MSMB Capital Entities as merely an "advise[r to] Shkreli on portfolio management and trading decisions" between September 2009 and the "end of 2009," after which he was "primarily … more of an analyst offering support of Shkreli's management of the company's funds and solicitation of investors, a responsibility which [Biestek] did not share."  Biestek also states that he "fulfilled certain administrative tasks" – such as completing the "original incorporation documents" – for Shkreli.  (Id. at 3).  Biestek further states that he does not even know whether the MSMB Capital Entities are still in existence or whether they are defunct.  (Id.).

        In addition, Biestek repeatedly asserts that Shkreli was the sole individual who controlled the MSMB Capital Entities.  For example, Biestek contends there is "no dispute" that Shkreli was in charge of all operations of "each MSMB Entity," or that Biestek had a "subordinate role" to Shkreli.  (Id. at 4-5).  This is consistent with the 2014 testimony Biestek gave to the United States Securities and Exchange Commission ("SEC") (during which he was represented by current counsel), in which he testified under oath that, inter alia, he did not know how many individuals had invested in the MSMB Capital Entities; he did not know who drafted the private offering memoranda for the MSMB Capital Entities; he did not know what assets the

MSMB Capital Entities had under management; he believed he had to get Shkreli's authorization to sign agreements on behalf of the MSMB Capital Entities; he did not know whether performance estimates for the MSMB Capital Entities were sent to investors; and he did not receive a salary and was only paid compensation for his work at the MSMB Capital Entities at Shkreli's discretion.

As an initial matter, the "burden of establishing all elements of the attorney-client privilege rests upon the person asserting it." Szulik v. TAG Virgin Islands, Inc., No. 12 CIV. 1827 PKC, 2013 WL 3989045, at *2 (S.D.N.Y. Aug. 1, 2013) (citing United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989) and In re Horowitz, 482 F.2d 72 (2d Cir. 1973)). In Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985), cited by Biestek in his filing, the Supreme Court discussed "which corporate actors are empowered to waive the corporation's privilege." Id. at 349. The Supreme Court stated that for a functional company, the "officers and directors" normally exercise control over the privilege; that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well"; and that "displaced managers may not assert the privilege over the wishes of current managers." Id. The Supreme Court further observed that "[i]t follows that [a former officer and director] retains no control over the corporation's privilege." Id. at 349 n. 5.

Here, as detailed above, Biestek's only basis for asserting a corporate privilege on behalf of MSMB Capital Entities is the fact that he performed an administrative task at Shkreli's direction in 2009 and created the incorporation documents, which list him as a corporate officer. In no other way did Biestek act or function as an officer or director of the MSMB Capital Entities. In fact, Biestek has taken great pains to paint himself as a lowly employee, whose work for the company largely terminated at the end of 2009, and who – to the extent he did do some work for the MSMB Capital Entities – acted only at the direction of Shkreli, who was the sole manager and controller of the entities. Indeed, Biestek does not even know if the MSMB Capital Entities are defunct.

Biestek cannot have it both ways – he cannot simultaneously claim to have no control over or responsibility for the MSMB Capital Entities, and also assert that he can control the corporate privilege for those entities, especially when the latter claim is based solely on the fact that he was listed as a corporate officer on two documents more than seven years ago. Moreover, to the extent that Biestek was ever functionally a corporate officer of the MSMB Capital Entities, control of those entities long ago passed to Shkreli, who is now the sole individual with the power to assert or waive the attorney-client privilege for those entities. Shkreli's waiver of the attorney-client privilege for the MSMB Capital Entities cannot thus be overridden by Biestek's attempt to assert such privilege.

> **B.   Biestek's Attempt to Assert A Personal Privilege in Connection With the MSMB Capital Entities is Not Sufficiently Specific**

In addition to attempting to assert a corporate privilege on behalf of the MSMB Capital Entities, Biestek also contends that he "may" have a personal privilege over certain documents at Katten related to the MSMB Capital Entities. (Docket No. 123 at 5). Biestek

7

states that he might assert this personal privilege if "he received individualized legal advice over his MSMB e-mail," but does not state whether he ever received such advice. (Id.).

The Second Circuit has acknowledged that courts "have been willing to allow corporate employees to assert a personal privilege with respect to corporate counsel … but only by meeting certain requirements." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210, 215 (2d Cir. 1997). In Teamsters, the Second Circuit detailed what some of those requirements might be, as follows:

> First, [an employee] must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

Id.  The Circuit concluded that the employee did not meet the test because he "never sought nor received legal advice … on personal matters."  Id.  Other courts have come to similar conclusions applying the Teamsters test.  For example, in United States v. Stein, 463 F. Supp. 2d 459, 465-66 (S.D.N.Y. 2006), the district court concluded that a partner in an accounting firm could not assert a personal attorney-client privilege over communications that were "within the scope of her work" at the firm, and that "a claim of her subjective belief [that her communications were privileged], without more, [was] insufficient to meet her burden of proving privilege."  Id.  In United States v. Daugerdas, 757 F.Supp.2d 364, 369 (S.D.N.Y. 2010), the district court concluded that an employee could assert a personal privilege over documents related to his compensation package with a company because he "sought and received" legal advice on that particular matter which was "full segregable" from company matters (in fact, the company was represented by another law firm in connection with the compensation package). Id. at 369-72.  However, the district court concluded that the employee could not assert a personal privilege over communications related to an internal investigation of his conduct, because he had not sought and received legal advice in his personal capacity, and the investigation itself was related to his work at the company.  Id. at 360-72.

Therefore, in order to assert a personal privilege over any documents related to the MSMB Capital Entities in Katten's possession, Biestek would need to show that he approached a Katten attorney for legal advice and made it clear to that attorney that he sought that advice in his individual capacity, that any resulting conversations were confidential (e.g., not transmitted over a Retrophin server or held in the presence of others, such as Shkreli), and that the subject matter of that advice did not concern matters within or related to company matters. To date, Biestek has not articulated any personal matters for which he sought advice from Katten attorneys, and the government's initial review of the bills produced by Retrophin for work done by Katten between January 2012 and September 2014 does not indicate that any attorneys at Katten billed for providing Biestek with legal advice regarding personal matters. (Additional

8

billing records regarding Katten's bills for the MSMB entities have not yet been produced to the parties).[2]

## IV. Shkreli's Potential Advice-of-Counsel Defense

Finally, the questions of (1) which individual (Shkreli and/or Biestek) is asserting which privileges (corporate and/or personal attorney-client privilege) with respect to which entities (MSMB Capital Entities and/or MSMB Healthcare Entities) and (2) which documents have been withheld pursuant to the assertion of such privileges, will become even more significant if Shkreli attempts to pursue an advice-of-counsel defense, as he has indicated is likely.[3] See, e.g., Exhibit A at 6 (noting that the documents in Katten's possession are relevant to the "advice of counsel defense that … [Shkreli] is going to be entitled to introduce at trial"). This is because a defendant who "asserts an advice-of-counsel defense … is thereby deemed to have waived his privilege with respect to the advice he received." In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 471 (S.D.N.Y. 1996); see also Joy v. North, 692 F.2d 880, 893-94 (2d Cir. 1982), cert. denied, 460 U.S. 1051 (1983). Moreover, such waiver covers all advice received on a given subject; a defendant cannot selectively choose which advice (whether in document or verbal form) he would like to present in support of his case, and which advice he would like to continue to shield from scrutiny. See, e.g., Acme Am. Repairs, Inc. v. Katzenberg, CV-03-4740 (BMC), 2007 U.S. Dist. LEXIS 23097 at *20 (E.D.N.Y. Mar. 29, 2007).

Here, if Shkreli attempts to assert an advice-of-counsel defense at trial, he will need to waive privilege on all documents and verbal advice for all subjects related to his defense.[4] This is an additional reason the government must be aware of all documents that

---

[2] Note that this standard is the same standard that Shkreli would need to meet if he determined to waive the corporate privilege on behalf of the MSMB Capital Entities and/or MSMB Healthcare Entities, but retain a personal privilege over certain documents.

[3] In addition, Shkreli has indicated that he may eventually pursue this defense in the now-stayed parallel SEC proceeding. See S.E.C. v. Shkreli and Greebel, 15-CV-7175 (KAM), Docket No. 10 at 18 (Shkreli "relied in good faith upon the professional judgments and opinions of outside legal professionals to the extent provided").

[4] In order to establish a colorable advice-of-counsel defense, and thus be entitled to a jury instruction with respect to those offenses to which it may apply, Shkreli would have to first introduce evidence that: (1) before taking action, he "honestly and in good faith [sought] the advice of a lawyer as to what [s]he may lawfully do"; (2) he "fully and honestly [laid] all the facts before his counsel"; and (3) he acted strictly in accordance with the advice of his counsel. United States v. Evangelista, 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks omitted). If Shkreli cannot meet one or more of these requirements, he will not be entitled to a jury instruction regarding advice of counsel. Id.; see also United States v. Quinones, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel in summation; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendants [in this case] have not shown the required factual predicate for an advice-of-counsel defense").

9

Shkreli is holding back and the basis on which such documents are withheld, so that it can determine for which of those documents the privilege must be waived if Shkreli proceeds with an advice-of-counsel defense. Moreover, the question of whether Shkreli can waive the corporate privilege for the MSMB Capital Entities, or whether Biestek has the capacity to assert either a corporate or personal privilege over some or all documents related to those entities, will also need to be addressed if Shkreli pursues such a defense (assuming Biestek continues to claim a privilege at that point).

## IV. Conclusion

For the reasons set forth above, the government respectfully requests that the Court clarify its December 6, 2016 order to require Shkreli (along with Biestek and Retrophin) to produce a privilege log detailing any Katten documents Shkreli or Biestek seek to withhold, including the basis for withholding such documents. The government advises the Court that, once it is clear whether Shkreli and/or Biestek will withhold any Katten documents, the government may seek to challenge the assertion by Shkreli and/or Biestek of corporate or personal privileges over certain of those documents.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:    /s/ Alixandra Smith  
Winston Paes
Jacquelyn Kasulis
Alixandra Smith
Karthik Srinivasan
Assistant U.S. Attorneys
(718) 254-7000

cc: All counsel (via ECF)
Glen McGorty, Esq., counsel for Marek Biestek (via email)
Ian Shapiro, Esq., counsel for Retrophin, Inc. (via email)
Michael Verde, Esq., counsel for Katten Muchin (via email)

---

Preliminary questions concerning the admissibility of evidence in support of any such advice-of-counsel defense are to be determined by the Court, which has discretion to order a pre-trial hearing to resolve such questions. Fed. R. Evid. 104(a); Fed. R. Evid. 104(c)(3); see also United States v. Valencia, 826 F2d 169, 171 (2d Cir. 1987). At such a hearing, Shkreli would bear the burden of demonstrating the admissibility by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 175 (1987).