UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

                              <u>MEMORANDUM AND ORDER</u>

     - against -

MARTIN SHKRELI and EVAN GREEBEL,       15-CR-637 (KAM)

         Defendant.

------------------------------------------X

**MATSUMOTO, United States District Judge:**

       Presently before the court is defendant Evan Greebel's ("Greebel" or "defendant") Motion for Prompt Disclosure of *Brady* Materials and his Motion for a Bill of Particulars (the "Motions"). (ECF Nos. 82 and 85.)[1] For the reasons stated herein Mr. Greebel's motions are denied.

## <u>Discussion</u>

**I.  Background**

       On June 3, 2016, the Government charged Martin Shkreli ("Mr. Shkreli") and Evan Greebel ("Mr. Greebel" or "defendant") in a Superseding Indictment (the "Superseding Indictment") containing detailed factual allegations. Mr. Greebel was charged in Counts Seven and Eight of the eight count Superseding Indictment. (ECF No. 60.) Count Seven of the Superseding Indictment charges

---

[1] At the oral arguments held on October, 14, 2016, Mr. Shkreli, through counsel, advised the court that he and the government had resolved the issues presented by Mr. Shkreli's Motion for a Bill of Particulars. (*See* Transcript of October 14, 2016 Hearing ("Tr.") at 14-15; Shkreli's Motion for a Bill of Particulars, ECF No. 80.) Consequently, the court need not address Mr. Shkreli's motion.

conspiracy to commit wire fraud in connection with the "Retrophin Scheme," and alleges, *inter alia*, that between February 2011 and September 2014, Mr. Greebel and his co-defendant Martin Shkreli, together with others, "did knowingly and intentionally conspire to devise a scheme and artifice to defraud" Retrophin Inc. ("Retrophin"), and "to obtain money and property from Retrophin by means of materially false and fraudulent pretenses, representations and promises" and, "for the purpose of executing such scheme and artifice" transmitted, and caused to be transmitted, by means of wire communication in interstate and foreign commerce writings, signs, etc. in violation of 18 U.S.C. §§ 1343, 1349, 3551 *et seq.* (*Id.* at ¶¶ 55-56.)

In Count Eight, the Superseding Indictment charges conspiracy to commit securities fraud in connection with the "Retrophin Unrestricted Securities Scheme" and alleges, *inter alia*, that between November 2012 and September 2014, Mr. Greebel and Mr. Shkreli, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of Retrophin securities, in violation of various federal securities laws, rules and regulations, by use of means and instrumentalities of interstate commerce and the mails in violation of 15 U.S.C. § 78j(b) and ff. (*Id.* at ¶¶ 57-59.) The Superseding Indictment

2

references a series of emails, among other things, between Mr. Greebel, Mr. Shkreli and unnamed individuals, as evidence of the overt acts taken in furtherance of the scheme to defraud Retrophin's investors and potential investors. (*Id.; see also id.* at ¶¶ 1-40.)

On September 16, 2016, Mr. Greebel filed the instant motions: Motion for Prompt Disclosure of *Brady* Materials; Motion for a Bill of Particulars. (ECF Nos. 82 and 85.)  The Government filed its opposition papers on September 30, 2016. (ECF No. 90.) Also on September 30, 2016, the Government served a "chart of individuals and entities referred to by defined terms or pseudonyms in the Superseding Indictment;" the chart also included citations to "where in the Crime Fraud Affidavit ("CFA"),[2] Crime Fraud Emails ("CFE") and/or other disclosures" these parties were referenced

_____

[2] The Crime Fraud Affidavit is a 47-page, detailed factual affidavit, executed on November 18, 2015 by Special Agent Christopher Delzotto of the FBI, which provided evidentiary support for the Government's motion for an order compelling the production of 133 emails ("Crime Fraud Emails") between Messrs. Shkreli and Greebel pursuant to grand jury subpoenas issued to Retrophin Inc. (Gov't Opp., ECF No. 90 at 11).  The application was made in November 2015 to Judge Weinstein. *See In Re Grand Jury Investigation*, 15-MC-2227(JBW), ECF Nos. 9, 10.  The Crime Fraud Affidavit provided details as to Messrs. Shkreli and Greebel's alleged criminal conduct.  On December 3, 2015, after reviewing the Crime Fraud Emails, Judge Weinstein ruled, in relevant part, that the Crime Fraud Emails "were part of a scheme, conspiracy or fraudulent attempt to commit a securities fraud" and thereby any attorney-client privilege that might have attached to the emails was "voided by the criminal conduct" of Messrs. Shkreli and Greebel.  *In Re Grand Jury Investigation*, 15-MC-2227(JBW), ECF No. 5.

(hereinafter "Government's September 30, 2016 Letter").[3]  The court heard oral arguments on Mr. Greebel's motions on October 14, 2016.

## II.   Required Disclosures Under *Brady*, *Giglio* and the Jencks Act

Mr. Greebel seeks disclosure of *Brady*, *Giglio* and § 3500 materials, specifically (a) FBI reports and notes of consultant statements to the government; (b) evidence that any agreements at issue were not "shams"; (c) evidence that Mr. Shkreli lied to and/or deceived others; (d) evidence that Mr. Shkreli did not follow Mr. Greebel's counsel; (e) evidence that Mr. Shkreli did not follow advice of other counsel; (f) any and all statements by Mr. Shkreli to the government that have not yet been produced; (g) evidence that Mr. Greebel was not Mr. Shkreli's personal attorney; (h) evidence going to Mr. Shkreli's credibility including threats to others; (i) government threats of prosecution, and prosecution and/or non-prosecution agreements with these consultants; and (j) impeachment evidence against government witnesses. (Motion for Disclosure of *Brady* materials, ECF No. 83, 8-19.)  Mr. Greebel also includes in his *Brady* motion a demand that the Government "identify the exculpatory information within the over three million pages of documents that it has produced." (*Id.*)

---

[3] The Government's September 30, 2016 Letter was served to the court via hand delivery and by email to the Messrs. Shkreli and Greebel.

4

Mr. Greebel's request for *Brady* materials is denied because the court is satisfied with the Government's representation that it has met, and will continue to meet, its *Brady* obligations.    Further, Mr. Greebel's requests for witness statements, FBI reports, notes on consultant statements to the government, and *Giglio* materials, more than six months before trial is denied as premature.

> *Brady* and its progeny require that:
>
> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant. . . . Information coming within the scope of this principle . . . includes not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.

*Ranta v. Bennett*, 189 F. App'x 54, 56 (2d Cir. 2006) (citing, *inter alia*, *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), *Kyles v. Whitley*, 514 U.S. 419, 431, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).  "This rule is in derogation of the ordinary allocation of responsibilities under the adversary system, but does not displace it; rather, it implements the prosecution's 'special role' in the search for truth in criminal

trials." *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) (citing *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Defendant Greebel seeks the immediate disclosure of exculpatory evidence or material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* and its progeny do not require the immediate disclosure of all exculpatory material upon a defendant's request. Rather, the government's obligation is to disclose Brady material in sufficient time "for its effective use at trial." *See United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). The Government repeatedly has made good faith representations to the court and to defense counsel that it recognizes its disclosure obligations under *Brady*, and that it has complied with said obligations and will continue to do so in a timely manner. (The Government's Memorandum of Law in Response to the Defendants' Discovery Motions ("Gov't Opp."), ECF No. 90 at 48-50; Transcript of October 14, 2016 Hearing ("Tr.") at 59:2-5.) The Government represents that it has "gone above and beyond" its *Brady* obligations at this juncture of the prosecution by reviewing all the evidence in its possession and producing information and documents that may be *Brady* materials. (Gov't Opp., ECF No. 90 at 46, 50.)

6

The courts of this Circuit repeatedly have denied pre-trial requests for discovery orders pursuant to *Brady* where the Government has made such good faith representations. *See, e.g.*, *United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015); *United States v. Vaughan*, No. 10 CR. 233 (CM), 2010 WL 3025648, at *2–3 (S.D.N.Y. July 27, 2010); *United States v. Boyle*, No. S1 08 CR 534 (CM), 2009 WL 2032105, at *10 (S.D.N.Y. July 9, 2009); *United States v. Prisco*, No. S1 08 CR. 885(NRB), 2009 WL 413616, at *3 (S.D.N.Y. Feb. 11, 2009); *United States v. Underwood*, No. 04 CR. 424 (RWS), 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005); *United States v. RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 179 (E.D.N.Y. 2004); *United States v. Rueb*, No. 00 Cr. 91 (RWS), 2001 WL 96177, at *6 (S.D.N.Y. Feb. 5, 2001).

Here, the Government represented in its opposition papers and at the oral argument on October 14, 2016, that it has complied and will continue to comply with its obligations under *Brady*. (Gov't Opp., ECF No. 90 at 48-50; Tr. at 59). The court has reviewed the parties' submissions and the transcripts from the court hearings regarding the Government's compliance with its *Brady* obligation and is satisfied that the Government has met its obligations. Defendant Greebel has provided no reason to believe that the Government has not complied, thus far, or that the Government will not continue to comply, with its *Brady* obligations.

7

Accordingly, the court accepts the Government's representation that it is aware of its *Brady* obligations and that it will continue to comply with its *Brady* obligations, and thus Mr. Greebel's request for the immediate disclosure of *Brady* materials is denied.

Further, Mr. Greebel seeks disclosure of specific witness statements and *Giglio* material, more than six months before trial. "There is no pre-trial right to *Giglio* material, which specifically concerns impeachment." *Mohamed*, 148 F. Supp. 3d at 246 (citations omitted); *see also RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d at 179 (citing *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)) (holding there is no pre-trial discovery right to *Giglio* materials) ; *see also U.S. v. Khalil*, No. 03-CR-289(DAB), 2004 WL 616128, at *4 (S.D.N.Y. March 30, 2004) (finding request for the disclosure of *Giglio* material one month in advance of trial was "unnecessary and not mandated by case law"). Nor is there a pre-trial right to statements and reports of witnesses in the Government's possession. Under the Jencks Act, no witness statement or report in the possession of the Government shall be "the subject of subpoena, discovery, or inspection" until the witness has testified on direct examination at trial. 18 U.S.C. § 3500(a). After a witness is called by the government and has testified, "the court shall, on motion of the defendant, order the United

States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Second Circuit has held that district courts are not authorized to order the pre-trial disclosure of witness statements pursuant to the terms of the Jencks Act. *See United States v. Coppa*, 267 F.3d 132, 145-46 (2d Cir. 2001) (finding district court exceeded its authority in ordering pre-trial disclosure of Jencks Act material because the Jencks Act constrained the court's power to issue any such order). Accordingly, the court denies Mr. Greebel's motion for witness statements and *Giglio* materials.

## III.   Bill of Particulars

Mr. Greebel moves for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). The particulars sought by defendant are as follows: (a) the names of the unindicted co-conspirators; (b) the names of other unidentified individuals and entities, including victims; (c) particulars about the alleged fraudulent consulting agreements, settlement agreements, and share purchase/transfer agreements; (d) particulars about any false and fraudulent statements made relating to Counts Seven and Eight; (e) particulars about Mr. Greebel's role in the conspiracies alleged in Counts Seven and Eight, including the exact start and end dates of the alleged conspiracies; (f) any overt acts not listed in the

9

Superseding Indictment relating to Count Eight. (Memo of Law In Support of Bill of Part., ECF No. 86 at 13-14.)

In evaluating Mr. Greebel's specific requests for a bill of particulars, the court finds that the "speaking"[4] Superseding Indictment, the Crime Fraud Affidavit, the Crime Fraud Emails, the Government's multiple discovery disclosures,[5] including but not limited to, its September 30, 2016 Letter, meetings and conversations with defense counsel, and certain clarifications made during the oral argument on October 14, 2016, have adequately addressed two of Mr. Greebel's requests: (b) particulars as to the names of other unidentified individuals and entities and (c) particulars as to the allegedly fraudulent agreements and transactions. (*See* Gov't Opp., ECF No. 90 at 14-18; Gov't September 30, 2016 Letter; Crime Fraud Affidavit, Exhibit A to Gov't Opp., ECF No. 90-1; Tr. at pgs. 22-24, 28-29, 33-35, 43,

---

[4] A "speaking indictment" is an indictment that provides significant detail as to the particulars of the type and extent of the alleged criminal activities. *United States v. Budovsky*, No. 13 CR 00368 (DLC), 2016 WL 386133, at *1 (S.D.N.Y. Jan. 28, 2016); *United States v. Marcos*, No. SSSS 87 CR. 598(JFK), 1989 WL 156289, at *2 (S.D.N.Y. Dec. 21, 1989).

[5] As of September 30, 2016, when the Government filed its opposition memorandum, the Government had made nine Federal Rule of Criminal Procedure 16 discovery productions, starting five days after defendants were arrested. (*See* Gov't Opp., ECF No. 90 at 14-16, and Chart Summarizing Gov't Prods., Exhibit B to Gov't Opp., ECF No. 90-2.) Between January 2016 and May 2016, the Government met with defense counsel on several occasions even though it had no obligation to do so. At these hour long meetings, the case was discussed and the Government responded to defense counsels' various request, which included identifying certain individuals referenced in the Indictment and identifying the key sources of information that had already been produced. (Gov't Opp., ECF No. 90 at 16-17.)

10

44.)  The remaining requests are addressed in turn below.  The court finds that the Government has already provided Mr. Greebel with sufficient information to satisfy the three-fold purpose of a bill of particulars and, therefore, denies Mr. Greebel's motion for a bill of particulars in its entirety.

### a. Legal Standard

Federal district courts have the authority to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f).  The district court has broad discretion in deciding whether to grant a motion for a bill of particulars. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).  A bill of particulars may be appropriate "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Walsh*, 194 F.3d at 47 (citation and quotation marks omitted).  The purpose of a bill of particulars is three-fold: to provide a defendant the necessary facts that would allow him "[1] to prepare for trial, [2] to prevent surprise, and [3] to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  The defendant bears the burden of showing "the information sought is necessary," and that he will be prejudiced without it. *United States v. Fruchter*, 104 F. Supp.

11

2d 289, 312 (S.D.N.Y. 2000) (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)).

In cases charging fraud, as here, a bill of particulars may be appropriate where the indictment, unlike the Superseding Indictment in this case, does not identify the specific documents and transactions the Government contends are fraudulent. *See Bortnovsky*, 820 F.2d at 574–75 (reversing the denial of a bill of particulars in an insurance fraud case where the Government failed to identify which insurance claims were falsified) and *United States v. Namachie*, 91 F. Supp. 2d 565, 567 (S.D.N.Y. 2000), *aff'd*, 211 Fed. App'x. 76 (2d Cir. 2007) (producing "mountains of documents" to the defense without specifying which documents are falsified will not obviate the need for a bill of particulars where the indictment is not specific) (citation and quotation marks omitted).   Further pre-trial disclosures, however, may vitiate the need for a bill of particulars "'where the government has made sufficient disclosures concerning its evidence and witnesses by other means.'"  *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quoting *Walsh*, 194 F.3d at 47); *see also Bortnovsky*, 820 F.2d at 574 (If the information sought by defendant is provided in the indictment or in some acceptable alternate form and/or further discovery by the Government, no bill of particulars is required.).

"[A] defendant is not entitled to preview, via a motion for bill of particulars, an extended trailer of the feature the Government plans to screen for the jury well in advance of the premiere." *United States v. Shteyman*, No. 10 CR 347 (SJ), 2011 WL 2006291, at *3 (E.D.N.Y. May 23, 2011). Thus, requests for a bill of particulars, which seek the identification of specific documents relating to the indictment, or seek information that is not necessary to understand the charges or information that would reveal the Government's legal theories, are routinely denied. *See United States v. Sindone*, No. 01 CR. 517(MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) (A bill of particulars is not appropriate for use as a general pre-trial "investigative tool" for the defense.); *Fruchter*, 104 F. Supp. 2d at 311–12 (A bill of particulars is not an appropriate means to compel the Government to disclose the manner in which it will "attempt to prove the charges."); *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (A bill of particulars is not appropriate as a tool to foreclose the Government from using proof it may develop as the trial approaches.); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quotation marks and citations omitted).

13

### i. Request for the Identities of Unindicted Co-conspirators

The court first addresses Mr. Greebel's request for the identities of the unindicted co-conspirators. "A court considering a defendant's request for the identity of unindicted coconspirators must engage in a highly fact-specific inquiry." *United States v. Solomonyan*, 451 F. Supp. 2d 626, 641 (S.D.N.Y. 2006) (citing *United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006)). Indeed, "[t]he Second Circuit has upheld decisions granting and denying requests for the identity of co-conspirators." *Chalmers*, 410 F. Supp. 2d at 286 (collecting and comparing cases). The question is whether the names of unindicted co-conspirators are necessary to prepare a defense and avoid surprise. *Chalmers*, 410 F. Supp. 2d at 286–87; *Nachamie*, 91 F. Supp. 2d at 572–73. Courts will consider the following six factors when determining whether a bill of particulars revealing the identities of unindicted co-conspirators is necessary to allow the defendant to prepare for trial and avoid surprise:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (citing *Nachamie*, 91 F. Supp. 2d at 572). Here, all the factors weigh against granting Mr. Greebel's request for a bill of particulars.

The first factor weighs against the need for a bill of particulars because the number of potential co-conspirators is limited. There are two indicted defendants, Mr. Shkreli and Mr. Greebel. (Superseding Indictment, ECF No. 60 at ¶¶ 1-2.) Retrophin Inc. and MSMB Capital were small organizations, controlled by Mr. Shkreli with only a few employees at the time of the charged conspiracies. (Tr. at 26-27.) Further, the Government has represented that the same limited group of individuals were involved in the four charged schemes and the Government has provided a chart of the names associated with the pseudonyms used in the Superseding Indictment and in other disclosures for various individuals, including Corrupt Employees 1 and 2 and Co-conspirator 1. (Gov't Opp., ECF No. 90 at 38; Gov't September 30, 2016 Letter.) The Government's September 30, 2016 Letter also provided examples with citations of where the pseudonyms were used in various disclosures. (Gov't September 30, 2016 Letter.) Moreover, the Government's summary of its productions to Mr. Greebel also provided the initials of the individuals who were the

15

source of the documents and the corresponding Bates range for those documents. (Chart Summarizing Gov't Prods., Exhibit B to Gov't Opp., ECF No. 90-2.)

The second factor, the duration and breadth of the charged conspiracy, similarly weighs against the need for a bill of particulars because the scope of each of the four charged schemes is limited. The four charged schemes involved the same limited group of people, each scheme occurred in New York and each scheme spanned less than five years. (Gov't Opp., ECF No. 90 at 38.)

The third and fourth factors, respectively regarding the government's notice of particulars and the volume of pre-trial discovery, also weigh against the need for a bill of particulars. Between December 2015 and September 2016, the government made at least nine productions to Messrs. Greebel and Shkreli. The cover letters accompanying each production provided the source of the records and the corresponding Bates range and indicated whether the documents had been originally received by the Securities and Exchange Commission. (Gov't Opp., ECF No. 90 at 14-15.) Further, although the document production is relatively large, 96.5% of the documents produced to the defendants were produced as load files with tiffs and native files. Thus, these files are text-searchable, contain metadata where available, and can be loaded to

16

a document review platform for ease of review.  (*Id.* at 15.)  So
although the Government has produced a relatively sizeable number
of documents, the documents are largely searchable and defendant
has ample time to conduct document review; at the time of this
Memorandum and Order, the trial is more than six months away.  Mr.
Greebel will have had approximately two and a half years to review
documents, between the date he first began receiving documents
from the Government in December 2015, five days after this
arraignment, until his trial in June 2017, and the Government's
most recent production in September 2016, a full nine months before
trial.  (Gov't Opp., ECF No. 90 at 15).  Further, as discussed
above, the Government's September 30, 2016 Letter provided
defendants with a chart of the pseudonyms used for individuals and
entities in the Superseding Indictment and in other disclosures
and included citations to the Superseding Indictment, the Crime
Fraud Affidavit and the Crime Fraud Emails produced by the
Government.  Moreover, the Superseding Indictment is a detailed
"speaking" indictment and the Crime Fraud Affidavit provides
further specifics of the Government's theory of the case in a
manner not often available to criminal defendants.  The Superseding
Indictment and the Government's other disclosures provide abundant
information to the defendant to prepare for trial, prevent surprise
and interpose a plea of double jeopardy should he be prosecuted

17

again for the same offense.  Accordingly, factors three and four weigh against granting a bill of particulars.

Similarly, factors five and six, the potential danger to co-conspirators and nature of the criminal conduct, and the potential harm to the Government's investigation, weigh against defendant's request for a bill of particulars.  The Government has previously detailed co-defendant Martin Shkreli's attempts to intimidate and influence witnesses.  (*See* *S.E.C. v. Shkreli et al.*, 15-cv-7175(KAM), ECF No. 26 at 12-14.)  Although there is no evidence that Mr. Greebel engaged in similar conduct, confirming through a bill of particulars, this far in advance of trial, the identities of the limited number of unindicted co-conspirators, puts these parties at risk of being threatened and intimidated by Mr. Shkreli and could affect the government's ability to present testimony by these individuals should they be called as witnesses. Accordingly, the court finds that factors five and six weigh against granting Mr. Greebel's request.

In support of his motion, Mr. Greebel relies on the court's decision in *U.S. v. Kahale*, 789 F. Supp. 2d 359, 371-374 (E.D.N.Y. 2009), but that case is distinguishable.  First, in *Kahale* there were four indicted defendants and an unknown number of unindicted individuals.  Furthermore, in *Kahale*, the charged conspiracy was global in nature.  Here, the charged conspiracies

18

are limited primarily to New York. There are two indicted defendants and a limited universe of individuals who were involved with the defendants in the charged conspiracies; of those individuals, Co-conspirator 1 and Corrupt Employees 1 and 2 have already been identified.

Further, in *Kahale* like here, the Government provided "significant detail to the defendants and [had] not unfairly overwhelmed [the defendants] with mountains of unorganized discovery." *Kahale*, 789 F. Supp. 2d at 372. The court in *Kahale*, however, determined that the third and fourth factors weighed in favor of granting the request for a bill of particulars because defendant did not have adequate particulars to prepare for trial and avoid surprise. The court's reasoning was based on its finding that the number of unindicted co-conspirators was vast and unknown, and that the conspiracy spanned many years and was global in nature. (*Id.*). Each of the four charged schemes at issue here lasted fewer than five years, some lasted fewer than two years; the conspiracy was limited to New York and involved a limited number of people, some of whom have already been identified. (Gov't Opp., ECF No. 90 at 38; Superseding Indictment, ECF No. 60 at ¶¶ 8-15, 16-20.)

The court in *Kahale* found that neither of the last two factors counseled against granting the request for a bill of

19

particulars because the Government "asserted no basis to fear that revealing the identities of the unindicted co-conspirators will jeopardize their safety, create risk of witness tampering, or compromise an ongoing government investigation." *Kahale*, 789 F. Supp. 2d at 373. Here, the Government has cited Mr. Shkrekli's own statements in support of its contention that Mr. Shkreli has a history of witness intimidation and tampering. (*See S.E.C. v. Shkreli et al.*, 15-cv-7175(KAM), ECF No. 26 at 10-14). Thus, these two factors, unlike in *Kahale*, counsel against granting Mr. Greebel's request for the identity of unindicted co-conspirators. While knowing the identity of unindicted coconspirators might be useful to Mr. Greebel, "the question is not whether the information would be useful to the defense, but rather whether it is necessary." *Chalmers*, 410 F. Supp. 2d at 286. Here, such information is not necessary as the Government has provided ample information to Mr. Greebel that allows him to prepare for trial and avoid surprise. Accordingly, Mr. Greebel's request for a bill of particulars identifying the names of the unindicted co-conspirators is denied.

### ii. Request for False and Fraudulent Statements or Omissions Relating to Counts Seven and Eight

Mr. Greebel also requests a bill of particulars for false and fraudulent statements or omissions relating to Counts Seven

and Eight.   The request for allegedly false and fraudulent statements is another attempt by Mr. Greebel to gain premature access to § 3500 material.  As discussed above, the Government is not required to produce witness statements at this juncture of the litigation.  *See* 18 U.S.C § 3500; *Coppa*, 267 F.3d at 145-46.  The court also notes that the Government has provided a summary of certain statements by some of its witnesses (the parties to the allegedly fraudulent consulting agreements), the Crime Fraud Emails, and "copies of all prior statements made by either" Mr. Greebel or Mr. Shkreli "to law enforcement or to the SEC in connection with this case."  (Gov't Opp., ECF No. 90 at 12-13, 16.)  Accordingly, Mr. Greebel's request for witness statements is denied.

### iii. Dates and Details of How and When Mr. Greebel Learned and Joined the Conspiracy and Overt Acts Not Yet Disclosed for Count Eight

Mr. Greebel's last two requests seek the date and details of how and when Mr. Greebel learned of and joined the conspiracy, and any overt acts not yet disclosed for Count Eight.   Mr. Greebel's requests are essentially seeking to preview the Government's case more than six months before trial.  "It is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case." *United*

*States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citing *United States v. Perez*, 940 F. Supp. 540, 550 (S.D.N.Y. 1996)).

"The Government is not required to prove, never mind provide ahead of trial, exactly when a conspiracy was formed or exactly when a particular defendant joined the alleged scheme." *United States v. Shteyman*, No. 10 CR 347 SJ, 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (citing *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y 1988)). Furthermore, these requests amount to the "wheres, whens and with whoms" of a charged offense that courts have routinely held are beyond the proper scope of a bill of particulars. *United States v. Rivera*, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (upholding the denial of a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment"); *Shteyman*, 2011 WL 2006291 at *5 (denying request for bill of particulars seeking the "when" of the charged conspiracy). "Finally, it is well-settled that there is no general requirement that the Government disclose in a bill of particulars all the overt acts it will prove in a conspiracy charge." *Shteyman*, 2011 WL 2006291 at *5 (quoting *Namachie*, 91 F. Supp. 2d at 575) (quotation marks omitted); *see also United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).

Thus, the court finds that the "speaking" Superseding Indictment, the Crime Fraud Affidavit, the Crime Fraud Emails, the Government's September 30, 2016 Letter and the Government's multiple other pre-trial disclosures, including representations by the Government at meetings and conversations with defense counsel and during the oral argument on October 14, 2016, are sufficiently detailed to allow Mr. Greebel to prepare for trial, avoid surprise and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. Accordingly, Mr. Greebel's motion for a bill of particulars is denied in its entirety.

## Conclusion

For the foregoing reasons, Mr. Greebel's Motion for Prompt Disclosure of *Brady* Materials and his Motion for a Bill of Particulars is **DENIED**.


**SO ORDERED.**

Dated:      December 14, 2016
            Brooklyn, New York

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

23