UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA     :
    :
    :
  -against-        :     Ind. No. 15 CR 637(S-1) (KAM)
    :
    :     **<u>ORAL ARGUMENT REQUESTED</u>**
MARTIN SHKRELI,    :
EVAN GREEBEL,    :
    :
    :
    Defendants.    :
------------------------------------------------------X

<u>**MEMORANDUM OF LAW IN SUPPORT OF MARTIN SHKRELI'S MOTION TO SUPPRESS, MOTION FOR BRADY MATERIALS, AND MOTION TO COMPEL**</u>

By:    **Brafman & Associates, PC**
*Attorneys for the Defendant Martin Shkreli*
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel – 212-750-7800
Fax – 212-750-3906
magnifilo@braflaw.com

Of Counsel:   Marc Agnifilo
               Andrea Zellan

### Table of Contents

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 6

    I.      The MSMB Material That Retrophin Has Produced to the Government
Must Be Suppressed ........................................................................................... 6

          A.     Retrophin Conducted an Unreasonable Search of MSMB's
Materials ................................................................................................. 7

          B.     Retrophin Acted As the United States Government's Agent
In Procuring MSMB Documents .......................................................... 8

          C.     If the Court Does Not Find Sufficient Evidence of Agency, a Hearing
Should Be Ordered .............................................................................. 10

          D.     E-Mail and Other Written Communication Between the
Government and Retrophin Are Relevant and Should Be Provided
to the Defense ..................................................................................... 11

    II.     Request for Prompt Disclosure of Brady Materials Relating to the Alleged
"Sham" Consulting Agreements ....................................................................... 11

          A.     Prior Requests for Brady Materials ..................................................... 12

          B.     Argument ............................................................................................. 13

    III.    Motion to Compel Retrophin to Produce Documents ...................................... 14

          A.     The Requested Materials ...................................................................... 16

## Table of Authorities

### Constitutional Provisions

U.S. Const. amend. IV. ........................................................................................................7

### Cases

Weeks v. United States,

      232 U.S. 383 (1914)...........................................................................................7

Mapp v. Ohio,

      367 U.S. 643 (1961)...........................................................................................7

Katz v. United States,

      389 U.S. 347, 357 (1967) (Harlan, J. concurring) .............................................7

United States v. Jacobsen,

      466 U.S. 109 (1984)........................................................................................8, 9

Coolidge v. New Hampshire,

      403 U.S. 443 (1971)...........................................................................................8

Skinner v. Railway Labor Executives' Ass'n,

      489 U.S. 602, 614-15 (1989) .........................................................................8, 9

United States v. Luciow,

      518 F.2d 298, 300 (8th Cir. 1975) ....................................................................9

United States v. Jarrett,

      338 F.3d 339, 345 (4th Cir. 2003) ....................................................................9

United States v. Soderstrand,

      412 F.3d 1146 1153 (10th Cir. 2005) ...............................................................9

United States v. Steiger,

      318 F.3d 1039, 1045 (11th Cir. 2003) ..............................................................9

United States v. Wilkinson,

    460 F.2d 725, 735 (5th Cir. 1972) .................................................................................10

Ranta v. Bennet,

    189 F. App'x 54, 56 (2d Cir. 2006) ...........................................................................14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA    :
    :
    :
    -against-    :    Ind. No. 15 CR 637(S-1) (KAM)
    :
    :    **ORAL ARGUMENT REQUESTED**
MARTIN SHKRELI,    :
EVAN GREEBEL,    :
    :
    :
    Defendants.    :
-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MARTIN SHKRELI'S MOTION TO SUPPRESS, MOTION FOR BRADY MATERIALS, AND MOTION TO COMPEL**

**INTRODUCTION**

The Indictment of Martin Shkreli was the result of a close working relationship between Retrophin and the United States Attorney's Office for the Eastern District of New York. As we have previously noted, Shkreli's employment agreement provided that Retrophin could remove him from the company only in the event of a felony conviction. As a result, Retrophin was uniquely incentivized to participate in the Government's investigation. The Government, in turn, knowing Retrophin's unique incentive, took advantage of this fact and encouraged Retrophin to produce documents belonging not only to Retrophin itself, but also to the MSMB entities. Based on the timing and substance of the materials Retrophin provided to the Government, it is clear that the Government knowingly utilized Retrophin as a vehicle and as an agent to acquire documents, records, and email correspondence from the MSMB entities without <u>ever</u> executing a search warrant or subpoenaing the MSMB entities.

The Government asserts that Retrophin and the MSMB entities are separate from each other. (Ind. ¶¶ 3-5, 7). Indeed, this separation is a critical aspect of the Government's fraud

theory in Count Seven of the Superseding Indictment. (Ind. ¶¶ 55-56). However, despite its position that Retrophin and the MSMB entities are legally distinct, the Government knowingly solicited, requested, and accepted documents from Retrophin that were clearly the property of the MSMB entities.

Under these facts, Retrophin's actions in accessing MSMB documents and providing them to the Government amount to computer trespass and misappropriation of MSMB's and Shkreli's property. Moreover, by requesting and accepting MSMB documents from Retrophin, the Government is complicit in, and indeed is orchestrating, this trespass and clear misappropriation of MSMB corporate property. By employing Retrophin as an intermediary in this process, the Government has co-opted Retrophin as its agent for purposes of a Fourth Amendment analysis. As set forth below, these actions amount to an illegal search and seizure of MSMB's property. The Government did not access MSMB's documents by subpoenaing or securing a search warrant to search and seize electronically-stored material belonging to MSMB. Rather, it employed a non-governmental actor, Retrophin, to pilfer through MSMB corporate records and to provide them to criminal authorities.

Due to this conduct, defendant Martin Shkreli requests the following three remedies: First, he requests that the Court find that the Government and Retrophin were in an agency relationship and that Retrophin's accessing MSMB files and providing MSMB records to the Government amounts to an unlawful search. If the Court recognizes this agency relationship, Mr. Shkreli requests that the Court suppress the entirety of the MSMB material that Retrophin has produced. Second, he requests that if the Court does not find sufficient evidence of agency based on this filing, that a hearing be held at which it will be shown that the Government knowingly utilized Retrophin personnel to provide the Government with the property of MSMB.

<u>Third</u>, he requests that all emails between representatives of the Government and representatives of Retrophin be disclosed in advance of such hearing.

Unrelated to the MSMB production issues, Shkreli also requests two other forms of relief. We ask that the Government provide <u>Brady</u> materials, including statements and litigation materials, exculpating Shkreli of the allegation that he entered into "sham" consulting agreements defrauding Retrophin. We also ask this Court to compel Retrophin to produce documents over which they retain a privilege.

### Retrophin's Relationship With the Government

In the fall of 2012, the United States Securities and Exchange Commission ("SEC") opened an investigation entitled "In the Matter of MSMB Capital Management LLC Valuation." MSMB Capital and Shkreli individually were represented by Katten Muchin Rosenman, LLP ("Katten") in regard to the SEC investigation. Shkreli received a document subpoena from the SEC on October 1, 2012 and complied on November 4, 2012. Shkreli then testified before the SEC on August 7, 2013 and February 24, 2014.

On May 14, 2014, the United States Attorney subpoenaed certain materials from Retrophin. Retrophin made at least two productions in response to this subpoena, specifically on May 23, 2014 and September 15, 2014. We are not aware of any MSMB materials that were provided to the Government as a result of these productions. About two weeks after the September 15, 2014 production, on September 30, 2014, the Retrophin Board removed Shkreli as CEO. However, it is clear by this point that certain Retrophin executives were working with the U.S. Attorney without Shkreli's knowledge. For example, on October 4, 2014, Stephen Aselage (Shkreli's replacement as CEO) sent Shkreli one of several emails presaging this criminal prosecution. In this email, Aselage wrote, "law enforcement will eventually be

involved and that both you and the lawyer who has functioned in the inherent conflict of interest situation of representing you personally and supposedly the company simultaneously will not be happy with the way it turns out."  (Ex. 1).[1]

In January 2015, the Government served a second subpoena on Retrophin.  By this time, Shkreli had been removed from the Board, which was controlled by Aselage and others.  On or about February 2, 2015, in response to this subpoena, Retrophin provided documents to the Government, including at least the following documents that were clearly the property of MSMB:

- MSMB Healthcare Subscription Agreements;

- MSMB Healthcare Investment records;

- E-mail correspondence related to MSMB and its entities;

- Subscription agreements for MSMB Consumer, LP; and

- Subscription agreements for MSMB Isotope, LP.

On or about March 6, 2015, Retrophin made a fourth production of documents to the Government, including MSMB material.  The following list is a highlight, but certainly not an exhaustive list of MSMB documents produced:

- MSMB records related to Investor 1's investment in MSMB Capital;

- MSMB's settlement agreement with Merrill Lynch; and

- Materials related to a MSMB Healthcare Limited partner's investment in MSMB Healthcare.

---

[1] This email, and others similar to it, show that Aselage has inside information from the Government about Shkreli's fate (as well as Greebel's) fourteen months before the Indictment is filed.  This is why the Retrophin board could confidently, though illegally, move to terminate Shkreli's position despite the fact that his employment agreement required that his termination be predicated on a felony conviction.

On March 26, 2015, Retrophin made an oral presentation to the SEC accompanied by a 573 page binder used in conjunction with the presentation.

On June 4, 2015, Retrophin made a fifth production of documents to the Government, including a large amount of MSMB documents:

- Investor statements for MSMB Healthcare investors;

- E-mail correspondence between Shkreli and MSMB employees;

- E-Mail correspondence between Shkreli and Katten attorney, Michael Rosensaft, regarding MSMB Healthcare;

- E-mail correspondence between Shkreli and MSMB Capital and MSMB Healthcare investors.

On June 17, 2015, Retrophin made its second presentation to the SEC, accompanied with a binder of 603 pages used in conjunction with the presentation.

On June 26, 2015, Retrophin made its sixth production of documents to the Government, including MSMB Healthcare emails containing information about Mr. Shkreli's stock picks.

On July 2, 2015, Retrophin made its seventh production to the Government, including MSMB e-mails between Corrupt Employee 1 and MSMB investors throughout 2011.

On August 17, 2015, Retrophin filed a complaint in U.S. District Court for the Southern District of New York alleging that Shkreli had engaged in fraudulent conduct regarding Retrophin (15-cv-06451-NRB).

On September 11, 2015, Retrophin made two presentations to the Government, one of which was accompanied by a 235 page written presentation that is the basis of Counts Seven and Eight in the Indictment.

Between September 18, 2015 and March 29, 2016, Retrophin made nearly twenty productions of documents to the U.S. Attorney's office. In total, it is believed Retrophin made a total of 25 document productions over the course of the 22 months between May 23, 2014 and March 29, 2016. In at least 10 of these document productions, Retrophin provided the Government with documents, emails and other records that were the property of the MSMB entities. In regard to the MSMB documents provided by Retrophin to the Government, neither Shkreli nor anyone else associated with MSMB was advised of such disclosure.

That Retrophin removed Shkreli from the Board of Directors and then went on to provide the criminal authorities with numerous and continual disclosures of MSMB materials clearly shows that Retrophin had embarked on a scheme to have Shkreli prosecuted and convicted of a felony. Moreover, that the Government continued to accept MSMB materials from nearly every single one of Retrophin's twenty-plus productions shows that the Government is actively participating in the ongoing collection and disclosure of MSMB materials.

This collection of the MSMB materials contributed to the information underlying Counts One through Count Six of the Superseding Indictment. Moreover, if there was any doubt that Retrophin and the Government were working together, Retrophin's presentations to the SEC and the EDNY and Retrophin's civil suit filed against Shkreli was the very blueprint for Count Seven of the Government's Superseding Indictment.

## ARGUMENT

I.    **The MSMB Material That Retrophin Has Produced to the Government Must Be Suppressed**

The concerted actions of Retrophin and the Government, which were specifically directed at gathering information to implicate Mr. Shkreli, amount to an illegal computer trespass against MSMB and Mr. Shkreli, as well as an unlawful search of MSMB's and Mr. Shkreli's property.

Because this is a transgression solicited and directed by the Government with the specific objective of acquiring evidence in a criminal case, this trespass and search violate Mr. Shkreli's Fourth Amendment right to be free of unreasonable search and seizures.

### A.     Retrophin Conducted an Unreasonable Search of MSMB's Materials

Fourth Amendment search and seizure law should apply to Retrophin's repeated and unpermitted entry into MSMB's files and the unauthorized provision of those materials to the Government for the specific purpose of prosecuting Mr. Shkreli. The United States Constitution guarantees individuals to be free from unreasonable searches and seizures by the Government. U.S. Const. amend. IV. The exclusionary rule prevents the government from using evidence gathered in violation of the Fourth Amendment at trial. See Weeks v. United States, 232 U.S. 383 (1914); Mapp v. Ohio, 367 U.S. 643 (1961). Accordingly, before reaching the issue of the legality of a warrantless Government intrusion, the Court must determine whether the intrusion constitutes a search under the Fourth Amendment. To be a Fourth Amendment search, the Government intrusion must violate a person's subjective expectation of privacy, and society must recognize that expectation as objectively reasonable. Katz v. United States, 389 U.S. 347, 357 (1967) (Harlan, J. concurring).

The first issue is whether Retrophin has a legal right to access and to provide MSMB documents to the Government. If Retrophin does have this right, then it would logically follow that no expectation of privacy would exist in this material. On the other hand, if Retrophin does not have this right, then MSMB and Shkreli would have every reason to expect that this material would not be provided to the criminal authorities absent a lawful subpoena served on Retrophin or on Shkreli or absent a search warrant for MSMB's records. The answer to this question relates to the whether Retrophin and the MSMB entities are separate and whether the

Government knows they are separate. On this point, the Government's own theory of fraud is predicated on its supposition that Retrophin is separate and distinct from the MSMB entities. Therefore, while Retrophin is in control of, and authorized to provide, its own corporate property in the form of records, e-mails, documents and other materials, it is not in control of, and not authorized to provide, the corporate property of another corporate entity such as a MSMB entity. Therefore, Shkreli would not reasonably expect that the Government and Retrophin would work together, without his knowledge, to access the records, emails and documents of MSMB.

### B.    Retrophin Acted As the United States Government's Agent In Procuring MSMB Documents

The Government encouraged Retrophin's continual and repeated productions of MSMB materials on several occasions over the course of a year—conduct that implies an agency relationship for Fourth Amendment analysis.

Generally, a search carried out by a private person does not implicate the Fourth Amendment. United States v. Jacobsen, 466 U.S. 109 (1984). However, where the Government, through suggestion, has made a private entity their agent for purposes of criminal prosecution, the exclusionary rule will apply. See Coolidge v. New Hampshire, 403 U.S. 443 (1971). Whether a private party is considered an agent of the government turns on the degree of the Government's participation in the private party's activities. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614-15 (1989). "The fact that the Government has not compelled a private party to perform a search does not, by itself, establish that the search is a private one." Id. at 615. The Government must adopt more than a "passive position toward the underlying private conduct." Id. To determine the existence of an agency relationship between the Government and a private party, the critical inquiry is whether the private party, in light of all the surrounding circumstances, has acted as an "instrument or agent" of the state. Coolidge, 403

U.S. 443, 487 (1971); see also Skinner, 489 U.S. 602, 614-15.  This can be shown when the Government directs, authorizes or has knowledge of a private party's illegal search.  United States v. Luciow, 518 F.2d 298, 300 (8th Cir. 1975).  This is distinct from a search by a private party where the results are later turned over to the Government.  See generally Jacobsen, 466 U.S. at 109.  Courts look to two factors when determining an agency relationship between a private party and the government: "(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation."  United States v. Jarrett, 338 F.3d 339, 345 (4th Cir. 2003); See United States v. Soderstrand, 412 F.3d 1146 1153 (10th Cir. 2005); United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).

In this case, we know of at least four presentations by Retrophin to the Government centering around the allegations involved in this case (March 26, 2015; June 17, 2015; and two on September 11, 2015).  In nearly every one of these presentations, Retrophin used MSMB materials.  Even more outrageous is that prior and subsequent to each one of these presentations, the Government permitted Retrophin to supply it with MSMB documents in nearly every production since the January 2014 subpoena.

At some point during this process, the Government knew or should have known that Retrophin was accessing MSMB documents and providing them to the Government with the specific intention of furthering the investigation and prosecution of Shkreli.  As noted, on September 15, 2014, Retrophin made a production to the U.S. Attorney's Office.  Fifteen days later, on September 30, 2014, Retrophin removed Shkreli from the position of CEO.  Either the subject of removing Shkreli as the CEO was discussed between Retrophin and the Government as part of their ongoing communications prior to its occurrence or, at a minimum, the

9

Government knew of Shkreli's removal on or about September 30, 2014. In either event, the Government clearly knew that it had a close ally in Retrophin in that the Government and Retrophin were unified in their efforts to convict Martin Shkreli.

Moreover, the Government knew of and acquiesced in the intrusive conduct by Retrophin into MSMB files. Here, it is clear that the Government knew of and acquiesced in the ongoing access and disclosure of MSMB materials. Plainly, the Government knew these materials were not the property of Retrophin. Yet, on ten different occasions it readily accepted MSMB documents from Retrophin.

Second, Retrophin's purpose was to assist law enforcement. Providing MSMB materials without notifying any MSMB agent would hasten the conviction of the company's founder since that was the only way Shkreli could be permanently removed as CEO. Specifically, the Government knew that Retrophin would do anything the Government wanted if it meant the prosecution and potential conviction of Shkreli. See United States v. Wilkinson, 460 F.2d 725, 735 (5th Cir. 1972) (when a private party investigates a defendant with the goal of the defendant being prosecuted, the private party may be a state actor). This is so even, and especially, if that meant pilfering the documents of another company. Under these somewhat unique facts, Retrophin has become an agent of the Government.

### C.    If the Court Does Not Find Sufficient Evidence of Agency, a Hearing Should Be Ordered

Based on the facts set forth herein, the defense asserts that that Court has sufficient information to conclude that Retrophin and the Government are in an agency relationship in regard to the conduct that amounts to an illegal search of MSMB materials. However, the defense contends that a hearing would reveal the full scope of the relationship between Retrophin and the Government. Such hearing would indicate that Retrophin representatives knowingly

accessed MSMB materials specifically searching for information to assist the criminal authorities in this prosecution.

### D.    E-Mail and Other Written Communication Between the Government and Retrophin Are Relevant and Should Be Provided to the Defense

As stated above, the defense has become aware of at least two presentations Retrophin made oral and written presentations to the United States Attorney on September 11, 2015.  We are in possession of letters by Retrophin's counsel, Cooley LLP ("Cooley"), reflecting these presentations.  However, it is believed that there are emails or other written correspondence between Retrophin representatives and the Government that would be relevant to the issues raised by this motion.  We therefore request that any email or other written communication between the Government and Retrophin be provided to the defense in advance of any hearing ordered by the Court in advance of trial.

## II.    Request for Prompt Disclosure of Brady Materials Relating to the Alleged "Sham" Consulting Agreements

The government claims that Mr. Shkreli and Mr. Greebel entered into numerous sham consulting agreements as a way to compensate MSMB Capital and MSMB Healthcare investors. (Ind. ¶ 7, 31-35).  However, the only two consulting agreements that have proceeded to arbitration have been upheld against Retrophin and held to be legitimate.  While the Government has produced the materials from one of these arbitrations, the Government has not turned over any documents, information, or statements relating to the arbitration with Dr. Thomas Koestler. Mr. Shkreli moves for the prompt production of these materials and statements made by consultants defending the validity of their agreements.  We believe that any litigation materials or evidence contradicting the Government's theory that Mr. Shkreli entered into sham consulting agreements thereby defrauding Retrophin is Brady and should be turned over to the defense prior to the April 21, 2017 deadline to disclose trial exhibits.

A.     **Prior Requests for <u>Brady</u> Materials**

On July 5, 2016, Mr. Shkreli made a <u>Brady</u> demand to the Government requesting they immediately produce "any statements made by any witness and/or by any party to a consulting agreement(s) that indicate that work contemplated by the consulting agreement(s) was actually performed or intended to be performed…" (Ex. 2). In response to Mr. Shkreli's request, and a request by Mr. Greebel, the Government disclosed information that is "helpful to the defense" regarding three consulting agreements at issue in the Indictment.  (Dkt. No. 83, Ex. B). Subsequently, Mr. Greebel moved for the government to produce <u>Brady</u> materials, including materials that contradict the Government's theory that "Retrophin's consulting agreements were 'sham' transactions." (Dkt. 83: Greebel <u>Brady</u> Motion, pg. 6).   This Court heard oral argument on this issue on October 14, 2016 and denied Mr. Greebel's Motion for <u>Brady</u> materials on December 16, 2016.  (Dkt. No. 138, 12/16/2016 Order).

In denying Mr. Greebel's request for <u>Brady</u> material prior to trial, this Court reasoned that "<u>Brady</u> and its progeny do not require the immediate disclosure of all exculpatory material upon a defendant's request," but rather it requires the government "to disclose <u>Brady</u> material in sufficient time 'for its effective use at trial.'" (12/16/2016 Order, pg. 6.)  This Court accepted the government's representation that they will continue to comply with their obligation under <u>Brady</u>. (12/16/2016 Order, pg. 8.)

On February 8, 2017, the Government produced discovery from Retrophin that contain materials from Park Avenue Discoveries successful arbitration against Retrophin.  Among these materials is the Arbitrator's Final Decision, which found that the Claimants established their claim for breach of the Consulting Agreement.  The Government has not produced statements made by other recipients of the alleged "sham" consulting agreements which constitute <u>Brady</u>.

12

**B.    Argument**

As this Court noted, <u>Brady</u> and its progeny require that:

> To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation not disclose that evidence to the defendant…. Information coming within the scope of this principle…includes not only evidence that is exculpatory, i.e., going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.

(12/16/2016 Order, pg. 5 citing <u>Ranta v. Bennet</u>, 189 F. App'x 54, 56 (2d Cir. 2006)).

Counsel find themselves mired in a complicated case and should not have to wait until the eve of trial to be privy to exculpatory information. Currently, defendants are four weeks away from the exhibit deadline and three months away from trial. The Court should order the government to turn over the requested documents.

While the government has produced arbitration materials related to Park Avenue Discoveries, it is not the entirety of exculpatory information. Mr. Shkreli should also have access to all evidence contradicting the Government's theory that any settlement agreements, consulting agreements, and/or share transfer agreements were fraudulent prior to this Court's deadline to submit trial exhibits on April 21, 2017. Evidence from Dr. Koestler's arbitration is compelling evidence to exculpate Mr. Shkreli, as it will show that all the agreements Mr. Shkreli entered into were legitimate and negotiated in contemplation of actual consulting work. Upon information and belief, Mr. Shkreli believes that the transcripts and documents from this arbitration will contain information that could impeach significant prosecution witnesses or reflect those witness's biases toward Mr. Shkreli. Notably, the Koestler and Rosenfeld consulting agreements were entered into during the same time periods as the other consulting agreements implicated in this indictment.

Ordering the Government to disclose materials relating to the consultant and settlement agreements prior to the April 21, 2017 deadline will greatly assist Mr. Shkreli in undertaking further investigation prior to trial.

## III.    Motion To Compel Retrophin To Produce Documents

During the status conference held on January 26, 2017,  we provided the Court with an update with respect to Katten compliance with our September 28, 2016,subpoena and the parties' compliance with the Court's Orders related to the subpoena dated November 30, 2016 ("November 30th Order"),  December 6, 2016 ("December 6th Order") and December 16, 2016 ("December 16th Order").  We reported that we had received the production from Katten, that we had reviewed the documents and produced pure MSMB material to Mr. Biestek and that we had produced any documents implicating Retrophin's privilege to Retrophin's attorneys, Cooley. Privilege logs had already been prepared and submitted consistent with this Court's Orders.    At the end of the conference we and Cooley acknowledged that we would continue to meet and confer regarding additional waivers of privilege on documents responsive to our subpoena so that those documents could be produced to Mr. Shkreli.  The Court asked that we work to conclude those discussions on or before the date that substantive motions were to be filed. Accordingly, we provide the Court with the following update and Motion to Compel. [3]

To our knowledge, Retrophin received two groups of Katten documents that may contain privileged attorney-client communications.  Brafman & Associates culled one group from the

---

[3] Defendant Shkreli filed a motion for a severance from Mr. Greebel in which Mr. Shkreli confirmed he would assert a reliance on counsel defense during his trial.  Based on that assertion and waivers of privilege associated with that assertion, the Government requested and counsel for Mr. Shkreli produced to the Government the MSMB related documents that Katten had produced pursuant to Mr. Shkreli's subpoena and the Court's November 30th, December 6th and December 16th Orders.  The set of documents produced to the Government is the same set of MSMB documents that Brafman & Associates had produced to Mr. Biestek.

Katten production and provided it to Retrophin via its counsel, Cooley. Katten produced a second group directly to Cooley. Cooley reviewed both groups of documents and submitted privilege logs at the end of January.

Over the course of Katten's subpoena compliance, we have engaged in productive discussions with Cooley about Retrophin waiving privilege on additional topics. As reflected in Cooley's correspondence to the Government on September 30, 2015, and to the Court on December 6, 2016 and January 23, 2017, Retrophin has waived its privilege regarding the following:

1. Mr. Shkreli's allocation of Fearnow shares in November 2012 to certain Retrophin employees in exchange for their transfer to Mr. Shkreli of their Company shares, and Mr. Shkreli's subsequent transfer of those shares to MSMB Capital;

2. The initial allocation of the Fearnow shares in December 2012, communications with the Fearnow share recipients in December 2012 concerning their employment at Retrophin, the subsequent reallocation of the Fearnow shares in 2013 to settle claims by MSMB investors, the further reallocation of the Fearnow shares in 2013, the purchase agreements with Messers. Biestek, Fernandez and Tilles and amendments thereto, the Form 4 reflecting those purchase agreements, and the transfer of Fearnow shares to Messers. Biesteck, Fernandez and Tilles in May 2014;

3. The settlement agreements with certain MSMB investors including Lindsay Rosenwald, Spencer Spielberg, Sarah Hassan, David Geller, Richard Kocher, Michael Lavelle, and Schuyler Marshall and the consulting agreements with Alan Geller, Lee Yaffe, Steven Rosenfeld, and Darren Blanton and Thomas Koestler;

4. The $900,000 promissory note between Retrophin and MSMB Healthcare;

5. The Desert Gateway merger;

6. Retrophin's litigation against Timothy Pierotti;

7. Retrophin's settlement of claims by MSMB vendors;

8. The proposed settlement of Kevin Mulleady's claim;

9. Retrophin's dispute with Jackson Su;

10. Retrophin's dispute George Huang;

11. A dispute with Charles Schwab that is related to the Su and Huang dispute;

12. Mr. Shkreli's short-swing trading.

At this time, there have been delays in Retrophin's production of documents over which it is not asserting privilege and of documents over which it has agreed to waive privilege. These delays relate to efforts by Retrophin to negotiate protective orders and other issues with Mr. Greebel's counsel and to a lesser extent, with our firm.

Our firm reviewed the privilege logs submitted by Cooley and has been discussing privilege issues with Cooley. On March 20, 2017 we submitted a detailed list of documents from the Cooley logs and we have requested that Retrophin waive its attorney- client privilege as to the documents on that list. It is our understanding that Retrophin, in consultation with its attorneys, is considering the list that we submitted, and will make its determinations regarding privilege waiver in the very near future.[4] We believe that Cooley is discussing the privilege issues with us on a good faith basis, and for that reason we continue to believe that we will reach a negotiated resolution. However, we have not yet reached a resolution and accordingly we bring the matter to the Court. Despite the instant motion to compel, we intend to continue negotiating with counsel to Retrophin on a good faith basis. If we resolve the outstanding issues, we will file a notice to the Court and withdraw this motion.

### A.    The Requested Materials

This is a unique case, in which Mr. Shkreli's acts from the inception of MSMB Capital and from the inception of Retrophin are being used as evidence that he committed federal crimes. Under such circumstances, documents that would otherwise be subject to strict requirements of

---

[4] Indeed, just this evening Cooley contacted us to advise that Retrophin has agreed to waive privilege with respect to additional documents produced by Katten.

Retrophin's attorney-client privilege as the corporation holding the privilege, are not subject to those requirements.

Retrophin could not have evolved without the ideas, guidance and stewardship of Mr. Shkreli. Mr. Shkreli's guidance and stewardship was informed, and in some instances shaped, by the communications that he had with counsel for Retrophin. To the extent that Mr. Shkreli's guidance has now resulted in him being accused of criminal conduct, he must be afforded the right to use his own correspondence with Retrophin's attorneys to defend himself.

To be clear, we are not seeking access to commercially sensitive information. We have attached the Redacted and the Withheld Privilege Logs prepared by Cooley as Exhibit 3 and Exhibit 4.[5] We have attached as Exhibit 5 a list of documents over which we are asking Retrophin to waive privilege.[6] As we stated in our Motion to Compel (Dkt. No. 103), the documents maintained by Katten and now withheld by Retrophin will show that the Katten attorneys provided legal advice and services to Mr. Shkreli based on the complete and truthful information made known to them and the documents are relevant to establishing that Mr. Shkreli acted in good faith and without criminal intent in regard to transactions that the Government contends are illegal.

The list of documents that we are requesting from Retrophin is admittedly long. We have asked Retrophin to waive privilege over 984 documents. There are documents on the list that are likely duplicates of one another but we cannot be certain. It is our position that every document

---

[5] Cooley also prepared a categorical privilege log and a log of duplicate documents. We do not refer to those logs in our submissions and so we do not attach them to this motion.

[6] Documents identified with a Bates number beginning with "BA" are documents received by Brafman & Associates, PC from Katten and which Brafman & Associates then produced to Retrophin because Brafman & Associates, PC determined that the document may implicated Retrophin's attorney-client privilege. Documents identified with a Bates number beginning with "KAT_R" are documents produced by Katten directly to Retrophin.

on our list is important. However, to facilitate discussion with Cooley, we have endeavored to prioritize the documents by category; we use those same categories for our discussion here but we do so without waiving any right we have to documents that are not categorized as "priority."

Documents highlighted in red are a first priority. Documents in this category include communications regarding the Retrophin Capitalization Table, [7] communications regarding the Board of Directors, communications regarding consents by the Board of Directors; communications regarding audit advice, communications regarding compensation to members of the Board of Directors, and communications regarding Mr. Shkreli's ownership of Retrophin shares and communications regarding FINRA and SEC inquiries.

The Indictment alleges that the Board of Directors was never notified and never consented to settlement and consulting agreements referenced in Count Seven of the Indictment (Ind. ¶¶ 26 -25). These documents are also the highest priority because to defend against these allegations that the Board was in the dark Mr. Shkreli requires all communications, advice and discussions regarding his interactions with the Retrophin Board of Directors. Counts One, Four and Eight of the Indictment accuse Mr. Shkreli of Conspiracy to Commit Securities Fraud and Counts Three and Six accuse Mr. Shkreli of Securities Fraud. It is our view that any advice or discussion of FINRA and SEC inquiries is critical to the defense, and so these too are considered the highest priority.

---

[7] During a call this evening at 7:25pm Cooley notified us that Retrophin has agreed to waive privilege with respect to communications and documents concerning the Capitalization Table. The relevance of any communications regarding Retrophin's Capitalization Table cannot be overstated. The Indictment and alleges that Mr. Shkreli together with Mr. Greebel falsified an MSMB Capital investment in Retrophin, LLC by falsifying share transfers and falsifying the Retrophin Capitalization Table (Ind. ¶ 25 a – j). Any document that reflects advice, discussion, drafting, finalizing or any version of any Retrophin Capitalization Table is a critical document to the defense. We have not fully reviewed the set of documents on which Retrophin has agreed to waive, and so we reserve the right to revisit the issue of Capitalization Tables if necessary.

Orange highlighting signifies that a document is considered a second level priority. Any communication about FINRA compliance, FINRA investigations, FINRA regulations, SEC compliance, SEC regulations, SEC requirements, SEC filings, including but not limited to drafts of SEC filings that is not already categorized as the highest priority is a second level priority document. Mr. Shkreli is accused of securities fraud, and so advice from, and discussions with counsel regarding SEC laws, SEC/FINRA compliance, SEC/FINRA filings are highly relevant to his defense of the securities fraud charges.

In addition, we identified as second level priority Private Placement Memorandum ("PPM"), drafts of PPMs and other financing correspondence. We make this request in order to know what representations were contemplated compared to what representations were actually made to prospective investors regarding Retrophin's capitalization, Mr. Shkreli's ownership, MSMBs ownership and the ownership of other investors.

Documents highlighted in green are documents that we believe were mistakenly included in Retrophin's privilege log. From the descriptions of the documents it appears to us that each document highlighted in green relates to subject matter(s) over which Retrophin has already waived the privilege.

Documents highlighted in yellow represent a broad category of documents that includes discussion of Mr. Shkreli and Mr. Aselage's employment agreements, audits by outside auditors, securities, securities transfers (including but not limited to options), board consents, consulting agreements, Retrophin corporate formation, settlement agreements that are not the direct subject of the indictment, and consulting agreements that are not the direct subject of the indictment.

Based on the descriptions provided by Retrophin, each of these documents relates to a topic relevant to the defense. For instance, the settlement agreements and consulting agreements

at issue in Count 7 of the Indictment required transfers of shares.  Count Eight alleges that Mr. Greebel and Mr. Shkreli tried to control trading in "unrestricted" or "freetrading" shares.  Thus, any advice, communication or discussion of share transfers is relevant to the defense against these charges. Any discussion about audits is relevant because we know from the Indictment that the auditors questioned MSMB Capital's shares in Retrophin.  (Ind. ¶ 25 a – j).  We also know that auditors questioned Retrophin's obligation to make payments under the settlement agreements identified in Count Seven and we know from discovery review that Mr. Shkreli and Mr. Greebel endeavored to address the auditors' concerns in subsequent agreements.   So not only are the discussions regarding audits and auditors relevant, so are communications and advice regarding other settlement agreements and consulting agreements that are not the subject of the indictment.

Every document that we ask Retrophin to waive privilege on and to produce to Mr. Shkreli is a document that we believe contains relevant admissible evidence of Mr. Shrekli's good faith reliance on counsel.   We have always been and continue to be prepared to abide by any reasonable protective order.  Under the unique circumstances of this case, we ask that the Court compel full production by Retrophin of each document set forth in Exhibit 3 and we ask that the Court compel production  of all the Katten records over which Retrophin is not asserting attorney/client privilege but which Retrophin has not yet produced.  We further request that production be made at the absolute earliest opportunity so that Mr. Shkreli may comply with the Court's deadline for submission of exhibits on April 21, 2017.

Respectfully submitted,

Marc Agnifilo, Esq.
Andrea Zellan, Esq.
Teny Geragos
Brafman & Associates, P.C.
767 Third Avenue
New York, New York 10017
(212) 750-7800