UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
UNITED STATES OF AMERICA    :
   :
   :
    -against-    :    Ind. No. 15 CR 637 (S-1) (KAM)
   :
   :
   :
MARTIN SHKRELI,    :
EVAN GREEBEL,    :
   :
   :
         Defendants.    :
---------------------------------------------------------X

### DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION SEEKING A HEARING PURSUANT TO FEDERAL RULE OF EVIDENCE 104

By:    **Brafman & Associates, PC**
*Attorneys for the Defendant Martin Shkreli*
767 Third Avenue, 26th Fl.
New York, NY 10017
Tel: 212-750-7800
Fax: 212-750-3906
bbrafman@braflaw.com

Of Counsel:    Benjamin Brafman
Marc Agnifilo
Andrea Zellan
Jacob Kaplan

## Table of Contents

I.   Preliminary Statement ...........................................................................................1

     Background ...........................................................................................2

     The Government's Motion....................................................................2

II.  Facts .....................................................................................................................4

III. Argument ..............................................................................................................6

     Point One

          Rule 104 Does Not Provide for a Pretrial Hearing to Preclude a Defense ..............6

     Point Two

          Neither Rule 12 of the Federal Rules of Criminal Procedure Nor the Cases
          Dealing With Affirmative Defenses Such As Duress Provide for the
          Hearing Requested by the Government ..................................................9

     Point Three

          By Requiring Mr. Shkreli to Provide Evidence of His Lack of Intent Prior
          to Trial, the Government Has Sought to Shift the Burden of Proof on an
          Element of the Crime to the Defendant In Violation of the Fifth
          Amendment............................................................................................12

     Point Four

          Requiring Mr. Shkreli to Preview His Defense Evidence for the
          Government Nearly Three Months Before Trial Violates His Sixth
          Amendment Trial Rights.......................................................................13

     Point Five

          Evidence of Mr. Shkreli's Interactions with Counsel Are Admissible at
          Trial Even If an Advice of Counsel Defense Is Precluded ....................18

IV.  Conclusion ............................................................................................................20

## Table of Authorities

### Federal Rules of Evidence

Fed. R. Evid. 103 ...............................................................................................................7, 8

Fed. R. Evid. 104 ........................................................................1,2, 3, 6, 7, 8, 9, 12

Fed. R. Evid. 105 .................................................................................................................8

### Federal Rules of Criminal Procedure

Fed. R. Crim. P. 12 .................................................................................1, 3, 9, 10

### Cases

United States v. Alicea, 837 F.2d 103 (2d Cir. 1998)..................................................14

United States v. Atias, 14-CR-403 (DRH), 2017 WL 563978

  (E.D.N.Y. Feb. 10, 2017)....................................................................15, 17, 19

United States v. Bailey, 444 U.S. 1394 (1980)..............................................3, 10, 11, 12

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ......................................13, 15

United States v. Bifield, 702 F.2d 342 (2d Cir. 1983) ................................................10

United States v. Bakhtiari, 913 F.2d 1053 (2d Cir. 1990) .............................................10

Chambers v. Mississippi, 410 U.S. 284 (1973) ...........................................................13

United States v. Crowley, 236 F.3d 104 (2d Cir. 2000) ...............................................17

United States v. Crown, 99-CR-1044, 2000 WL 709003

  (S.D.N.Y. May 31, 2000).........................................................................14

United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997)....................................15, 17

Dixon v. United States, 548 U.S. 1 (2006) .......................................10, 11, 12, 14

United States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990) ........................................10, 17

United States v. Evangelista, 122 F.3d 112 (2d Cir. 1997) ........................................17

In re Oliver, 333 U.S. 257 (1948) .............................................................................13

United States v. Paul, 110 F.3d 869 (2d Cir. 1997)....................................................14

United States v. Quinones, 417 F. App'x 65 (2d Cir. 2011)..........................................................17

United States v. Scully, 14-Cr-208 (ADS), 2015 WL 5826493

  (E.D.N.Y. Oct. 6, 2015) ...................................................................................................11, 16, 17

S.E.C. v. Tourre, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................18, 19

In Re Winship, 397 U.S. 358 (1970) ...............................................................................................12

Walder v. United States, 347 U.S. 62 (1954)..................................................................................13

Williamson v. United States, 207 U.S. 425 (1908)..........................................................................14

United States v. Villegas, 899 F.2d 1324 (2d Cir. 1990)............................................................3, 14

### Secondary Sources

1-104 Weinstein's Federal Evidence 104.40 ..............................................................................7, 9

2 J. Strong, McCormick on Evidence § 337 (5th ed. 1999)............................................................11

Sand, Modern Federal Jury Instructions–Criminal, Instruction 37-3. ............................................19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA    :
    :
    :
    -against-    :    Ind. No. 15 CR 637 (S-1) (KAM)
    :
    :
MARTIN SHKRELI,    :
EVAN GREEBEL,    :
    :
    :
    Defendants.    :
--------------------------------------------------------X

## I.    <u>PRELIMINARY STATEMENT</u>

The Government's recent motion invites this Court to hold a hearing that is not provided for by Federal Rule of Evidence 104 ("FRE 104") or any other provision. This hearing, as requested, would violate the defendant's constitutional right to a fair opportunity to defend against the allegations. This hearing is otherwise pointless because the evidence challenged by the prosecution would be relevant to establish defendant Martin Shkreli's good faith and lack of criminal intent, even in the absence of an advice-of-counsel defense. Accordingly, the Government's motion for a pretrial hearing on the issue of Mr. Shkreli's advice-of-counsel defense pursuant to FRE 104 should be denied for the following reasons:

<u>First</u>: FRE 104 is a rule relating to specific items of evidence and does not provide for a pretrial hearing to preclude a defense;

<u>Second</u>: To the extent that the Government is confusing FRE 104, relating to the preclusion of evidence, with Rule 12 of the Federal Rules of Criminal Procedure ("FRCP 12"), relating to the preclusion of certain defenses, FRCP 12 applies only to certain affirmative or otherwise specific defenses, not including an advice-of-counsel defense;

<u>Third</u>: Requiring Mr. Shkreli to provide evidence of his lack of intent prior to trial unconstitutionally shifts the burden of proof on an element of the crime to the defendant;

<u>Fourth</u>: Any hearing held almost three months prior to trial at which a criminal defendant is compelled to set forth evidence of his lack of criminal intent, at a time when discovery has not been completed, when Retrophin is still asserting privilege over critical documents and prior to the Government providing its exhibit and witness lists is unconstitutional; and

<u>Fifth</u>: The hearing proposed by the Government is pointless, because evidence of Mr. Shkreli's dealings with his co-defendant attorney are relevant to Mr. Shkreli's good faith and his lack of criminal intent, regardless of whether the Court finds merit to the advice-of-counsel defense; therefore, the relevance of the challenged material does not depend on any fact, as required by FRE 104. Instead, it is relevant to show lack of intent and Mr. Shkreli's innocence of the charges.

### Background

The criminal case against Mr. Shkreli has always centered on his intent. As reflected by the motion practice and courtroom arguments, as well as by the extensive negotiation surrounding document subpoenas to Katten Muchin Rosenman LLP ("Katten"), Mr. Shkreli's defense will focus on his lack of criminal intent, his good faith, and his reliance on the advice of counsel.

### The Government's Motion

In an effort to stifle Mr. Shkreli's defense nearly three months before the trial even begins, before critical discovery has been provided, and before the Government itself has endeavored to prove a single fact, the Government seeks a hearing, pursuant to FRE 104, asking this Court to determine whether there is enough evidence to support an advice-of-counsel

defense at trial.   Dkt. No. 180, Government's Memorandum of Law.   Specifically, the Government seeks a hearing under FRE 104 (initially the Government stated this was a rule of criminal procedure but then realized it was a rule of evidence (Dkt. No. 179)) "to determine whether the defendant Martin Shkreli can meet his burden to show that there is sufficient evidence, as a matter of law, to advance an advice of counsel defense at trial."   Government's Memorandum of Law at p. 1.   This statement clearly demonstrates that the Government is indeed confused by the distinction between rules of <u>evidence</u> and rules of <u>criminal</u> <u>procedure</u>.   As will be discussed further below, FRE 104 does not provide for the preclusion of defenses.   It is a rule of evidence that, predictably, addresses the admissibility of evidence.

There is a rule in the Federal Rules of Criminal Procedure that addresses when a defendant must provide pretrial notice of certain defenses. Specifically, FRCP 12 applies to certain affirmative defenses and certain defenses specifically cited in the text of the rule.   For example, FRCP 12.1 states that the defense must provide pretrial notice of an <u>alibi</u> defense; FRCP 12.2 states that the defense must provide pretrial notice of an <u>insanity</u> defense; FRCP 12.3 states that the defense must provide pretrial notice of a <u>public-authority</u> defense.   Fed. R. Crim. P. 12.   In addition, there is precedent indicating that certain affirmative defenses, such as duress, are properly the subject of a hearing outside the presence of the jury prior to the duress evidence being offered at trial.   <u>See</u> <u>United States v. Bailey</u>, 444 U.S. 1394 (1980); <u>United States v. Villegas</u>, 899 F.2d 1324 (2d Cir. 1990).   However, the Government is not moving under FRCP 12, and in fact never mentions FRCP 12, specifically, because that FRCP 12 does <u>not</u> apply to the facts before your Honor in this case.

Instead, the Government takes certain features of FRCP 12, that the Rule applies to certain types of defenses, and cross-pollinates it with FRE 104, hoping to create something new

3

and unprecedented: a rule of criminal procedure that would force a defendant, months before trial begins, to prove that he lacked intent because he relied on his counsel.  For the reasons set forth below, the Government's proposed procedure must be disallowed.

## II.    FACTS

The crux of the eight-count indictment against Martin Shkreli alleges that he defrauded MSMB Capital and MSMB Healthcare investors (hereafter "the MSMB entities") and that with the help of his attorney, Evan Greebel, he subsequently used sham consulting and settlement agreements with his pharmaceutical company, Retrophin, to pay back these allegedly defrauded investors.  Ind. ¶ 7.  Mr. Shkreli is also charged, along with Mr. Greebel, with a scheme to defraud investors and potential investors in Retrophin, through material representations about the beneficial ownership of Retrophin's freely trading shares. Id.

The Government has served two subpoenas on Retrophin and in response Retrophin produced more than twenty productions to the Government.  Counsel for Mr. Shkreli has reviewed the Government's discovery documents produced by Retrophin and other sources as well.  The documents counsel has reviewed include extensive email correspondence between Mr. Shkreli and Mr. Greebel, internal Katten memoranda and other records that reveal Mr. Greebel's significant billing of Mr. Shkreli and Retrophin, including documents showing Mr. Greebel negotiating on behalf of Mr. Shkreli and Retrophin in areas related to the consulting agreement and settlement agreements that are the subject of this indictment.  The review of these and other materials allow counsel to conclude that a strong advice-of-counsel defense exists in this case.

Thereafter, Mr. Shkreli subpoenaed Katten on September 28, 2016 seeking materials related to Katten's representation of Mr. Shkreli personally, Katten's representation of MSMB Capital and MSMB Healthcare and materials related to Katten's representation of Retrophin and

4

Mr. Shkreli's role as CEO of Retrophin.  Mr. Shkreli filed a Motion to Compel Katten to produce these documents, asserting the following:

> Shkreli consulted with different lawyers at Katten on a regular basis on a variety of topics related to the running of his different business entities.  Shkreli sought and received his lawyers' legal advice and he followed it.  As a result, Mr. Shkreli believes that any documentary evidence created by, maintained by, and in the possession of, Katten would tend to show that he acted in good faith and without criminal intent in connection with the decisions and actions that the Government alleges to be illegal in nature.

Dkt. No. 103, Shkreli Motion to Compel at p. 2.

At this Court's hearing on the Motion to Compel, counsel asserted that the documents would be relevant "to the advice of counsel defense that [Shkreli] is going . . . to introduce at trial." 11/22/16 Transcript at p. 6: ll.23-24.  Pursuant to this Court's November 22, 2016 Order, Katten produced over 33,000 items to Mr. Shkreli.

From December 6, 2016 to January 20, 2017, Mr. Shkreli's counsel conducted a review of the Katten documents.  On February 17, 2017, Mr. Shkreli filed a Motion to Sever from co-defendant Evan Greebel, asserting Mr. Shkreli has a "valid 'reliance on counsel' defense." Dkt. No. 161, Motion to Sever at p. 1.  As part of the Motion to Sever, Mr. Shkreli pointed to specific email correspondence and documents tending to support an advice-of-counsel defense. Accordingly, Mr. Shkreli waived his attorney-client privilege with respect to the MSMB documents and delivered roughly 13,000 MSMB items to the Government on March 3, 2017.

From December 2016, to April 3, 2017, Mr. Shkreli and Retrophin engaged in further discussions to expand Retrophin's waiver of the attorney-client privilege.  These discussions were fruitful in that Retrophin agreed to expand its waiver to certain topics and documents; however, despite good faith efforts on both sides, we have not yet been able to resolve the existing disputes over Retrophin's assertions of privilege. Consequently, the Motion to Compel

Retrophin to produce the documents filed by Mr. Shkreli will not be withdrawn.  Dkt. Nos. 174 & 181.

At the same time that we have engaged in document review and subpoena practice, we have also been engaged in investigation and witness interviews that further corroborate that Mr. Shkreli disclosed accurate and truthful information to Mr. Greebel about his business activities, that Mr. Greebel provided legal advice, and that Mr. Shkreli abided by that advice in good faith. Accordingly, there is no doubt that a good-faith basis exists to support a reliance on counsel defense to rebut the allegation that Mr. Shkreli acted with the criminal intent required to prove the crimes of fraud in this indictment.

### III.   ARGUMENT

### POINT ONE

### Rule 104 Does Not Provide for a Pretrial Hearing to Preclude a Defense

At the risk of stating the obvious, FRE 104 is only a rule of evidence.  It is not a rule that requires pretrial notice or provides for a hearing to be held at any particular time or in any particular manner.  It is also not a rule that applies, or should apply, to entire defenses, as opposed to discrete items of evidence.[1]  Moreover, it is a rule that contemplates procedures during or immediately before a trial.  As a result, FRE 104 does not provide for a procedure where a criminal defendant's _entire_ defense, especially where that defense centers on lack of criminal intent, is subject to a hearing almost three full months before the trial is scheduled to begin.  Indeed, if FRE 104 was misinterpreted in such a broad fashion, the defense could be

---

[1] We recognize that FRE 104 has been applied to the affirmative defense of duress.  For the reasons stated below, those cases, whether or not correctly decided, are completely distinguishable because they involve an affirmative defense of duress, which does not impact the elements of the crime.

permitted to move under FRE 104 to have a pretrial hearing at which the Government would have to demonstrate its evidence of a defendant's criminal intent before allowing such evidence to be permitted at a trial. The Government should be careful what it asks for.

FRE 104 is simply a rule of evidence placed in the General Provisions section of the Federal Rules of Evidence. It provides two principles relevant to this inquiry. First, that "when the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). And, second, that the court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires." Id. (emphasis added).

Thus, the rule provides for a procedure for a hearing outside of the jury's presence "so that the jury cannot hear it" plainly indicates that FRE 104 contemplates a procedure that applies during or, at the earliest, immediately before a trial. Id. On this point, Judge Weinstein has noted "the wording 'outside the jury's hearing' rather than outside the jury's 'presence' was used to permit some brief dispositions at the side bar." 1-104 Weinstein's Federal Evidence 104.40. To take Judge Weinstein's point to the only logical step, it is clear that the drafters of FRE 104 intend it to be a trial rule, as they were so explicit as to allow certain FRE 104 issues to be argued at a sidebar in the presence of, but out of the hearing, of a sitting jury.

It is also significant that FRE 104 directly follows FRE 103, which also discusses rulings on evidence in the context of a trial. For example, FRE 103(a) addresses issues such as how to preserve a claim of error through timely objection; FRE 103(b) states that an objection need not be renewed once made; FRE 103(c) states that the Court may ask for an offer of proof when ruling on an objection; FRE 103(d) states that the court should prevent the **jury** from hearing inadmissible evidence. Fed. R. Evid. 103(a)-(d) (emphasis added). In sum, FRE 103 applies to

7

evidentiary decisions a court must make during a trial or possibly immediately before the trial commences.

Thereafter, FRE 104 follows logically from FRE 103 to the extent that it provides that when ruling on a specific point of evidence in the context of a trial, the Court should do so in a manner "that the jury cannot hear it." The wording of the rule itself presupposes the existence of a jury that should not hear certain things. In other words, when the Court is ruling on evidentiary questions in a manner consistent with FRE 103, the Court should hold certain discussions so "that the jury cannot hear it." Fed. R. Evid. 104.

Further demonstrating that FRE 104 is a trial rule is the fact that the very next rule, FRE 105, addresses the subject of providing limiting instructions to a jury and is clearly a trial rule as well. Thus, FRE 105 states, in sum, that when evidence is admissible against one party but not another, the Court should provide a limiting instruction to the jury. Fed. R. Evid. 105. The point again is that FRE 105 is clearly a rule governing how certain evidentiary matters will be handled during a trial with a jury. To state the obvious, the court cannot give a limiting instruction unless there is a sitting jury to be instructed.

We respectfully submit that FRE 104 fits into a continuum of evidence rules that govern how evidence during jury trials is to be handled. It is not a rule of pre-trial procedure, nor is it a rule that addresses "defenses" of any sort or in any manner. It is a rule of evidence that safeguards the parties at a trial by ensuring that certain matters are discussed "so that the jury cannot hear it." Fed. R. Evid. 104.

Additionally, FRE 104 is a rule of admissibility as to certain discrete items of evidence. The examples provided by the Honorable Jack Weinstein in his treatise Weinstein on Evidence are illustrative. Thus, typical Rule 104 issues can include "whether, for example, a witness was

married to the defendant," "whether a witness is qualified as an expert," "whether the declarant was a co-conspirator" or "whether a document is authentic."   1-1-4 Weinstein's Federal Evidence, 104.02.   Judge Weinstein gives examples of "facts" that may be established before certain items of evidence are deemed to be relevant.  In each instance, a limited set of facts is to be established so that a single piece of evidence is found to be relevant or irrelevant.

The Government ignores the text, the context and the clear intent of this rule of evidence to make it apply to entire defenses; in this case, the defense of advice of counsel. The Government is simply wrong.  This well-defined and important rule of evidence simply does not apply to a defendant's defense in a general sense.  While there are rules of criminal procedure in the federal system that do apply to certain types of defenses in certain circumstances, the defense in this case is not among them.  Accordingly, it is not surprising that rather than rely on the established rules of procedure addressing defenses, the Government instead sought to utterly distort Rule FRE 104, to fit its purposes.  The Government's motion must be denied.

### POINT TWO

**Neither Rule 12 of the Federal Rules of Criminal Procedure Nor the Cases Dealing With Affirmative Defenses Such As Duress Provide for the Hearing Requested by the Government in this Case**

To be clear, the Government at no time cites FRCP 12.  That rule provides that if the defendant intends to avail himself of certain factual defenses, he must provide pretrial notice to the Government.  Fed. R. Crim. P. 12.  Those particular defenses however, are set forth in FRCP 12.1 through FRCP 12.3 and the specific defenses are: a defense based on alibi, an insanity defense and a defense that the defendant acted under public authority.   There is no mention of an

advice-of-counsel defense in FRCP 12, strongly indicating that the defense is under no obligation to advise the Government of the existence of the defense in advance of trial.[2]

In addition to FRCP 12, there is a line of cases which hold that a pretrial hearing on the defense of duress or necessity is appropriate. However, the defense of duress and the related defense of necessity, are particular and unique affirmative defenses because they do not negate one or more elements of the charged crime. Those cases are distinct and do not establish a precedent for a non-affirmative defense, such as the defense in this case, which directly negates one of the elements of the crime, specifically the element of intent.

The line of cases holding that a defendant is obligated to make a factual showing prior to raising a duress or necessity defense started with the Supreme Court's decision in United States v. Bailey, 444 U.S. 1394 (1980), which involved a prison escapee's claim that he acted under the duress of his conditions of incarceration. The Second Circuit followed suit in United States v. Bifield, 702 F.2d 342 (2d Cir. 1983) and United States v. Bakhtiari, 913 F.2d 1053 (2d Cir. 1990), both involving a prison escapee. In both cases, the trial judge required the defendant to make a preliminary showing of duress prior to finding the purported duress evidence relevant. The Supreme Court took up the issue again in Dixon v. United States, 548 U.S. 1 (2006), and reiterated, that because duress is an affirmative defense that does not touch upon the elements of the crime, the defendant may constitutionally be compelled to provide proof of duress as a predicate to presenting evidence on that issue.

---

[2] As a practical matter, a criminal defendant may decide as the last witness of the trial to take the stand and testify about how he relied on his counsel. If, following this testimony, the Court concluded that there was some foundation in the proof, no matter how tenuous, of that defense, the court would be obligated to give an appropriate jury instruction on that issue. United States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990).

Indeed, the Dixon decision provides for the procedure countenanced by the Court with the affirmative defense of duress, but does not apply to the defense of advice-of-counsel, or more generally of good faith or lack of intent because they do relate to an element that must be proven by the Government beyond a reasonable doubt. In particular, the Court stated, "at common law, the burden of proving 'affirmative defenses – indeed all . . . circumstances of justification, excuse or alleviation' rested on the defendant." Dixon, 548 U.S. at 8. Specific to the duress defense, the Court stated "in the context of the defense of duress, it accords with the doctrine that 'where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." Id. at 8 quoting 2 J. Strong, McCormick on Evidence § 337, p. 415 (5th ed. 1999).

An important aspect of the Dixon court's analysis, which will be revisited in Point Three for its Fifth Amendment implications, is the fact that the duress defense does not negate any of the aspects of the charged crimes. Rather, the defense of duress serves to legally excuse conduct which is unquestionably criminal in nature. As the Supreme Court stated, "the duress defense, like the defense of necessity that we considered in United States v. Bailey, 444 U.S. 394 (1980) may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself." Dixon, 548 U.S. at 6.

Unlike an affirmative defense such as duress, the advice-of-counsel defense impacts directly on the element of intent. The advice-of-counsel defense is not an independent defense that causes criminal conduct to be excused. Rather, the defense is tied to good faith and lack of intent. See United States v. Scully, 14-Cr-208 (ADS), 2015 WL 5826493 at *3 (E.D.N.Y. Oct. 6, 2015) (the Court notes that, as a defense to each of the charged counts, the defendant asserted that he lacked the requisite culpable mind state because at all times he was relying in good faith

11

upon the advice of his counsel)  The advice-of-counsel defense, as with the good faith defense,

are all part of a defendant's factual claim that the Government did not prove each element of the

crime beyond a reasonable doubt because the Government did not prove intent.

### POINT THREE

**By Requiring Mr. Shkreli to Provide Evidence of His Lack of
Intent Prior to Trial, the Government Has Sought to Shift the
Burden of Proof on an Element of the Crime to the Defendant
In Violation of the Fifth Amendment**

Diverted by its efforts to distort FRE 104, the Government has ignored the fact that the

procedure it proposes–compelling a criminal defendant to produce evidence of, and prove, his

lack of criminal intent prior to trial–blatantly violates the constitutional requirement that the

Government produce evidence at trial to prove each and every element of an offense beyond a

reasonable doubt.  In Re Winship, 397 U.S. 358 (1970).   The only reason the Supreme Court in

Dixon allowed the burden-shift with the affirmative defense of duress was because the duress

defense does not implicate any of the elements of the charged crime.   The Court noted, "the

defense of duress does not negate a defendant's criminal state of mind . . . instead, it allows the

defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of

guilt even though the necessary *mens rea* was present." Dixon, 548 U.S. at 7 quoting Bailey,

444 U.S. at 402.  As a result, in that case, by placing the burden on the defendant in the duress

context, the Court was not requiring the defendant to produce evidence tending to disprove an

element of the charge.  Rather, it was putting the onus on the defendant to prove that even if the

prosecution proved each element of the crime beyond a reasonable doubt, that the defendant

should nonetheless evade conviction due to the claimed duress.  The critical point in Dixon and

Bailey and each of the duress cases is that the defendant was not being placed in a position of

coming forward with evidence relating to an element of the crime.

Under <u>Winship</u> and its progeny, the Government, and the Government alone, must produce evidence tending to establish the elements of the indicted offenses. That burden never shifts to the defendant. The Government's proposed procedure in this case clearly breaches this cardinal constitutional rule.

## POINT FOUR

### Requiring Mr. Shkreli to Preview His Defense Evidence to the Government Nearly Three Months Before Trial Violates His Sixth Amendment Trial Rights

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973). This Constitutional right includes the minimum essentials of a fair trial:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

<u>In re Oliver</u>, 333 U.S. 257, 273 (1948). Similarly, "the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him" and "must be free to deny all the elements of the case against him." <u>Walder v. United States</u>, 347 U.S. 62, 65 (1954). As the Second Circuit has noted: "Denial of an essential element of the crime charged-here criminal intent-is a constitutional right to be carefully safeguarded." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1293 (2d Cir. 1991).

Ignoring these constitutional principles of the Sixth Amendment, the Government's *in limine* motion seeks to prevent Mr. Shkreli from defending himself against the charges by limiting his ability to present evidence that he never acted with criminal intent. Most egregiously, the Government seeks to end or preclude Mr. Shkreli's defense nearly three months

13

before the jury hears from a single witness or even sees any shred of evidence.   Additionally, as reflected in Mr. Shkreli's pending Motion to Compel and its attached privileged logs, there are currently thousands of documents that Retrophin is either withholding or asserting privilege over.  Counsel has requested that Retrophin waive the privilege on approximately 900 documents that are relevant to Mr. Shkreli's advice-of-counsel defense.

In attempting to violate Mr. Shkreli's constitutional rights, the Government alleges that he has not presented any evidence to date demonstrating that he will be entitled to an advice-of-counsel defense at trial.   In reality, the Government is complaining that Mr. Shkreli has not provided them with a pre-trial preview of his trial defense.   With its current motion, the Government is asking this Court to do what it could not: force Mr. Shkreli to reveal his entire defense before jury selection.   Tellingly, none of the cases cited by the Government in its Memorandum support this extreme relief.   This is not at all surprising as our criminal justice system was not created to provide the Government with a test run before trial.

The Government cites several cases in its submission for the proposition that "Courts in this circuit routinely hold pretrial hearings to determine . . . whether there is sufficient evidence for an affirmative defense to be presented to a jury."  Government's Memorandum of Law at pp. 20-21.[3]   None of these cases, however, address the advice-of-counsel defense; rather, the Government relies on duress and necessity cases to support its position.  As noted above, those defenses are significantly different from the advice of counsel defense as duress and necessity do not negate the defendant's criminal state of mind.  See Dixon, 548 U.S. at 7 ("Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind.").   In

---

[3] Citing United States v. Villegas, 899 F.2d 1324 (2d Cir. 1990), United States v. Paul, 110 F.3d 869 (2d Cir. 1997), United States v. Alicea, 837 F.2d 103 (2d Cir. 1998), and United States v. Crown, 99-CR-1044, 2000 WL 709003 (S.D.N.Y. May 31, 2000).

contrast, the advice-of-counsel defense negates a defendant's criminal intent. See Williamson v. United States, 207 U.S. 425, 453 (1908) ("[I]f a man honestly and in good faith seeks advice of a lawyer as to what he may lawfully do . . . , and fully and honestly lays all the facts before his counsel, and in good faith and honestly follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, he could not be convicted of crime [sic] which involves willful and unlawful intent . . . ."). Because the advice-of-counsel defense negates intent–an essential element of the crime–a defendant's constitutional rights regarding this defense must be "carefully safeguarded." Cf. Bilzerian, 926 F.2d at 1293 ("Denial of an essential element of the crime charged-here criminal intent-is a constitutional right to be carefully safeguarded."). Depriving a defendant of these rights by failing to instruct the jury of an advice-of-counsel defense where appropriate is reversible error. See United States v. DeFries, 129 F.3d 1293, 1308-09 (D.C. Cir. 1997); United States v. Walters, 913 F.2d 388, 391 (7th Cir. 1990).

One of the cases cited by the Government is particularly instructive as the court in that case refused to address the advice of counsel issue until it presented itself at trial. In United States v. Atias, 14-CR-403 (DRH), 2017 WL 563978 at *2-*5 (E.D.N.Y. Feb. 10, 2017), Judge Denis R. Hurley of this District addressed whether the defendants would be permitted to introduce evidence at trial in support of an advice of counsel jury charge. As to one of the attorneys involved, the Government argued that the evidence should be precluded because it alleged–much like it alleges here–that there was no evidence that the attorney represented the defendants at the time of the fraud or that the attorney rendered any advice that could form the basis of an advice of counsel defense. Id. at *3.

Noting that the defendants disagreed with the Government's allegations on this issue, Judge Hurley ruled that, if the defendants had evidence establishing the prerequisites of an advice of counsel defense, the defendants were required to proffer this evidence for the court and Government a mere **twenty-four** hours before calling the attorney as a witness. Id. Notably, nothing in Judge Hurley's decision supports the request to conduct a pre-trial hearing months before trial.

Another instructive case from this District is Scully where Judge Arthur D. Spatt conducted a preliminary hearing on the defendant's advice of counsel defense, but held the hearing **two days** before jury selection. Moreover, as part of his decision, Judge Spatt refused to preclude the advice-of-counsel defense at trial because, even though the court believed that "a reasonable jury could conclude that [the defendant] withheld material facts from his attorneys," the court was "not persuaded that the evidence is so one-sided in the Government's favor that [the defendant] should be precluded altogether from presenting his account of these events to the jury." Scully, 2015 WL 5826493 at *7. Thus, because the evidence was "susceptible of more than one reasonable interpretation," [4] the court was not willing to decide the issue on a motion *in limine* and left it for the jury to decide. Id. at *3. As Judge Spatt noted:

---

[4] Judge Spatt's statement that the advice of counsel evidence was "susceptible of more than one reasonable interpretation" is particularly relevant in the present case. Specifically, in arguing that Martin Shkreli is not entitled to an advice of counsel defense, the Government relies in part on Judge Jack Weinstein's ruling that some of the emails between Shkreli and co-defendant Evan Greebel were not protected by the attorney-client privilege because the emails "were part of a scheme, conspiracy or fraudulent attempt to commit a securities fraud." See Government's Memorandum of Law at pp. 8-9, 25-26. Judge Weinstein's ruling is irrelevant on the advice of counsel issue for several reasons. First, the Government's application to Judge Weinstein pertained to only 133 of the tens of thousands of emails between Shkreli and Greebel. By only reviewing the Government's cherry-picked emails, Judge Weinstein was never given a full picture of the attorney-client relationship between Shkreli and Greebel. Second, the Government's application was *ex parte*; consequently, Judge Weinstein never had the opportunity to hear from defense counsel how these 133 emails, when taken in context of the

the Court is unable to conclude on the record before it that the evidence is so contrary to [the defendant's] contentions that he should be precluded from presenting his alleged reliance on his counsel's advice to the jury. Further, the Court finds that this outcome is warranted without requiring [the defendant] to present witnesses or testify himself in this *in limine* Hearing."

Id.

Both the Atias and Scully decisions are consistent with the Second Circuit's precedent that "a criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." United States v. Dove, 916 F.2d 41, 47 (2d Cir. 1990) (reversing the defendant's conviction where the court failed to instruct the jury on the defendant's misidentification defense); United States v. Crowley, 236 F.3d 104, 111 (2d Cir. 2000) (reversing conviction where the court failed to instruct the jury on the defendant's proposed intoxication defense).

Given this right, courts are reluctant to deny a defendant's advice of counsel charge without first providing the defendant with the full opportunity to present all the evidence at trial supporting the defense. See, e.g., United States v. Evangelista, 122 F.3d 112 (2d Cir. 1997) (denying advice of counsel charge after all the trial evidence had been presented); United States v. King, 560 F.2d 122, 132 (2d Cir. 1977) (same); see also United States v. Quinones, 417 F. App'x 65, 67 (2d Cir. 2011) (same).

---

entire attorney-client relationship, actually support Shkreli's advice of counsel defense. Third, as Judge Spatt noted, the fact that "the Government's evidence is sufficient to raise an inference that the facts of this case do not support an advice-of-counsel defense" does not preclude the defense from establishing that the evidence is "susceptible of more than one reasonable interpretation." Scully, 2015 WL 5826493 at *3. This is true because a "district court is required to give [an advice of counsel] instruction if there is any foundation in the evidence sufficient to bring the issue into the case, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility." DeFries, 129 F.3d at 1308 (quotations and citations omitted).

Here, at trial, defense counsel intends to produce voluminous evidence demonstrating that Mr. Shkreli is entitled to an advice-of-counsel charge. Considering Mr. Shkreli's rights, Constitutional and otherwise, this Court should follow the direction of nearly every court that has addressed this issue and not decide this paramount issue until either right before trial, or once all of the trial evidence is presented.

**POINT FIVE**

**Evidence of Mr. Shkreli's Interactions with Counsel Are Admissible at Trial Even If an Advice of Counsel Defense Is Precluded**

Relying on the civil case of S.E.C. v. Tourre, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), the Government argues that, if Mr. Shkreli does not establish an advice-of-counsel defense before trial, he should be precluded from presenting evidence at trial of his interactions with counsel because such evidence would confuse the jury. Government's Memorandum of Law at pp. 26-28.

The Government's reliance on Tourre is misplaced because the defendant there specifically stated that he had no intention of asserting an advice-of-counsel defense at trial and only wanted to introduce evidence at trial of his interactions with his attorney to present "the overall context of the transaction" at issue. Tourre, 950 F. Supp. 2d at 684. In this context, the court precluded the defendant from presenting evidence of the attorney's role in the transaction because it would confuse the jury and prejudice the Government. As the court noted:

> It would be confusing and unduly prejudicial for [the defendant] to present extensive evidence on the presence and involvement of lawyers—who are presumably paid to ensure that any disclosures comply with the relevant legal requirements—while at the same time professing not to have relied on their advice in preparing or disseminating those disclosures.

18

Id.  In other words, because the defendant was not relying on the advice of his counsel, presenting evidence to the jury of his interactions with a third party–his attorney–would confuse the jury into believing that the attorney "blessed" the defendant's conduct.  Id. ("A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly "blessed" the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as "blessing" the sufficiency of that disclosure.").

Here, on the other hand, evidence of Mr. Shkreli's interaction with counsel is relevant even without an advice-of-counsel defense.  As Judge Hurley noted in Atias, a case cited by the Government, evidence of defendant's conversation with an attorney is still relevant on the issue of intent regardless of whether the advice-of-counsel defense exists:

> Assuming that the interaction between the particular attorney and defendant did not give rise to a valid advice of counsel defense, would the witness, nonetheless, be allowed to tell the jury the comments made by the out-of-court declarant?
>
> If the out-of-court statement was legitimately offered to show the effect on the defendant-listener's state of mind, rather than for the truth of the matter asserted, the utterance, by definition, is not hearsay. See Fed. R. Evid. 801(c). And such evidence obviously would be relevant as to whether the defendant under consideration had "the intent to deceive or defraud the bank."

United States v. Atias, No. 14-CR-0403(DRH), 2017 WL 563978, at *4-*5 (E.D.N.Y. Feb. 10, 2017) (citing Sand, Modern Federal Jury Instructions–Criminal, Instruction 37-3) (emphasis added).  Rather than confuse the jury, this evidence will help the jury make the ultimate determination on the issue of intent.

Moreover, unlike Tourre, the attorney involved in the present case, is not an unrelated third party.  Instead, the attorney is Mr. Shkreli's co-defendant, Evan Greebel, who the

Government chose to indict with Mr. Shkreli for allegedly conspiring together to commit wire and securities fraud.  In attempting to preclude Mr. Shkreli from presenting evidence of his interactions with Greebel, the Government is in essence seeking a pre-trial order from this Court allowing the Government to present evidence of intent and guilt without giving Mr. Shkreli a chance to effectively respond with contrary evidence.

## IV.    CONCLUSION

While counsel appreciates that the resolution of Mr. Shkreli's advice-of-counsel defense may aid the Court in determining his pending Severance Motion, Mr. Shkreli should not be forced, three months before trial, to choose between previewing his defense for the government and his hostile co-defendant or preventing the substantial prejudice that will result if he is tried with Mr. Greebel.  In our judgment, a severance is required and Mr. Shkreli's pursuit of an advice-of-counsel defense is based on valid legal principles and amply supported by the evidence to be presented at trial and accordingly, a pretrial hearing on this issue would be highly inappropriate.

Respectfully submitted,

Benjamin Brafman, Esq.
Marc Agnifilo, Esq.
Andrea Zellan, Esq.
Jacob Kaplan, Esq.
Brafman & Associates, P.C.
767 Third Avenue, 26th Fl.
New York, NY 10017
(212) 750-7800

cc:    All Counsel (via ECF)