

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WMP/JMK/AES
F.#2014R00501

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 6, 2017

By Hand and ECF

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   United States v. Martin Shkreli, et al.
>          Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

The government filed a motion on March 27, 2017 ("Gov't Br."), seeking a preliminary hearing pursuant to Federal Rule of Evidence ("FRE") 104 to resolve issues related to the defendant Martin Shkreli's stated desire to advance an advice-of-counsel defense at trial. (See Dkt. No. 180). In response, the Court scheduled a hearing pursuant to FRE 104 on April 7, 2017 at 12:00 p.m. Counsel for Shkreli filed a response to the government's motion on April 5, 2017 ("Shkreli Br."), arguing that a hearing is not required. (See Dkt. No. 184). As a result, it is unclear whether a hearing will take place tomorrow, or whether the Court will hear oral argument regarding the appropriateness of such a hearing. To the extent that the latter occurs, the government submits this brief reply to respond to the arguments raised by Shkreli's counsel.

As set forth in its March 27, 2017 motion, the government seeks a hearing to resolve the complicated evidentiary issues raised by Shkreli's pursuit of an advice-of-counsel defense, including the need to determine whether Shkreli can meet basic evidentiary thresholds to assert such a defense for each count in which he is charged, and for each attorney with whom he came into contact at the MSMB entities and/or Retrophin . These evidentiary issues will need to be addressed at some point, and it is the government's position that resolving these issues at a pretrial hearing will minimize juror confusion, trial delays, limiting instructions and undue prejudice to the government, and avoid repeated and frequent objections during trial to the admission of evidence in connection with Shkreli's advice-of-counsel defense. Accordingly, the government respectfully requests a hearing to resolve these evidentiary issues.

I.    The Court Has Discretion to Order a Pretrial Hearing Pursuant FRE 104

Shkreli suggests that the government's request for a hearing improperly "cross-pollinates" FRE 104, a rule of evidence, and Federal Rules of Criminal Procedure ("FRCP") 12.1, 12.2 and 12.3, which require notice of certain defenses, and suggests that the government is

seeking to "create something new and unprecedented" with its request. (Shkreli Br. at 3). This is misdirection.

First, not only do FRCPs 12.1, 12.2 and 12.3 not require notice of an advice-of-counsel defense (they require notice of other affirmative defenses), but Shkreli has already provided ample notice that he intends to pursue this defense. As a result, FRCPs 12.1, 12.2 and 12.3 are inapplicable to the government's motion.

Second, Shkreli himself discusses at length a recent case in this District in which a pretrial hearing was held to determine the scope of a defendant's ability to either introduce evidence pursuant to an advice-of-counsel defense, or to make arguments in furtherance of such a defense. See Shkreli Br. at 16 (citing United States v. Scully, 14-CR-208, 2015 WL 5826493 (E.D.N.Y. Oct. 6, 2015) (pretrial hearing held regarding advice-of-counsel defense)).[1] Courts hold such pretrial hearings as required. See, e.g., United States v. Brik, 15-CR-78, 2016 WL 3753080, at *3-*4 (D. Minn. July 11, 2016) (pretrial hearing held regarding advice-of-counsel defense; court excluded certain evidence proffered in support of defense, and reserved decision on other evidence until trial).[2]

Although these pretrial hearings are not always explicitly described as hearings pursuant to FRE 104, it is FRE 104 that gives the Court the discretion to evaluate "preliminary question[s]" about whether "evidence is admissible" at a hearing outside the presence of a jury (see FRE 104(a) and 104(c)) – which clearly permits hearings prior to the trial, as well as during trial.[3] See, e.g, United States v. Hempstead, 15-CR-117, 2017 WL 401938, at *2 (D. Ct. Jan. 30, 2017) (observing that a "preliminary question of evidence" is a question that must be decided before evidence is admitted, "be it before or during trial") (emphasis added); Atlantic Specialty Ins. Court v. Gold Coast Developments, 05-CV-4863, 2008 WL 974411, at *4 n.2 (E.D.N.Y.

---

[1] This case also undercuts Shkreli's argument that only aspects of certain affirmative defenses, such as duress, can be tested at a hearing pursuant to FRE 104. (Shkreli Br. at 3, "certain affirmative defenses, such as duress, are properly the subject of a hearing outside the presence of a jury"; see also Shkreli Br. at 9-11). In fact, in the Scully case, Judge Hurley specifically relied on duress cases (specifically United States v. Paul, 110 F.3d 869 (2d Cir. 1997) and its progeny) for the "authority" to hold "an evidentiary hearing … to determine whether sufficient questions of fact exist to warrant permitting the jury to hear evidence of the advice-of-counsel defense." 2015 WL 5826493, at *1.

[2] Courts also address such issues prior to trial in connection with motions in limine. See, e.g., United States v. Atias, 14-CR-403 (DRH), 2017 WL 563978 (E.D.N.Y. Feb. 10, 2017). The government respectfully submits that, given the many attorneys with a connection to Shkreli and MSMB and/or Retrophin (including dozens of attorneys at Katten, as well as several other law firms), it would be more efficient to address evidentiary issues across all potential attorneys upon whom Shkreli may claim reliance at a hearing rather than in a multiple motions in limine.

[3] Notably, Shkreli cites no legal authority to support his assertion that FRE 104 is solely a "trial rule" and that pretrial hearings to determine the scope of admissible evidence are not appropriate. (Shkreli Br. at 7).

Apr. 8, 2008) (observing that a "Rule 104(a) pretrial evidentiary hearing" is often necessary to address Daubert issues) (emphasis added).  Thus, it is clear that the Court has the discretion to hold a pretrial hearing on the scope of a defendant's ability to present evidence in support of an advice-of-counsel defense, just as it would on any other evidentiary issue.

II.     Requiring Shkreli's Compliance with the Rules of Evidence Neither Constitutes Improper Burden-Shifting Nor Violates His Right to a Fair Trial

          Shkreli also contends that a hearing pursuant to FRE 104 would violate his constitutional rights under the Fifth and Sixth Amendments.  These arguments are unavailing.

          First, Shkreli claims that the government has impermissibly shifted the burden of proving each and every element of the charged crimes from the government to Shkreli, in violation of his Fifth Amendment rights.  (Shkreli Br. at 12-13).  Nothing could be further from the truth.  The burden of proving Shkreli's guilt of the crimes charged in the Superseding Indictment rests and will always remain with the government.  Crucially, however, the burden of proof as to Shkreli's ultimate guilt or innocence is entirely distinct from the burden born by Shkreli as a proponent of evidence in support of his advice-of-counsel defense.  That is, "the evidentiary standard is unrelated to the burden of proof on the substantive issues" including "in a criminal trial."  Bourjaily v. United States, 483 U.S. 171, 175 (1987) (noting that the inquiry made by a court regarding the admissibility of evidence "is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied").  In that role – as a party that seeks to affirmatively introduce evidence at trial in support of his defense – Shkreli is required to demonstrate that such evidence is admissible pursuant to Federal Rules of Evidence.  See, e.g., United States v. Rodriguez, 187 F. App'x 30, 35 (2d Cir. 2006) ("the district court did not err in finding that the defendants failed to meet their burden of showing that 'corroborating circumstances clearly indicate the trustworthiness of [the challenged] statement,' Fed. R. Evid. 804(b)(3), as required to render [the] hearsay statement admissible"); United States v. Brooks, No. 08 Cr. 35, 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008) ("As the proponent of the proposed testimony, defendant has the burden of establishing admissibility by a preponderance of the evidence."); United States v. Sabir, No. S4 05 Cr. 673, 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007) (the "burden of showing that proffered testimony is offered to negate the mens rea element of a crime and not in support of some improper defense theory falls squarely on the defendant" (internal quotation marks omitted)).  Requiring Shkreli to comply with the evidentiary rules of the courtroom – as required of all defendants – does not and cannot constitute burden-shifting.

          Second, Shkreli's complains at length that the government's request for a pretrial hearing would violate Shkreli's constitutional right to a fair trial because it would cause Shkreli to "preview his defense evidence to the government nearly three months before trial."  (Shkreli Br. at 13).  As an initial matter, the government notes that it briefed this issue on the Court's required schedule for substantive non-in limine motions, which happened to require filing approximately three months before trial, because the government recognized the complexity of the issue and wanted to put both the Court and Shkreli on notice of its intent to challenge the admissibility of evidence in support of Shkreli's asserted defense and to propose a forum for resolving those evidentiary issues.  That motion did not suggest – and the government does not now suggest – that the hearing had to happen immediately.  The government would have no

objection to postponing a hearing until closer to the trial date, as Shkreli suggests.  (Shkreli Br. at 15-16).

Separate and apart from the timing of the hearing, Shkreli argues that the pretrial hearing is inappropriate because it would require him to unfairly preview his evidence for the government and/or improperly foreclose his ability to introduce an advice-of-counsel defense in any form.  (Shkreli Br. at 14-16).  In making such arguments, Shkreli misapprehends the purpose of the hearing.  As set forth at length in the government's initial filing, the hearing is simply to determine whether Shkreli can meet the most basic evidentiary hurdles with respect to his purported defense with respect to specific attorneys on specific counts.  As the cases Shkreli himself cites show, other courts have required as much.  See Atias, 2017 WL 563978, at *2-*5 (precluding defendant from arguing that he relied upon a particular attorney, as there was no proffer of evidence to support an advice-of-counsel defense with respect to that attorney, and further ruling that defendant would have to make a similar proffer with respect to a second attorney should he seek to argue he relied on such attorney); Scully, 2015 WL 5826493, at *7 (ruling that defendant's proffer of evidence at a pretrial hearing was sufficient to allow defendant to proceed to introduce evidence and make arguments in support of an advice-of-counsel defense at trial).

III.    All Evidence Regarding Shkreli's Contact With Attorneys at
        the MSMB Entities and Retrophin is Not Per Se "Admissible"

Finally, Shkreli broadly asserts that "evidence of Shkreli's interaction with counsel is relevant even without an advice-of-counsel defense."  (Shkreli Br. at 19).  This is not necessarily the case.  It is correct that there may be instances in which there is a basis to admit into evidence an interaction between Shkreli and a particular attorney that is separate and apart from Shkreli's desire to affirmatively advance his advice-of-counsel defense; for example, as Shkreli points out, if such interaction is otherwise admissible pursuant to an exception to the hearsay rule.  (Id.)  There will likely also be evidence regarding interactions between Shkreli and attorneys, particularly Greebel, that the government itself will admit in its case-in-chief.

However, there will also be instances where an interaction between Shkreli and a particular attorney is not admissible for any purpose other than to try and advance an advice-of-counsel defense.  For example, if Shkreli spoke to a particular attorney at Katten solely in connection with Retrophin's acquisition of a particular pharmaceutical drug, it is not clear how such conversations, given the allegations in the Superseding Indictment, would be admissible at trial.  Shkreli should not therefore be permitted to introduce such conversations solely to show that he consulted with many attorneys at Katten in connection with the charged conduct, or to suggest that he somehow relied upon the counsel of such attorney in connection with the charged conduct.  As detailed in Atias, if the defendant cannot proffer any evidence "to even suggest that the [] preconditions to mounting an advice-of-counsel defense with respect" to a particular attorney "exists," Shkreli should not be permitted to suggest to the jury that he relied upon such counsel for legal advice, and he should not be permitted to use the term "advice of counsel" in connection with that attorney.  2017 WL 563978 at *3.  "Doing so would be legally inappropriate and likely to mislead the jury."  Id.

IV.    Conclusion

      For the reasons set forth above, Shkreli's arguments in opposition to the government's motion for a pretrial hearing pursuant to FRE 104 are unavailing.[4]

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:      /s/ _____
Jacquelyn M. Kasulis
Alixandra E. Smith
G. Karthik Srinivasan
Assistant U.S. Attorneys
(718) 254-6103/6370/6013

cc:    All counsel (via ECF)

---

[4] The defendant Even Greebel also filed a brief ("Greebel Br.") and accompanying affidavit in response to the government's motion. (See Dkt Nos. 182, 183). As the government's motion was directed solely at Shkreli, and Greebel admits that he takes "no position on the relief the government requests" in his response, the government will not respond to Greebel's filing. (Greebel Br. at 4). However, the government notes its strong opposition to the characterization in Greebel's brief that the government has made "conce[ssions]" regarding Greebel in its motion that amount to an assertion that "Mr. Greebel had nothing to do with the MSMB schemes." (Id. at 16). It is correct that Greebel is not a defendant in the first six counts in the Superseding Indictment, which charge Shkreli with, inter alia, making misrepresentations and omissions to secure and retain investor funds for MSMB Capital and MSMB Healthcare. Nonetheless, as clearly laid out in the Superseding Indictment and subsequent filings, Greebel was involved in aspects of the MSMB schemes. For example, Greebel orchestrated the backdating of documents to create the appearance that MSMB Capital had invested in Retrophin, when it had not; that fabricated MSMB Capital interest in Retrophin was created to support misrepresentations that Shkreli made to MSMB Capital investors about the performance of that fund.