UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>MARTIN SHKRELI and EVAN GREEBEL,<br><br>Defendants. | No. 15-CR-00637 (KAM)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

**RETROPHIN, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO MARTIN SHKRELI'S
MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

In his motion to compel, defendant Martin Shkreli demands that Retrophin, Inc. (the "Company" or "Retrophin") produce nearly a thousand documents over which it has asserted the attorney-client privilege (the "Documents"). Shkreli, who has had pre-trial access to the Documents through prior intervention of the Court, does not dispute that the Documents are covered by Retrophin's attorney-client privilege. Nor does he assert that Retrophin waived its privilege with respect to the Documents. Rather, Shkreli asks Retrophin to voluntarily waive its attorney-client privilege and permit its former law firm, Katten Muchin, LLP ("Katten"), to produce the Documents for use at trial. Retrophin declines the invitation.

By making his motion and styling it as a motion to compel, Shkreli also appears to ask the Court to somehow assist him, albeit in an unspecified way, in achieving his goal of waiver, claiming only (and without stating how) that the privileged material may be relevant to his defense. Remarkably, Shkreli does not provide any authority to support his vague request for judicial relief. Indeed, it is firmly established that the existence of attorney-client privilege trumps whatever relevance privileged material may have in a particular case. The motion should be denied.

A.     Background

Shkreli has never subpoenaed Retrophin. Rather, the Documents that are the subject of this motion are responsive to a trial subpoena he served on Katten, which provided legal services to Retrophin, to the MSMB entities, and to Shkreli personally, during the period covered by the Superseding Indictment. *See* Flath Dec. ¶¶ 2-3.[1]

After being served with the subpoena, Katten claimed it could not navigate the competing privilege claims of Retrophin, MSMB, and Shkreli, and sought the assistance of the Court. *Id.* ¶ 4. At the same time, Shkreli asked Retrophin to consider expanding a prior limited waiver of privilege as to certain subjects, which Retrophin had memorialized in a letter to the Government dated September 30, 2015 (the "Initial Waiver"). *Id.* ¶¶ 5-6. On November 30, 2016, the Court issued an order (the "November 30 Order") requiring Shkreli to review certain responsive documents held by Katten and to provide Retrophin with those that pertained to Katten's representation of Retrophin. *Id.* ¶ 7.[2] The Court also ordered Retrophin to report back to it on "any additional topics on which [it] intend[ed] to waive privilege," and to log those documents with respect to which it continued to claim privilege. *Id.*[3]

After discussions with Shkreli's counsel, Retrophin agreed to waive privilege with respect to nine discrete subjects identified by Shkreli, and memorialized those limited waivers in

---

[1] "Flath Dec." refers to the accompanying declaration of Nicholas Flath.

[2] The Court subsequently ordered Katten to produce an additional set of documents responsive to the subpoena that did not implicate Mr. Shkreli or MSMB's privilege directly to Retrophin for privilege review. Flath Dec. ¶ 9. Katten made this production, and Retrophin logged these documents for privilege. *Id.* ¶¶ 10, 14.

[3] At Retrophin's request, the Court entered an order pursuant to Rule 502(d) of the Federal Rules of Evidence providing that Katten's production to Shkreli would not waive Retrophin's privilege. Flath Dec. ¶ 8.

letters to the Court dated December 6, 2016 and January 23, 2017 (the "Second and Third Waivers" respectively). *Id.* ¶¶ 11, 13. In creating its privilege logs, Retrophin was careful to omit any documents covered by any of the limited waivers. *Id.* ¶ 14. The Second and Third Waivers alone encompass hundreds of documents, which Retrophin otherwise would have logged, but that can now be used at trial. *Id.*[4]

On January 20, 2017, in accordance with the November 30 Order, Retrophin submitted privilege logs to counsel for the defendants. *Id.* ¶ 15. After reviewing the logs, Shkreli asked Retrophin for yet a further waiver encompassing an additional 983 documents, which are the Documents at issue here. *Id.* ¶ 16. Mindful of the Court's desire for the parties to reach a resolution if possible, on March 27, 2017, immediately before Shkreli filed this motion, Retrophin agreed to waive privilege with respect to thirty-two of the Documents. *Id.* ¶ 19. Additional discussions ensued, and on March 31, 2017, Retrophin made a final offer to waive privilege with respect to another sixty-nine Documents, on the condition that Shkreli withdraw this motion to compel. *Id.* ¶ 20. Shkreli refused to withdraw this motion, and continues to demand production of all of the Documents. *Id.* ¶ 21. Retrophin has made no further waivers.

**B.    The Motion Should be Denied**

Shkreli does not dispute that the Documents he requests are protected by Retrophin's attorney-client privilege, nor does he claim that Retrophin has somehow waived its privilege over the Documents.[5] *See* Shkreli Br. at 16 (explicitly asking Retrophin to waive the privilege

---

[4] The Second and Third Waivers were conditioned on Shkreli and Greebel's agreement not to use those waivers to assert a broader waiver of privilege. Flath Dec. ¶¶ 11-13.

[5] In his motion, Shkreli identifies sixteen documents included in Retrophin's privilege logs that he believed to be included in a prior limited Retrophin waiver. *See* Shkreli Br. at 19. We explained to Shkreli's counsel that these were not covered by Retrophin's prior waivers, and they agreed to re-review these documents. Flath Dec. ¶ 18.

3

over the Documents). Indeed, he acknowledges Retrophin's good-faith efforts to conclude this matter. *Id*. Rather, Shkreli makes the remarkable and legally unsupported assertion that since his acts "from the inception of Retrophin are being used as evidence that he committed federal crimes," "documents that would otherwise be subject to strict requirements of Retrophin's attorney-client privilege as the corporation holding the privilege, are not subject to those requirements." *Id*. at 16-17. Further, and without explaining why, Shkreli asserts that "[e]very document that we ask Retrophin to waive privilege on . . . is a document that we believe contains relevant admissible evidence of Mr. Shkreli's good faith reliance on counsel." *Id. at* 20; *see also id.* at 19 (stating that such documents are "highly relevant to his defense of the securities fraud charges").

Shkreli cites no legal authority for these propositions. As the Second Circuit has made clear, the attorney-client privilege is a key "exception to the critically important duty of citizens to disclose relevant evidence in legal proceedings." *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982). Thus, "the fact that a privileged communication may simply be relevant to a claim or defense is insufficient to effect forfeiture of the privilege." *Chen-Oster v. Goldman, Sachs & Co.,* 293 F.R.D. 547, 556 (S.D.N.Y. 2013). Indeed, in *In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005), the Second Circuit explicitly declined to fashion a balancing test for the attorney-client privilege, or to otherwise establish a rule under which an assertion of privilege would yield to a need for evidence.

Shkreli's purported advice-of-counsel defense does not change the analysis. Judge Furman's decision in *United States v. Wells Fargo*, 132 F.Supp.3d 558 (S.D.N.Y. 2015) is on point. In that case, as here, a former employee claimed that his advice-of-counsel defense required disclosure of his past employer's privileged communications. *Id.* at 559-560. Also as

4

here, there was no dispute that the employer alone possessed the privilege. *Id.* The defendant argued that, absent disclosure of the employer's privileged materials, he would be unable to pursue his advice-of-counsel defense. *Id.* at 560.

After carefully weighing the arguments, the court concluded that a defendant's "right to present an advice-of-counsel defense" cannot override a third party's assertion of the attorney-client privilege. *Id.* at 563-566. Acknowledging that his ruling would prevent the defendant from presenting an advice-of-counsel defense at all, the court nevertheless found that upholding the attorney-client privilege was "a necessary consequence of commitment to the important policies and values underlying the . . . privilege." *Id*. at 566. Although the case before it was a civil case, the *Wells Fargo* court made clear that it would have reached the same result in the criminal context, noting that the Supreme Court had emphatically rejected "'the use of a balancing test in defining the contours of the attorney-client privilege,'" and had observed that "'there is no case authority for the proposition that the privilege applies differently in criminal and civil cases.'" *Id.* at 565 (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 408-09 (1998)).[6] Finally, the court explained that the result was "less harsh than it may appear," because, among other

---

[6] Judge Furman noted that his decision in *Wells Fargo* conflicted with that in *United States v. Grace*, 439 F.Supp.2d 1125 (D. Mont. 2006), in which the court found that, if privileged "evidence at issue was 'of such probative and exculpatory value as to compel admission of the evidence over the company's objection as the attorney-client privilege holder,'" the company could be forced to produce the privileged materials. *Id.* at 565 (quoting *Grace*, 439 F.Supp.2d at 1142). In a footnote, the court also referred to *United States v. Weisberg*, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011), in which Judge Garaufis cited *Grace* for the proposition that, "in order to introduce [] privileged material[s] into evidence," the defendant "must demonstrate that the evidence is so valuable that to prohibit its admission would violate the defendant's constitutional right to present a defense." *Id.* at *5; *see Wells Fargo*, 132 F.Supp.3d at 565 n.3. Judge Furman criticized *Grace* (and, implicitly, *Weisberg*) for failing to grapple with the Supreme Court's decision in *Swidler & Berlin*, upon which he relied. *Id.* at 565. In any event, Shkreli has not even attempted to show that each document is "so important to [his] defense that its disclosure is constitutionally" necessary, which, under the *Weisberg* analysis would require this Court "to review, in camera, each item in question." *Weisberg*, 2011 WL 1327689, at *5.

5

reasons, "as the Supreme Court observed . . . 'the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made [the] communications in the first place.'" *Id.* (*quoting Swidler & Berlin v. United States*, 524 U.S. at 408).

## CONCLUSION

Defendant Martin Shkreli's motion to compel should be denied.

Dated: New York, New York
April 10, 2017

                                           COOLEY LLP

                                           By:   /s/ William J. Schwartz
                                                      William J. Schwartz
                                                      Ian R. Shapiro
                                                      Nicholas A. Flath
                                       1114 Avenue of the Americas
                                       New York, New York 10036
                                       Tel. (212) 479-6000
                                       Fax. (212) 479-6275

                                       *Attorneys for Non-party Retrophin, Inc.*