UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-                          Ind. No. 15 CR 637(S-1) (KAM)

MARTIN SHKRELI,
EVAN GREEBEL,

               Defendants.
---------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MARTIN SHKRELI'S MOTION TO SUPPRESS, MOTION FOR BRADY MATERIALS, AND MOTION TO COMPEL

By: **Brafman & Associates, PC**
*Attorneys for the Defendant Martin Shkreli*
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel – 212-750-7800
Fax – 212-750-3906
magnifilo@braflaw.com

Of Counsel:   Marc Agnifilo
                     Andrea Zellan

## INTRODUCTION

Defendant Martin Shkreli submits this brief Reply Memorandum in opposition to the Government's Memorandum of Law (Dkt. No. 189) and Retrophin's Memorandum of Law (Dkt. No. 187). The Government raises a number of arguments that, for the reasons to follow, respectfully lack merit. First, the Government claims that Shkreli lacks standing. Second, it claims that Retrophin was not a Government agent. Third, it claims that the MSMB material would have been discovered inevitably by the Government.

In regard to Retrophin, after months of good-faith negotiations to resolve issues related to Shkreli's document subpoena to Katten Muchin Rosenman LLP ("Katten"), Retrophin has drawn a proverbial line in the sand and now seems intent on litigation. As set forth below, counsel for Shkreli proposes that the parties be given until May 1, 2017 to resolve these outstanding issues. If, there is no resolution at that time, counsel for Shkreli will submit a proposed briefing schedule for the court to resolve the outstanding subpoena issues.

### A.     The Government's Arguments Lack Merit

#### 1.     Shkreli Has Standing to Object to the Government's Actions

The Government contends that Shkreli lacks standing to object to it utilizing Retrophin as an agent to pilfer the MSMB records and provide them to be used as evidence in this prosecution. However, as a founder and corporate executive, Shkreli has standing to challenge the Government's illegal search and seizure of MSMB materials.

The proper inquiry for the Court in determining standing turns on "whether 'the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect,'" giving the defendant a legitimate expectation of privacy. United States v. Chuang, 897 F.2d 646 (1990) (quoting Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421 (1979)). To

establish a reasonable expectation of privacy, the person challenging the legality of the search and seizure must have a subjective expectation of privacy in items searched or seized, and society must be prepared to recognize that expectation as legitimate or objectively reasonable. Chuang, 897 F.2d at 649.

It is settled law that a corporate officer or employee may have a reasonable expectation of privacy with respect to searches of corporate records. See New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636 (1987) (the Fourth Amendment's prohibition on unreasonable searches and seizures applies to property used for commercial purposes); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct 2120 (1968) (a defendant had standing to challenge a search of an office if he reasonably expected that records would not be touched).  To challenge a search of corporate records, a defendant must make a sufficient showing of a possessory or proprietary interest in the area searched.  See Chuang, 897 F.2d at 649; United States v. Lefkowitz, 464 F. Supp. 227 (C.D.Cal 1979).

Here, Shkreli can establish a sufficient subjective and objective expectation of privacy in MSMB's corporate records.  First, Shkreli has a subjective expectation of privacy in MSMB records.  He had a significant proprietary interest in those records, because the MSMB entities were companies that he himself founded, operated, maintained and shutdown.  Also, the MSMB entities were never publicly traded companies.  Mr. Shkreli remains the sole authorized legal representative of MSMB, and as this Court is well aware from other related litigation, he holds the right to assert or waive the attorney-client privilege for MSMB.[1]

---

[1] The Court will recall that MSMB was created by Martin Shkreli and Marek Biestek. It is significant for these purposes to also recall that Biestek consistently maintained during the course of the subpoena litigation in this case that he did not have a right to the MSMB communications that was greater than that of Shkreli. Therefore, in regard to the MSMB

2

The documents that Shkreli created and maintained as the founder of MSMB are the property of MSMB. Shkreli, as the sole legal representative of MSMB, has a proprietary interest in those documents, which potentially hold commercially valuable information with respect to Shkreli's trading philosophy and trade recommendations as well as his methods for analyzing businesses for potential investment.

Subjectively, Shkreli, like any entrepreneur, is entitled to assume that executives of a separate company that he also founded would not invade and appropriate MSMB records for the specific purpose of providing the information to the Government without any notification to MSMB's sole legally authorized representative. Because Retrophin searched, took, and delivered MSMB documents, Mr. Shkreli was deprived of any opportunity as an MSMB executive to litigate the subpoena issued by the Government or redact commercially sensitive information.[2] Had Retrophin notified MSMB of the Government subpoena, Mr. Shkreli would have alerted all former executives of MSMB, including himself that a subpoena had been issued and that their documents might be encompassed in a production.

Furthermore, the email policy that Mr. Shkreli acknowledged in his employment agreement is not a document that applies retroactively to materials created and stored before the policy and employment agreement were put into place. Many of MSMB's records Retrophin provided date back to the beginning of 2011 and earlier.

---

communications, there is evidence in the record that Shkreli controlled that material to the exclusion of all other parties.

[2] During the several months of litigation surrounding the subpoena to Katten, counsel for Retrophin has taken tremendous efforts to ensure the sanctity of Retrophin's corporate property, trade secrets and other sensitive information. This same opportunity was denied to MSMB and to Shkreli through the methodology by which the Government went about misappropriating MSMB documents through Retrophin.

Society would find that Mr. Shkreli's expectation of privacy was reasonable. An individual's records do not lose the expectation of privacy simply because the records are generated in furtherance of a business interest. If that were the case, every note and record by a small business that started on someone's computer in the garage at their home would lose its claim to privacy once that small business grew, moved to an office, and achieved any measure of success. Would any idea, note, letter, email or other documents stored on that computer harddrive or in a cloud be available for public consumption or government scrutiny? What sort of chilling effect would such a policy have on the creativity required of individuals whose ideas turn into the next generation robot, automobile, software application, smart phone, or any and all innovations that drive the economy?

Since Mr. Shkreli has an objective and subjective expectation of privacy that society would deem reasonable, Mr. Shkreli has standing to challenge the legality of the repeated search of his servers for MSMB material. See United States v. Dupree, 781 F. Supp. 2d 115 (E.D.N.Y. 2011) (owner and executives at a company had standing to contest seizure of funds by alleging a distinct and palpable injury to their constitutional rights); Leventhal v. Knapek, 266 F.3d 64 (2d Cir. 2001) (finding that a DOT employee enjoyed a reasonable expectation of privacy in his office computer because the agency did not have a general practice of routinely conducting searches of office computers and did not put the employee on notice of having no expectation of privacy).

### 2. Retrophin Was a Government Agent

The Government correctly points out that a crime victim does not "magically transform" into a government agent. Gov't Memorandum, p. 30. We agree. Our contention, rather, is that Retrophin became a Government agent over the course of 22 months during which it made

4

around two dozen document productions to the Government, including at least 10 involving MSMB documents, and several formal presentations of evidence and factual and legal contentions.[3] Moreover, the Government and Retrophin shared an identical purpose: to convict Shkreli of a felony. Retrophin was, accordingly, anything but a typical crime victim. The Government suggests that Retrophin did nothing more than "confer with the attorney for the Government in the case." Gov't Memo, p. 31, and points out that this is proper. However, the evidence will show that the relationship between Retrophin and the Government goes well beyond the two parties conferring. Rather, the two were partners. For instance, the Government adopted wholesale Retrophin's civil claim against Shkreli and made it Count Seven of the Indictment. Also, Retrophin led the prosecutors and agents through its files and, more importantly, through the files of MSMB and provided the blueprint for this prosecution.

However, where this cozy relationship crossed the line and became a constitutional violation is when the Government and Retrophin, acting in concert, misappropriated the property of MSMB. Because the specific actions concerning this misappropriation are known only to the Government and to the Retrophin employees directly involved, counsel for Shkreli emphasizes the need for a hearing, at which the full nature of the relationship and the specific actions of Retrophin and the Government can be understood. On this point, it is altogether predictable that the Government labels Shkreli's claims about the relationship between the Government and Retrophin as "wildly speculative." Gov't Memo, p. 30. Indeed, the reason the Government followed this procedure, instead of issuing a subpoena to MSMB or even seeking a court-authorized search of MSMB's materials was in order to keep Shkreli from knowing about its

---

[3] The Government denies that counsel for Retrophin made any "presentations" to the Government, a fact which is inconsistent with the Government's own discovery. See Ex. 1.

5

investigation, including the fact that Retrophin was taking his documents without his knowledge. A hearing is therefore required to bring these facts to light.

### 3. Inevitable Discovery Does Not Save the Government

The Government claims without any analysis that it would have gained access to the MSMB materials even if Retrophin did not provide them. There is no doubt that "under the 'inevitable discovery' doctrine, evidence obtained during the course of an unreasonable search and seizure should not be excluded 'if the government can prove that the evidence would have been obtained inevitably' without constitutional violation." United States v. Heath, F.3d (2d Cir. 2006) (quoting Nix v. Williams, 467 U.S. 431, 447 (1984)). The inevitable discovery doctrine "requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." Id. (quoting United States v. Eng, 997 F.2d 987, 990 (2d Cir. 1993)).

In this case, the answer posed by the Second Circuit is a simple one: had the Government not utilized Retrophin to take MSMB documents, the Government would have never gotten them. The Government still has not issued a subpoena to MSMB, and it never had any intention of doing so. Nor has the Government sought a search warrant for the hard-copy or electronic files of either MSMB or Retrophin, and it never had any intention of doing so. Rather, the Government relied exclusively on Retrophin to provide whatever Retrophin saw fit. Since Retrophin obviously saw fit to pilfer the records of Shkreli's prior company, the Government received MSMB records. Had this not happened, the Government would not have had them, and would have made no attempt to get them.

Therefore, while the Government relies on inevitable discovery to save itself from the unreasonable search it perpetrated on Shkreli and MSMB, the doctrine does not help it. The search is unlawful and the fruits of the search must be suppressed.

**B.    In the Event Shkreli and Retrophin Cannot Agree on the Remaining 900 or So Documents Which Remain Outstanding, Shkreli Would Ask the Court For a Briefing Schedule As to That Issue**

As the Court will recall, in November and December of 2016, Shkreli and Retrophin were moving in the direction of protracted litigation over Retrophin's assertion of privilege over certain documents. At the time, Retrophin and Shkreli submitted letters arguing opposing views on how the corporate attorney client privilege would interface with the constitutional right to defend oneself based on one's own communications in the context of a criminal case. See Ex. 2. However, rather than litigate a thorny constitutional issue, and one which may also be an issue of first impression, the parties sensibly chose to continue their good-faith discussions with the goal that Shkreli could use communications relevant to his defense, and Retrophin could maintain confidentiality of important commercial or business information. As counsel for Retrophin stated to this Court on November 22, 2016: "we are not seeking to use the waiver unfairly. If Mr. Brafman told me that he thought certain additional topics were important in order to defend against the indictment, then we would quickly talk to our client about potentially waiving on those." Trans. 11/22/16, p. 40.

Over the last five months, there has been tremendous progress. Shkreli and Retrophin have whittled down the universe of disputed documents to about 900. Even as of the filing date for Shkreli's recent motion, the parties were continuing to discuss potential resolutions. As a result, it did not seem necessary to impose on the court for a determination that certain specific communications be provided to Shkreli for use at the trial. Rather, it made more sense to

continue to seek an agreed-upon solution. However, in the past week or so, Retrophin has taken the position that it will no longer consider waiving its privilege. Rather, Retrophin has stated that it will not waive privilege on a broad array of documents that are relevant to Shkreli's defense.

Among the materials over which Retrophin refuses to waive privilege is an email from Greebel to Shkreli attaching the Board minutes from an April 22, 2013 meeting. The minutes indicate that Shkreli, several other Board members and Greebel all participated in the meeting, with Greebel acting as Secretary. In the email, Greebel told Shkreli that Greebel would like to have the Board approve the minutes. This documents is relevant for several reasons.

First, it is clear evidence that Greebel participated directly in the Board meetings. Greebel has complained for months now that Shkreli lied to him, misled him and deceived him. What he has not said is that he participated directly in the Board meetings as the Secretary.

Second, Greebel is sending these minutes to Shkreli. It is apparently Greebel's responsibility to take the minutes, to ensure their accuracy and to send the complete, accurate minutes to Shkreli. Far from being deceived, Greebel attends meetings as Acting Secretary, takes notes and assures the accuracy of the minutes.

Third, Greebel informs Shkreli that Greebel will seek Board approval of these minutes at another upcoming meeting. Greebel's role on the Board, in the affairs of the company, and as an essential, fully-informed participant in these matters is made clear by this document alone.

This document is affirmative, direct evidence of Shkreli's innocence. It is evidence of the fact that a trusted lawyer from a well-known firm was acting as the Board's Secretary, that he was participating directly as a Board member, and that he had direct knowledge of Shkreli's actions and those of the other Board members. To say this is relevant evidence is an

8

understatement. For Retrophin to claim a privilege over this document and forbid its use at Shkreli's upcoming criminal trial illustrates the nature of the legal dilemma confronting the parties and the Court if Retrophin continues to adhere to its current position.

There are other examples of emails that are directly relevant to Shkreli's factual innocence of these charges. But, this one email and attachment provide the Court with sufficient insight to the potential legal issues involved.

If Retrophin continues in this posture, and continues to object to Shkreli being able to use plainly relevant evidence, we will have no choice but to formally move to have full access to these materials at trial despite Retrophin's claim of privilege due to the fact that one (1) Retrophin is using the attorney-client privilege as a sword by strategically and selectively waiving, and (2) Shkreli's constitutional right to present a defense consisting of his own communications trumps Retrophin's claimed privilege given the specific facts of this case.

Counsel for Shkreli proposes the following procedure: (1) the Court allow counsel for Shkreli and for Retrophin to reach agreement over the next two weeks; (2) On May 1, 2017, the parties provide the Court with a status report as to any unresolved issues; (3) If, as of May 1, 2017, there continue to be unresolved issues, the Court may then order a briefing schedule to resolve the dispute.

## CONCLUSION

For the foregoing reasons, Mr. Shkreli respectfully asks that this Court grant a hearing as to the suppression of the MSMB documents, and to set a briefing schedule if the outstanding disputes are not resolved by May 1, 2017.

Dated:      April 17, 2017
              New York, New York

                                      Respectfully submitted,

                                      Marc Agnifilo, Esq.
                                      Andrea Zellan, Esq.
                                      Brafman & Associates, P.C.
                                      767 Third Avenue
                                      New York, New York 10017
                                      (212) 750-7800

cc:      All Counsel (via ECF)
          Counsel for Retrophin (via email)