# EXHIBIT 2

# Cooley

Ian Shapiro                                                                                                      Via ECF
+1 212 479 6441
ishapiro@cooley.com

December 5, 2016

Judge Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Martin Shkreli, No. 15-CR-00637 (KAM)

Dear Judge Matsumoto:

      We represent Retrophin, Inc. We are writing to address certain aspects of the Court's November 30th Order (Dkt. 120); to request limited modifications to enable Retrophin to comply with contractual obligations with its commercial partners; and to limit Mr. Shkreli's access (but not his counsel's access) to certain commercially sensitive information concerning Retrophin's existing products.

      First, Mr. Shkreli does not have the right to review communications covered by Retrophin's attorney-client privilege or work product, even if he had once been an officer and director of Retrophin and a party to the communication. *See Fitzpatrick v. American Intern. Group, Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010) (holding that defendant's former officer or directory was no longer entitled to access privileged communications, even if he had sent or received them); *see also Davis v. PMA Cos.*, 2012 WL 3922967, at *6 (W.D. Okla. Sept. 7, 2012) (holding the same; collecting federal district court cases in agreement; and explaining that it was would "seem[] paradoxical to allow a party to access information previously available to that individual only because of his or her role as a fiduciary once that party is adverse to the corporation and no longer required to act in the corporation's best interest.") (citing *Fitzpatrick*, 272 F.R.D. at 108).

      This is true even when Retrophin and Shkreli are adverse. *See, e.g. Neogenix Oncology, Inc. v. Gordon*, 2015 WL 5774171 at *10 (E.D.N.Y. Sept. 29, 2015) (holding that former officer was not entitled to rely on privileged communications to which he was a party while an officer of the plaintiff even if those communications were relevant to contesting the plaintiff's complaint against him); *see also Fitzpatrick*, 272 F.R.D. at 108; *Davis*, 2012 WL 3922967, at *6. Unless Retrophin expressly relies on attorney-client communications to support its claims against Shkreli, and, therefore, waives the privilege with respect to the subject of those communications,

# Cooley

Judge Kiyo A. Matsumoto
December 5, 2016
Page Two

Shkreli no longer has any right to Retrophin's privileged communications. *Neogenix*, 2015 WL 5774171, at *9.[1]

Second, we would like to correct the misimpression that neither Katten nor Retrophin can "ascertain whether [Katten's] communications with Mr. Shkreli (including documents on which Mr. Shkreli was copied) pertained to the firm's representation of Mr. Shkreli, the MSMB Entities, Retrophin Inc. and/or Retrophin LLC." Dkt. 120 at 4-5. Retrophin produced nearly 1,000 pages of invoices for the period between April 2012 and September 2014. The invoices contain detailed time entries reflecting the legal services that Katten was providing to Retrophin, and they confirm that the large majority of services that Katten billed to Retrophin related to Retrophin's business. Retrophin objects to the suggestion that Katten's representation of Retrophin was so intertwined with its representation of MSMB and Shkreli that Katten cannot reasonably identify the communications arising from its representation of Retrophin. Retrophin acknowledges that there are communications in which Katten would not want to be responsible for deciding whether MSMB or Shkreli could claim that they had an attorney-client relationship with Katten. But no one seriously disputes that, at least as of December 2012 (and possibly earlier), the large majority of Katten's communications with Shkreli arose from Katten's representation of Retrophin.

With the benefit of these invoices, Mr. Shkreli should be able to identify exactly when he contends Katten was representing MSMB or Mr. Shkreli personally and eliminate most of this confusion. Even if Retrophin ultimately disagreed with these contentions, Mr. Shkreli's identification of matters on which Katten represented MSMB or him personally – based on the actual record of Katten's services as reflected in the invoices – would substantially narrow the parties' dispute; and we do not understand why neither Katten nor Mr. Shkreli has been willing to avail themselves of this opportunity.

Notwithstanding these concerns, Retrophin appreciates that the Court is trying to find a solution to the parties' impasse and has put a lot of thought into the solution proposed in the November 30th Order. Retrophin also wants to be pragmatic, without prejudicing its privilege. Thus, Retrophin will not object further to Paragraph (3)(a) of the Court's November 30th Order, but respectfully requests that the Court enter a further order pursuant to Rule 502(d) confirming that the disclosure of Katten's communication with Retrophin to Mr. Shkreli for the purpose of the review described in Paragraph (3)(a) does not waive Retrophin's attorney client privilege or work product protection with respect to either the parties to this case or any other state or federal

---

[1] Retrophin did not cite authority on this point in its letter dated November 27, 2016 (Dkt. 119) because we did not understand that the Court was considering allowing Mr. Shkreli to review Retrophin's privileged documents. The only issue appeared to be the time in which Retrophin would be required to (a) identify the additional subjects over which it would waive the privilege, and (b) log the rest.

# Cooley

Judge Kiyo A. Matsumoto
December 5, 2016
Page Three

proceeding. (For the Court's convenience, we have attached as Exhibit A of this letter a proposed form or order for this purpose.)[2]

In addition, Retrophin respectfully requests that the Court modify Paragraph (3)(a) in two limited respects:

First, Retrophin respectfully requests that the Court modify Paragraph (3)(a) of its November 30th Order to defer until December 9th the deadline for Katten's disclosure of its communications with Mr. Shkreli for communications sent or received in 2013 and 2014. This request does not concern communications sent or received in 2011 and 2012, which can be produced to Mr. Shkreli on December 6th as Paragraph (3)(a) provides. Retrophin needs an additional three days to comply with its contractual obligations to provide reasonable notice to commercial partners before disclosing Retrophin's agreements with those partners, or, in some cases, information relating to the agreements, to third-parties. Retrophin expects to notify these commercial partners today, and to let them know that unless they apply for relief the documents will be produced on the 9th.

Second, Retrophin requests that the Court limit Mr. Shkreli's access to communications relating to Retrophin's existing commercial products: Sparsentan, Thiola, Chenodal, and Cholbam, because the Company is concerned that Mr. Shkreli will use the information to interfere with the Company's ongoing business relationships, as he has in the past. Katten's communications with Mr. Shkreli concerning these commercial products have no relationship to this case and indisputably relate to Retrophin, not MSMB or Mr. Shkreli personally. Retrophin is not limiting Mr. Shkreli's access to communications relating to these products. Retrophin is only asking that Mr. Shkreli's counsel review them on an attorneys-eyes only basis to confirm that they relate to Retrophin, not MSMB or Mr. Shkreli, and should, therefore, be returned to Retrophin under paragraph (3)(c).

Mr. Shkreli's counsel can isolate these documents by applying the following search terms to the documents they receive from Katten: Sparsentan (Sparsentan, Ligand); Thiola (Thiola, Mission, Biosolutia, Alamo, and DLSS); Chenodal (Chenodal, Manchester, and Nexgen), and Cholbam (Cholbam, Asklepion). Since the purpose of Mr. Shkreli's review is to segregate the communications in which Katten was providing legal services to MSMB or Mr. Shkreli personally rather than Retrophin, limiting the review of communications responsive to those search terms will not prejudice Mr. Shkreli in the least, and will probably expedite the review provided for in paragraph (3)(c).

---

[2] Retrophin's position is based on its understanding that Katten will only be producing to Mr. Shkreli Katten's communications with Mr. Shkreli and not internal Katten communications (to which it cannot be said that Mr. Shkreli was a party, and for which the Court's reasoning in paragraph (3) and note 1 of the November 30th Order would not apply).



Judge Kiyo A. Matsumoto
December 5, 2016
Page Four

   Retrophin also requests that it have the opportunity to challenge communications that Mr. Shkreli asserts were for the purpose of providing legal advice to MSMB or to him personally. Retrophin is concerned that Mr. Shkreli will be able to unilaterally determine that certain communications are covered by a privilege that he controls, when Retrophin would take a different position on those communications. In the case of communications that Shkreli contends are covered by his personal privilege, Retrophin respectfully suggests that Mr. Shkreli produce those to Retrophin for review since they are no longer covered by any privilege as a result of Mr. Shkreli's waiver. In the case of communications that Mr. Shkreli contends are covered by MSMB's privilege, Retrophin respectfully requests that Mr. Shkreli log them (unless Mr. Biestek waives the privilege over them).

   Retrophin thanks the Court in advance for its consideration of these requests.

Respectfully submitted,

*/s/ Ian Shapiro*

Ian Shapiro

cc: Counsel for all parties (via ECF)

# BRAFMAN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW
767 THIRD AVENUE, 26TH FLOOR
NEW YORK, NEW YORK 10017
TELEPHONE: (212) 750-7800
FACSIMILE: (212) 750-3906
E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

December 5, 2016

VIA ECF AND E-MAIL

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

    Re.  United States v. Martin Shkreli
         15 Cr. 637 (KAM)

Dear Judge Matsumoto:

    I write to briefly supplement the letter Glen McGorty submitted December 2, 2016 (Dkt. 123), and to respond to the letter submitted earlier today by Ian Shapiro, counsel for Retrophin (Dkt. 124). I will address the letter submitted by counsel for Retrophin first.

    1. Retrophin's December 5, 2016 Letter

    In its letter from earlier today, Retrophin raised two primary points that will be addressed in order.  First, Retrophin, seeking essentially to reargue the Court's November 30th ruling, claimed that "Mr. Shkreli does not have the right to review communications covered by Retrophin's attorney-client privilege or work product privilege, even if he had once been an officer and director of Retrophin and a party to the communication." 12/5/16 Letter, p. 1. Second, "Retrophin objected to the suggestion that Katten's representation of Retrophin was so intertwined with its representation of MSMB and Shkreli that Katten cannot reasonably identify the

**BRAFMAN & ASSOCIATES, P.C.**

communications coming from Retrophin." <u>Id</u>. p. 2. As part of this second objection, Retrophin requests that the deadline for Katten to produce Shkreli-related communications from 2013 and 2014 be delayed until December 9, 2016[1], and that Shkreli's access to communications concerning four commercial products be further limited.

The undersigned conferred with Ian Shapiro, counsel for Retrophin, and we have agreed on some points and disagreed on others. This will be set forth by topic below.

> A. <u>Retrophin's Request To Re-Argue The Court's November 30th Ruling Concerning Mr. Shkreli's Access To His Communications</u>

In the Court's November 30, 2016 ruling, the Court stated, "(t)he court notes that documents reflecting communications sent to or received by Mr. Shkreli, the MSMB Entities, Retrophin, Inc. and/or Retrophin LLC, have already been seen by Mr. Shkreli." November 30, 2016 Court Order, Dkt. 120. The Court then went on to state that "Mr. Shkreli is the individual best able to identify and segregate those documents that pertain" to himself and the other entities. <u>Id</u>. In this manner, the Court advanced a practical, effective solution to a fairly complex legal conundrum that the parties were unable to solve.

In providing legal justification for its solution, the Court observed that Retrophin "has not provided any legal authority prohibiting the disclosure of documents to Mr. Shkreli," noting further that "the burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." <u>United States v. Int'l Bhd of Teamsters</u>, 119 F.3d 210, 214 (2d Cir. 1997). In this regard, the Court noted that neither Retrophin, nor any other party raised a meaningful legal objection to the practical, effective solution advanced by the Court.

Retrophin's December 5, 2016 submission seeks to provide the legal authority, albeit after the fact, that was not provided in advance of the Court's ruling. However, the arguments advanced in the letter are unavailing. This case

---

[1] For the reasons stated below, counsel for Mr. Shkreli agrees with the modification proposed in Mr. Shapiro's letter that Paragraph (3)(a) of the Court's November 30, 2016 Order be modified to the extent that communications with Mr. Shkreli from 2013 and 2014 will be turned over on December 9, 2016, rather than December 6, 2016. This will give the parties an additional three days to address certain specific concerns raised by Retrophin.

2

**BRAFMAN & ASSOCIATES, P.C.**

involves a confluence of factors that distinguish it from Neogenix Oncology, Inc. v. Gordon, 2105 WL 5774171 (E.D.N.Y. Sept 29, 2015) and Fitzpatrick v. American Intern. Group, Inc., 272 F.R.D. 100, 108 (S.D.N.Y. 2010). First, this is a criminal case where the defendant, Martin Shkreli, is seeking his own communications in order to defend himself against criminal charges. Second, there is no dispute that Shkreli had regular communications with his attorneys about a wide variety of subjects, including the very matters charged by the Government as criminal in nature. Third, one of the lawyers he consulted most, Evan Greebel, has also been charged as being a co-conspirator, rather than a lawyer rendering advice in good faith.

Possibly the only way to defend against the criminal allegations here is for the communications between lawyer and client to be available to the defendants. This altogether appropriate result is made all the more sensible by the fact that Mr. Shkreli has already seen all of these communications, and has authored many of them.

The Court's November 30th ruling seeks to provide the parties with a practical solution, and it does so. Retrophin's December 5th letter, seeking essentially to reargue the Court's November 30th ruling, should not be considered by the Court.

### B. Intertwining of MSMB, Retrophin and Shkreli

Retrophin also revisits the issue of the intertwining in the legal representation of these parties. However, it does not introduce new facts or argue anything that should alter the Court's November 30th decision.

Nonetheless, as indicated above, Retrophin asks for two modifications of the prior order that seem reasonable to Mr. Shkreli and on which there is consent between the parties, subject of course to the Court's approval. First, Retrophin asks for a "December 9th deadline for Katten's disclosure of its communications with Mr. Shkreli for communications sent or received in 2013 and 2014. The undersigned has spoken with Ian Shapiro about this request and, on behalf of Mr. Shkreli, we agree. Therefore, while the communications from 2011 and 2012 will be disclosed consistent with the Court's November 30th Order, the communications from 2013 and 2014 will, subject to the Court's approval, be delayed until December 9, 2016.

3

**BRAFMAN & ASSOCIATES, P.C.**

Retrophin also asks for a modification in regard to communications concerning specific commercial products. The parties discussed this issue earlier today as well, and Mr. Shkreli agrees to seek to accommodate Retrophin on this point. Because the enlargement of the period to turn over 2013 and 2014 communications would give the parties more time to discuss the particular concerns of Retrophin in this regard, the parties will attempt to fashion a more specific remedy in the coming days to address Retrophin's concern.

As a final point, Retrophin suggests that all the necessary distinctions between clients and matters can be made by reference to the billing records that were recently provided. We have not found that to be the case. But, we will continue to consult with Retrophin and our client in an effort to more sharply focus the necessary materials.

2. Supplementing Mr. McGorty's Letter of December 2, 2016

The second part of this letter seeks to clarify issues related to waiver of the attorney-client privilege by Mr. Shkreli and Mr. Biestek, and supplements Mr. McGorty's recent letter to the Court.

A. The Meet-And-Confer

Mr. McGorty is correct that during the meet-and-confer, the undersigned indicated that Mr. Shkreli was not waiving the attorney client privilege as to the MSMB documents, but was rather claiming ownership over those documents. In other words, during the meet-and-confer, Mr. Shkreli advanced the position that no party has a superior right of ownership than he does over these materials, and he accordingly was requesting to possess his own property.

In light of Mr. Shkreli's claim of ownership of the MSMB documents, Mr. McGorty stated that Mr. Biestek agreed that any interest Biestek has in the MSMB documents would be subordinate to that of Shkreli. As a result, Biestek had no objection to the MSMB documents being provided to Shkreli. However, Mr. McGorty was careful to state that while Biestek's interests were subordinate to Shkreli's, he was not waiving the attorney client privilege as to third parties.

**BRAFMAN & ASSOCIATES, P.C.**

Following the meet-and-confer, the undersigned endeavored to reflect the positions of the various parties in my letter to the court of November 16, 2016, and believe I did so faithfully.

### B. The Court Appearance

Just after midnight on November 21, 2016, my wife and I were confronted with a dire medical emergency. We left New York City in the middle of the night, and for several days, I was in a hospital in Albany consumed by this situation. As a result, I was unable to appear in court on November 22nd, and I was unable to have sufficiently detailed conversation with my co-counsel concerning the substance of the meet-and-confer. Accordingly, at the court appearance, counsel for Mr. Shkreli stated that both he and Biestek were waiving any attorney-client privilege. However, as noted, that was not the position advanced by Mr. McGorty at the meet-and-confer, nor was it the position of Mr. Shkreli.

Therefore, to the extent that a representation was made that Shkreli waived his privilege in the MSMB documents, we respectfully rescind such waiver, as that was not his stated position, nor the position that was advanced at the meet-and-confer. However, the status of the waivers of Shkreli and Biestek concerning MSMB documents should not in any way alter the Court's November 30th ruling.

We thank the Court and all parties for the ongoing diligence and cooperation.

Respectfully submitted,

Marc Agnifilo

cc: All parties (via ECF)
Ian Shapiro (via email)
Michael Verde (via email)
Elizabeth Langdale (via email)
Glen McGorty (via email)
Arlen Pyenson (via email)

5