UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-against-

MARTIN SHKRELI and EVAN GREEBEL,

*Defendants.*

---

S1 15 Cr. 637 (KAM)

### EVAN GREEBEL'S PROPOSED VOIR DIRE

Evan Greebel respectfully requests, pursuant to Federal Rule of Criminal Procedure 24(a), that the Court include the following questions in its examination of prospective jurors. In addition to a written jury questionnaire, extended *voir dire* is necessary to identify potential juror prejudice caused by the extensive media coverage of Martin Shkreli and engendered by Mr. Shkreli, and is necessary to preserve Mr. Greebel's right to a fair trial and an impartial jury.

Mr. Greebel also requests that the Court pursue more detailed questioning at the sidebar if a prospective juror's answer reveals that further inquiry is appropriate and, in such an instance, to inquire whether the particular fact or circumstance would influence the prospective juror in favor of or against either the government or Mr. Greebel. In addition, if a juror's answer reveals that the juror may have seen or become aware of the charges, or any media coverage of Mr. Shkreli, the Court is requested to pursue more detailed questioning regarding what the juror may have seen or heard outside the presence of the other jurors.

Before the Court questions the panel, Mr. Greebel requests that the Court inform the jury of the nature of the case:

1

I. **Background of the Case and the Voir Dire Process**

This is a criminal case. The charges against Mr. Greebel are set forth in an indictment. An indictment is a formal method of accusing a person of a crime. It is not evidence of any kind. It merely states what crimes the government intends to prove beyond a reasonable doubt. It is the government's burden to establish a person's guilt beyond a reasonable doubt. I will instruct the jury on this burden of proof and what it means after all the evidence is presented.

Mr. Greebel has pleaded not guilty to the indictment—that is, he has denied the charges made by the government. The accusations and Mr. Greebel's denial of those accusations raise issues of fact that must be decided by the jury on the basis of the evidence that will be presented in court.

I have no knowledge of the actual facts of this case and nothing that I say today or at any time during the trial is to be considered evidence. I will, however, briefly summarize the allegations in the indictment so that we can determine whether there is anything about the allegations that would make it difficult or inappropriate for any of you to sit as a fair and impartial juror. Those of you who are selected to sit as jurors will receive a detailed explanation of the allegations at the conclusion of the case and after closing arguments.

Mr. Greebel is charged in two counts of an eight-count indictment. Count Seven of the indictment alleges that Mr. Greebel entered into a conspiracy with Martin Shkreli to violate the federal statute that makes it unlawful to commit wire fraud. Count Eight of the indictment alleges that Mr. Greebel entered into a conspiracy with Martin Shkreli to violate the federal statute that makes it unlawful to commit securities fraud.

Mr. Greebel is presumed to be innocent. The government has the burden to produce evidence that Mr. Greebel is guilty.

I expect the trial will last about two to three weeks. Sometimes a trial lasts longer or shorter than the judge or the lawyers expect, but I wanted to give you some idea of what we expect at this point. I'll tell you a little more about our schedule once the jury is selected.

Before I begin with specific questions, I want to mention names of people you will be hearing at this trial.

The defendant in this case is Evan Greebel. Do any of you know, or have you had any dealings, directly or indirectly, with Mr. Greebel, or with any relative, friend, or associate, of Mr. Greebel?

During the time period in question, Mr. Greebel was employed at the law firm of Katten Muchin Rosenman LLP ("Katten"). Do any of you have any personal or professional connection to this law firm?

I will now ask Mr. Greebel and his attorneys to please stand. Mr. Greebel is represented at this trial by Reed Brodsky, Winston Chan, and Lisa Rubin, of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). Do any of you know Mr. Brodsky, Mr. Chan, or Ms. Rubin? Do any of you have any personal or professional connection to Gibson Dunn?

The government is represented here, as in all cases where it is a party before this Court, by the United States Attorney for the Eastern District of New York, who is Bridget M. Rohde. The conduct of the trial will be in the immediate charge of Assistant United States Attorneys Jacquelyn M. Kasulis, Alixandra E. Smith, and G. Karthik Srinivasan. The prosecutors will be assisted by Special Agent [*to be named by the government*] of the Federal Bureau of Investigation. *[Please ask Ms. Kasulis, Ms. Smith, Mr. Srinivasan, and [FBI Agent] to stand.]* Do any of you know Ms. Rohde, Ms. Kasulis, Ms. Smith, Mr. Srinivasan, or [FBI Agent]? Have

you or your family members or close friends had any dealings, either directly or indirectly, with any of them?

I will now read a list of names of individuals, whose names may be mentioned during the trial, or who may be witnesses in this case.

*[Please read list of relevant names.]*

Do any of you know any of these people or companies? Have you had any dealings, either directly or indirectly, with any of these individuals or entities?

In a moment, I'm going to ask you all to respond to certain questions. If you have an answer to any question you prefer not to give in public, just let us know and the lawyers and I will hear you up here at the bench. During the questioning, you may be excused from serving as a juror in this case. If you happen to be one of those excused, it is no reflection on you. This is all part of our system of justice, which is intended to provide all parties with a jury that they believe will be fair to them. You will have done your duty by your presence and readiness to serve if chosen.

Before I begin with the questioning, I must give you a few simple rules of law that will guide all of us during a trial. The function of the jury is to decide questions of fact—that is, to decide any disputed questions about what actually happened in connection with this case. You, who are chosen as jurors, will be the only judges of the facts, and nothing I or the lawyers say or do may in any way intrude on your role as the exclusive fact finders based on the evidence presented here in the courtroom. In particular, it's not up to me to decide what happened or even to have an opinion about what happened. If you get the impression from anything I say or do that I do have an opinion about the facts, you should disregard it.

When it comes to the law, however, as distinguished from the facts, you must take your instructions from me, and you are bound by those instructions. You may not substitute your own ideas of what the law is or what you think it ought to be. At the conclusion of the case, your job will be to determine whether the government has proven its case beyond a reasonable doubt according to my instructions on the law.

I'm going to begin with a series of general questions about your knowledge of the case. If your answer is something that you would rather not discuss in public, just say so, and we'll hear you up here at the bench.

## II. Proposed Questions

### a. Knowledge of the Case / Baseline Bias

1. Other than the short description you have just heard, have you seen or read anything about this case? Have you formed any impression about this case or the parties involved based on what you have seen or heard? What do you specifically recall as facts?

2. As you will hear, Mr. Greebel is an attorney. How many of you have a negative opinion about attorneys or law firms? Why did you form that opinion? Have you ever had any negative experiences with an attorney?

3. Do any of you have any personal or professional connection to the law firm Cooley LLP? Does anyone have any familiarity with this law firm?

4. Do any of you have any personal or professional connection to the accounting firm Marcum LLP? Does anyone have any familiarity with this accounting firm?

5. Do any of you have any personal or professional connection to the accounting firm Citrin Cooperman? Does anyone have any familiarity with this accounting firm?

6. Do any of you feel that since Mr. Greebel has been charged in an indictment in this case, he must have done something wrong? Why?

7. During the relevant time period, Mr. Greebel and Katten represented companies founded by Martin Shkreli, as outside counsel. Have you read or heard anything about Mr. Shkreli and his company, Turing Pharmaceuticals, who purchased the rights to the HIV drug Daraprim? What is your impression of Mr. Shkreli based on what you have heard?

8. Turing Pharmaceutical and Daraprim have nothing to do with this case. Despite that, how many of you feel that Mr. Greebel is starting out a little behind due to the fact that he was an outside attorney at the law firm representing Mr. Shkreli's companies, MSMB and Retrophin?

9. How many of you have read or heard about any incident involving Martin Shkreli? How many of you feel that Mr. Greebel is starting out a little behind due to his association with Mr. Shkreli and the fact that he was an outside attorney at the law firm representing Mr. Shkreli's company Retrophin?

10. Mr. Shkreli has been actively involved in social media and has received a lot of media attention related to Daraprim and other matters. Have any of you heard or read anything about Mr. Shkreli?

11. Are you familiar with the Wu-Tang Clan?

12. How many of you believe that in most cases, a person who is charged with a crime has most likely committed the crime. Why do you feel this way? What about when the person charged with a crime is an attorney? How many of you believe that when an attorney is charged with a crime he/she most likely did something wrong?

b. **<u>Burden of Proof / Presumption of Innocence</u>**

13. Mr. Greebel is presumed innocent and cannot be convicted unless the jury unanimously and based solely on the evidence presented in court, decided that his guilt has been proven beyond a reasonable doubt. The burden of proving guilt beyond a reasonable doubt rests entirely with the government. Mr. Greebel has no burden of proof whatsoever. Regardless of this rule, do you feel that someone accused of a crime should prove his / her innocence? Why or why not?

14. If at the end of the trial, you believe that the government has not met its burden of proving the allegations beyond a reasonable doubt, would any of you hesitate to find Mr. Greebel <u>not</u> guilty? Would any of you have some difficulty in voting <u>not</u> guilty if the government fails to prove the charge beyond a reasonable doubt, even if your "gut" was telling you something different—even if you had a "hunch" that the person might have committed the crime?

15. If you believe that the person charged may have committed the crime but that the government did not meet its burden of proving it beyond a reasonable doubt, how many of you would follow your "gut" feeling as opposed to the law? How many of you think it would be hard to render a verdict that is at odds with what your "gut" is telling you, even if the government did not meet its burden?

16. If you find yourself in a position where the believable credible evidence points toward guilt and also points toward innocence, who would get the benefit of the doubt?

17. Under the law, a person accused of a crime need not testify in his own defense. If that person declines to testify, the jury is <u>not</u> supposed to consider that fact in any way in reaching a decision as to whether the person is guilty. Despite this, how many of you have the expectation that Mr. Greebel *should* testify? Why or why not?

7

18. How many of you believe that if a person decides to invoke his Fifth Amendment right and does not to testify, he is most likely hiding something?

19. Will you be able to follow the Court's instruction to avoid all media coverage and not look on the internet for this case for any purpose? Do any of you feel like the highly-publicized nature of this case and the attention it may draw affect your ability to consider *only* the evidence presented at trial? Why or why not?

    c. **Attorneys**

20. Have you, a close friend, or family member ever worked for a law firm or held any job related to the law? Do you have any background, training or legal experience related to mergers and acquisitions, corporate finance, and / or securities law?

21. Do you have any strong, negative feelings about attorneys or law firms? Are there any of you that inherently distrust attorneys or major law firms?

22. In your personal and / or professional life do you rely on the advice of professionals such as lawyers, accountants and / or consultants? Have you ever been misled or misinformed by a professional (*i.e.,* has a lawyer or accountant ever represented something that turned out not to be true)?

23. How many of you believe that people are 100% honest with their attorney(s)? Do you think there are instances in which a person may lie or mislead their lawyer? How many of you believe that it is extremely rare that a person lies to their attorney? How many of you just think, under no condition would a client lie or mislead their attorney?

24. How many of you think that attorneys often "turn a blind eye" to questionable behavior by their client?

8

25. Do you think that fraud, or any other type of serious misconduct, can occur at a corporation without the knowledge of its multiple attorneys or outside counsel? How many of you believe that if there was fraud or any other illegal activity occurring at a company its outside attorneys would most likely know about it?

26. How many of you feel that there is simply no way that an outside attorney at a law firm representing a company run by Mr. Shkreli, such as Mr. Greebel was, would have no knowledge of any alleged fraud committed by Mr. Shkreli?

27. Do any of you have a specific understanding of the general job responsibilities of a corporate lawyer who specializes in mergers and acquisitions, corporate finance and / or securities laws? What is your understanding of a corporate lawyer's roles/duties?

28. By a show of hands, how many of you feel like corporate lawyers are highly involved in the internal operations of the corporation they advise and they know or should know everything happening behind the scenes at the corporations they advise?

29. Do any of you feel that corporate attorneys are not necessarily privy to all intricacies of the corporations they advise and it is the responsibility of the executives of these corporations to openly share all necessary / relevant information with their attorneys? Why or why not?

30. How many of you believe that it is common for attorneys to specialize in a very specific area of law? Do you think it is reasonable that attorneys would consult with their colleagues on areas of law outside their realm of specialty?

31. How many of you think it's possible that CEOs and other executives of a company would not be forthright about the innermost aspects of their business with their

counsel? Why or why not? How many of you just think, under no condition would a CEO or other executive of a company lie or mislead their outside counsel?

        d.  **White Collar Crimes**

32. Do any of you feel like the government is not hard enough on alleged perpetrators of business or financial crimes?

33. Do any of you think the government is reluctant to prosecute corporate / financial crimes or that the government needs to take a harder stance against perpetrators of corporate / financial crimes?

        e.  **Financial / Investing Experience**

34. Do you have any background, training or experience related to finance, accounting, bookkeeping, fund management / administration, auditing, or investing?

35. Do you have any background, training or experience using Quickbooks (popular accounting software for businesses)? Are you familiar with the "Audit Trail" feature?

36. Do you have any background, training or legal experience related to mergers and acquisitions, corporate finance, and/or securities law?

37. Have you ever made any sort of financial investment (*i.e.,* stocks, bonds, mutual funds, etc.)? Have you or has anyone close to you ever lost money on an investment where you thought the loss was caused by someone else's wrongdoing, fraud or dishonesty?

38. Have you or has anyone close to you ever lost what you considered to be a significant amount of money on a business or other investment that did not involve fraud? Have you ever had a lost investment returned?

39. Have you, a close friend or a family member ever been the victim of a fraudulent investment scheme? (*e.g.,* have you, a close friend or a loved one ever been induced to invest in a company/product through material misrepresentations and omissions?)

40. Have you or has anyone you know been affected personally by the bankruptcy of a company?

41. Have you or has anyone close to you worked for a company where there have been allegations of wrongdoing by corporate executives?

42. Have you ever bought or sold stock / shares of a company? Do you have any experience transferring shares of stock from one person to another?

  f. **Backdating Documents**

43. Have any of you ever "backdated" a document, meaning you put an earlier date to a document or agreement than the actual date? For what purpose? Were your intentions for backdating the document for illegal purposes?

44. Can any of you think of reasons why it would make sense to memorialize a record of a past event? How many of you would agree that there is a difference between fabricating the date of an event and backdating a document for the purpose of accurately memorializing the date of an event?

45. How many of you just feel like there is something inherently sneaky or suspicious about backdating a document to say that something began or became effective at a date earlier than the current date? How many of you feel like backdating a document suggests fraudulent conduct?

### g. Consulting Agreements

46. Have you ever been hired as an independent "consultant" or contractor to provide your professional expertise to a company on a temporary basis? If yes, did you sign a consulting agreement or any other type of contract or agreement?

47. Can you think of some circumstances where it would be beneficial for a company to hire someone as a consultant (paid hourly) rather than a full-time salaried employee?

48. Do you find anything inherently suspicious about a company that hires several different consultants?

### h. Hedge Funds / Pharmaceutical Companies

49. Have any of you heard of Elea Capital, MSMB Capital, MSMB Healthcare, Surepoint Capital, or Retrophin? What have you read or heard? Have any of you formed an opinion about any of these companies?

50. Do you have any strong, negative feelings about hedge funds or hedge fund managers?

51. Do you have any strong, negative opinions about the pharmaceutical industry?

52. Have you, a close friend or a family member ever invested in or been employed by either the healthcare, pharmaceutical or biotechnology industry?

### i. Relationship with Government

53. Do any of you know, or have any association—professional, business, or social, direct or indirect—with any member of the staff of the United States Attorney's Office for the Southern District of New York or the FBI or the IRS? Is any member of your family employed by any law enforcement agency, whether federal, state, or local?

54. Has any juror, either through any experience he or she has had, or anything he or she has seen or read, developed any bias, prejudice or other feelings for or against the United States Attorney's Office, the FBI, the IRS, or any other law enforcement agency?

55. Have you; or has any member of your family, either as an individual, or in the course of business, ever been a party to any legal action or dispute with the United States, or with any of the officers, departments, agencies, or employees of the United States, including the FBI or IRS? Have any of you had any legal, financial or other interest in any such legal action or dispute, or its outcome?

56. Has any juror, either through any experience he or she has had or anything he or she has seen or read, developed any bias or prejudice for or against the United States Attorney's Office for the Southern District of New York, the FBI, the IRS, or any other law enforcement agency?

j. **Experience as a Witness, Defendant, or Crime Victim**

57. Have any of you, or any of your relatives or close friends, ever been involved in or appeared as a witness in any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?

58. Have you, or any of those close to you, ever been questioned in any matter by a federal, state, or local law enforcement agency?

59. Have you ever been a witness or a complainant in any federal or state prosecution?

60. Are you, or is any member of your family, any associate or dose friend, now under subpoena or, to your knowledge, about to be subpoenaed in any criminal case?

13

61. Have you, or has any member of your family, any associate or close friend, ever been charged with a crime?

62. Have you, or have any of your relatives, associates, or close friends ever been the subject of any investigation or accusation by any federal or state grand jury, or by any congressional committee?

63. Have you, or any of your close friends or relatives, ever been a victim of a crime? *[As to any prospective juror who answers affirmatively, the Court is respectfully requested to inquire, at the bench or in the robing room, into the circumstances of each crime.]*

64. Have you, or any of your close friends or relatives, ever been stopped or interrogated by a member of the FBI, the IRS, or any other law enforcement agency? *[As to any prospective juror who answers affirmatively, the Court is respectfully requested to inquire, at the bench or in the robing room, into the circumstances of each incident and that prospective juror's reaction to how he or she was treated by the respective agency.]*

k. **Views on Expert Witnesses**

65. You may hear testimony in this case by expert witnesses. Have any of you had any experiences with experts, or do you have any general feelings about the use of experts, that would make it difficult for you to render a wholly fair and impartial verdict?

l. **Other Questions or Biases**

66. In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror. Apart from any prior questions, does any juror have the slightest doubt in his or her mind, for any reason whatsoever, that he or she will be able to serve conscientiously, fairly, and impartially in this case and to render

14

a true and just verdict without fear, favor, sympathy, or prejudice, and according to the law as it will be explained?

67. Do any of you have problems with your hearing or vision that would prevent you from giving full attention to all the evidence at this trial?

68. Are any of you taking any medication, or do any of you have any medical condition, that would prevent you from giving full attention to all the evidence at this trial?

69. Do any of you have any difficulty in reading or understanding English in any degree?

### m. Function of the Court and Jury

70. The function of the jury is to decide questions of fact. You are the sole judge of the facts and nothing that the Court or the lawyers say or do may encroach in any way on your role as the exclusive fact-finder. When it comes to the law, however, you are to take your instructions from the Court, and you are bound by those instructions. You may not substitute your own notions of what the law is, or what you think it should be. At the conclusion of the case, your job will be to determine whether or not Mr. Greebel is guilty of the alleged charges. Does any juror have any bias or prejudice that might prevent or hinder him or her from accepting the instructions of law that I will give you in this case?

### n. Juror's Background

71. The parties respectfully request that the Court ask each juror to state the following information:

    A. the juror's age;

    B. the juror's family status (including whether the juror has any children or grandchildren and, if so, the ages of the children);

15

    C. the area in which the juror resides and any other area the juror has resided during the last 10 years;

    D. where the juror was born;

    E. the juror's educational background, including the highest degree obtained;

    F. whether the juror has served in the military;

    G. the juror's occupation;

    H. the name and general location of the juror's employer, and the period of employment with that employer;

    I. the same information concerning other employment within the last five years;

    J. the same information with respect to the juror's spouse and any working children (only current employer);

    K. what newspapers and magazines the juror reads and how often;

    L. what television programs the juror regularly watches; and

    M. the juror's hobbies and leisure-time activities.

  o. **Requested Instruction Following Impaneling of the Jury**

72. From this point until the time when you retire to deliberate your verdict, it is your duty not to discuss this case, and not to remain in the presence of other persons who may be discussing this case. The rule about not discussing the case with others includes discussions even with members of your own family, and your friends.

73. If at any time during the course of this trial, any person attempts to talk to you or to communicate with you about this case, either in or out of the courthouse, you should immediately report such an attempt to me through my deputy clerk. In this regard, let me explain to you that the attorneys and the defendant in a case are not supposed to talk to jurors, not even to offer a friendly greeting. So if you happen to see any of them outside this

courtroom, they will, and should, ignore you.  Please do not take offense.  They will be acting properly by doing so.

Dated:   New York, New York
         April 21, 2017

>                             */s/* Reed Brodsky
>                             Reed Brodsky
>                             Winston Y. Chan
>                             Lisa H. Rubin
>
>                             GIBSON, DUNN & CRUTCHER LLP
>                             200 Park Avenue
>                             New York, NY 10166
>                             (212) 351-4000
>                             rbrodsky@gibsondunn.com
>                             *Counsel for Defendant Evan Greebel*

17