UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-                           Ind. No. 15 CR 637 (S-1) (KAM)

MARTIN SHKRELI,
EVAN GREEBEL,

              Defendants.
-------------------------------------------------------X

## DEFENDANT MARTIN SHKRELI'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF DISCLOSURE OF DOCUMENTS PURSUANT TO THE SUBPOENA SERVED ON KATTEN MUCHIN ROSENMAN

                                                  By:    **Brafman & Associates, PC**
                                                         *Attorneys for the Defendant Martin Shkreli*
                                                         767 3rd Avenue, 26th Fl.
                                                         New York, NY 10017
                                                         Tel – 212-750-7800
                                                         Fax – 212-750-3906
                                                         bbrafman@braflaw.com

Of Counsel:    Benjamin Brafman
                      Marc Agnifilo
                      Andrea Zellan
                      Jacob Kaplan

## Table of Contents

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT.........................................................................................................................4

    POINT ONE

    SHKRELI'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE
    PREVAILS OVER RETROPHIN'S CLAIM OF PRIVILEGE ..........................................4

    POINT TWO

    RETROPHIN'S PRIVILEGE WAIVER, ITS LAWSUIT AGAINST SHKRELI
    AND ITS PARTNERSHIP WITH THE GOVERNMENT IN BRINGING
    THIS PROSECUTION AMOUNT TO A WHOLESALE WAIVER OF ITS
    PRIVILEGE ............................................................................................................................9

CONCLUSION.....................................................................................................................10

## Table of Authorities

### Cases

United States v. Abu-Jihaad, 630 F.3d 102 (2d Cir. 2010) ................................................................ 8

United States v. Aref, 533 F.3d 72 (2d Cir. 2008) ............................................................................ 8

Chambers v. Mississippi, 410 U.S. 284 (1973) ................................................................................. 6

Crane v. Kentucky, 476 U.S. 683 (1986) ....................................................................................... 4, 7

Davis v. Alaska, 415 U.S. 308 (1974) ............................................................................................... 7

In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) .................................................. 10

In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93 (2d Cir. 2008) ................. 8

United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) ................................................................ 9

Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987) .............................................................................. 4

United States v. Renzi, 2010 WL 582100 (D. Ariz. Feb. 18, 2010) .............................................. 5, 7

Rock v. Arkansas, 483 U.S. 44 (1987) ...................................................................................... 4, 5, 7

Taylor v. Illinois, 484 U.S. 400 (1988) ............................................................................................. 4

United States v. Valenzuela-Bernal, 458 U.S. 858 (1982) ............................................................ 4, 8

Washington v. Texas, 388 U.S. 14, 20 (1967) ................................................................................... 6

United States v. Weisberg, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) ...................................... 5, 6

United States v. Wells Fargo, 132 F. Supp. 3d 558 (S.D.N.Y. 2015) ............................................ 7, 8

United States v. W.R. Grace, 439 F. Supp. 2d 1125 (Mont. 2006) ........................................ 5, 6, 7, 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA                       :
                                                :
                                                :
            -against-                           :    Ind. No. 15 CR 637 (S-1) (KAM)
                                                :
                                                :
MARTIN SHKRELI,                                 :
EVAN GREEBEL,                                   :
                                                :
                                                :
                        Defendants.             :
------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendant Martin Shkreli respectfully submits this Memorandum of Law in further support of his document subpoena to Katten Muchin Rosenman LLP ("Katten") seeking email communications and other records demonstrating his lack of intent, his good faith and his reliance on counsel in connection with the charged offenses. As reflected in its letter dated April 18, 2017 (Dkt. No. 194; attached as Ex. 1), Retrophin has announced that it will no longer negotiate with Shkreli's counsel over providing documents that are subject to the subpoena.

Therefore, this Memorandum of Law seeks a Court order directing Retrophin to provide Shkreli with all correspondence and documents Katten produced pursuant to the Court's November 30, 2016, December 6, 2016, and December 16, 2016 Orders for the following two reasons: First, the documents are relevant to Shkreli's defense in the upcoming criminal trial, and disclosure is required by the U.S. Constitution given the facts of this case; and second, Retrophin's strategic use of its attorney-client privilege, its lawsuit against Shkreli, and its

partnership with the prosecution in connection with this case amount to a wholesale privilege waiver.[1] Accordingly, Retrophin should be ordered to immediately disclose the documents.

## BACKGROUND

The relevant background as to the documents provided by Retrophin to the Securities and Exchange Commission ("SEC") and to the Eastern District of New York United States Attorney's Office has been set forth in prior motions, and we do not feel the need to take up the Court's time repeating it again. However, a few things must be emphasized. First, the evidence shows that at some point after receiving the first subpoena from the U.S. Attorney in May 2014, Retrophin commenced a dialogue with the Government. In response to this subpoena, Retrophin made two document productions: one on May 23, 2014 and another on September 15, 2014.

Second, two weeks after the second production, specifically on September 30, 2014, the Retrophin Board removed Shkreli as the CEO. By this point, it was clear that Retrophin is speaking with the U.S. Attorney and was in possession of information regarding Shkreli's and Greebel's fates, as reflected by the Steven Aselage email of October 4, 2014, presciently noting, "law enforcement will eventually be involved and that both you and the lawyer who has functioned in the inherent conflict of interest situation…will not be happy with the way it turns out." (Attached as Ex. 2). Rather than being truly clairvoyant, however, Aselage knew that Shkreli and Greebel would get indicted because he, and others at Retrophin, provided the attorney-client information to the Government to bring about this precise result. After all, how

---

[1] During our initial review of Katten's production, counsel for Mr. Shkreli determined that communications and documents about certain commercial subjects and commercial transactions would not be critical to our defense. Accordingly, in our discussions with Retrophin's counsel, we agreed not to dispute Retrophin's privilege assertions as to those commercial subjects and transactions. We stand by those verbal agreements and we are <u>not</u> asking that the Court Order Retrophin to turn those materials over to Mr. Shkreli. (See Dkt. No. 150, 1/23/17 Cooley Letter to Court referencing the Categorical Log which identifies the commercial subjects Shkreli agreed are unrelated; attached as Ex. 3).

else would Aselage know exactly who the defendants would be over a year before the filing of the first Indictment?

Third, the evidence of Retrophin's motive and actions is borne out by the 25 separate productions of documents – both Retrophin documents and MSMB documents – to the Government that served as the very foundation of this indictment. In particular, on September 11, 2015, Retrophin provided the U.S. Attorney with a 235-page presentation in large part related to the alleged fraud concerning the consulting and settlement agreements (Count 7). Twenty-five days before providing that presentation, Retrophin sued Shkreli in the U.S. District Court for the Southern District of New York, alleging that Shkreli was a "faithless servant" by "causing Retrophin to enter into settlement agreements with seven defrauded MSMB investors," and by causing Retrophin to enter into sham consulting agreements with three other defrauded MSMB investors. See Retrophin Complaint, p. 3 (Attached as Ex. 4).

Fourth, apparently persuaded by Retrophin's document productions and repeated presentations, the Government adopted Retrophin's self-interested lawsuit, incorporating it directly as Counts 7 and 8 of the Indictment. Moreover, since a critical aspect of the Retrophin suit was that Retrophin was being used to pay back defrauded MSMB investors, the Government adopted that part as well in Counts 1 through 6.

Fifth, on September 30, 2015, 19 days after the September 11th presentation to the Government, and 44 days after filing the lawsuit, Retrophin, through counsel, sent a letter to the U.S. Attorney's Office, in which they indicate that Retrophin had waived its attorney-client privilege with respect to certain communications with Katten. This after-the-fact letter was a disingenuous attempt to prevent Shkreli from defending himself against this prosecution and the lawsuit. Retrophin has released all the privileged information that it hopes would land Shkreli in

jail, and now attempts to prevent him from accessing his own communications with his counsel in an effort to defend himself. As will be argued below, Retrophin's actions in intentionally providing otherwise privileged documents to the prosecution and using them to craft the lawsuit against Shkreli operates as a wholesale waiver.

For the reasons set forth below, Shkreli is constitutionally entitled to his own communications with his counsel, and we respectfully request an appropriate Order from this Court.

## ARGUMENT

### POINT ONE

### SHKRELI'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE PREVAILS OVER RETROPHIN'S CLAIM OF PRIVILEGE

Shkreli's Fifth Amendment right to Due Process and Sixth Amendment right to compulsory process for obtaining witnesses and evidence to present a defense to these criminal allegations prevail over Retrophin's claim of privilege. The Supreme Court has repeatedly held that a criminal defendant's right to present a defense is guaranteed by, and founded upon, the U.S. Constitution. Rock v. Arkansas, 483 U.S. 44 (1987); Crane v. Kentucky, 476 U.S. 683 (1986); United States v. Valenzuela-Bernal, 458 U.S. 858 (1982). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane, 476 U.S. at 690. The Supreme Court further observed, "(o)ur cases establish, at a minimum, that criminal defendants have the right …to put before the jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39,56 (1987). In Taylor v. Illinois, 484 U.S. 400 (1988), the Court stated that the Sixth

4

Amendment protects "the right to present the defendant's version of the facts as well as the prosecution's." Id. at 409.

Accordingly, when a criminal defendant's constitutional right to present a defense conflicts with an evidentiary rule or privilege curtailing that right, the criminal defendant's right to present a defense tends to prevail. See Rock v. Arkansas, 483 U.S. at 44. This has been equally true when the criminal defendant's right to present a defense comes into conflict with the attorney client privilege. See United States v. Weisberg, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011); United States v. Renzi, 2010 WL 582100 (D. Ariz. Feb. 18, 2010); United States v. W.R. Grace, 439 F. Supp. 2d 1125 (Mont. 2006).

In Weisberg, the defendant requested the Court to issue Federal Rule of Criminal Procedure 17(c) subpoenas to three law firms (Baker & McKenzie LLC, Crowell & Moring LLP and Peter Ginsberg, Esq.), each of which represented parties other than Weisberg, and each of which claimed compliance with the subpoenaes would violate the attorney-client privilege. 2011 WL at *2. In conducting his analysis, Judge Garaufis found that "it is clear that criminal defendants have a constitutional right to present a complete defense." Id. at 4. The Court also observed that "in certain cases, a criminal defendant's constitutional right to present a defense may outweigh a third party's right to assert a privilege." Id. Judge Garaufis noted that the very wording of Federal Rule of Evidence 501, relating to privilege, contains an explicit exception for materials required by the Constitution. Specifically, Rule 501 reads, "Except as otherwise required by the Constitution of the United States, … the privilege of a witness (or) person… shall be governed by the principles of the common law…" Fed. R. Evid. 501 (emphasis added). Therefore, to the extent that a criminal defendant possesses a constitutional right to present a complete defense, the very wording of the evidence rule regarding privilege, Rule 501, appears

5

to make the outcome a forgone conclusion: the criminal defendant's right trumps the privilege created by Rule 501. As a result, Judge Garaufis directed a wide variety of documents to be turned over to Weisberg over the objection that they are privileged.[2]

In W.R. Grace, the court was confronted with a situation where four individual criminal defendants indicated they intended to advance an advice-of-counsel defense and would require documents and testimony over which the corporate co-defendant, W.R. Grace, claimed an attorney-client privilege. The Court again reaffirmed that criminal defendants have a Sixth Amendment right to present a defense, and that this right may require the disclosure of otherwise privileged materials. While recognizing that the attorney-client privilege is among the oldest privileges, the court noted, as did Judge Garaufis in Weisberg, that Rule 501 contains an express limitation for materials required by the Constitution. Id. at 1137.

The Court then recognized that the conflict "between the policy favoring confidentiality of attorney-client communications and the right of a criminal defendant to present evidence, including exculpatory evidence, in his defense," had not previously been addressed by the Supreme Court or the Ninth Circuit. Id. at 1138. Accordingly, the Court looked for analogies to conflicts between a defendant's right to present a defense and other rules tending to erode that right. In this regard, the Court noted three Supreme Court cases: Washington v. Texas, 388 U.S. 14, 20 (1967) (striking down a Texas statute "prohibiting criminal defendants charged as co-participants from testifying for one another at trial," because it impacted upon a defendant's right to present a full defense); Chambers v. Mississippi, 410 U.S. 284 (1973) (striking down a Mississippi evidence rule precluding certain types of hearsay because it curtailed a defendant's

---

[2] Judge Garaufis did not, however, order the disclosure of all documents requested by Weisberg. Rather, as to several areas, the Court found that the subpoenaes were not sufficiently precise to request relevant evidence.

6

ability to call witnesses); and Davis v. Alaska, 415 U.S. 308 (1974) (ruling that a criminal defendant must be able to cross examine a prosecution witness on sealed juvenile adjudications even if the State had an interest in the confidentiality of juvenile records).

The W.R. Grace court stated that these, and other, Supreme Court cases provided a "useful framework" for an analysis of the tension between the attorney client privilege and a defendant's constitutional right to present a defense, including the cross examination of prosecution witnesses. Accordingly, the Court found that the individual criminal defendants' constitutional right to present the requested evidence must prevail over the competing privilege advanced by the corporate defendant.[3]

Retrophin's reliance on United States v. Wells Fargo, 132 F. Supp. 3d 558 (S.D.N.Y. 2015) (see Dkt. No. 187) is misplaced. Wells Fargo involved a civil case where Wells Fargo and one of its employees, Kurt Lofrano, were named in a civil complaint alleging violations of the False Claims Act. Lofrano, but not Wells Fargo, interposed an advice-of-counsel defense to the claims. In that regard, Lofrano sought disclosure of communications he had with two of Wells Fargo's attorneys, but Judge Furman denied those disclosures based on Wells Fargo's objection on privilege grounds.

The Wells Fargo decision is distinct and lacks persuasive value for several reasons. First, as the court itself explained, the Wells Fargo case "is civil, not criminal." 132 F. Supp. 3d at 562. While a civil defendant certainly possesses the right to present a defense, those rights are not of the same dimension as a criminal defendant being prosecuted by the State. See Rock v. Arkansas, 483 U.S. 44; Crane v. Kentucky, 476 U.S. 683; United States v. Valenzuela-Bernal,

---

[3] In United States v. Renzi, 2010 WL 582100 (D. Ariz. Feb. 18, 2010) the court reaffirmed the proposition in Weisberg that a criminal defendant has a right to present a defense, and that this right is paramount to a claim of privilege. The court indicated that it was adopting the reasoning of the decision in W.R. Grace.

458 U.S. 858 (1982).[4] For this reason, Judge Furman in Wells Fargo distinguished W.R. Grace, stating "Grace, however, was a criminal case, and its analysis was based explicitly on a criminal defendant's rights under the Sixth Amendment….By contrast, this case is civil, and the Sixth Amendment – which is limited by its terms to 'criminal prosecutions' – does not apply." Therefore, because Judge Furman limited the holding in Wells Fargo to civil cases, and explicitly distinguished criminal cases, Wells Fargo does not apply here.

A second distinction between Wells Fargo and the instant case is that Wells Fargo did not waive its attorney-client privilege. In fact, Wells Fargo apparently refused to interpose an advice-of-counsel defense so that it would retain its privilege. As set forth above, and as will be argued further in POINT TWO, Retrophin not only waived its privilege, but did so strategically as part of its effort to sue Shkreli civilly and prompt the instant prosecution.

Accordingly, the decision in Wells Fargo, as with all civil cases, is fundamentally distinct and of no persuasive value over the instant case. Rather, the constitutional mandate is clear that a criminal defendant's ability to advance a defense, especially where as here that defense is comprised largely of the defendant's own communications, is paramount and shall not be curtailed by the claim of privilege by a corporation.

---

[4] In addition to these cases, a useful if imperfect analogy can be drawn to the jurisprudence that has developed in the area of the "state secret privilege," which "allows the government to withhold information from discovery when disclosure would be inimical to national security." United States v. Aref, 533 F.3d 72 (2d Cir. 2008), see also United States v. Abu-Jihaad, 630 F.3d 102 (2d Cir. 2010); In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93 (2d Cir. 2008). Even when disclosure could compromise national security, Courts nonetheless direct that a criminal defendant be provided with all information necessary for his or her defense consistent with the Constitution.

POINT TWO

RETROPHIN'S PRIVILEGE WAIVER, ITS LAWSUIT AGAINST SHKRELI
AND ITS PARTNERSHIP WITH THE GOVERNMENT IN BRINGING THIS
PROSECUTION AMOUNT TO A WHOLESALE WAIVER OF ITS
PRIVILEGE

At the end of September 2014 the Board of Retrophin removed Mr. Shkreli as CEO. Free of Shkreli, the Board flung open Retrophin's and MSMB's doors to the Government, providing it with thousands of documents many of which were privileged. Not only did Retrophin provide the Government with Retrophin and MSMB documents, including privileged documents, for good measure, Retrophin filed a lawsuit against Shkreli on August 17, 2015 and 25 days later made a 235-page presentation to the Government providing the blue prints for Counts 7. Clearly, Retrophin was posturing itself to accomplish two goals: to have Shkreli criminally prosecuted, and to appear to the Government as the blameless victim of Shkreli's misdeeds. Shortly after the presentation on September 11, 2015, Retrophin sent the U.S. Attorney a letter trying to limit its waiver to a select range of topics.

Now, after suing Shkreli, after providing privileged documents to the Government to be used in this prosecution and leading the Government through its files, Retrophin wishes to close the legal Pandora's box it kept open for so long by claiming privilege. In light of its strategic waiver which permitted Retrophin to use privileged material as a sword to prosecute and sue Mr. Shkreli, Retrophin invokes the privilege as a shield. Because of its efforts to use the privilege as a strategic weapon against Mr. Shkreli, Retrophin cannot now meet the burden of establishing privilege over any of its otherwise privileged communications. The law is clear that the burden of proving the existence of the privilege rests with the party asserting the privilege. United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). Moreover, "since the privilege stands in derogation of the public's right to every man's evidence…it ought to be strictly confined within

9

the narrowest possible limits consistent with the logic of its principle." <u>In re Grand Jury Proceedings,</u> 219 F.3d 175, 182 (2d Cir. 2000). Simply put, Retrophin has failed to come forward with any argument whatsoever that it should retain any privilege in light of these actions. Accordingly, Retrophin has waived its attorney-client privilege in a wholesale fashion and all documents should be provided to Shkreli regardless of any claim of privilege.

## CONCLUSION

For these reasons, we respectfully ask the Court to order Retrophin to produce all documents responsive to Shkreli's subpoena to Katten, with the exception identified in footnote 1.

Respectfully submitted,

/s/

Benjamin Brafman, Esq.
Marc Agnifilo, Esq.
Andrea Zellan, Esq.
Jacob Kaplan, Esq.
Brafman & Associates, P.C.
767 3rd Avenue, 26th Fl.
New York, New York 10017
(212) 750-7800

Cc: All Counsel (via ECF)
Counsel for Retrophin (via email)