UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA                    :
                                            :
                                            :
        -against-                           :      Ind. No. 15 CR 637 (S-1) (KAM)
                                            :
                                            :      **ORAL ARGUMENT REQUESTED**
MARTIN SHKRELI,                             :
EVAN GREEBEL,                               :
                                            :
                                            :
                Defendants.                 :
----------------------------------------------------------X


## MR. SHKRELI'S MEMORANDUM OF LAW IN RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE*


                        By:     **Brafman & Associates, PC**
                                *Attorneys for the Defendant Martin Shkreli*
                                767 3rd Avenue, 26th Fl.
                                New York, NY 10017
                                Tel – 212-750-7800
                                Fax – 212-750-3906
                                magnifilo@braflaw.com


Of Counsel:     Marc Agnifilo
                Andrea Zellan
                Jacob Kaplan
                Teny Geragos

## Table of Contents

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    The Government's FRE 404(b) Motion Should Be Denied in Its Entirety and the Government Should Be Precluded From Introducing the Alleged Prior Bad Acts.......................................................................................................... 2

        A.  Legal Standard ........................................................................................ 2

        B.  Elea Capital ............................................................................................. 3

        C.  Termination From RBC ......................................................................... 5

        D.  Harassment of Fearnow Share Recipient ............................................. 5

    II.    Reliance on Counsel for Counts One Through Six ..................................... 6

    III.    Mr. Shkreli Should Not Be Broadly Precluded From Admitting His Prior Commission of "Good Acts," Including the Highly Relevant and Admissible Evidence Regarding His Lack of Prior Criminal History and His Motivation for Founding Retrophin LLC ............................................ 6

    IV.    Evidence of Arbitration Relating to "Sham" Agreements .......................... 9

    V.    The Court Should Admit Evidence Relating to Animus By Retrophin Employees Toward  Mr. Shkreli, Especially As Relevant to Bias or Credibility of Witnesses ............................................................................... 11

    VI.    Lack of Harm to Investors ........................................................................ 14

        A.  Introduction .......................................................................................... 14

        B.  Evidence Regarding the Lack of Harm to Mr. Shkreli's Investors Is Relevant to Show That He Did Not Contemplate Actual Harm or Injury and to Refute the Government's Charges for Conspiracy to Commit Wire Fraud  ................................................................... 15

        C.  The Effectiveness and Prevalence of "No Ultimate Harm" Limiting Instructions Militates Against Wholesale Preclusion of Lack-of-Harm Evidence ...................................................................... 18

    VII.    Motion to Preclude the Government From Introducing Evidence That Attorney Evan Greebel Is Under Indictment ............................................ 19

    VIII.    Mr. Shkreli's Motion For  A Meaningful Witness List ........................... 20

CONCLUSION .................................................................................................................. 21

## Table of Authorities

### Statutes

18 U.S.C. § 1343 ....................................................................................................................16

### Rules of Evidence

Fed. R. Evid. 401 ............................................................................................................2,3, 4, 19

Fed. R. Evid. 403 ..............................................................................................................3, 6, 19

Fed. R. Evid. 404 .............................................................................................................2, 3, 4

### Cases

United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988)....................................................7, 8

Brinson v. Walker, 547 F.3d 387, 392 (2d Cir. 2008) ...........................................................13

United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992) ...........................................................13

Cary Oil Co., Inc. v. MG Refining & Marketing Inc., 257 F. Supp. 2d 768 (S.D.N.Y. 2003)....................11

United States v. Collorafi, 876 F.2d 303, 305 (2d Cir. 1989) ..................................................8

United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994)...........................................16, 17

Davis v. Alaska, 415 U.S. 308, 316 (1974) ............................................................................13

United States v. Dupree, 833 F. Supp. 2d 255, 267 (E.D.N.Y. 2011).....................................13

United States v. Dupree, 10-CR-637 (KAM) (E.D.N.Y. May 16, 2013) .................................14

United States v. Felder, 214 F. Supp. 3d 220 (S.D.N.Y. 2016)..............................................15

United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008)..................................................13

United States v. Fisher, 106 F.3d 622, 634 (5th Cir. 1997)...............................................10, 11

United States v. Garcia, 291 F.3d 127, 137 (2d Cir. 2002) .....................................................2

Gov't of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985) .........................................7

United States v. Grant, 196 F.2d 653, 657 (2d Cir. 1952).........................................................8

United States v. Greenberg, 835 F.3d 295, 305–06 (2d Cir. 2016)..............................16, 17, 19

Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir. 1994) .........................................................13

United States v. Huddleston, 485 U.S. 681, 691 (1988)............................................................2

Unite United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999) ................................................12

United States v. Litvak, 808 F.3d 160, 190 (2d Cir. 2015) .....................................................8

United States v. McCallum, 584 F.3d 471, 476 (2d Cir. 2009)..............................................2, 3

United States v. Novak, 443 F.3d 150, 156 (2d Cir. 2006) ......................................................16

Ocasio v. United States, 136 S. Ct. 1423 (2016)....................................................................15

Ohler v. United States, 529 U.S. 753 (2000)..........................................................................10

United States v. Okun, Cr. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) ...............17

Park West Radiology v. Carecore National, LLC, 675 F. Supp. 2d 314 (S.D.N.Y. 2009) ...........10, 11

Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987).....................................................................13

United States v. Rivera, No. 13-CR-149 KAM, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) .........8

United States v. Scott, 677 F.3d 72, 79 (2d Cir. 2012)...........................................................2, 3

United States v. Stewart, No. Cr. 03-717, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004)..................14

United States v. Torres, 901 F.2d 205, 235 (2d Cir. 1990) ......................................................7

## Jury Instructions

Sand, Modern Federal Jury Instructions, §3.01, Instruction 3-1 (June 2014) ............................................19

## PRELIMINARY STATEMENT

Martin Shkreli, through his counsel, responds to the Government's motions in limine in which the Government requests for the following orders:

1. Admitting evidence that Shkreli engaged in three alleged prior crimes or bad acts that are direct, or "other act," evidence of the charged crimes, specifically:

   a. Shkreli's alleged "mismanagement" of Elea Capital;

   b. Shkreli's termination from RBC for allegedly concealing improper trades; and

   c. Shkreli's harassment and threats to a Fearnow share recipient and his family;

2. Precluding evidence or argument that Shkreli relied on the advice of counsel in connection with Counts One through Six of the Superseding Indictment;

3. Precluding evidence or argument of irrelevant details of Shkreli's background and plans if acquitted;

4. Precluding hearsay evidence of arbitrations relating to the sham consulting agreements into which Shkreli caused Retrophin to enter;

5. Precluding evidence and argument regarding the Government's motives for prosecution;

6. Precluding evidence or argument regarding the lack of ultimate harm to investors; and

7. Precluding evidence or argument regarding Shkreli's prior good acts or lack of criminal history.

In addition, the defense moves for the following relief:

1. An order directing the Government to provide a meaningful witness list, rather than the seventy-five person list provided thus far; and

2. An order precluding the Government from disclosing to the jury that Evan Greebel has been indicted.

## ARGUMENT

I.   **The Government's FRE 404(b) Motion Should Be Denied in Its Entirety and the
     Government Should Be Precluded From Introducing the Alleged Prior Bad Acts**

The Government seeks to admit three uncharged criminal or otherwise bad acts as part of

its direct case.  The Government offers two theories for the admissibility of these three acts.

First, that the acts are direct evidence of a charged offense and are relevant under Federal Rule of

Evidence 401.  Second, that they are relevant as other acts under Rule 404(b).

### A.    Legal Standard

Evidence is relevant if it has any tendency to make a fact more or less probable than it

would be without the evidence; and the fact is of consequence in determining the action.  Fed. R.

Evid. 401.

If evidence is relevant and offered for a proper purpose, this Court must still consider

whether under FRE 404(b) its probative value is substantially outweighed by its prejudicial

effect.  Fed. R. Evid. 404(b).  If the evidence is deemed admissible, an appropriate limiting

instruction that the evidence is to be considered for a proper purpose only, and not as evidence of

the defendant's propensity for wrongdoing or criminality, must be read to the jury.  United States

v. Scott, 677 F.3d 72, 79 (2d Cir. 2012), quoting United States v. Huddleston, 485 U.S. 681, 691

(1988).  If the Government is offering other act evidence to establish a defendant's knowledge or

intent, the Second Circuit "requires that the Government identify a similarity or connection

between the two acts that makes the prior act relevant to establishing knowledge of the current

acts."  United States v. Garcia, 291 F.3d 127, 137 (2d Cir. 2002); United States v. McCallum,

584 F.3d 471, 476 (2d Cir. 2009).

Under the Second Circuit's "inclusionary approach" to other act evidence, a proper

purpose is any purpose other than to demonstrate criminal propensity.  Id.  The Second Circuit

"emphasized that this inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence when . . . it is offered to prove propensity." <u>Scott</u>, 677 F.3d 72, 79 (2d Cir. 2012) citing <u>United States v. McCallum</u>, 584 F.3d 471, 477 (2d Cir. 2009) (holding that the admission of evidence of prior criminal convictions was an abuse of discretion where the Government sought its admission for the proper purpose of proving identity, but where the potential prejudice far outweighed the probative value).

For the reasons indicated below, Mr. Shkreli objects to the Government's motion and asks that the evidence set forth in the Government's memorandum be deemed inadmissible, as such evidence lacks sufficient relevance under FRE 401, is unduly prejudicial under FRE 403 and is not proper evidence of prior crimes or other acts under FRE 404(b).   These three prior bad acts will be analyzed individually.

**B.      Elea Capital**

The Government contends that some of Mr. Shkreli's conduct as the Founder and Managing Partner of Elea Capital is relevant and probative of whether or not Mr. Shkreli intended to deceive the investors in MSMB Capital and MSMB Healthcare ("the MSMB entities")   Under FRE 401 and FRE 403, Mr. Shkreli's management of Elea Capital and the trading losses that ended the Fund are irrelevant, inadmissible and would involve a mini-trial with competing evidence.   However, we agree that two discreet facts about Elea Capital are relevant and admissible in connection with this trial: first, that GY was an Elea Capital investor; and second, that Elea Capital lost the money that GY invested.   Nothing else about Elea Capital is probative of any question of fact in this case.

As part of its effort to make Mr. Shkreli's management of Elea relevant to the facts in this case, the Government asserts that Mr. Shkreli was obligated to disclose to MSMB investors that

while managing the Elea fund he made trades that lost most of investor money.   But the Government provides no authority for that contention.   In fact, Mr. Shkreli had no obligation to affirmatively disclose his trading record at Elea, and there is no evidence that any investor inquired about his trading record at Elea before investing in the MSMB funds.

The Government also argues that because Mr. Shkreli had been through the failure of the Elea Fund, the trading losses, the subsequent shut down of the fund and the Lehman Brothers' judgment, he should have used the Elea failure to analyze what would ensue for MSMB Capital Fund and the investors following the Orex trades. They impose further non-existent obligations on Mr. Shkreli and suggest Mr. Shkreli was obligated to analogize Elea and MSMB (citing no authority for this requirement either) and he thus knew he was required to disclose the Orex trade losses and potential consequences to investors.   Again, they cite no authority for these supposed disclosure requirements.

The Government's argument in support of the relevance of Elea Capital is rife with manufactured obligations for Mr. Shkreli in order to create a bad act, where there is none.  There was a bad trade, and a bad trade is just a bad trade.  The manufactured obligations did not exist in the Elea Capital Fund and they did not exist in the MSMB Entities either.   There is no bad act in connection with Elea Capital that is probative of any of the facts in issue in this trial, and accordingly Elea Capital and Mr. Shkreli's management of Elea Capital, are irrelevant and inadmissible under FRE 401 and FRE 404(b).

As noted, we agree that evidence may be elicited that GY was an Elea investor and that GY's investment capital was lost.  As to the specifics of why Elea lost this capital, or, as the Government contends, was mismanaged, that is not sufficiently relevant to overcome the prejudice flowing from this evidence.

### C.   Termination From RBC

Shkreli's short tenure at RBC is irrelevant.  In addition, to the extent that the Government intends to show that he made one or more bad trades, the import of that evidence is that it paints Shkreli as a bad trader.  If his acumen as a trader is relevant to fact determinations that a jury will be making during this trial, then Mr. Shkreli's entire trading record would be relevant, his good calls and his bad calls.

To the degree that there is an allegation that Mr. Shkreli disobeyed his supervisors at RBC, it is only an allegation that has not been substantiated or proven and is irrelevant for that reason alone.[1]  However, it is also irrelevant because even if he disobeyed a supervisor, that act by Mr. Shkreli is not probative of his intent or any other fact to be determined by this jury.

The RBC evidence sought by the Government has no legitimate purpose.  Rather, it shows only the improper purpose of propensity.  Therefore, this evidence should be excluded.

### D.   Harassment of Fearnow Share Recipient

Mr. Shkreli's reaction to TP's theft of Retrophin shares is not direct evidence of any crime alleged in this Indictment.  Rather than complete the story of Count 8, the allegations by TP are unverified and have no place in this trial.   As the Government well understands, these unsubstantiated allegations of harassment will serve only to inflame the passions of the jurors, creating a severe risk of prejudice to Mr. Shkreli.

Jurors could have such a visceral reaction to the allegations of harassment by TP that the jury will convict without proof beyond a reasonable doubt for every element of the crimes

---

[1] If the Court grants the Government's request, Mr. Shkreli will challenge any evidence suggesting that he committed any bad act while employed at RBC, and this irrelevant evidence with no probative value, will distract jurors from the fact determinations that bear on the ultimate verdict.  The distraction in and of itself carries greater potential for prejudice to Mr. Shkreli than the events at RBC carry in probative value.

charged.  Furthermore,  if these alleged bad acts are admitted by the Court it will become a mini-trial within the trial because the defense will present evidence that there was no hacking of TP's or his families' social media and email accounts by Mr. Shkreli.  This evidence is inadmissible under FRE 403, as it will cause unfair prejudice, confuse the issues, and lead undue delay.

Ultimately, this is a fraud trial that will turn on a few discrete issues of intent, good faith and reliance on counsel.  For the Government to seek to throw the evidentiary equivalent of a hand grenade into these proceedings with this incendiary evidence will  greatly prejudice Mr. Shkreli.

## II.    Reliance on Counsel for Counts One Through Six

Mr. Shkreli will not maintain a reliance on counsel defense for Counts One through Six.

## III.   Mr. Shkreli Should Not Be Broadly Precluded From Admitting His Prior Commission of "Good Acts," Including the Highly Relevant and Admissible Evidence Regarding His Lack of Prior Criminal History and His Motivation for Founding Retrophin LLC

Based on the Federal Rules of Evidence and well-established Second Circuit case law, this Court should reject the Government's attempt to broadly preclude Mr. Shkreli from submitting relevant and admissible evidence or argument on his prior commission of good acts. The Government specifically points to evidence regarding his lack of prior criminal history and his motivation for founding Retrophin LLC. The Government incorrectly characterizes this type of evidence as character evidence, when instead the evidence provides relevant and admissible background information regarding the case, as well as evidence of Mr. Shkreli's good-faith intent.[2]

---

[2] As a preliminary matter, the Government seems to also ask the Court to prevent Shkreli, for example, from saying he is working class, Albanian or has Albanian parents, or that he taught himself chemistry.  These are the types of objections best made at the time a question is asked. So, while we agree with the Government, as a general proposition, that "irrelevant details" should not be admissible, we think the Court should wait until the trial in determining which

"The trial court is entitled to wide discretion concerning the admissibility of background evidence." United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988).  This background evidence is not limited to background information elicited during defendant's testimony and can be introduced through extrinsic evidence. United States v. Torres, 901 F.2d 205, 235 (2d Cir. 1990) (finding that taped conversations were properly admitted as evidence of background information).  The Second Circuit in Blackwell found that "it was error to strike the evidence of a prior clean record" because "it is [] something that the trier of the fact has a right to know in gauging the credibility of a witness." Id.  Notably, the Government in Blackwell, like the Government here, relied on Gov't of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985), to argue that evidence of the defendant's lack of a criminal record should be precluded as evidence of good character.  The Second Circuit correctly points out that the court in Grant found that while the evidence of prior clean record is not admissible as proof of good character, the evidence was admissible as background information. Grant, 775 F.2d at 513 ("The routine admission of evidence that an accused has never been arrested would thus seem to be a function of years of practice and of the common sense notion that it is helpful for the trier of fact to know something about a defendant's background when evaluating his culpability.")

In addition, the Second Circuit has held that "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind." United States v. Collorafi, 876 F.2d 303, 305 (2d Cir. 1989).  "[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." United States v. Grant, 196 F.2d 653, 657 (2d Cir.

details are relevant and which are not.  This portion of the Government's motion, to the extent it is discernible, should be denied at this time and revisited as appropriate during the trial.

1952); see also United States v. Litvak, 808 F.3d 160, 190 (2d Cir. 2015) (reversing the lower court for exceeding its allowable discretion in excluding testimony that could provide the basis for an inference "that would support [defendant's] attempt to introduce a reasonable doubt as to his intent to defraud, i.e., that he held an honest belief that his conduct was not improper or unlawful."); United States v. Rivera, No. 13-CR-149 KAM, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) ("[T]o the extent that evidence of good conduct is relevant to the charged conduct (i.e., to establish an alibi) or may be necessary to prevent misleading the jury, the court will consider its introduction at trial.").

Like in Blackwell, evidence of Mr. Shkreli's lack of a prior criminal record is relevant to the background of the case. This evidence provides relevant information to the trier of fact regarding Mr. Shkreli's background when evaluating his culpability, as well as information regarding his credibility if Mr. Shkreli testifies. In addition to being relevant general background evidence, this evidence also goes to Mr. Shkreli's state of mind regarding the lawfulness of his conduct. The lack of prior arrests or charges in relation to similar conduct is evidence of his good-faith intent with regards to the acts at issue in this case. The admission of a document indicating a prior clean record or a simple short question regarding Mr. Shkreli's criminal history on direct examination is highly relevant and its probative value is not substantially outweighed by any danger of unfair prejudice or jury confusion. Therefore, the Government's motion to preclude evidence of Mr. Shkreli's lack of prior criminal history should be denied.

The Government also argues that Mr. Shkreli should be precluded from presenting relevant evidence regarding Mr. Shkreli's efforts to find treatments for diseases such as myotubular myopathy or Duchenne Muscular Dystrophy. Mr. Shkreli's motivation and decision to found Retrophin and the type of pharmaceutical treatments that Retrophin was working to

8

develop are plainly relevant as background evidence regarding the company that is a major player in this case.   Moreover, as stated by the Government itself, this type of evidence is relevant to communications that Mr. Shkreli may have made to the investors at issue in this case. Gov. Mot. in Limine, Dkt. 230, at 35.   Evidence of Mr. Shkreli's reasons for founding Retrophin is also highly probative of Mr. Shkreli's good-faith intent and will be relevant when consultant agreement recipient DB testifies.   Additionally, Mr. Shkreli's personal investment in Retrophin and the treatments it was working to develop are highly probative of Mr. Shkreli's good-faith in making decisions for the benefit of the company.

Given the highly speculative nature of the Government's arguments regarding Mr. Shkreli's intention to introduce this evidence, Mr. Shkreli respectfully requests that this Court consider the evidence as it is presented and rule accordingly, rather than make a sweeping ruling precluding any evidence of prior good acts without any context.

## IV.   Evidence of Arbitration Relating to "Sham" Agreements

The Government wants to continue to refer to the SR consulting agreement as a "sham" while it keeps the jury from learning that in fact a neutral arbitrator, having heard the live testimony of several witnesses, ruled that the SR consulting agreement was legitimate and enforceable, i.e. not a "sham."   However, the Court should not allow the Government to mischaracterize the agreement as a "sham" when an arbitrator found exactly to the contrary.

Under similar circumstances, the Fifth Circuit found an arbitration result was admissible where, as here, the result was inconsistent with the Government's characterization.   See United States v. Fisher, 106 F.3d 622, 634 (5th Cir. 1997) ("the arbitration results were . . . offered . . . to show that contrary to the Government's assertions, the defendants' legal position against the

players was not a 'ruse' or a position taken in bad faith.")   The only difference between Fisher[3] and the instant case is that the Government used the term "ruse" in Fisher, and the term "sham" here.  In either case, the legal proposition is the same: the Government can't use the label "ruse" or "sham" when an arbitration concluded it was neither.  Rather, the arbitration result becomes admissible to correct the Government's clearly errant characterization.  The arbitration result is admissible here for precisely the reason it was admissible in Fisher, specifically to show that Shkreli acted in good faith and to contradict the Government's mantra that the agreement was a "sham."

The Government errantly relies on a District Court decision in Park West Radiology v. Carecore National, LLC, 675 F. Supp. 2d 314 (S.D.N.Y. 2009), but this case actually supports Mr. Shkreli's contention that the Government not be permitted to falsely label this agreement as something it clearly is not.  In Park West Radiology, the ultimate issues of fact did not turn on the arbitration result that the plaintiffs were seeking to admit.  Rather, the plaintiff's contention was that the arbitration showed the animosity between the parties.  The Court ruled that the arbitration decision was hearsay, and inadmissible.  However, the Court went on to state, "(i)f at trial, Defendants introduce evidence relating to the existence of the arbitration that the Court finds could create a false impression, Plaintiffs will be allowed to introduce the Arbitration Decision as a rebuttal to correct the impression." Id. at 330.  Here, the Government has plainly stated, even through the wording of its in limine motion that this agreement is a "sham."  That is

---

[3] Fisher was abrogated by the Supreme Court's decision in Ohler v. United States, 529 U.S. 753 (2000) on an issue unrelated to the admissibility of the arbitration result.  Specifically, the Supreme Court resolved a Circuit-split on the issue of appellate-reviewability of certain in limine rulings.  However, the Supreme Court's decision does not impact on the Fifth Circuit's decision concerning the admissibility of an arbitration result to correct the Government's mischaracterization.

precisely the type of false impression the Court in <u>Park West Radiology</u> contemplated when it ruled that a false impression would cause the admission of the Arbitration Decision.

The other decision relied upon by the Government, <u>Cary Oil Co., Inc. v. MG Refining & Marketing Inc.</u>, 257 F. Supp. 2d 768 (S.D.N.Y. 2003), is completely distinguishable. There, the court was concerned that the jury would assign more blame to the *civil* defendants if it learned that an arbitrator found against the defendants in an employment dispute. With little analysis, and no reference to specific rules of evidence, the Court found this would be unduly prejudicial to the civil defendants. The <u>Cary Oil</u> decision has no relevance to this criminal case.

Because the Government is seeking to mischaracterize the consulting agreement as a "sham," the decisions in <u>Fisher</u> and <u>Park West Radiology</u> permit the admission of the arbitration result that the agreement is valid, legitimate and enforceable to correct the Government's allegation.

## V.   The Court Should Admit Evidence Relating to Animus by Retrophin Employees Toward Mr. Shkreli, Especially As Relevant to Bias or Credibility of Witnesses

By making a motion to preclude evidence of the Government's motive to prosecute Mr. Shkreli, the Government shows it misunderstands Shkreli's point concerning the relationship between it and Retrophin. The point has been that <u>Retrophin</u> has a unique motive to prosecute Shkreli. The Government's motive to prosecute him is the same as in virtually every other case. So, if the Government is worried that the defense is going to say that the Government is prosecuting Shkreli in order to get him out of Retrophin, the defense does not currently plan on saying that. However, that Retrophin and its employees had biased reasons for referring this case for prosecution should be fair cross-examination for certain witnesses.

First, evidence that Retrophin has sought to use the Government to achieve its own litigation objectives with respect to Mr. Shkreli is relevant and admissible, even if it does not

ultimately rise to the level of vindictive prosecution.  Mr. Shkreli has the right to offer such evidence to demonstrate that Retrophin prevailed upon the Government to prosecute Mr. Shkreli in this case.  While proving vindictiveness through a "stalking horse" theory involves satisfying a high burden, courts in the Second Circuit remain open to evidence relating to such assertions. United States v. Koh, 199 F.3d 632, 640 (2d Cir. 1999) (laying out the standard for vindictive prosecution, including through a "stalking horse" theory, but ultimately holding that a court-appointed receiver of a business, which the defendant allegedly fraudulently operated, notifying the U.S. Attorney of illegal activities did not constitute "prevailing upon" such that the U.S. Attorney acted as a "stalking horse").

Second, Retrophin's interactions with the Government in the months prior to Mr. Shkreli's December 17, 2015 arrest were significant, and the impact of those contacts on the prosecution are nonetheless relevant and should be admitted.  Specifically, throughout this time period, Retrophin voluntarily produced documents to the Government, cherry-picking documents to support its case and waiving attorney-client privilege over some categories of documents and not others.  By its own admission, Retrophin's counsel also met with the Government on at least three occasions, which coincided with Retrophin's own internal investigation and the August 2015 filing of a civil action against Mr. Shkreli.  That complaint features a litany of allegations incorporated almost verbatim by the Government in both the original and superseding indictments.

Additionally, Mr. Shkreli reserves the right to challenge the bias or credibility of any witnesses who testify at trial, including current or former Retrophin officers, directors, employees, consultants, agents, and advisors that may harbor hostility toward Mr. Shkreli.  It is a bedrock principle that a criminal defendant is entitled to cross-examine Government witnesses

regarding potential biases or credibility issues.  "It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." Brinson v. Walker, 547 F.3d 387, 392 (2d Cir. 2008) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987)); see also United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008) ("One way of discrediting a witness is 'cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.' 'The motivation of a witness in testifying, including her possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination.'" (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974) and Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir. 1994)).

Your Honor cited to these principles in an Order ruling on motions *in limine* in another white collar criminal case. See United States v. Dupree, 833 F. Supp. 2d 255, 267 (E.D.N.Y. 2011). Generally speaking, issues of witness bias and credibility are crucial, and appropriate for a jury. Id. at 265 ("The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility . . . .") (quoting United States v. Butt, 955 F.2d 77, 82 (1st Cir. 1992)). Even in one of the primary cases on which the Government relies, the court explicitly states: "The defendants are, of course, free to raise questions about the credibility and reliability of cooperating witnesses." United States v. Stewart, No. Cr. 03-717, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004).

Jury instructions in criminal cases routinely address witness bias and credibility, further supporting the importance of cross-examination for instances of prejudice against defendants. See United States v. Dupree, 10-CR-637 (KAM) (E.D.N.Y. May 16, 2013), Jury Instructions

13

Court Ex. 2 at 13-15 ("How much you choose to believe any witness may be influenced by any bias that you may perceive the witness to have or any interest the witness may have in the outcome of the case.  In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.").

Accordingly, Mr. Shkreli has the fundamental right to challenge the bias or credibility of any witnesses who testify at trial, including current or former Retrophin officers, directors, employees, consultants, agents, and advisors.  Moreover, as set forth above, Mr. Shkreli has the right to offer evidence of Retrophin's animus and hostility toward him.

## VI.   The Lack of Harm to Investors

### A.   Introduction

Through its motion, the Government takes the remarkable position that the defendant should be prevented from showing that the "victims" of Counts One through Six made hundreds of thousands and, in some cases, millions of dollars from Shkreli's "fraud."   One of the downsides of bringing a sweeping fraud case where the victims became millionaires, if they were not ones already, is that the accused may want to make that fact known.  The Government here asks the Court to prevent Shkreli from telling the jury what actually happened: namely that the "victims" of counts one through six made hundreds of thousands or millions of dollars.

A criminal defendant has every right to put evidence before a jury that he worked tirelessly to make money for his investors, and that when one investment vehicle stalled, he started another that made his investors not only whole, but rich.   That the Government contemplates a contrary narrative is why we have jury trials.  It will be up to the jury to decide

14

whether Shkreli acted in good faith or with fraudulent intent.   Moreover, at the end of the evidence, it will be up to the Court to decide which legal principles to charge to the jury. However, there is a clear evidentiary dispute as to Shkreli's good faith, and each side is within its right to elicit evidence tending to support its view of this central factual issue.   Therefore, to the extent that the Government is seeking to preclude the defense from arguing that Shkreli acted in good faith, such motion must be denied.

**B.    Evidence Regarding the Lack of Harm to Mr. Shkreli's Investors is Relevant to Show That He Did Not Contemplate Actual Harm or Injury and to Refute the Government's Charges for Conspiracy to Commit Wire Fraud**

Mr. Shkreli should be allowed to introduce evidence that his investors suffered no harm to show his good faith and his lack of fraudulent intent with respect to the Government's charges for conspiracy to commit wire fraud.   In order to be guilty of conspiracy, a defendant must enter an agreement with at least one other person with the specific intent that some member of the conspiracy commit all of the elements of the underlying substantive offense.   See Ocasio v. United States, 136 S. Ct. 1423 (2016); United States v. Felder, 214 F. Supp. 3d 220 (S.D.N.Y. 2016).   In the case of conspiracy to commit wire fraud, this means that a defendant must enter an agreement with the specific intent to affect some "contemplated  . . . actual harm or injury[.]" United States v. Greenberg, 835 F.3d 295, 305-06 (2d Cir. 2016) ("[T]he wire fraud statute requires the Government to show proof of a 'scheme or artifice to defraud,' 18 U.S.C. § 1343, which itself demands a showing that . . . defendants *contemplated some actual harm or injury to their victims.*") (emphasis added) (citations omitted); United States v. Novak, 443 F.3d 150, 156 (2d Cir. 2006) (explaining that while the mail and wire fraud statute "does not require the Government to prove that the victims of the fraud were actually injured, the Government must, at a minimum, prove that defendants *contemplated* some actual harm or injury to their victims") (emphasis in original) (citations omitted); United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir.

15

1994) ("[M]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim.") (citation and quotation marks omitted).

The Government asserts that evidence regarding the lack of harm to Mr. Shkreli's investors is irrelevant. See Gov. Mot. In Limine, Dkt. 230, at 33. But the Government misses the point. The question is not merely whether Mr. Shkreli "knowingly made representations and omissions to [his] investors in connection with their investments in MSMB Capital and MSMB Healthcare," id., but also whether Mr. Shkreli "contemplated some actual harm or injury" to those investors, Greenberg, 835 F.3d at 306. Mr. Shkreli will offer evidence that, since the founding of Retrophin, he intended for MSMB investors to share in (and benefit from) Retrophin's growth and prosperity. Mr. Shkreli will also introduce evidence that substantially all of the MSMB investors ultimately realized substantial gains as a result of the Retrophin shares they received.

The Government argues that this evidence is irrelevant. But this evidence is highly probative of a crucial issue for Mr. Shkreli's defense. Indeed, such evidence is especially relevant to whether Mr. Shkreli "contemplated some actual harm or injury" to his investors. Greenberg, 835 F.3d at 305-306.

Evidence that all of the investors made money will show not only that Mr. Shkreli intended no harm to his investors, but also that Mr. Shkreli always intended for such investors to "profit[] on their investments in either MSMB Capital or MSMB Healthcare" as a result of their ownership and subsequent sale of Retrophin shares. Gov. Mot. In Limine, Dkt. 230, at 32. Such evidence is highly probative of Mr. Shkreli's good faith and his scienter with respect to the

16

charged conduct, and precluding this evidence at trial would deprive Mr. Shkreli of the ability to fully and fairly defend himself against the Government's allegations.

None of the cases cited by the Government address the specific requirement that alleged misrepresentations "must be coupled with a contemplated harm to the victim." D'Amato, 39 F.3d at 1257. Nor does the Government identify the alleged harm contemplated by Mr. Shkreli. Instead, the Government quotes an out-of-circuit, unpublished opinion for the proposition that "a well-intentioned belief that a business venture . . . would be successful . . . does not supply a basis for a defense that there was a good faith belief that a representation was true." Gov. Mot. In Limine, Dkt. 230, at 31 (citing United States v. Okun, Cr. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009)). But the Government's reliance on Okun is ill-founded. As a general matter, the Okun court *denied* the Government's motion to preclude evidence of a defendant's intent to repay his investors, holding that "a definitive ruling . . . is premature." Okun, 2009 WL 414009, at *8. Additionally, the Okun court explained that since the Government had "put the veracity of [the defendant's] statements at issue, . . . he [was] perforce permitted to demonstrate that veracity." Okun, 2009 WL 414009, at *6.

Here, where the Government has charged Mr. Shkreli with three counts of conspiracy to commit wire fraud, and where the Government will seek to prove that Mr. Shkreli "contemplated some actual harm" to his investors, he should be, like the defendant in *Okun*, "permitted to demonstrate" his good faith by introducing evidence that he sought to make his investors whole. Thus, in order to adequately defend himself, Mr. Shkreli must be allowed to introduce relevant and probative evidence regarding the lack of harm to, and the financial benefit received by, MSMB investors.

### C.    The Effectiveness and Prevalence of "No Ultimate Harm" Limiting Instructions Militates Against Wholesale Preclusion of Lack-of-Harm Evidence

Wholesale preclusion of any and all evidence regarding the lack of harm to Mr. Shkreli's investors would be premature and overly broad.  The Government cites several cases where courts have issued a limiting instruction regarding lack-of-harm evidence.  Gov. Mot. In Limine, Dkt. 230, at 31-32.  The Government then makes a rather large (and unfounded) leap, arguing that—because the "Second Circuit has routinely upheld the issuance of a 'no ultimate harm' charge"—there is "no reason to wait" for lack-of-harm evidence to be introduced by Mr. Shkreli, and such evidence "should be precluded in advance of trial." Id.  But the Government cites no authority for the proposition that wholesale preclusion of evidence is interchangeable with a jury instruction.  In fact, the cases cited by the Government demonstrate the exact opposite—i.e., that several courts have *allowed* a defendant to introduce lack-of-harm evidence and that a limiting instruction provides adequate protection from the jury's improper consideration of such evidence.  The Government offers no explanation why this Court should bar evidence altogether when there are perfectly suitable, less drastic means to guard against the jury's consideration of certain pieces of evidence.  See Fed. R. Evid. 105 (where evidence is admitted for limited purposes, courts can "restrict the evidence to its proper scope and instruct the jury accordingly").

As the Government is well-aware, Mr. Shkreli—as a criminal defendant—has no affirmative duty to advance a case in chief, and the particular pieces of evidence or testimony relevant to his defense will very likely change based on the Government's theories and arguments at trial.  To preclude him from introducing relevant evidence now would be premature and excessive.  This is especially true where (i) the lack-of-harm evidence is highly probative of Mr. Shkreli's good faith; (ii) such evidence is relevant to the question of whether Mr. Shkreli possessed the requisite intent for the charged conduct—i.e., whether he "contemplated some

18

actual harm or injury" to his investors, Greenberg, 835 F.3d at 305-306; and (iii) the Court can instruct a jury regarding the proper scope of Mr. Shkreli's lack-of-harm evidence.

**VII.** **Motion to Preclude the Government From Introducing Evidence That Attorney Evan Greebel Is Under Indictment**

Pursuant to FRE 401 and 403 Mr. Shkreli moves to preclude the Government from introducing evidence that Mr. Greebel has been indicted.  Evidence of Mr. Greebel's indictment will not tend to make any fact more or less probable but runs a considerable risk of confusing jurors.  Mr, Shkreli's assertion of a reliance of counsel defense as to Counts 7 and 8 does not change this calculus.

When the jury receives instructions from the Court among the instructions they will hear is the instruction that an indictment is not evidence; that it "is merely a statement of charges and not itself evidence."    Sand, Modern Federal Jury Instructions, §3.01, Instruction 3-1 (June 2014).   How are jurors to reconcile the instruction that an indictment is not evidence with admission into evidence of the fact of Mr. Greebel's indictment?  The incompatibility of the instruction with the information of Mr. Greebel's indictment will leave jurors confused and invite jurors to reconcile the incompatibility for themselves.  This circumstance creates an undue risk of prejudice for Mr. Shkreli.    Jurors will be left to speculate as to what it means that Mr. Greebel has been indicted.  Its likely that many jurors will speculate that the reason Mr. Greebel is indicted, but not on trial with Mr. Shkreli is because Mr. Greebel entered a guilty plea.  From there it is a small inferential leap for the jurors to decide that if Mr. Shkreli's attorney and co-defendant is guilty, Mr. Shkreli must also be guilty.    Becuase the fact of Mr. Greebel's

indictment has no probative value and creates a significant risk of prejudice to Mr. Shkreli the Government should be precluded from introducing it at trial.[4]

## VIII.   Mr. Shkreli's Motion For A Meaningful Witness List

This Court issued a scheduling Order on Jan 13, 2017 in which it Ordered the parties to disclose witness lists on or before April 21, 2017.   Pretrial Scheduling Order, Dkt. 147. Following the Court's ruling granting Mr. Shkreli's motion to sever, the Court re-issued the scheduling order, and again required mutual disclosure of witness lists on April 21, 2017.   On that date, the Government disclosed to Mr. Shkreli and Mr. Greebel a list including 94 potential witnesses.

In a trial that the Government has repeatedly predicted will require approximately 3 weeks for the presentation of the Government's direct case, a 94 person witness list is far from an accurate representation of who may actually be called as a witness.  On at least two occasions counsel for Mr. Shkreli has requested that the Government reduce the witness list to a meaningful representation of witnesses that the Government honestly anticipates will or possibly could be a witness a this trial.

In response to requests, on June 6, 2017, less than 20 days before jury selection, and less than 7 days from the mutually agreed upon date of June 12th for exhibits and 3500 material disclosure, the Government provided a "reduced list" of 75 witnesses.   A reduction from 94 to 75 is not a good faith effort to reduce the witness list to meaningful list of individuals who may testify.  It is gamesmanship.  For 75 witnesses to testify in a direct case, it will take 6 weeks, not

---

[4] We also oppose the Court providing jurors with a copy of the indictment, but should the court choose to do so, we respectfully request the opportunity to make redactions such that the jurors do not learn of Mr. Greebel's indictment.

3.   The Government knows that a real witness list in a 3 week trial will be in the area of 35 witnesses.

A list of 75 witnesses makes it nearly impossible for defense counsel to develop a true set of defense exhibits that are likely to be actually introduced at trial.  It forces defense counsel to be overly inclusive in order to avoid leaving aside a document that may be important if a particular witness is called, but that is irrelevant if that witness is not called by the Government. As a result the defendant will produce a set of exhibits that is larger and more burdensome to the Court and the Government than is necessary, and the defendant must front the additional costs of preparing the larger more cumbersome sets of exhibits.

Since the Government has opted to forsake professional courtesy, we ask the Court to impose professional courtesy upon the Government and to Order the Government to produce a meaningful witness list not later than 5pm Friday, June 9, 2017.

## CONCLUSION

For these reasons, we ask the Court for the relief set forth above.

Respectfully submitted,

Marc Agnifilo
Andrea Zellan
Jacob Kaplan
Teny Geragos
**BRAFMAN & ASSOCIATES, PC**
*Attorneys for the*
*Defendant Martin Shkreli*
767 3rd Avenue, 26th Flr.
New York, NY 10017
212-750-7800

To:    All Parties (via ECF)

21