UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA           :
                                                                :
                                                                :
                -against-                               :          Ind. No. 15 CR 637 (S-1) (KAM)
                                                                :
                                                                :          **ORAL ARGUMENT REQUESTED**
                                                                :
MARTIN SHKRELI,                             :
EVAN GREEBEL,                                :
                                                                :
                                                                :
                          Defendants.          :
-----------------------------------------------------X

# MARTIN SHKRELI'S SUR-REPLY MEMORANDUM

By:   **Brafman & Associates, PC**
         *Attorneys for the Defendant Martin Shkreli*
         767 3rd Avenue, 26th Fl.
         New York, NY 10017
         Tel – 212-750-7800
         Fax – 212-750-3906
         magnifilo@braflaw.com

Of Counsel:   Marc Agnifilo
                       Andrea Zellan

Defendant Martin Shkreli submits this brief sur-reply to the Government's reply memorandum received on June 9, 2017.

I. The Government's Proffered "Direct" or "Other Act" Evidence

The Government continues to maintain that it wants to elicit evidence concerning Elea, RBC and alleged harassment of a Fearnow share recipient in their case in chief. These will be addressed in turn.

A. Elea "Mismanagement"

In an effort to make irrelevant, prejudicial information seem relevant and admissible, the Government manufactures factual issues that do not actually exist. For instance, in an effort to probe all the details of the uncharged short position trade concerning Elea Capital, the Government claims that the details are important to show that Shkreli "knew that he would have to cover the debt created by the failed short trade (concerning Orexigen) by paying his brokerage firm." Government Reply, p.3. However, there is no indication the defense will take the position that Shkreli failed to know or be aware of this fact. What's more, the Orexigen trade is not part of the charged conduct, but is admissible, if at all, as background to other aspects of the case. So, what the Government is seeking to do is elicit highly prejudicial information about an uncharged trade concerning Elea Capital as a way of showing that Shkreli was aware of an absolutely self-evident fact about another uncharged trade concerning Orexigen. The truth is that the details of the uncharged Elea trade are not direct evidence nor are they "other act" evidence for purposes of this trial.

If, however, the defense takes the position that Shkreli was unaware of how short positions work, and therefore did not know the significance of his short position in connection with the Orexigen trade, then this issue could be revisited. In such a case, Shkreli would have

opened the proverbial door to the Elea trade. However, there is no indication that Shkreli failed to appreciate the nature of his Orexigen trade. Rather, this is an issue simply made up by the Government in order to try to make the uncharged, prejudicial, irrelevant short trade by Elea Capital seem sufficiently germane so that they could put it before the jury.

To the degree that the Government argues Elea Capital is relevant because Mr. Shkreli's alleged nondisclosure of the Elea Capital losses to MSMB investors constitutes a fraudulent misrepresentation, the Government is incorrect. That omissions liability requires a finding of a duty to disclose is well-established. Basic Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5."); United States v. Finnerty, 533 F.3d 143, 151 (2d Cir. 2008) (upholding an acquittal of a defendant charged with section 10 violations because "the Government . . . attributed to Finnerty nothing that deceived the public or affected the price of any stock: no material misrepresentation, no omission, no breach of a duty to disclose, and no creation of a false appearance of fact by any means."); In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."); Puddu v. 6D Glob. Techs., Inc., No. 15 CIV. 8061, 2017 WL 991866, at *7 (S.D.N.Y. Mar. 6, 2017) ("For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information.") (citing Resnik v. Swartz, 303 F.3d 147, 154 (2d Cir. 2002) (internal edits omitted)).

Thus far, the Government has not shown that Mr. Shkreli had any duty to disclose the Elea losses to MSMB investors. Unless the Government can point to a duty imposed on Mr. Shkreli to disclose his trading history or fund management history, the Government cannot use

the fact that Mr. Shkreli allegedly did not disclose the Elea losses to establish a fraudulent misrepresentation to investors. Since the premise of the Government's relevancy argument fails, the details of Mr. Shkreli's management and trading at Elea Capital are irrelevant and inadmissible in this trial. As we stated in our Responsive Memorandum, because GY lost money in connection with Elea, some evidence concerning Elea is appropriate. However, for the Government to want to explore the entire nature of a very complex short trade as well as Shkreli's alleged mismanagement of Elea is inappropriate and unnecessary to the issues central to this trial.

      B.    <u>RBC</u>

While the defense concedes that some evidence concerning Elea Capital is relevant to a full understanding of issues important to this case, the same cannot be said about RBC. Rather, RBC plays no role whatsoever in this case. No investor lost or made money in RBC, nor is there any other relevant connection between RBC and the MSMB entities or Retrophin. This evidence is wholly irrelevant for all purposes and should not be admitted. Also, as noted above, Shkreli had no duty to disclose any aspect of his trading activity at RBC.

      C.    <u>Harassment of Fearnow Share Recipient</u>

The Government's Reply highlights the problem with this irrelevant, highly prejudicial evidence. The Government writes that "the jury will determine whether it believes Fearnow Share Recipient TP and whether his testimony about Shkreli's harassment has been substantiated to its satisfaction." (Government Reply, p. 5). The Government's invitation to hold a trial within a trial, specifically about whether TP has or has not been harassed by Shkreli is precisely the reason this evidence should not be elicited. A mini-trial regarding allegations of harassment risks delay, confusion of the issues and a verdict based on propensity evidence, not the alleged

3

conduct in question. United States v. Kahale, 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009) (Matsumoto, J.), aff'd sub nom. United States v. Graham, 477 F. App'x 818 (2d Cir. 2012) (evidence of a defendant's other business transactions was inadmissible because the "fear that introduction of such evidence will lead to multiple 'mini-trials' within the trial is well-founded. . . . [the defendant's] anticipated efforts to defend the legitimacy of these other [] Transactions will necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity."); see also United States v. Grant, No. S4 05-CR-1192 (NRB), 2008 WL 678553, at *1 (precluding a defendant's evidence due to "confusion of the issues resulting from the necessity of a trial within a trial to address the alternative explanations" of the evidence).

Shkreli has not been charged with harassing TP or anyone else. Whether he committed harassment, an offense defined in Article 240 of the New York Penal Code, or whether he did not, or whether he was justified in his actions, or not, are simply not germane issues at this trial. The so-called harassment of this person is a prejudicial side-show that should not be admitted under Rules 401 and 403.

II. Advice of Counsel – Counts 1 through 6

The Government misunderstands the nature and consequences of Shkreli's statement that he will advance an advice of counsel defense in regard to Counts 7 and 8 and not as to Counts 1-6. In regard to Counts 7 and 8, Shkreli maintains that he has a valid advice of counsel defense to ALL acts, communications and transactions of every nature in regard to Counts 7 and 8. In other words, there is no act, communication or transaction that is not within the purview of a valid advice of counsel defense for these two counts.

In regard to Counts 1 through 6, there are certain acts, communications or transactions on which Shkreli sought, received and followed his counsel's advice. However, there are certain acts, communications or transactions within Counts 1 through 6, where we are not asserting that he sought, received and followed his counsel's advice. Therefore, by maintaining an advice of counsel defense on Counts 7 and 8, but not for Counts 1 through 6, we do not in any way concede that as to certain acts, communications or transactions, Shkreli did not speak with Greebel and others at Katten, and rely on their advice, in regard to certain matters. However, at this point, we cannot say that we have a valid advice of counsel defense to ALL acts, communications or transactions that would be part of the alleged schemes in Counts 1 through 6.

There is no authority to require a defendant to provide the full extent of an advice of counsel defense where, as here, the Government concedes that for purposes of a pre-trial hearing, he has sufficiently demonstrated a *prima facie* advice of counsel defense on at least some portion of the indictment, specifically in regard to Counts 7 and 8.[1] Indeed, for the reasons we have previously argued, the defense maintains that the Government is again inviting the Court to violate the Constitution by repeatedly asking for a proffer from the defendant in a criminal case as to his lack of intent in advance of trial.

As we have argued, and we are now compelled to argue again, intent is a necessary element of each of the charged crimes. The burden to prove intent is now, and will always be, on the Government alone. As a matter of law, therefore, the defense has no obligation to concede as to when an advice of counsel defense may exist or may not, for the simple reason that an advice of counsel defense is within the realm of criminal intent. Nonetheless, as an accommodation to

---

[1] The Government has decided to not seek a Rule 104 hearing as to an advice of counsel defense on Counts 7 and 8. The defense likewise had decided to not seek such a hearing on Counts 1 through 6.

the Court, and in an effort to simplify the issues in this very complex matter, the defense has agreed to put the Government and the Court on notice that it believes we have a full and valid advice of counsel defense as to Counts 7 and 8, but not to Counts 1 through 6.

Nonetheless, Shkreli spoke with Katten lawyers in regard to matters concerning MSMB Capital (Counts 1 through 3) and MSMB Healthcare (Counts 4 through 6). This evidence is relevant and critical to show number of things, including a potential "good faith" defense as to aspects of those counts as well as being evidence of how Shkreli and his companies conducted themselves. Therefore, the Government's contention that "Shkreli may offer no evidence or cross-examine any witnesses regarding advice sought or provided to him by a lawyer – including Greebel and/or any attorney from Katten - in connection with the crimes charged in Counts 1-6 related to MSMB Capital and/or MSMB Healthcare" is simply wrong.

First, we have never, and would never, consent to such an evidentiary ruling, as it is lawless. Second, the Government's proposed remedy is utterly at odds with the facts. Try as they might to somehow deny the fact that Shkreli involved Katten lawyers in his business pursuits after hiring that firm, the Government cannot use in limine motions to change reality. The reality as established in thousands of emails and in the truthful recollections of many of the Government's own witnesses, specifically that Shkreli relied on Katten lawyers extensively after the firm was hired. This reality remains regardless of the specific defenses interposed as to the different counts.

### III.    Prior Good Acts

After initially taking the position that Shkreli could not elicit evidence of his lack of criminal record and upbringing, the Government changes its position to argue that he can elicit this evidence if he testifies. The Government then curiously states, "(t)he Government and

6

Shkreli further agree that highly prejudicial evidence such as information or visual depictions of myotubular myopathy, Duchenne Muscular Dystrophy or Joshua Frase, is inadmissible."[2] The defense has agreed to no such thing.

A recurrent theme of the Government's recent submissions is the increasingly uneasy relationship the Government has developed with the truth. The truth is that Shkreli created Retrophin with the intent of building a successful company to treat rare diseases. That reality is reflected in emails and other correspondence that will be admitted in evidence. Indeed, there is no real dispute about this particular truth. Nonetheless, the Government seems to want that truth about Retrophin kept from the jury.

Another truth is that many, if not all, of Shkreli's decisions concerning Retrophin were known to, and approved by, the Retrophin Board, in addition to being the product of close consultation with counsel. For the Government to blithely state, "there was no disclosure of and no prior approval of Shkreli's actions," is the Government ignoring the fact that the trial hasn't started yet. This is precisely why our nation's framers put these matters into the hands of a jury of one's peers, rather than a self-interested sovereign.

IV. Arbitrations

In another example of how the truth makes the Government squeamish, the Government continues to maintain that the jury must not learn the truth about certain consulting agreements. Rather, the Government, perhaps not surprisingly, would have its view that these agreements are "shams" be the only view the jury sees. This Court should reject the attempt to keep out powerful, relevant, and admissible evidence about the arbitration decision and award by the arbitrator finding in a contested arbitration proceeding that the SR Consulting Agreement with

---

[2] We ask that the Government immediately inform us of where we have agreed to the inadmissibility of these items of evidence.

7

Retrophin was not a "sham" contract, but rather lawful and enforceable. Such evidence is certainly harmful to the Government's case as it is contrary to the Government's central theory (and Retrophin's allegations) that the consulting agreements are "sham" agreements orchestrated by Mr. Shkreli and Mr. Greebel to pay back the personal debts of Mr. Shkreli arising from the MSMB hedge fund losses, and were not lawful and enforceable agreements for legitimate consulting services. Because the arbitration decision and award found that the SR Consulting Agreement was not a "sham" contract—as alleged by the Government in the superseding indictment—it is admissible for several non-hearsay purposes, relevant under Rule 401, and admissible under Rule 403 as its highly probative value is not substantially outweighed by the danger of any unfair prejudice.

What the cases cited in the defendant's Responsive papers state is that where the Government seeks to characterize a consulting agreement one way, the Government thereupon opens the door to how a neutral, detached, arbitrator found that the same agreement was precisely the opposite of the Government's characterization. The Government is wrong about United States v. Fisher, 106 F.3d 622, 633–34 (5th Cir. 1997), cited in our response to their motion. In Fisher, the Fifth Circuit vacated the conspiracy and substantive wire fraud, mail fraud, and bank fraud convictions based, in part, on the district court's exclusion of an arbitrator's findings that the alleged victims of the criminal charges had breached a contractual agreement and were not owed any money. 106 F.3d at 633-34.

At the heart of the Government's theory in Fisher was that former NFL players had entered into repurchase agreements with the defendants—agreeing to invest money in the bank holding company of the defendants in exchange for refinancing on purchased homes—based on fraudulent misrepresentations and misleading statements. Id. at 626. However, in an arbitration

proceeding where the Government was not a party, an arbitrator found that the alleged victim NFL players had breached the agreements, and the defendants did not owe them any money. Id. at 633. The district court granted the Government's motion to preclude the admission of any evidence relating to the arbitration decision on the grounds that (a) it was hearsay, (b) the arbitrator did not detail his reasons for the finding, (c) the Government was not a party to the arbitration proceeding, (d) the arbitration decision was not relevant, (e) the arbitration decision was extremely prejudicial, and (f) the arbitration decision would create confusion. Id. at 633-34.

The Fifth Circuit vacated the convictions and reversed, holding that "[i]t was error to exclude this evidence." Id. at 634. The Fifth Circuit recognized that the defendants were seeking to admit the evidence for non-hearsay purposes: "[T]he arbitration results were not offered to prove innocence, but to show that contrary to the Government's assertions, the defendants' legal position against the Players was not a 'ruse' or a position taken in bad faith." The Court held that the defendants should have been able to argue that the arbitrator's decision "showed the legitimacy of their position the athletes had breached their contracts with USSA and were not entitled to repurchase contracts." Id. at 633. The Fifth Circuit stated: "This evidence was highly relevant. Evidence that an arbitration proceeding occurred and that the defendants were not found obliged to repurchase the Players' shares goes to the heart of the case." Id. The Fifth Circuit rejected all of the Government's remaining objections, finding that the Government's points about there being no details in the arbitrator's findings "may be pointed out in cross examination on these subjects and argued to the jury." Id. The Fifth Circuit stated: "The defendants have been found guilty of a crime and sentenced to substantial jail terms. Evidence that is so relevant must be extremely prejudicial to warrant its exclusion in

9

these circumstances. The arbitration results are not so inherently confusing that the defense should have been prevented from introducing them." Id.

In United States v. Boulware, 384 F.3d 794, 798 (9th Cir. 2004), the Ninth Circuit vacated convictions against the defendant on all nine tax fraud counts because, as the Fifth Circuit found in Fisher with an arbitration decision, the district court should not have excluded evidence of a state-court judgment that favored the defendant. The court explained that "Rule 401 does not require that [the state court judgment] 'prove' anything. Rule 401's only requirement is that the proffered evidence have a tendency to prove a fact in issue and the judgment certainly has some tendency to make Boulware's explanation (that he gave the money to [his girlfriend] to hold in trust for [the company]) more probable and the Government's theory of the case (that he simply gave the money to his girlfriend) less probable. Rule 401 requires no more." Id. n.3.

The Ninth Circuit also rejected the Government's argument that the state-court judgment was hearsay. It held: "A prior judgment is not hearsay, however, to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties." Id.. at 806. Moreover, the Ninth Circuit found two applicable hearsay exceptions to the state-court judgment. Pursuant to Rule 803(14), the state court judgment was "[t]he record of a document purporting to establish or affect an interest in property." Boulware, therefore, could offer the judgment for the nonhearsay purpose of proving the company's ownership of the funds and the "legal effect" of the judgment. Id. The Court further held that "to the extent that Boulware offered the judgment for the truth of the matters asserted—to establish that he had not gifted the funds to [his girlfriend] and that she was and had been holding them in constructive trust for [the

10

company]—the judgment met the exception set forth in Rule 803(15)." Id. The Ninth Circuit explained:

> Under the plain meaning of Rule 803(15), hearsay statements are admissible if they are contained within a document that affects an interest in property, if the statements are relevant to the purport of the document, and if dealings with the property since the document was made have not been inconsistent with the truth of the statements. *See Silverstein v. Chase*, 260 F.3d 142, 149 (2d Cir. 2001). Here, the state court judgment meets each of these requirements. The judgment affected an interest in property by declaring [the company] to be the legal owner of the funds and by requiring [the girlfriend] to return them to [the company], and the statements are relevant to the purport of the document. In addition, there is no indication that the parties acted inconsistently with the judgment; it was undisputed that the judgment was valid and could be authenticated.

Id. at 808.

The Ninth Circuit also rejected the Government's arguments that the state-court judgment should be excluded under Rule 403 because it was "unreliable," "would confuse the jury," and "would lead to a mini-trial to show the deficiencies in the evidence considered in the state case." Id. at 809. All of those concerns could be addressed through a "cautionary instruction" and the trial judge's control over the admission of the evidence relating to the state court judgment. Id. Finally, when the Government argued that the exclusion of the state court judgment was harmless error, the Ninth Circuit disagreed strongly. The Ninth Circuit held that the state-court judgment was "crucial to Boulware's defense," "directly contradicted the Government's theory of the case," and provided independent, corroboration of a core defense. Id. at 809. Indeed, it was the exclusion of the state-court judgment alone that required vacating the convictions. It concluded that "we are not convinced beyond a reasonable doubt that the jury would have arrived at the same verdict had testimony regarding the state court judgment and the judgment itself not been excluded." Id.

11

In United States v. Dupree, 706 F.3d 131 (2d Cir. 2013), the United States Attorney's Office for the Eastern District of New York moved to admit a state-court temporary restraining order ("TRO") in a criminal case "as evidence that Dupree knew of, and intended to violate, a contractual obligation to maintain funds at Amalgamated Bank when he executed a series of withdrawals and money transfers that deprived the Bank of property to which it was entitled." When Your Honor denied this request, the Government filed an immediate interlocutory appeal, divesting the district court of jurisdiction over one count in the indictment as the remaining counts proceeded to trial. The Second Circuit reversed and ruled that a state-court TRO was admissible in evidence. The Second Circuit explained that hearsay evidence was admissible when it fell within a hearsay exception or when offered for a non-hearsay purpose. Specifically, the Second Circuit stated: "Hearsay is admissible only if it falls within an enumerated exception. However, '[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.' Thus, a statement offered to show its effect on the listener is not hearsay." Id. at 136 (internal citations omitted). The Second Circuit explained that the state-court TRO was admissible for the non-hearsay purpose that the state court had issued the order, the non-hearsay purpose that the defendant had knowledge of the order, and the non-hearsay purpose of the legal effect of the order or "legal obligations on a party[.]" With respect to the concern that "a jury might place undue emphasis on the Order simply because a judge issued it, and that introducing the Order might confuse the issues and mislead the jury," the Second Circuit noted that "such dangers can often be cured by careful limiting instructions . . . and we see no basis on the present record for concluding that such instructions would be ineffective here." Id. at 138-39.

### V. Government/Retrophin Prosecution

The Government argues in its response[3] that the defendant be prevented from suggesting that the Government is prosecuting him in conjunction with Retrophin. The interaction between different witnesses and the Government are matters of fact and subject to cross examination. The Government is free to argue that it treated Retrophin like it does any other crime victim. The defense is free to argue that the relationship between the Government and the Retrophin witnesses was otherwise, and that the Retrophin witnesses had a bias in favor of the Government and against Shkreli. This is absolutely appropriate cross examination and may not be prevented in an in limine motion.

### VI. Jury Nullification

For the first time on Reply, the Government argues that Shkreli should be precluded from jury nullification. This is not a proper topic for an in limine motion. If necessary, there are jury instructions that address the topic of jury nullification if in fact that becomes an issue in the trial.

### VII. Government's Efforts to Keep the Truth From the Jury

The Government's motions in limine are pre-occupied with the singular mission of keeping the truth from a jury. Whether it be the fact that (1) the "victim" investors in MSMB made huge amounts of money, or (2) that Retrophin was created to cure rare disease, or (3) that neutral, detached arbitrators upheld the legality and enforceability of certain agreements, or (4) that Retrophin made presentations to the Government concerning Shkreli, the Government has submitted extensive motions to achieve the single end of keeping the jury from knowing the truth in regard to a wide variety of topics. The Government's efforts to keep the jury from admittedly truthful information should not be countenanced.

---

[3] This point is one of several that the Government makes for the first time in its Reply submission. Accordingly, a sur-reply is necessary and appropriate.

13

VIII. <u>Conclusion</u>

For the reasons set forth above and in the defendant's initial response to the Government's in limine motions, we ask for the above-sought relief.

Respectfully submitted,

Marc Agnifilo, Esq.
Andrea Zellan, Esq.
Brafman & Associates, P.C.
767 Third Avenue, 26th Fl.
New York, New York 10017
(212) 750-7800

To:   All Counsel (via ECF)

14