

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMK:GKS/AES
F. #2014R00501

271 Cadman Plaza East
Brooklyn, New York 11201

June 15, 2017

By ECF

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Martin Shkreli
     Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

  The government respectfully submits this letter in response to new legal arguments raised in the defendant Martin Shkreli's June 12, 2017 sur-reply in opposition to the government's motions in limine. (Dkt. No. 241). Specifically, this letter addresses new legal authorities cited by the defendant in response to the government's motion in limine to preclude evidence and argument about prior arbitration decisions.[1]

  In his sur-reply, Shkreli relies on United States v. Boulware, 384 F.3d 794, 798 (9th Cir. 2004), and United States v. Dupree, 706 F.3d 131 (2d Cir. 2013), to argue that the arbitration decision related to Defrauded Investor SR ("SR Arbitration Decision") is admissible either for a non-hearsay purpose or as an exception to the hearsay rules pursuant to Federal Rules of Evidence ("FRE") 803(14) and/or 803(15). Neither case compels Shkreli's request for admission of the SR Arbitration Decision.

  In Dupree, the Second Circuit held that a temporary restraining order issued by a state court ("TRO") was admissible for a non-hearsay purpose, namely for its effect on the

---

[1] The government had initially planned to also respond to new legal arguments raised by Shkreli that he had no duty to disclose his failure as the manager of Elea Capital to potential MSMB Capital and MSMB Healthcare investors. However, because Shkreli has advised that he has withdrawn his opposition to the government's motion to admit evidence related to Elea Capital as direct evidence, those arguments are now moot. (See Dkt. No. 247).

listener. 706 F.3d at 136. Specifically, the government argued that the defendant, who was charged with bank fraud, was aware of the TRO—which restrained the defendant and others from transferring funds related to a particular company—at the time that he withdrew and transferred funds related to that company, and sought to admit the TRO to show that the defendant was also aware of certain agreements upon which the TRO was premised. Id. at 133-35. The Second Circuit agreed that the TRO could be admitted for the effect on the listener—the defendant—at the time that he committed the charged crime (the illegal transfers). Id. at 135-38.

Here, by contrast, Shkreli clearly does not have a permissible non-hearsay purpose for seeking the admission of the SR Arbitration Decision. Shkreli cannot seek to admit the SR Arbitration Decision for the effect of that decision on him, because the SR Arbitration Decision was not reached until January 2017—many years after Shkreli chose to force Retrophin to enter into the sham consulting agreement with Defrauded Investor SR. That is, Shkreli cannot argue that the SR Arbitration Decision affected his decision to enter or not enter into that agreement. Rather, Shkreli seeks to introduce the SR Arbitration Decision for the truth of the matter asserted. Consequently, Dupree is inapposite.[2]

In Boulware, the Ninth Circuit found that a prior state court judgment could be admissible under Rules 803(14) and 803(15). 384 F.3d at 806-08. In that case, the defendant had transferred significant sums of money from a company he owned to his girlfriend, and had been charged with, inter alia, criminal tax fraud for failing to report the transferred sums as gifts on his tax returns. Id. at 799-800. At trial, the government contended that the defendant's failure to report the transferred funds was part of a larger scheme to improperly divert money from his company for his personal benefit. Id. By contrast, the defendant—who advanced a reliance-on-counsel defense—contended that he had transferred the money from his company to his girlfriend for her to hold in trust for the company, and had been advised by his attorney that this arrangement would not require him to declare the transfers as gifts. Id. The state court judgment at issue in Boulware predated the criminal trial by several years. Id. at 801-802. It resulted from a state court civil trial proceeding between the defendant and his girlfriend in which the parties disputed who actually had title to the transferred funds (the girlfriend claimed the funds were gifted, and the defendant claimed they were to be held in trust by the girlfriend); the jury found for the defendant and found that the transferred funds belonged to him. Id. Based on this set of facts, the Ninth Circuit concluded that the district court had erred by failing to admit the state court judgment pursuant to FRE 803(14) and 803(15). Specifically, with respect to the applicability of FRE 803(15), the Ninth Circuit found that the judgment was admissible because it affected an interest in property by "declaring [the defendant's company] to be the legal owner of the

---

[2] Shkreli also seeks to re-argue the applicability of United States v. Fisher, 106 F.3d 622 (5th Cir. 1997); the government distinguished this case in its initial reply brief. (See Dkt. No. 237 at 13-14).

funds and by requiring them to be returned" to the defendant's company, and was relevant to the defendant's stated defense. Id. at 807.

As an initial matter, the hearsay exception contained in FRE 803(14) applies to the "record of a document that purports to establish or affect an interest in property if: (A) the record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it; (B) the record is kept in a public office; and (C) a statute authorizes recording documents of that kind in that office." The classic example of a FRE 803(14) document is a recorded title deed. Fed. R. Evid. 803, Advisory Comm. Notes to Paragraph (14). Furthermore, the rule is conjunctive and all of its requirements must be met.

FRE 803(14) is plainly inapplicable here. The arbitration decision does not prove the content of the original consulting agreement, was not kept in a public place (indeed, arbitration proceedings are private by nature) and no statute cited by Shkreli authorizes the recording of an arbitration decision.

Thus the only arguably pertinent portion of the Boulware decision is the portion related to FRE 803(15), which applies to a "statement contained in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose—unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document." Crucially, Shkreli does not articulate in his sur-reply what "interest in property" the SR Arbitration Decision purports to establish or affect, and how such interest is relevant to the charged crimes.

Moreover, Boulware is distinguishable from the current case. Unlike the defendant in Boulware, who was a party to the underlying state court case that led to the judgment in question, Shkreli was not a party to the arbitration between Retrophin and Defrauded Investor SR. And while the state court trial decision in Boulware resulted from a suit between the defendant and his girlfriend to determine whether the funds that were transferred to the girlfriend were intended by the defendant as a gift, the SR Arbitration Decision resulted from a suit between Retrophin and Defrauded Investor SR regarding payments pursuant to the consulting agreement, and did not directly address whether Shkreli intended the consulting agreement with Defrauded Investor SR as a sham on Retrophin. In fact, the arbitrator specifically noted in the SR Arbitration Decision that the arbitration was not intended to adjudicate the legality or illegality of Shkreli's conduct with respect to the consulting agreement (which the arbitrator further stated was to be assessed in this criminal case), but rather the propriety of Defraud Investor SR's conduct and whether the consulting agreement was facially valid based on the evidence presented in the arbitration proceeding. In addition, the SR Arbitration Decision is the result of an arbitration, not a state or federal court proceeding that, as the Ninth Circuit observed in Boulware, resulted in full and complete "adversarial testing" of the relevant factual issues. 384 F.3d at 802.

For the reasons set forth above, the defendant's new legal arguments in his sur-reply with respect to the admissibility of the SR Arbitration Decision are unavailing.

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By:    /s/
        Jacquelyn M. Kasulis
        Alixandra E. Smith
        G. Karthik Srinivasan
        Assistant U.S. Attorneys
        (718) 254-7000