

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMK:GKS/AES
F. #2014R00501

271 Cadman Plaza East
Brooklyn, New York 11201

June 21, 2017

By ECF

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    United States v. Martin Shkreli
                  Criminal Docket No. 15-637 (KAM)

Dear Judge Matsumoto:

        Per the Court's order from earlier today, the government respectfully submits this letter in response to the request made by the press pool of the Eastern District of New York that one pool reporter be permitted to attend individual voir dire of prospective jurors at sidebar, listen and take notes. The relevant caselaw requires the Court to strike the appropriate balance between the public's First Amendment right of access, the defendant's Sixth Amendment right to a fair trial, and the privacy interests of prospective jurors. In this case, for the reasons set forth below, the government submits that a pool reporter should be permitted to attend individual voir dire at sidebar, but that the Court should withhold the names of prospective jurors from the public.

        The First Amendment right of access "derives from two features of the criminal justice system: 'First, the criminal trial historically has been open to the press and [the] general public'; and second, '[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.'" ABC, Inc. v. Stewart, 360 F.3d 90, 98 (2d Cir. 2004) (citing Global Newspaper Co. v. Superior Court, 457 U.S. 596, 605-06 (1982)). This right of access extends to examining prospective jurors as part of the voir dire process. Id. (citing Press Enterprise Co. v. Superior Court, 464 U.S. 501, 504-10 (1984) ("Press Enterprise I")).

        The guarantee of open public proceedings in criminal trials is not absolute, and, in some circumstances, should be considered in parallel with other rights and interests, including the "defendant's Sixth Amendment right to a fair trial or the privacy interests of prospective jurors." Id. (internal citation omitted). The Supreme Court in Press-Enterprise

Co. v. Superior Court, 478 U.S. 1 (1986) ("Press Enterprise II"), created a two-part balancing test for determining whether closure, such as precluding the press from voir dire, is appropriate: "[T]he [proceeding] shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." Id. at 14.

       In Stewart, a case analogous to this one, the Second Circuit applied the Press Enterprise II balancing test and found both that the district court had not set forth a sufficient factual basis for closure of the voir dire proceedings, and that the district court's closure order was not narrowly tailored to protect the defendant's right to a fair trial. 360 F.3d at 101-02. In addressing the first prong of the balancing test, the Second Circuit concluded in Stewart that "[t]he mere fact that [this case] has been the subject of intense media coverage is not . . . sufficient to justify closure." Id. at 102. Additionally, the Second Circuit found that the district court "did not point to any controversial issue to be probed in voir dire that might have impaired the candor of prospective jurors." Id. at 101 (contrasting the prosecution of Martha Stewart with the trial of Don King in United States v. King, 140 F.3d 76 (2d Cir. 1998), in which the Second Circuit upheld limited closure of voir dire proceedings because the press attention surrounding King concerned "the delicate area of possible racial bias"). Here, while the defendant Martin Shkreli has been the subject of much media attention, prospective jurors will not be under the same type of pressure as prospective jurors in King, who were required to answer sensitive questions regarding potential racial bias.

       With respect to the second prong of the Press Enterprise II balancing test, a court must ensure that "closure orders be no broader than necessary to protect the countervailing interest advanced." Stewart, 360 F.3d at 104. In Stewart, the Second Circuit stated that it did "not see why simply concealing the identities of prospective jurors would not have been sufficient to ensure juror candor." Id. It further opined that referring to prospective jurors by their numbers only, as opposed to their names, could be an effective alternative to full closure of voir dire proceedings. Id.

       There is no doubt that this case has garnered extensive media attention, and that Shkreli is a high-profile figure. Shkreli's notoriety alone, however, is not a sufficient basis to exclude a pool reporter from the voir dire process. Stewart, 360 F.3d at 101 (finding that the risk that prospective jurors may have preconceptions about a public figure is not sufficient to warrant closure, because courts could then "routinely deny the media access to those cases of most interest to the public"). There is, however, a significant risk that the disclosure of juror names during the voir dire process may both inhibit jurors' candor when posed with certain questions regarding Shkreli, and interfere with jurors' ability to perform their sworn duties as jurors once selected, due to media scrutiny and attention. See U.S. v. Blagojevich, 743 F. Supp. 2d 794, 801 (N.D. Il. 2010) (finding that withholding of juror names until after trial had concluded was proper to counter the threat of potential contact with jurors by the media and members of the public, and to limit the "potential transformation of jurors' personal lives into public news") (internal quotations and citations omitted).

In sum, while the government does not object to the presence of a pool reporter during the sidebar portions of the voir dire process in this case, it believes that withholding the names of prospective jurors by referring to them by number only during the course of the trial will ensure that the defendant's right to a fair trial and jurors' privacy interests, particularly in light of the extensive media attention in this case thus far, are preserved.  Such a proposal meets both prongs of the Press Enterprise II balancing test, and comports with Second Circuit law.[1]

                Respectfully submitted,

                BRIDGET M. ROHDE
                Acting United States Attorney

By:    /s/
        Jacquelyn M. Kasulis
        Alixandra E. Smith
        G. Karthik Srinivasan
        Assistant U.S. Attorneys
        (718) 254-7000

---

[1] Given the media attention that the case has garnered, the government also requests that the Court consider additional steps to ensure that both prospective jurors and the empaneled jury are shielded from any contact with members of the public and/or the press regarding this case.  Specifically, the government requests that all potential jurors called for jury service on June 26, 2017—and not just those in the jury pool for this case—be instructed not to read any news articles or social media accounts related to this case.  This will ensure that if voir dire takes more than one day, and the Court needs to use jurors from other pools, those prospective jurors will not be tainted by information that has been published about the case after the first day of voir dire.  In addition, the government asks the Court to consider permitting members of the empaneled jury to enter and exit the courthouse other than through the main entrance.