# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

June 21, 2017

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: **United States v. Martin Shkreli and Evan Greebel**
**15 CR 637 (KAM)**

Dear Judge Matsumoto:

Pursuant to this Court's June 21, 2017 Order, we write to address our position as to whether one press pool reporter should be permitted to attend individual voir dire of prospective jurors at sidebar, listen, and take notes. We vigorously oppose this request.

Given the particular facts of this case, specifically (1) that the vast majority of the voir dire process will be held in a public courtroom; (2) that all questioning of jurors will be conducted orally, and without a jury questionnaire; and (3) that potential jurors may have been exposed to unparalleled negative press statements about the defendant, including that he is "the most hated man in America,"[1] that he is a "morally bankrupt sociopath," and that he is himself "everything that is wrong with capitalism," the Sixth Amendment requires that the defense be permitted to conduct limited questioning to explore each juror's potential bias out of the presence of a news reporter and the balance of the jury panel.

Potential jurors have been subject to a steady stream of negative and prejudicial press coverage concerning Mr. Shkreli. Much of this press coverage is not related to the alleged crimes with which he is charged. Indeed, the coverage has been so negative that Shkreli's co-defendant cited it as a basis for a severance. See Greebel's Memorandum of Law in Support for His Motion for a Severance, (Dkt. No. 163), p. 35. In his motion, Greebel noted, "Mr. Shkreli's pre-arrest notoriety – which has nothing to do with the

---

[1] Zoe Thomas & Tim Swift, Who is Martin Shkreli – 'the most hated man in America'?, BBC News (Sept. 23, 2015), http://www.bbc.com/news/world-us-canada-34331761.

BRAFMAN & ASSOCIATES, P.C.

allegations in the Superseding Indictment – caused the New York Post to observe …that 'much of America will be happy to see Shkreli behind bars,'…the New York Times commented that "before his arrest, based on his tweets and live videos, he almost seemed to be playing the role of a movie bad guy." Id. p. 35, n.6. The negative press continues through the present, and is well-known to the Court and all parties.[2]

Mr. Shkreli would be denied a fair trial if he was not permitted ample opportunity to question potential jurors for bias given the onslaught of negative press he has received. As noted, we agree to an open voir dire for all general questions. However, as to those questions related to a juror's potential bias, given the particular press reporting in this case, fairness requires a traditional side-bar procedure where jurors can speak freely without fear that their comments will be reported publicly.

Having dozens of people watching the jury and a reporter at sidebar taking notes of a juror's remarks would interfere with complete honesty by a potential juror. "This is that unusual case where the fairness of a trial, or at least the voir dire phase, that is usually promoted by public access is seriously at risk of being impaired unless some modest limitation on access is imposed." United States v. King, 140 F.3d 76, 83 (2d. Cir. 1998).

The Second Circuit addressed this specific issue in the Martha Stewart case. There, Judge Cedarbaum employed a two-step jury selection process: (1) prospective jurors were screened based on a lengthy questionnaire; and (2) the remaining prospective jurors where individually questioned in the Judge Cedarbaum's robing room. ABC, Inc. v. Stewart, 360 F.3d 90, 94 (2d Cir. 2004). Given its concerns for ensuring juror candor and a fair trial for all parties, the government requested that the media be excluded from the robing room proceedings. In response, Judge Cedarbaum issued an order prohibiting the media from attending "any voir dire proceedings," but allowed a release of a redacted transcript of the proceedings. Id. at 95.

On appeal, the Second Circuit ruled that Judge Cedarbaum's factual findings were insufficient "to establish a substantial probability that open voir dire proceedings would have prejudiced the defendants' right to an impartial jury."Id. at 101. The Second Circuit's ruling rejected Judge Cedarbaum's "conclusion that prospective jurors would have been unwilling to express for publication any preconceptions that they might have had about the defendants," noting that the defendants were present in the robing room proceedings and that it was "difficult to conceive of a potential juror who would be willing to reveal a bias against the defendants in their presence but not in the presence of reporters." Id. at 101. The Second Circuit also relied on the fact that it was the government requesting the media bar, not defense counsel: "If openness would truly have jeopardized the fair trial rights of the defendants in this case, we imagine that the defendants, represented by experienced counsel, would have initiated the request for closure." Id. at 102.

---

[2] A lengthy sampling of negative press reports was attached to the co-defendant's severance motion.

BRAFMAN & ASSOCIATES, P.C.

The Second Circuit's ruling also found that Judge Cedarbaum's method of protecting the defendants' trial rights were not narrowly tailored as required by the Supreme Court's decision in Press–Enterprise Co. v. Superior Court, 478 U.S. 1 (1986), noting, inter alia, the judge's ruling barred the media from the parts of the voir dire proceedings–including routine background questions, put forth hardship requests, or recounted other trivial details–that had no impact on ensuring the candor of the prospective jurors. Id. at 105.

The Stewart case is readily distinguishable from Mr. Shkreli's case. Most notably, it is defense counsel, not the government, objecting to the presence of the pool reporter at sidebar, Ms. Stewart, a renown home-maker, gardener and TV personality was not nearly as controversial a figure. Given the negative publicity surrounding Mr. Shkreli, there is greater concern for potential bias from prospective jurors. Accordingly, it is imperative that jurors are fully candid about their preconceptions or biases regarding Mr. Shkreli, which is unlikely to happen if they fear that their statements will be part of the news coverage in this case.

Moreover, unlike in Stewart, the media would be present for the vast majority of the voir dire proceedings as jury selection will take place in open court. Defense counsel is only seeking to prohibit the media from attending the voir dire of prospective jurors at side bar–where jurors generally address sensitive issues that they are not comfortable answering in front of a full courtroom of strangers.[3] It is at this juncture that we must ensure that prospective jurors are willing to fully express any preconceptions or biases that they may have against Mr. Shkreli.[4]

For the reasons stated above Mr. Shkreli's right to a fair trial trumps the media's First Amendment right to attend the side bar discussions during voir dire.

Respectfully submitted,

Benjamin Brafman

cc: All Counsel (via ECF)

---

[3] This procedure is not without precedent. See U.S. v. King, 140 F.3d 76, 83 (2d Cir. 1998); United States v. Tsarnaev, No. CIV.A. 13-10200-GAO, 2015 WL 631330, at *1 (D. Mass. Feb. 13, 2015).

[4] To that end, Mr. Shkreli has agreed to waive any rights he may have to attend the side bar discussions during the voir dire proceedings so that prospective jurors can fully express their preconceptions or biases.