UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

                                                MEMORANDUM AND ORDER

        - against -

MARTIN SHKRELI,                                 15-CR-637 (KAM)

            Defendant.

------------------------------------------X

**MATSUMOTO, United States District Judge:**

        Before the court are the parties' respective motions *in limine*.  The court assumes familiarity with the facts of this case, which it has described in greater detail in a prior order granting defendant Martin Shkreli's motion to sever.  (ECF No. 198.)

        Mr. Shkreli has moved *in limine* to exclude or modify certain statements which the government seeks to introduce against him.  (Motion *in Limine* to Preclude Statements ("Mot."), ECF No. 229.)  These statements were taken from his sworn testimony before the Securities and Exchange Commission ("SEC") on October 12, 2011, August 7, 2013, and February 24, 2014 (the 2011, 2013, or 2014 "SEC Testimony"); his sworn testimony in a proceeding between Mr. Shkreli, MSMB Capital Management LP, and Merrill Lynch before the Financial Industry Regulation Authority on May 15, 2012 (the "2012 FINRA Testimony"); and an interview

1

between Mr. Shkreli and the Federal Bureau of Investigation and United States Attorney's Office on January 29, 2015 (the "2015 Interview").  (*See* Government's Response in Opposition ("Gov. Resp."), ECF No. 235 at 1.)  In addition, he has moved to preclude the government from introducing evidence that his co-defendant, Evan Greebel, is under indictment.  (Shkreli Resp. at 19.)

The government moves *in limine* to admit evidence of Mr. Shkreli's 2008 termination from RBC Professional Trading Group LLC ("RBC") and what it characterizes as Mr. Shkreli's "harassment of and threats to" a recipient of unrestricted, free-trading shares in Retrophin, Inc. (the "Fearnow shares").[1] (*See* Motions *in Limine* by USA as to Martin Shkreli ("Gov. Mot."), ECF No. 230.)  The government also seeks to preclude Mr. Shkreli from introducing (i) evidence and argument relating to Mr. Shkreli's personal background, lack of criminal history, prior good acts, and "plans if acquitted"; (ii) evidence or cross-examination "regarding advice sought or provided to [Mr. Shkreli] by a lawyer – including [Mr.] Greebel and/or any attorney from [Mr. Greebel's former firm] — in connection with the crimes charged in Counts One through Six"; (iii) evidence of

---

[1] The government's motion concerning Mr. Shkreli's interactions with the recipient of Fearnow shares is addressed in connection with Mr. Shkreli's related motion to preclude Statement 42.

two arbitration hearings; (iv) evidence and argument regarding the government's motives in prosecuting Mr. Shkreli; and (v) "evidence or argument regarding the lack of ultimate harm to investors." (Gov. Mot. at 1; Government's Reply in Support of its Motions *in Limine* and in Opposition to Shkreli's Additional Motions *in Limine* ("Gov. Reply"), ECF No. 237 at 9.)  As discussed below, the parties have partially resolved and withdrawn specific motions.[2]  For the reasons set forth below, the court reserves its ruling on certain of the motions, and the remaining motions are granted in part and denied in part.

## LEGAL STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule, in advance of trial, on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (defining *in limine* "to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"); *Jackson v. City of White Plains et al.*, No. 05-cv-0491, 2016 WL 234855, at *1 (S.D.N.Y. Jan. 19, 2016) ("[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the

---

[2] In addition to the specific motions discussed in this Memorandum, Mr. Shkreli has withdrawn his objection to the government's evidence relating to Mr. Shkreli's employment at Elea Capital. (Transcript of Oral Argument on June 19, 2017 ("Tr."), 71:6-10.)

3

relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.") (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  A motion *in limine* calls on the court "to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Jackson*, 2016 WL 234855, at *1 (citations omitted); *see also* Fed. R. Evid. 104.

On a motion *in limine* to exclude evidence, the movant has the "burden of establishing that the evidence is not admissible for any purpose." *United States v. Pugh*, 162 F. Supp. 3d 97, 100 (E.D.N.Y. 2016) (citation omitted).  "A court considering a motion *in limine* may reserve judgment until trial, in order to place the motion in the appropriate factual context." *Id.* at 101.  The court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41; *see also United States v. Jacques*, 684 F.3d 324, 328 n.1 (2d Cir. 2012) ("We note that the district court is free to alter these rulings, if appropriate, as the case progresses.").  Thus, the court's rulings in the instant opinion are without prejudice.

4

The admissibility of evidence at trial is governed by the Federal Rules of Evidence.  Federal Rule of Evidence 402 ("Rule 402") requires that evidence be relevant to be admissible.  See Fed. R. Evid. 402.  "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Rule 401 sets a "very low standard for relevance."  *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008).  Therefore, the court's determination of what constitutes "relevant evidence" is guided by the nature of the claims and defenses presented.

In addition to considerations of relevance, any evidence that the parties seek to offer or exclude in their motions is subject to the probative-prejudice balancing analysis provided in Federal Rule of Evidence 403 ("Rule 403").  Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of [...] unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  However, "[t]he logical inferences resulting from proffered evidence do not engender the 'unfair prejudice' against which Rule 403 is directed."  *United*

5

*States v. Kone*, 216 F. App'x 74, 76 (2d Cir. 2007) (summary order) (citing *United States v. Diaz,* 878 F.2d 608, 615 (2d Cir. 1989) (internal quotation marks omitted).

District courts have broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. *See United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.") (citing *United States v. Royer*, 549 F.3d 886, 901 (2d Cir. 2008)). Under Rule 403, district courts make "a conscientious assessment of whether unfair prejudice substantially outweighs probative value with regard to each piece of proffered evidence." *Pugh*, 162 F. Supp. 3d at 103 (E.D.N.Y. 2016) (citing *Al-Moayad*, 545 F.3d at 160) (internal quotation marks omitted).

<u>**DISCUSSION**</u>

The court addresses each of the parties' motions in turn.

## I.  Mr. Shkreli's Motions *in Limine*

Mr. Shkreli seeks to preclude the government from introducing three of his prior statements, and contends that

6

nine others require additional context under Rule 106.[3]  Of the statements in dispute, the court reserves decision regarding Statement 33 until the government establishes its relevance at trial, and denies Mr. Shkreli's motions as to Statements 37 and 42.  The admissibility of these statements is conditioned, however, on the government's ability to establish the proper basis for admission at trial.

Mr. Shkreli argues that nine of the statements the government seeks to introduce require modification pursuant to Federal Rule of Evidence 106.  (Mot. at 1.)  For the reasons described in part II(b), below, the court rejects all nine of these contested modifications.  Statements 9, 10, 18, 20, 21, 22, 23, 31, and 32 are therefore admissible without modification.

---

[3] Mr. Shkreli initially moved to preclude or modify additional statements, but withdrew several of his objections in negotiations with the government and at oral argument.  Specifically, he withdrew earlier objections to Statements 1, 2, 3, 4, 6, 7, 13, 17, 19, 24, 26, 27, 28, 29, 30, 34, 38, 39, 41, 44, 45, 46, and 47.  (*See* Chart of Parties' Positions on Admissibility of Shkreli's Prior Statements ("Statement Chart"), ECF No. 247-1; Tr. 35:6-7, 15-16; 51:7-8; 62:4-5; 63:23; 65:23.)  In addition, at oral argument, Mr. Shkreli withdrew his objection to Statement 40 conditioned on the government's redaction of the sentence "[m]any people believe [Retrophin lost its best asset the day [Mr.] Shkreli was fired."  (Tr. 63:17-20.)  The government has consented to Mr. Shkreli's proposed modifications for Statements 15 and 24, and does not plan to introduce Statement 48 in its case-in-chief.  (*See* Gov. Resp. at 20, 25, 31.)

**A.   Motions to Preclude Introduction of Prior Statements**

*1.  Statement 33*

In Statement 33, from the February 24, 2014 SEC Transcript, Mr. Shkreli is asked by an examining attorney whether an exhibit to a settlement agreement with Merrill Lynch "indicates that MSMB Capital Management's assets and liabilities . . . were zero," and is then asked "is that accurate?"  (Mot. Ex. 2 at 12.)  He responds "yes."  (*Id.*)

Mr. Shkreli initially objected to this statement on the grounds that it violated Federal Rule of Evidence 1002, the Best Evidence Rule, which requires that the "original writing" be used to "prove its content," Fed. R. Evid. 1002.  (Mot. at 5.)  The government clarified in its opposition that the statement was not being introduced to prove the content of the settlement agreement, but "rather to show that [Mr.] Shkreli understood a representation that had been made in the Merrill Lynch settlement agreement, and confirmed that it was accurate." (Gov. Rep. 13-14)  In response, Mr. Shkreli persisted with his objection based on relevance.  (*See* Statement Chart.)  As the parties did not address the relevance of this statement at oral argument, the court will reserve ruling on this statement until trial.

8

### 2.   Statement 37

In Statement 37, from the 2014 SEC Transcript, Mr. Shkreli is asked about the factual content of an SEC Form 8-K for Desert Gateway, the "publicly traded shell company" used to take Retrophin public.  (Mot. Ex. 1 at 13; Sup. Ind. ¶ 6.) He states, *inter alia*, that it "probably came from some of [his] colleagues," that he "might have written some of it," that he "certainly could have written it," and that he "probably did write some of it," and then names two Retrophin employees who also "probably" contributed to the document.  He then states, "I absolutely probably wrote some of the technical information in [the 8-K]."  (Mot. Ex. 1 at 13.)

In his motion, Mr. Shkreli argued that because he used tentative language (*e.g.* "probably came from some of my colleagues"), Statement 37 should not be admitted because it is irrelevant.  (Mot. at 6.)  The government asserts that Statement 37 is relevant to Count Eight, regarding the reverse merger and use of Fearnow shares when Retrophin went public.  According to the government, Mr. Shkreli's testimony relates to the information that he and Retrophin employees contributed to the 8-K, and identifies Retrophin employees at the time.  (Gov. Resp. at 14.)

Mr. Shkreli has cited no authority for the proposition that a statement of a party opponent is inadmissible as irrelevant when that statement includes tentative language or statements.  At oral argument, he framed his objection under Rule 403, but did not explain the grounds for application of the balancing between the probative value of the evidence and any unfair prejudice provided by the rule.  (Tr. at 60:11-23.)  The court will not preclude admission of this statement, because, as the government explains, it is relevant to show that certain individuals were employed by Retrophin immediately prior to the IPO, and were the sources of the factual content in the Form 8-K.  Mr. Shkreli is free to argue that Statement 37 should not be given weight by the jury because his answer was tentative or uncertain, but his statements are not so unclear or ambiguous that their admission would confuse or mislead the jury.  The court denies Mr. Shkreli's motion *in limine* regarding Statement 37.

### 4.  Statement 42 and the Government's Motion to Admit Evidence of "Harassment" of Fearnow Recipient TP

In Statement 42, made by Mr. Shkreli during his January 2015 FBI Interview, Mr. Shkreli is described as having "threatened" a recipient of the Fearnow Shares ("Fearnow recipient TP") by telephone.  (*Id.* at 14.)  Mr. Shkreli argues that this statement is irrelevant, and is also "unduly

10

prejudicial" and should be excluded under Rule 403.  The
government argues that this statement is "direct evidence" of
Count Eight of the Superseding Indictment, because it shows Mr.
Shkreli's "protracted campaign of harassment against Fearnow
recipient TP," and "desperation to control the Fearnow Shares."
(Gov. Resp. at 16.)  Relatedly, the government seeks to admit
evidence of Mr. Shkreli's alleged "threats" and "harassment" of
Fearnow recipient TP, also as direct evidence of Count Eight.
The government has claimed, for example, that Mr. Shkreli
"hacked into five email and social media accounts held by
[Fearnow recipient TP]" (Gov. Mot. at 6), which Mr. Shkreli
denies and will challenge at trial.  (Shkreli Resp. at 6).

        In his sur-reply, Mr. Shkreli notes that harassment is
"an offense defined in Article 240 of the New York Penal Code,"
but that Mr. Shkreli has not been charged with this offense.
(Shkreli Sur-Reply at 4.)  Mr. Shkreli argues that admission of
"irrelevant" evidence concerning his treatment of Fearnow share
recipient TP will lead to a "mini-trial" about "whether TP has
or has not been harassed by Shkreli."  (*Id.* at 3.)

        The government seeks to prove that Mr. Shkreli tried
to control the trading of Fearnow shares as a means of giving
him control of the price and trading of Retrophin stock.  (*See*
Sup. Ind. at ¶¶ 36-40.)  Evidence that Mr. Shkreli communicated

with a recipient of these shares to convince or compel him not
to sell the shares is, therefore, direct evidence in of the
government's case, and is relevant to the charges.
Nevertheless, as Mr. Shkreli points out, the court must weigh
the probative value of this evidence against the risk of unfair
prejudice to the defendant, as well as the risk of confusion or
undue delay.  *See Quattrone*, 441 F.3d at 186 (explaining that
"[t]he prejudicial effect" at issue in a Rule 403 analysis "may
be created by the tendency of the evidence to prove some adverse
fact not properly in issue or unfairly to excite emotions
against the defendant" (citations omitted)); *United States v.
Ferguson*, 246 F.R.D. 107, 116 (D. Conn. 2007), (limiting the use
of certain evidence, the introduction of which could have
diverted the jury's attention to collateral questions and which
risked "creating a trial within a trial" (citing, *inter alia*,
*Rickets v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996),
*vacated and remanded on other grounds*, 676 F.3d 260 (2d Cir.
2011))).

        If the government establishes that Statement 42
accurately reflects what Mr. Shkreli said during his FBI
interview, and that he specifically used the word "threatened,"
it may be admitted.  (*See* Tr. 64:8-19.)  Statement 42 is
relevant and direct evidence of Count Eight.  Admission of

12

Statement 42 will not create a risk of unfair prejudice.  The statement which, in its entirety, reads "Shkreli confronted [Fearnow recipient TP] on the telephone and threatened him" (Mot. Ex. 1 at 14), does not include inflammatory details or content that might inflame or confuse the jury.

With regard to the other evidence the government seeks to admit concerning Mr. Shkreli's interactions with Fearnow recipient TP, the Rule 403 analysis required is best conducted at trial, when the court has additional factual context about the specific evidence to be offered and its potential for unfair prejudice.  *See Pugh*, 162 F. Supp. 3d at 100-01; *Ferguson*, 246 F.R.D. at 116.  The court notes, however, that assuming the government establishes a proper basis, such evidence may be admissible to illustrate Mr. Shkreli's efforts to limit trading in the Fearnow shares.  Although Mr. Shkreli has indicated that he may stipulate to certain facts, or not contest certain aspects of Fearnow recipient TP's testimony, the nature of Mr. Shkreli's communications with, or regarding, Fearnow recipient TP will be highly probative of the issues at trial.

The court therefore denies Mr. Shkreli's motion to preclude Statement 42, and will reserve ruling on the government's motion to admit other evidence of Mr. Shkreli's communications and interactions with Fearnow recipient TP.

13

B.    **Motions Under FRE 106**

As of the oral argument on June 19, 2017, Mr. Shkreli had modified his list of proposed additions to his statements, and advised that he sought modification of nine of his prior statements pursuant to Federal Rule of Evidence 106:  9, 10, 20, 21, 18, 22, 23, 31, 32.  Rule 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  The government opposes all nine of Mr. Shkreli's proposed modifications.

The Second Circuit has explained that Rule 106 requires "that a document be admitted when it is essential to explain an already admitted document, to place the admitted document in context, 'or to avoid misleading the trier of fact.'" *United States v. Lyttle*, 460 F. App'x 3, 7 (2d Cir. 2012) (summary order) (quoting *Phoenix Assocs. III v. Stone,* 60 F.3d 95, 102 (2d Cir. 1995); *see United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010) (summary order).  The Supreme Court has noted that "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the

14

material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988).  Nevertheless, Rule 106 does not provide grounds for a party to seek "admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (citations omitted).  Nor is Rule 106 "a mechanism to bypass hearsay rules for any self-serving testimony" by a party.[4]  *Gonzalez*, 399 F. App'x at 645; *see also Blake*, 195 F. Supp. 3d at 610-11 (a defendant's proposed modifications under Rule 106 were inadmissible hearsay because she "has not shown how her statements offering an alternative theory of the evidence are necessary to clarify or explain her statements"); *United States v. Lumiere*, No. 16 CR. 483 (JSR), 2017 WL 1391126, at *6-7 (S.D.N.Y. Apr. 18, 2017) (distinguishing between the parts of a recording in which a defendant admitted to the "bare historical facts" that he had engaged in certain conduct, and other portions in which he had offered "self-serving . . . after-the-fact justifications." (citations omitted)).

---

[4] Self-serving testimony is that which "tends to reduce the charges or mitigate the punishment for which the declarant might be liable." *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (quoting *Williamson v. United States*, 512 U.S. 594, 618 (1994)).

15

The court notes that Mr. Shkreli has provided no explanation for his proposed modifications except at oral argument.  Based on its review of the statements at issue, Mr. Shkreli's proposed modifications, and the government's submissions, the court denies Mr. Shkreli's proposed modifications as his nine remaining statements, as set forth below.

### 1.  Statement 9

In Statement 9, from Mr. Shkreli's May 15, 2012 FINRA Testimony, Mr. Shkreli explains that he prepared the private offering memorandum for MSMB Capital Management LP ("MSMB Capital"), using as a template the private placement memorandum prepared by the law firm Cobb & Eisenberg for his previous hedge fund, Elea Capital.  (Mot. Ex. 2 at 1.)  He testified that Cobb & Eisenberg did not provide legal representation to MSMB Capital, and that the accounting firm Rothstein Kass also did not provide paid services for MSMB Capital.  (*Id.*)  Mr. Shkreli proposes to modify Statement 9 by adding several lines from the same transcript, in which he states that six weeks before his May 15, 2012 FINRA Testimony, Rothstein Kass provided tax services to a different entity known as MSMB Consumer LP, in approximately April 2012.  (Mot. Ex. 2 at 3.)  The government

argues that this additional testimony is not necessary to explain Statement 9.

Mr. Shkreli has not attempted to explain why his proposed modification are necessary to explain Statement 9, but argues that "the portion of the statement that the government wants to put into evidence is really only part of the answer." (Tr. 30:20-23.)  His additional testimony regarding Rothstein Kass's provision of tax services to MSMB Consumer LP is "neither explanatory of nor relevant to the admitted passages," which relate to a separate MSMB entity and a different time period. *See Johnson*, 507 F.3d 796-97 (citation omitted).  Mr. Shkreli's proposed modification is not required by Rule 106, and is denied. *Id.*

### 2.  *Statements 10, 20, and 21*

In Statement 10, from Mr. Shkreli's May 15, 2012 FINRA Testimony, and Statement 20 from his August 7, 2013 SEC Testimony, Mr. Shkreli states that neither Rothstein Kass nor NAV Consulting, a third-party hedge fund administrator, provided services to MSMB Capital Management LP.  (Mot. Ex. 2 at 3, 6.) In Statement 21, also from Mr. Shkreli's August 7, 2013 SEC Testimony, Mr. Shkreli testified that he believed that all MSMB Capital limited partners were aware that he was not going to retain an auditor, although he does not recall informing the

17

partners with an official statement.  (*Id.* at 7.)  Mr. Shkreli
seeks to supplement Statements 10, 20, and 21 with additional
testimony from his August 7, 2013 SEC Testimony, in which he
responds to questions about various MSMB Capital documents, and
claims, *inter alia*, that although these documents refer to NAV
Consulting and Rothstein Kass as the fund's administrator and
auditor, respectively, those representations were based on his
belief at the time that the fund would engage NAV and Rothstein
Kass.

The statements that the government seeks to introduce
relate to factual issues: (1) whether NAV or Rothstein Kass ever
performed services for MSMB Capital, and (2) whether the MSMB
Capital limited partners were aware that Mr. Shkreli was not
going to retain an auditor for the MSMB fund.  The testimony Mr.
Shkreli seeks to admit goes far beyond these discrete factual
issues.  The additional testimony Mr. Shkreli seeks to admit
describes and attempts to explain representations made in
documents not specifically referenced in Statements 10, 20, or
21, and is not necessary to explain or provide context for these
statements.  Mr. Shkreli's proposed modifications to statements
10, 20, and 21 are not required by Rule 106, and they are
denied.  *See Gonzalez*, 399 F. App'x at 645 (Rule 106 is not "a
mechanism to bypass hearsay rules for any self-serving

testimony."); *Lumiere*, 2017 WL 1391126, at *6-7 (distinguishing, for the purposes of Rule 106, between admission of certain "bare historical facts" and "self-serving . . . after-the-fact justifications").

### 3.   *Statement 18*

In Statement 18, from Mr. Shkreli's August 7, 2013 SEC Testimony, Mr. Shkreli is asked whether he had "trading discretion" over the money of an individual named Josiah Austin, and he responds "[n]o, not specifically, no."  (Mot. Ex. 2 at 4.)  Mr. Shkreli argues that his answer is incomplete, and seeks to add additional statements from his testimony, in which he characterizes his relationship with Mr. Austin, describes Mr. Austin as "probably one of the richest people in the world," and discusses his role in mentioning Chelsea Therapeutics to Mr. Austin, who then invested in Chelsea Therapeutics.  (Tr. at 44:17-45:2; Mot. Ex. 2 at 5.)  The government argues that Mr. Shkreli's proposed additions do not add necessary context to the single question and answer in Statement 18 regarding Mr. Shkreli's lack of trading discretion over Mr. Austin's money. In addition, the government contends that a portion of the additional testimony Mr. Shkreli seeks to add is itself incomplete, as it is in reference to a document not otherwise described in that additional testimony.  (Gov. Resp. at 21.)

19

Mr. Shkreli's proposed modifications do not add necessary context for Statement 18 regarding Mr. Shkreli's lack of trading discretion over Mr. Austin's money.  First, as the government points out, these additions include an ambiguous reference which is not explained in the testimony.  (Mot. Ex. 2 at 4 ("I take it *that* wouldn't have been accurate as of *that* time?") (emphasis added).)  This addition creates, rather than resolves, a Rule 106 problem.  Second, the fact that Mr. Shkreli may have made trading recommendations to Mr. Austin, whom Mr. Shkreli admits "executed those trades, fully [at] his [own] discretion," does not modify or complete Mr. Shkreli's admission that did not "ever have trading discretion over any of [Mr. Austin's] money."  (*Id.* at 5.)  Mr. Austin is expected to testify at trial and may be cross-examined by Mr. Shkreli's counsel.  Statement 18 is admissible without Mr. Shkreli's proposed modification.

### 5.  *Statement 22*

Statement 22, again from Mr. Shkreli's August 7, 2013 SEC Testimony, involves Mr. Shkreli's answers to questions about a "collection of emails" with the subjects "MSMB Capital Management LP performance estimate" or "MSMB performance estimate."  Mr. Shkreli confirms that he "wrote all of these" emails in an attempt to "keep the investors apprised of their

account values and the performance of the hedge fund," and that
he performed the calculations himself.  (Mot. Ex. 2 at 15.)

Mr. Shkreli seeks to add additional testimony from
that same transcript, in which he explains how he performed the
calculations and created the performance estimates.  (*Id.* at 15-
16.)  He also claims that MSMB Capital held "private stock in
Retrophin."  (*Id.* at 16.) The government argues that
Mr. Shkreli's proposed additional testimony is not necessary to
provide context for the statement the government seeks to
introduce, because Statement 22 involves Mr. Shkreli's
confirmation that he calculated and created the performance
estimates, whereas Mr. Shkreli's proposed additions relate to
how he created those estimates.  (Gov. Resp. at 23.)  The
government also argues that certain of Mr. Shkreli's statements
in his proposed addition are self-serving, and that his claim
that MSMB held stock in Retrophin is false.  (*Id.*)

Mr. Shkreli's proposed modifications do not provide
necessary context for Statement 22.  Whether Mr. Shkreli created
the performance estimates is a separate issue from how he
calculated those estimates.  *See, e.g.*, *Lumiere*, 2017 WL
1391126, at *6-7.  For this reason, the court denies Mr.
Shkreli's proposed modification to Statement 22.

### 6. Statement 23

In Statement 23, also from Mr. Shkreli's August 7, 2013 SEC Testimony, Mr. Shkreli states that he spoke to "all" of the MSMB Capital investors about the OREX trade and resulting losses. (Mot. Ex. 2 at 16, *see* Gov. Resp. at 23.)  To supplement Statement 23, Mr. Shkreli seeks to add portions of his May 15, 2012 FINRA Testimony, in which he is asked about "MSMB's telephone records" of inbound and outbound calls from February 1, 2011 and February 2, 2011, around the time of the OREX trade. (*See* Mot. Ex. 2 at 16-17.)  Mr. Shkreli identifies various phone numbers as belonging to certain individuals, including investors in MSMB, and institutions such as Deutsch Bank and Merrill Lynch.

Mr. Shkreli argues that this additional testimony will establish that he actually did call his investors to notify them about the OREX trade.  (*See* Tr. at 53:13-21.)  The government argues that Mr. Shkreli's proposed additional deposition testimony is too far removed in time and context from Statement 23 for the court to require its inclusion, and also contends that "whether or not Shkreli spoke to an MSMB Capital investor on one of those two days is not dispositive of whether Shkreli *ever* had a conversation with those investors about the OREX trading losses."  (Gov. Resp. at 24.)

22

Mr. Shkreli's statement in his 2013 SEC Testimony that he spoke to all of the MSMB investors about OREX stands on its own.  First, it is unclear what, if any, value a jury might find in Mr. Shkreli's proposed modification.  When presented with the list of calls, Mr. Shkreli was only able to identify several of the telephone numbers and the associated individuals; for many, he could not recall, or offered only a vague recollection.  (*See* Mot. Ex. 2 at 18-25.)  Nor did he recall the substance of many of the conversations he had with the individuals he talked with on February 1 and 2, 2011.  (*See id.*)  Second, even if Mr. Shkreli had clearly recalled the telephone conversations referenced in his May 15, 2012 FINRA Testimony, addition of this testimony would not be required under Rule 106.  As described *supra*, the purpose of Rule 106 is not to require that a defendant be permitted to explain or support prior statements; it is only to ensure that a statement cannot be introduced out of context, in a manner that could mislead a jury.  *See Gonzalez*, 399 Fed App'x at 645.  The proposed modification of Statement 23 is not required for context, and is, therefore denied.

### 8.  *Statements 31 and 32*

In Statements 31 and 32, from Mr. Shkreli's February 24, 2014 SEC Testimony, Mr. Shkreli testified that he read

23

through the MSMB Healthcare private offering memorandum to make sure it was accurate, but that he "can't remember," and "probably" did not, have counsel review the document before he distributed it.  (Mot. Ex. 2 at 34, 36.)  He seeks to add additional portions of his testimony, in which he states that a lawyer, Jeff Cobb of Cobb & Eisenberg, "probably" drafted the memorandum for MSMB Capital Management LP.[5]  (*Id.* at 35.)  The government argues that inclusion of these additional statements is not required under Rule 106.

The government also contends, and the court concludes, that Mr. Shkreli's proposed modifications would mislead the jury.  As he testified in Statements 9, 31, and 32, Mr. Shkreli used a document drafted by Cobb & Eisenberg for Elea Capital and repurposed it himself for MSMB Capital. (Mot. Ex. 2 at 1.)  Mr. Shkreli then used his repurposed document for MSMB Capital, and again revised it, without involvement of counsel, for MSMB Healthcare.  (Mot. Ex. 2 at 34-35.)  Mr. Shkreli's proposed modifications for Statements 31 and 32, which include claims that Joseph Cobb, of Cobb & Eisenberg, "drafted" the MSMB Healthcare private offering memorandum (Mot. Ex. 2 at 34-35),

---

[5] At oral argument, the court noted that Statement 9 addressed Mr. Shkreli's concerns regarding Statements 31 and 32, specifically the genesis of the MSMB Healthcare private offering memorandum.  Mr. Shkreli's counsel appeared to agree with the court's assessment, but did not formally withdraw his motions as to Statements 31 and 32.  (*See* Tr. 58:3; 59:11.)  To avoid confusion, the court will rule on these motions here.

are misleading, as a reasonable juror would conclude that Mr.
Cobb had drafted the document *for* MSMB Healthcare, and not for
one of Mr. Shkreli's previous, unrelated hedge funds.
Mr. Shkreli's proposed modifications would thereby create the
very problem Rule 106 is intended to prevent, and is not
admissible under Rule 403.  *See Lyttle*, 460 F. App'x at 7 (Rule
106 modifications may be necessary "to avoid misleading the
trier of fact."); Fed. R. Evid. 403.  As Mr. Shkreli's proposed
modifications will confuse, rather than clarify, Statements 31
and 32, they are denied.

### C.    Evidence that Mr. Greebel is Under Indictment and Mr. Greebel's Testimony at Trial

Mr. Shkreli has moved to preclude evidence that Mr.
Greebel is under indictment.  (Shkreli Resp. at 6.)  The court
denies this motion as moot, because the government will not make
reference to the fact of Mr. Greebel's indictment and has edited
the Superseding Indictment to remove indications that Mr.
Greebel has also been charged.  (Gov. Reply at 23-24.)

Relatedly, the government has moved to preclude
Mr. Shkreli from calling Mr. Greebel as a witness, citing the
risk that Mr. Greebel will simply invoke his Fifth Amendment
right not to testify.  (Gov. Reply at 24-25.)  Mr. Shkreli's
counsel stated at oral argument that he would not call

Mr. Greebel as a witness (Tr. at 32:20-21), and this motion is
therefore likewise denied as moot.

## II. **The Government's Motions *in Limine***

### A. **Evidence of Mr. Shkreli's Termination from RBC**

The government contends that evidence of Mr. Shkreli's
termination from RBC in 2008 is admissible both as direct
evidence of the offenses charged in Counts One through Six of
the Superseding Indictment and pursuant to Rule 404(b), as
evidence of Mr. Shkreli's knowledge, intent, and lack of
mistake.  Further the government asserts that the similarity of
Mr. Shkreli's actions at RBC to the crimes charged favors
admission under the Rule 403 balancing test.  The government
asserts that Mr. Shkreli was fired from RBC in 2008 after two
months of employment for "concealing trades that he conducted in
contradiction of explicit orders of management."  At the time
Mr. Shkreli was a registered representative with the Financial
Industry Regulatory Authority, a self-regulatory organization.
After Mr. Shkreli was terminated by RBC for trades away from the
firm's supervision and for concealing such trades, RBC notified
FINRA of his termination.  (Gov. Mot. at 3-4, 11.)

Mr. Shkreli argues that evidence of his termination
from RBC is "wholly irrelevant" and creates significant
prejudice (Shkreli Sur-Reply at 3), and that he will challenge

any assertion that he committed a bad act at RBC, which would

create a distraction for the jury.  (Shkreli Resp. at 5).  At

oral argument, counsel for Mr. Shkreli also contended that Mr.

Shkreli "never touted his employment at RBC as

a . . . credential that would cause someone to invest who might

otherwise not have invested."  (Tr. at 72:6-9.)

Mr. Shkreli is charged, *inter alia*, with securities

fraud and conspiracy to commit securities fraud in violation of

Rule 10b-5 of the Rules and Regulations of the Securities

Exchange Commission ("Rule 10b-5").  Rule 10b-5 makes it

unlawful "[t]o make any untrue statement of a material fact or

to omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which

they were made, not misleading."  17 C.F.R. § 240.10b-5(b).  "A

fact is material when there is a substantial likelihood that its

disclosure would have been viewed by the reasonable investor as

having significantly altered the 'total mix' of information

available."  *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F.

Supp. 3d 568, 579-80 (S.D.N.Y. 2016), *reconsideration denied*,

No. 14-CV-3251 (JPO), 2016 WL 2642223 (S.D.N.Y. May 6, 2016)

(quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) and

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360

(2d Cir.2010)); *see also United States v. Contorinis*, 692 F.3d

27

136, 143 (2d Cir. 2012) (applying the "total mix" standard in a criminal case).  "[W]hen the government (as opposed to a private plaintiff) brings a civil or criminal action under Section 10(b) and Rule 10b-5, it need only prove, in addition to scienter, materiality, meaning a substantial likelihood that a reasonable investor would find the omission or misrepresentation important in making an investment decision, and not actual reliance." *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013).

With regard to the alleged material omissions, "'[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information'" and "'[d]isclosure of an item of information is not required simply because it may be relevant or of interest to a reasonable investor.'"  *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152-53 (2d Cir. 2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011) and *Resnik v. Swartz,* 303 F.3d 147, 154 (2d Cir. 2002)).  Rule 10b-5 predicates criminal responsibility for omissions on the making of a statement, in relation to which the omission in question would have been material. *Id.* ("Disclosure is required . . . only when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading'" (citing *Matrixx*, 131 S. Ct. at 1321 and 17 C.F.R. § 240.10b-5(b)); *see also*

*United States v. Bongiorno*, No. 05 CR. 390 (SHS), 2006 WL 1140864, at *8 (S.D.N.Y. May 1, 2006), *reconsideration denied in part*, 2006 WL 155359 (S.D.N.Y. June 5, 2006) ("The rule's plain language thus makes it clear that liability for an omission pursuant to subsection (b) requires a statement to have been made." (citations omitted)); *United States v. Hayward*, No. 05 CR. 390 (SHS), 2006 WL 1559359, at *2 (S.D.N.Y. June 5, 2006) (same); *United States v. Finnerty*, No. 05 CR. 397 DC, 2006 WL 2802042, at *6 (S.D.N.Y. Oct. 2, 2006) (same). Thus, the government contends that the threshold materiality of Mr. Shkreli's omission of his losses and termination from RBC, in the context of his statements to investors regarding his industry success and experience, supports admission of Mr. Shkreli's employment at RBC to complete the story.

In addition to the alleged material omissions, however, the government has also asserted that Mr. Shkreli made "misstatements," which would be affirmative conduct not subject to the limitations concerning omissions. 17 C.F.R. § 240.10b-5(b) (prohibiting "any untrue statement of a material fact"); *see United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008) (noting that the "broad language" of § 10(b) of the Securities Exchange Act of 1934 "extends to manipulation of all kinds, whether by making false statements or otherwise" and that "Rule

29

10b-5 . . . prohibits . . . frauds brought about by making materially false or misleading statements" (citations omitted)). "A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b-5 where there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision." *United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015) (internal quotation marks and citations omitted).

If Mr. Shkreli made "untrue" statements concerning, for example, his prior work history, his termination, or the reasons for his separation from RBC, evidence of his alleged concealment of trades may therefore be relevant.  The government seeks to admit evidence that Mr. Shkreli made "misstatements" regarding his "long track record of success," and "about his unblemished track record in the industry."  (Gov. Mot. at 11.) Thus, evidence of Mr. Shkreli's background and experience at RBC may be relevant to the jury's determination of whether he made material misstatements to MSMB Capital and MSMB Healthcare investors.  The court reserves ruling on the admissibility of Mr. Shkreli's RBC employment record, pending evidence that Mr. Shkreli made representations and omissions material to his MSBMB investors.

The government further contends that even if Mr. Shkreli's employment record at RBC is not direct evidence of the charged crimes, information about Mr. Shkreli's termination from RBC is admissible under Rule 404(b) to show "knowledge, intent, and lack of mistake" relating to the alleged concealment of losses at MSMB Capital. (Gov. Resp. at 11.) The government's explanations for admission on this basis are conclusory and insufficient. In the case of RBC, Mr. Shkreli was a trader reporting to management; in the case of the MSMB entities, he was a hedge fund manager who solicited investors and managed their portfolios. Thus, the government would need to show, and it has not, that the rules concerning disclosure under these different circumstances are sufficiently similar enough that Mr. Shkreli's experience at RBC would have provided him with enough knowledge or experience to negate any defense of mistake or lack of knowledge.

The court rules that if evidence concerning Mr. Shkreli's termination from RBC is not admissible under 404(b). There is a risk that jurors would improperly infer that Mr. Shkreli's concealment of losses at RBC, if proved, indicates a propensity to conceal bad results – precisely the danger that Rule 404(b) is intended to prevent.

31

For the foregoing reasons, the court reserves its ruling on the government's motion to admit the RBC evidence as direct evidence of Counts One through Six, and denies its admission as 404(b) evidence.  Prior to introducing any evidence relating to Mr. Shkreli's employment at or termination from RBC, the government must promptly alert the court.  It must also make a proffer of the statement or statements that were either made misleading by the omission of information about Mr. Shkreli's termination from RBC, or that were untrue material statements.

**B.    Evidence or Testimony Regarding Reliance on Counsel**

The government moved to preclude Mr. Shkreli from introducing evidence or argument of a reliance on counsel defense as to Counts One through Six of the Superseding Indictment.  (Gov. Mot. at 13.)  At oral argument, however, counsel for Mr. Shkreli stated that he "will not be arguing that Mr. Shkreli relied on the advice of any lawyer with respect to those counts."  (Tr. at 32:4-6.)  The court therefore denies this motion as moot.

**C.    Mr. Shkreli's Background, Prior Good Acts, and Plans if Acquitted**

The government seeks to preclude evidence of Mr. Shkreli's prior "good acts," as well as certain evidence related to Mr. Shkreli's background and motivation for founding Retrophin.  (Gov. Mot. at 23, 33; Gov. Resp. at 8.)

32

Specifically, the government asks the court to exclude evidence relating to Mr. Shkreli's lack of a criminal record, "information about or visual depictions of myotubular myopathy, Duchenne Muscular Dystrophy or Joshua Frase" (Gov. Resp. at 8), and other evidence of Mr. Shkreli's "alleged intent to help the suffers of devastating diseases" (Gov. Mot. at 33-35).  The government also asks that the court preclude evidence or argument as to Mr. Shkreli's plans if acquitted.  (Gov. Mot. at 23.)

At oral argument, counsel for the defense stated that unless Mr. Shkreli testifies, he would only introduce evidence relating to Mr. Shkreli's lack of criminal history or positive prior history to the extent it played a role in investors' decisions to fund the MSMB entities or Retrophin.  (Tr. 82:3-9; 85:24-25.)  Defense counsel also represented that he would not introduce evidence or offer argument related to Mr. Shkreli's plans if acquitted, although he noted that if Mr. Shkreli testifies, he may discuss his work at Turing Pharmaceuticals during the charged period.  (Tr. at 86:15-20.)  The court therefore denies as moot the government's motion to preclude evidence of Mr. Shkreli's background, criminal history, and plans if acquitted.

With regard to the government's objection concerning the introduction of evidence about, and depictions of, certain diseases, counsel for Mr. Shkreli has stated that he would not present a "slide show on the science" and would introduce such evidence in relation to Mr. Shkreli's motivation for founding Retrophin or investors' reasons for investing in the company.[6] (Tr. 81:10-24; 82:21-22; 83:15-17.)  The government's motion is therefore denied as moot.

### D.   Evidence of Arbitrations

The government also moves to exclude, as hearsay, evidence of arbitrations concerning Retrophin's consulting agreements with a former MSMB Healthcare investor ("investor SR") and a former Retrophin employee ("employee TK").  (Gov. Mot. at 25.)  In addition, the government argues that evidence of these arbitrations is "irrelevant and unduly prejudicial." (*Id.*)  At oral argument, however, the parties advised the court that the government will not call investor SR as a witness, and that as a result the defendants do not anticipate that they would move to introduce the arbitration decisions.  (Tr. 66:18-24.)  In addition, counsel for Mr. Shkreli stated that he would not reference the arbitration decisions in his opening

---

[6] As discussed with the parties, defense evidence or argument as to Mr. Shkreli's motivation in founding and operating Retrophin may open the door to rebuttal evidence.  (*See* Gov. Reply at 10; Tr. at 85:1-14.)

statement.  (*Id.* at 68:6-10.)  Furthermore, to the extent the
defense cross-examines government witness Stephen Aselage on his
prior testimony during the investor SR arbitration, defense
counsel has committed that he will not reveal the arbitration
results, and will refer to the arbitration as a "civil
proceeding."  (Tr. 67:12-13; 69:11-13.)

Accordingly, the court denies the government's motion
as moot.  Should Mr. Shkreli decide to call investor SR and
offer the arbitration decision into evidence, he shall promptly
alert the court and shall also provide the court with a copy of
the decision.  (Tr. 68:3-5.)  The same process should be
followed if Mr. Shkreli seeks to introduce evidence of the
arbitration with employee TK.

### E.  Evidence Concerning the Relationship Between the Government and Retrophin

The government moves to "preclude evidence and
argument regarding the government's motives for prosecution."
(Gov. Mot. at 28.)  At oral argument, counsel for Mr. Shkreli
explained that he would not argue that the "[g]overnment is
doing anything wrong by prosecuting this case," and he agreed
with the government that it would not be appropriate to engage
in a "mini-trial" regarding whether Retrophin was behind the
charges in this case.  (Tr. at 87:21-23; 88:9-17.)  The
government acknowledged that Mr. Shkreli could cross-examine

35

Retrophin board members regarding potential bias stemming from
Retrophin's civil suit against Mr. Shkreli.  (Tr. at 88:9-14.)
The government's motion is therefore denied as moot.

**F.   Lack of Ultimate Harm to Investors**

The government moves to exclude all evidence or
argument regarding a lack of ultimate harm to investors:
specifically, that Mr. Shkreli lacked intent to defraud
investors, based on his good faith belief that "the hedge funds
would be ultimately be profitable and the investors would
profit," thus excusing any misrepresentations or omissions made
to investors in MSMB Capital and MSMB Healthcare.[7]  (Gov. Mot. at
30.)  The government notes that the Second Circuit has upheld
the use of "no ultimate harm" jury charges, which instruct the
jury that "[n]o amount of honest belief on the part of a
defendant that the scheme will ultimately make a profit for the
investors will excuse fraudulent actions or false
representations by [the defendant]."  (Gov. Mot. at 31-32,
citing *Leonard*, 529 F.3d at 91.)  The government also argues
that the actual loss of "money or property" is not an element of
wire fraud.  (Gov. Reply at 18-19 (citing *United States v.*

---

[7] In its reply, the government contends that through arguments on the lack of
ultimate harm, Mr. Shkreli may be seeking jury nullification of the charges.
(Gov. Reply. at 17.)  At oral argument, counsel for Mr. Shkreli made clear
that he will not make argument relating to jury nullification.  (Tr. 97:18-
19.)

*Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016)).  Rather, the
government contends, even if a defendant "meant to cause no
ultimate harm to investors," he is guilty if he "intended to
cause [investors] 'immediate harm' by denying them the right to
control their assets by depriving them of the information
necessary to make economic decision."  *United States v. Levis*,
488 F. App'x 481, 486 (2d Cir. 2012) (summary order) (citing,
*inter alia*, *United States v. Ferguson*, 676 F.3d 260, 280 (2d
Cir. 2011) (as amended)).

        At oral argument, counsel for Mr. Shkreli contended
that the government's motion prematurely raised an issue better
left until the court confers with the parties regarding the jury
instructions.  (Tr. at 92:4-13.)  Although defense counsel
agreed not to use the phrase "no ultimate harm" in his opening
statement (Tr. 91:21-22), he noted that Mr. Shkreli's investors
were sophisticated and that "if . . . they agreed to go into
Retrophin because that was the way they would get their money
back, I'm not certain those people are victims of a fraud" (Tr.
95:11-15).  Mr. Shkreli intends to probe whether investors
"implicitly . . . understood" that Mr. Shkreli was planning to
move their money to Retrophin.  (94:21-22; 95:18-96:9).

        As the defense has argued, and the government has
acknowledged, there will be evidence presented at trial that

37

MSMB investors were compensated for their losses with Retrophin stock, allegedly through another fraud, as charged in Count Seven of the Superseding Indictment, regardless of whether the court gives a "no ultimate harm" jury instruction.[8]  (Tr. 99:4-5; 100:2-9.)  Nonetheless, the evidence that Mr. Shkreli tried to compensate his investors for losses in his fund by giving them shares of Retrophin stock, soon after the MSMB funds failed, is not probative of or relevant to his motive and state of mind at the time of the alleged fraud, that is, when the alleged false representation occurred and the investors were denied the right to control their assets.

Thus, to the extent the government or Mr. Shkreli seek to introduce evidence relating to Mr. Shkreli's actions or efforts relating to providing his MSMB investors with Retrophin stock, such evidence is admissible as direct evidence of Count Seven.  As to Counts Two and Five, if Mr. Shkreli disclosed to MSMB investors that he would use their funds to invest in Retrophin, evidence of his efforts to return profits to the MSMB investors *vis-à-vis* Retrophin could be probative of his intent

---

[8] The Second Circuit has affirmed the use of "no ultimate harm" jury charges in several cases.  *See, e.g.*, *United States v. Leonard*, 529 F.3d 83, 91 (2d Cir. 2008), *Levis*, 488 F. App'x at 486; *United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011).

when he thereafter is alleged to have made the fraudulent misrepresentations and omissions to the MSMB investors.

The jury could be confused or inadvertently misled by argument or evidence that focuses not on Mr. Shkreli's actions at the time of the misrepresentation or material omission – which may be probative of his intent – but on later actions by Mr. Shkreli and the performance of Retrophin stock.  Mr. Shkreli has argued in his papers, for example, that he should be permitted to "introduce evidence that his investors suffered no harm to show his good faith and lack of fraudulent intent with respect to the Government's charges for conspiracy to commit wire fraud," and that the "'victims' of counts one through six made hundreds of thousands or millions of dollars." (Shkreli Resp. at 14-15.)  This line of argument is not consistent with the law, and risks the introduction of minimally relevant, prejudicial, and confusing evidence.  This argument is distinguishable from, though related to, the cases cited by the government concerning "no ultimate harm" jury charges.  In those cases, the issue in contention was whether a defendant's belief *at the time of the charged conduct* that his scheme will ultimately succeed excuses contemporaneous intentional material omissions or misstatements.  Mr. Shkreli, however, does not simply contend that his investors suffered no ultimate harm

39

because he believed that Retrophin would be a successful
investment or because he eventually made money for his
investors.  Instead, he further argues that investors' profits
from Retrophin shares – the "lack of harm" – *show* that he did
not have the requisite intent.  He therefore asks that the jury
be permitted to consider evidence from which his intent at the
time of the charged conduct can be inferred from the later
performance of a publicly-traded company.

          Such evidence is of limited probative value as to Mr.
Shkreli's intent at the time of the alleged fraud.  Had
Retrophin declined in value, for example, the decline would not
be retroactively considered as evidence of bad faith at the time
of the alleged fraud.  The government charges, in Count Eight of
the Superseding Indictment, that Mr. Shkreli improperly sought
to maintain control over the price of Retrophin.  (*See* Sup. Ind.
at ¶¶ 57-59.)  Mr. Shkreli could not have been certain, *ex ante*,
that Retrophin would be successful, and so the fact of its
ultimate success or failure is at best minimally relevant to the
question of his intent as to the charges in Counts One through
Six.  Moreover, such evidence is likely to mislead and confuse
the jury into assessing Mr. Shkreli's guilt or innocence based
on the later performance of Retrophin stock.  Consequently, Mr.
Shkreli may not argue that because some investors may have

40

profited from their investment relationship with Mr. Shkreli, he lacked intent to defraud.

## CONCLUSION

For the foregoing reasons, and as set forth in this opinion, the court grants in part and denies in part certain of the parties' motions *in limine*, and reserves judgment on the remainder. This order is without prejudice, and with leave to renew consistent with this opinion.

**SO ORDERED.**

Dated: June 24, 2017
      Brooklyn, New York

                                                      /s/
                                         KIYO A. MATSUMOTO
                                         United States District Judge
                                         Eastern District of New York