## BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

June 25, 2017

**Via ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re.   United States v. Martin Shkreli, 15 CR 637 (KAM)

Dear Judge Matsumoto:

By this letter, defendant moves for reconsideration, pursuant to Local Criminal Rule 49.1(d) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, of that part of the Court's decision filed yesterday addressing the so-called Lack of Harm to Investors.  See Dkt. # 257, 6/24/17 Memorandum and Order ("Decision") at pp. 36-41.  Because the Court's decision is premised on apparent findings of fact made by the Court in the absence of any evidence, and because the Court's conclusions are based on the Government's allegations which are inconsistent with the defendant's contentions, the Court's decision concerning the Lack of Harm to Investors is based on disputed and invalid factual premises, and is, most respectfully, in error.  Moreover, the Court's decision, issued two days prior to the commencement of jury selection, eviscerates the defendant's factual defense and can serve as a directed verdict of guilty.

The Court premised its Lack of Harm decision on findings of fact that are, respectfully, disputed and invalid.  First, there has been no evidence elicited whatsoever in this matter and, therefore, none of the Government's allegations should be accepted as true in determining whether to preclude the defense from introducing evidence of Mr. Shkreli's good-faith and lack of fraudulent intent.  Second, the issues on which the Court has made factual findings are critical factual issues to be passed on by the jury, and the jury alone.

The Court assumed the following prior to reaching its legal conclusion. First, the Court states as an apparent matter of fact that "Mr. Shkreli could not have been certain,

**BRAFMAN & ASSOCIATES, P.C.**

*ex ante*, that Retrophin would be successful." Decision at p. 40.  Second, the Court stated that "there will be evidence presented at trial that MSMB investors were compensated for their losses with Retrophin stock, allegedly through another fraud…" Decision at pp. 37-38.  Third, the Court appears generally to assume that Shkreli committed fraudulent actions and made false representations based on nothing more than contentions in the Government's written submissions.

      The Court cannot and should not make assumptions about the facts prior to the conclusion of the evidence in the case.  Moreover, the Court simply cannot make such factual conclusions and assumptions where, as here, the end result of the court's fact-finding is a wholesale evisceration of the defendant's factual defense.  The Court's statements assume a number of important and contested issues of fact in dispute.  For example, the issue about the relationship between MSMB entities and Retrophin is a contested issue of fact.  While the Government will apparently try to prove that MSMB and Retrophin are entirely separate, and that investors in MSMB did not expect that their investment would include Retrophin, and that Retrophin was not part of MSMB, this is a disputed issue of fact.  There can be no dispute, however, that MSMB held shares of Retrophin.

      Further, while the Government will apparently try to prove that Mr. Shkreli acted in bad faith when providing performance estimates to his investors at various times, including after losses in the Orex trade, this is another disputed issue of fact.  We expect the evidence to contradict the Government's theory of its case--demonstrating that Mr. Shkreli acted in good faith when he provided performance estimates of Retrophin.  Among other things, for example, there will be evidence that Mr. Shkreli believed in earnest that Retrophin was successful, had a significant valuation based on sound accounting principles, and a reasonably foreseeable projected success at the time of alleged misstatements relating to Counts One through Six.  In this regard, the genuine nature of Shkreli's belief in the success of Retrophin will be a critical factual issue and the subject of a great deal of evidence.  Indeed, if the jury accepts Mr. Shkreli's view of the evidence, they could clearly find that he never had any intent to defraud his investors.

      For the Court to state as a factual matter before the trial has even begun that "Mr. Shkreli could not have been certain, *ex ante*, that Retrophin would be successful," Decision at p. 40, is to endorse the Government's view, and reject the defendant's view, even before the trial has started.

      In terms of the motion for reconsideration, we could not possibly have addressed this issue before yesterday, because we had no idea that the Court had this view of the facts until it made its factual statements in yesterday's decision.  Indeed, we had no idea the Court had any view of the facts for the simple reason that there has been no evidence.

      To be clear, we respectfully but absolutely disagree with the Court's view of the facts.  Among other things, we believe the evidence will show that Mr. Shkreli absolutely believed at an early stage that Retrophin would be the very successful company he built it into through his tireless effort.  Accordingly, our position is that the evidence will show

**BRAFMAN & ASSOCIATES, P.C.**

that Mr. Shkreli never had any intent to defraud his investors. Indeed, showing this is central to our belief that Mr. Shkreli is innocent of these charges. We are deeply distressed that prior to hearing any evidence, the Court has reached factual conclusions on central issues in this case that are so clearly inconsistent with what we believe the evidence will show.

This is precisely the reason why we asked the Court to forgo any decision on this issue until hearing the evidence. At oral argument on this issue, Mr. Shkreli's counsel stated as follows:

> "Here there's been no evidence. . . . the Government is – is going to contend, I suppose that Martin Shkreli committed – made misrepresentations or omissions with an eye toward losing people's money in the short term but not the long term. That hasn't been proven yet. It might never be proven."

6/19/17 Transcript at p. 90 (emphasis added).

However, despite the fact that the trial has not even started, the Court has nonetheless found that the Government has proven precisely this point. Specifically, the Court has indicated, as noted, that it has found as a factual matter that Shkreli made misrepresentations because he "could not have been certain" in the success of Retrophin.

The Court also stated that MSMB investors were compensated with Retrophin stock. This misses the heart of the defense. The defense is that Retrophin grew out of MSMB, so when Mr. Shkreli provided the investors with Retrophin stock, this was part of the same overall investment. He was not paying the investors back. In other words, Shkreli did not defraud the investors and then make it up to them later with a different investment. This may be the Government's view, but it is not ours. Rather, Shkreli was bringing an investment asset in the form of Retrophin to his pre-existing investors. By making the factual statement to the contrary, the Court appears to have accepted the Government's view on this important point.

In addition, even in the absence of any evidence, the Court appears to have found the factual predicate required by cases such as United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998) and United States v. Berkovitch, 168 F.3d 64 (2d Cir. 1999) for the No Ultimate Harm charge and is now working backward to preclude evidence and argument consistent with the charge it apparently plans on giving after the evidence has been admitted. These cases, however, require an actual "factual predicate" that is based on evidence. The factual predicate that is required is that the defendant engaged in "fraudulent actions or false representations." Before the No Ultimate Harm charge is appropriate, there must be facts in the record that the defendant engaged in fraudulent actions or made false representations. The Court may not, as the Court has done here, simply assume this to be true based on pretrial briefing.

## BRAFMAN & ASSOCIATES, P.C.

At trial, the defendant will show that Mr. Shkreli never, *at any time*, intended for a single investor to lose a dime. Not in the short term; not in the long term; not ever. That is our contention; that is what we believe the evidence will show. We believe the jury will agree with us; and we believe it will acquit Martin Shkreli. That is why we believe the so-called No Ultimate Harm charge does not apply to these facts. This is also why we requested that the Court not make a finding as to the applicability of the No Ultimate Harm jury charge until after hearing the evidence.

Indeed, courts in the Second Circuit do not preclude defendants from eliciting evidence relating to a defendant's intent and good faith. Instead, after the close of evidence, courts make a determination as to whether to give a No Ultimate Harm instruction to the jury. In the decisions cited by the Court, the District Courts determined to give a No Ultimate Harm instruction after the close of the evidence—and thus the District Courts did not preclude the defendants from offering evidence of intent and good faith prior to trial. Similarly, in the case of Okun relied on by the Government, the District Court denied the Government's motion to preclude evidence of a defendant's intent to repay his investors, holding that "a definitive ruling . . . is premature." Okun, Criminal No. 3:08-CR-132, 2009 WL 414009, at *8 (E.D. Va. Feb. 18, 2009). Additionally, the Okun court explained that since the Government had "put the veracity of [the defendant's] statements at issue, . . . he [was] perforce permitted to demonstrate that veracity." Id. at *6.

Similarly, even the cases relied on in the Government's motion on this issue do not hold that evidence regarding the lack of harm to investors is *inadmissible at trial*. Rather, the cases deal with what the appropriate language should be at the *charging phase* of the trial. See United States v. Levis, Cr. No. 10-4819, 2012 WL 2914118, at *4 (2d Cir. Jul. 18, 2012) (the defendant made his lack of harm and good faith defense arguments, and then the judge narrowly instructed the jury to clarify: "In considering whether or not the defendant acted in good faith, you are instructed that a belief by the defendant . . . that ultimately everything would work out favorably for investors does not require a finding by you that the person acted in good faith."); United States v. Leonard, 529 F.3d 83, 91 (2d Cir. 2008) (upholding District Court's jury charge).

Martin Shkreli has the absolute right to elicit evidence and have his attorneys argue to this jury that he never intended to steal a dime from anyone. He has the right to have his attorneys point to all potential evidence in this regard, including the fact that Retrophin did in fact rise in value. If the Government has a contrary view, it will give it. For the Court to "gut" the defendant's core defense by preventing his counsel from arguing or eliciting evidence of his lack of fraudulent intent, of his good faith, and of his absolute factual innocence is grievously unfair.[1]

---

[1] Clearly, the giving of an inappropriate instruction, just as the failure to give one that is properly requested, by tying the defense's hands, amounts to a directed verdict in violation of due process of law. Cf. Rodriguez v. Heath, 648 F. App'x 136, 140 (2d Cir. 2016) citing Harris v. Alexander, 548 F.3d 200 at 205-06 (2d Cir. 2008) (concluding that failure to instruct on agency defense violated due process under Cupp v. Naughten, 414

4

**BRAFMAN & ASSOCIATES, P.C.**

For all these reasons, we strenuously and respectfully request that the Court not preclude any offer of such evidence or argument before the trial even begins. Rather, as courts in this Circuit have done previously, any issues about the nature of the appropriate instructions to the jury can be resolved at the Court's charging conference following the presentation of the evidence.

In sum, we respectfully submit that if the Court precludes the defendant from arguing that the defendant acted in good faith or that he lacked criminal intent or that he is, in a word, innocent of the charges, such a ruling would both gut one of Mr. Shkreli's main defenses and would also constitute significant error.

Accordingly, we respectfully request that the Court reconsider its ruling on this issue, and that the Court wait until all the evidence has been elicited prior to making any decisions concerning appropriate jury charges, and that the Court not preclude evidence or argument on any fact relevant to good faith, lack of criminal intent or factual innocence. Given the significance of this issue to Mr. Shkreli's right to a fair trial, we request oral argument on this issue prior to opening statements.

Respectfully submitted,

Benjamin Brafman

cc:   All Counsel (via ECF)

---

U.S. 141 (1973)] where failure "converted a reasonable possibility of acquittal into a virtual directed verdict of conviction"), Jackson v. Edwards, 404 F.3d 612, 626 (2d Cir 2005) (concluding that failure to charge justification violated due process under Cupp where there was substantial probability that properly instructed jury "might well have acquitted"); and Davis v. Strack, 270 F.3d 111 at 132 (2d Cir. 2001) (concluding that failure to charge justification deprived petitioner, who confessed to shooting, of likely successful defense and, therefore, violated due process under Cupp).

5