# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

July 4, 2017

**VIA ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

Re.   **United States v. Martin Shkreli, Crim. No. S1 15 Cr. 637(KAM)**

Dear Judge Matsumoto:

A recurring issue in this trial will be the admissibility of email and other communications between Martin Shkreli and various investors or other persons. The defense submits this letter to set forth our position as the applicability of the Federal Rules of Evidence to emails and other communications that are not offered for the truth of matters in the statement. This issue has arisen at least once already, in connection with a series of 94 emails sent by or to Josiah Austin. The defense moved for the admission of these emails on the grounds that the emails were not being offered for the truth of the matters in the email, but rather to show (1) the effect on the recipient of the email, Austin, insofar as he then forwarded several of the Shkreli emails to his trader, Frank Ferrara, to presumably trade on the information Shkreli had provided to him, and/or (2) the precise nature of Shkreli's work, specifically that Shkreli provided research and insight to Austin about stock picks and related matters, and that this work was of value to Austin, and was in fact acted upon by Austin. See Transcript, June 30, 2017, p's 1234-1244. While the Court denied admission of these emails, we are not seeking to exhume an already-decided issue to litigate it again. Rather, this same issue will recur in connection with emails to and from Lindsey Rosenwald, Darren Blanton, Steven Richardson and many other Government witnesses.

We believe, most respectfully, that the position urged by the Government and adopted by the Court in regard to how inadmissible hearsay is defined and how it has been applied to certain

1

**BRAFMAN & ASSOCIATES, P.C.**

communications is in error. As was true of the Josiah Austin email communications, there are a host of reasons to allow the admission of a prior out of court statement aside from establishing the truth of a matter asserted in the statement. The Second Circuit has noted "(n)o statement is inherently hearsay. Whether or not a statement is hearsay depends upon what use the offeror intends the fact finder to make of it." United States v. Detrich, 865 F.2d 17, 20 (2d Cir. 1988).[1] This letter is intended to layout the specific hearsay issues that will be addressed in particular emails and other communications moving forward.

### 1. Prior Out Of Court Statements Relevant To Show Knowledge

Prior out of court "statements are not hearsay when they are offered not for their truth but to prove the extent of a declarant's knowledge." See 5-801 Weinstein's Federal Evidence, Sec. 801.11; United States v. Ansaldi, 372 F.3d 118, 130-131 (2d Cir. 2004)(in prosecution for conspiring to distribute, and distributing, chemical substances (GBL) that when ingested converts to "date rape" drug, Federal Drug Administration "Talk Paper" describing adverse effects of GBL ingestion, known to the defendants through their web research, was not hearsay because it was relevant to show defendant's knowledge of GBL's effects.).

In the instant case, the email evidence shows overwhelmingly that Shkreli sent lengthy analyses of drugs that were developed by companies in which his investors had invested. These emails are admissible because the emails demonstrate – indeed the emails are themselves the evidence – of Shkreli's intimate and impressive knowledge about these drugs. The investors were investing in Shkreli; they were investing in his genius, in his insights, in the hope that one of these emails would translate into a million dollar investment. These emails are the best, most direct evidence of his knowledge of the drug industry. They are not offered for the truth of anything he may have said.[2] Rather, they show his knowledge, and that knowledge is the commodity that is the true value to his investors. By eliminating from evidence the actual emails, the Court has deprived the defendant of a core aspect of his defense, specifically that Shkreli's investors invested in Shkreli. They invested in his knowledge of the drug business, in his knowledge of chemistry and biology, and in the tremendous amount of work he devoted to providing his investors with relevant information about the products in which they have invested.

The Austin emails, as will be the case with emails in connection with several other investors, are relevant to show Shkreli's knowledge of the drug business and also for the emails' effect on the listener. On this point, the Second Circuit reaffirmed in United States v. Dupree, 706 F.3d 131 (2d Cir. 2013) that "a statement offered to show its effect on the listener is not

---

[1] As to the Austin emails, the defendant, the proponent of the evidence, insisted repeatedly that the emails were not being offered for the truth but to show the impact on the listener and the state of mind of the parties. It was the Government, who was NOT the party seeking to admit the evidence, that maintained that the emails were offered for the truth of the facts in the statement.

[2] For instance, it is wholly irrelevant to this trial whether a particular drug works well or doesn't work well. It is terribly relevant, however, if an investor relies on Shkreli's communication and buys stock in the company that produces the drug. It is also relevant if an investor decides to invest with Shkreli precisely because of the nature and quality of his stock picks, which are communicated largely by email.

**BRAFMAN & ASSOCIATES, P.C.**

hearsay." Id. 706 F.3d at 136. Indeed, the Austin emails make this precise point: despite the fact that Shreli advocated that Austin amass a huge position in Chelsea based on Shkreli's belief that the stock would steadily rise, history would prove that the Chelsea stock did not rise. As a result, it is readily apparent that the defense was not offering the Austin emails for the truth – that Chelsea was a stock that would rise in price. Indeed, we all know it did not rise. Rather, the emails were relevant to show the interaction between Shkreli and Austin as well as the reasons Austin amassed such a large position in Chelsea.

As a general matter, the Government will maintain that investors were focused on concepts such as Assets Under Management, whether Shkreli did or did not have an auditor, and Shkreli's track record in determining whether to invest. However, the emails – the very emails themselves – tell a completely different story. The emails show that part of what each investor was getting by investing with Shkreli was regular downloads of valuable, detailed, actionable market information. By excluding these emails, the Court is striking at the very heart of the defense and making it impossible for the defense to show that in fact these investors placed great value on these email communications, as evidenced by the fact that many of the investors traded directly on the information Shkreli provided.

### 2. Prior Out Of Court Statements That Are Relevant Because The Statement Was Made

Pursuant to Federal Rule of Evidence 801(c)(2), email communications between Mr. Shkreli and certain witnesses testifying at this trial are *not* being offered for the truth of the matters asserted therein "(if) the significance of an offered statement is solely in the fact that it was made." Fed. R. Evid. 801(c) In such instance, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c), advisory committee note. The test is whether we are offering the email at issue to prove the content of the statements, or whether we are offering the email at issue for some other purpose.

United States v. Rowland, 826 F.3d 100, 114 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1330 (2017), is a seminal case on point. In Rowland, the Second Circuit held that the district court should have admitted emails between the defendant and a company's CEO over the government's objections. The Second Circuit held that the defendant did not seek to introduce the emails to prove the contents of the emails, but instead to prove that the defendant was, in fact, employed by the company and that—contrary to the government's allegations—his employment was not a sham to circumvent campaign finance laws. 826 F.3d at 114. Rowland is directly on point for a number of the communications between Mr. Shkreli and certain witnesses testifying at this trial. For example, in a number of instances, we have and will be offering certain emails to prove that communications between Mr. Shkreli and certain individuals were pursuant to a fruitful, binary relationship of mutual assistance, and not a sham designed to cheat and/or defraud these witnesses.

Moreover, emails and other documents are also admissible when offered for the not-for-truth purpose of *impeaching a witness's credibility*. United States v. Mergen, 764 F.3d 199, 206 (2d Cir. 2014) ("[T]he recording should not have been excluded on the bases of either hearsay or lack of authentication. That is because . . . prior inconsistent statements offered for impeachment are, by definition, not hearsay[.]"). In a number of instances, we have been and will be offering

**BRAFMAN & ASSOCIATES, P.C.**

emails and other documents on cross-examination for purposes of demonstrating that the witnesses made prior inconsistent statements in the emails and documents. That these government witnesses cannot recall the content of the emails has no impact on the application of this non-hearsay purpose in offering the documents into evidence. Indeed, when a witness fails to recall emails and other documents that call into question the credibility of the witness—such as emails from which the jury may reasonably infer that the witness has made a prior inconsistent statement—it is essential that the email or document is admitted into evidence so that we can confront the witness with the prior inconsistent statement. The email or document containing the prior inconsistent statement is an essential part of cross-examination and showing the jury the complete picture of what took place between Mr. Shkreli and the witness—in the absence of that prior inconsistent statement in writing with a witness testifying that he/she does not recall an event or communication from the past, the jury will get a misleading picture of what happened and we will not be able to demonstrate as effectively that the witness has made one or more prior inconsistent statements which undermine that person's credibility and/or recollection.

### 3. Prior Out Of Court Statements Relevant To Show State of Mind

Pursuant to Federal Rule of Evidence 803(3), emails between Mr. Shkreli and certain witnesses testifying at this trial have been and will be admissible hearsay because these emails and other documents describe the declarant's then-existing state of mind. See United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."). Emails are admissible under Rule 803(3) to show any number of aspects about the declarant's state of mind. Examples include that the declarant possessed a particular motive, Sleepy's, LLC v. Select Comfort Wholesale Corp., No. 07 CV 4018 TCP ARL, 2012 WL 716944, at *2 (E.D.N.Y. Mar. 5, 2012); that the declarant was confused, Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc., 104 F. Supp. 3d 371 (S.D.N.Y. 2015); and/or that the declarant possessed a particular intent, United States v. Lea, 131 F. App'x 320, 321 (2d Cir. 2005).

In Hopkins v. Nat'l R.R. Passenger Corp., No. 08-CV-2965 (NGG)(RML), 2016 WL 8711718, at *14 (E.D.N.Y. Apr. 29, 2016), the plaintiff, who was electrocuted at a bus station, received a text message that read "I hope your bus goes down." The court rejected the plaintiff's motion to preclude admission of the text message on hearsay grounds. The court held that the defendant was "not seeking to use the text messages to prove the truth of the matters asserted. For example, the [defendant] [was] indifferent as to whether [the sender] actually wanted [the plaintiff's] bus to go down. Instead, [the defendant] [was] offering the text messages as circumstantial evidence of [the sender's] state of mind. Therefore, the text messages [were] not hearsay." *Id.*

A statement is not hearsay if "offered as circumstantial evidence of an actor's beliefs or thoughts….Thus, the rule against hearsay does not bar evidence introduced to show a party's viewpoint or attitudes, of the basis for his or her conclusions." See 5-801 Weinstein's Federal Evidence, Sec. 801.11; Merchant v. Lymon, 828 F.Supp 1048, 1062 (SDNY 1993)(article including references to one of defendant's organized crime ties was introduced to explain the plaintiff's fear of filing a lawsuit against the defendant).

4

**BRAFMAN & ASSOCIATES, P.C.**

Moreover, a prior out of court statement is not hearsay if offered to "show relationship, link, or other connection with persons named in the statements. The evidence will be admitted over hearsay objection because its probative value does not depend on the truth of the assertions contained in the documents and thus its admission does not pose hearsay problems." See 5-801 Weinstein's Federal Evidence, Sec. 801.11. Again, the email correspondence between Shkreli and several of his investors show the nature of the relationship between them and are not offered to establish the truth of any particular statement in the email.

### 4. Past Recollection Recorded

Pursuant to Federal Rule of Evidence 803(5), emails between Mr. Shkreli and certain witnesses have been and will be admissible because they fall within the exception for past recollection recorded. To satisfy this exception, a document (i) must relate to a matter that the witness once knew about but now cannot recall well enough to testify fully and accurately; (ii) must have been made or adopted by the witness when the matter was fresh in the witness's memory; and (iii) must accurately reflect the witness's knowledge. See Fed. R. Evid. 803(5). Emails are admissible under Rule 803(5) so long as we can satisfy these three requirements. For example, in S.E.C. v. Daifotis, 874 F. Supp. 2d 870 (N.D. Cal. 2012), the district court ruled that an e-mail from an employee to the chief investment officer (CIO) was admissible as a past recollection recorded to show that CIO was involved in creating an advertisement. In the email, the employee wrote: "Here is an ad that [the defendant] liked and was very involved with in creating." The district court explained that this email was admissible because the employee testified that he no longer recalled what had occurred, but he confirmed that he wrote the e-mail message when the events were fresher in his mind.

As with Austin, we anticipate that several other witnesses will testify that they recall generally having email correspondence with Mr. Shkreli on certain topics, that they were familiar at the time with the matters in the email, that the emails reflect what the witness knew at the time about the topic, but that the witness cannot recall the specific facts accurately in July 2017. Rule 803(5) permits the admissibility of the document that recorded or reflected the recollection of the witness.

### 5. General Hearsay Considerations Moving Forward

As a more general point, the Government has established through the testimony of Sarah Hassan, Fred Hassan and Josiah Austin that Shkreli was a frequent user of email to communicate with his investors. Shkreli kept his investors updated by email; he advised them about the performance of their investments by email; he told them about which drugs were passing or failing clinical trials by email; he provided them with detailed analyses of drugs and their properties by email; he informed them about investment decisions by email. These communications are not admissible primarily because they are party admissions of the defendant. Rather, they are admissible because the email communications represent the work the defendant is performing on his investors' behalf, and they are relevant to show the states of mind of the parties to the communication, and for the other reasons set forth in points 1 through 4 above. As made clear in the leading evidence treatise, Weinstein on Evidence, cited above, these are well-established bases for prior out of court statements to be admissible.

**BRAFMAN & ASSOCIATES, P.C.**

      We continue of course to object to the wholesale exclusion of the Josiah Austin emails, and believe we have already preserved that issue. However, we also wish to advise the court to the fact that we will face the identical issue with the coming witnesses. The Court has thus far confined the defense to showing the email to the witness and seeking to refresh the witness' recollection under Rule 612. However, such an approach merely sidesteps the issue of the statement's admissibility in the first instance. If an email, for instance, is both relevant and not offered solely for the truth of the matter asserted in the email, it is admissible under Rule 401. That the email can also be used to refresh a witness' recollection does not confine the questioner to use the email in that manner. Rather, the email can be put into evidence as competent, relevant, admissible evidence under Rule 401.

      We thank the Court for its attention to this letter, and we wish the Court and our colleagues with the Government a pleasant Independence Day.

                                                 Respectfully,

                                                 Marc Agnifilo

cc: All Counsel (via ECF)