

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK/AES/GKS
F.#2014R00501

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 14, 2017

<u>By ECF and Hand</u>

Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  <u>United States v. Martin Shkreli</u>
           <u>Criminal Docket No. 15-637 (KAM)</u>

Dear Judge Matsumoto:

      The government writes respectfully to advise the Court that the defendant Martin Shkreli has indicated that he will object to one area of the anticipated testimony of Deborah Oremland of the Financial Industry Regulatory Agency ("FINRA"), whom the government intends to call as a fact witness on Monday, July 17, 2017, concerning a number of matters.

      As set forth below, the government expects that one topic of Ms. Oremland's testimony will be an explanation of certain Securities and Exchange Commission ("SEC") rules, regulations and forms, including Rule 144, which governs the holding and sale of restricted securities, and Schedule 13D forms, which require the disclosure of ownership including beneficial ownership, of stock of a publicly-traded company. As to this area of Ms. Oremland's testimony, the defendant contends that she is an expert witness pursuant to Federal Rule of Evidence ("FRE") 702. The government submits that she is a summary fact witness whose testimony is admissible under FRE 1006. Indeed, similar testimony by Ms. Oremland and her colleagues at FINRA has been held admissible under FRE 1006 in this Circuit. Ms. Oremland and her colleagues have provided similar testimony twice in recent trials in this courthouse, and Ms. Oremland has testified 18 times in 9 different federal districts regarding similar subject matter, without being qualified as an expert. In no instance

was this summary testimony precluded. On these bases, the Court should overrule the defendant's objection.[1]

## BACKGROUND

A. <u>Disclosure of Ms. Oremland</u>

The government disclosed Ms. Oremland as a witness in its initial disclosures on April 21, 2017, and identified her as a witness from FINRA on June 19, 2017. On July 13, 2017, the government provided the defendant with a detailed summary—set forth below—of Ms. Oremland's anticipated testimony as well as three summary charts that the government intends to use with Ms. Oremland.

B. <u>Anticipated Areas of Testimony</u>[2]

Ms. Oremland is a Director of the Criminal Prosecution Assistance Group ("CPAG") at FINRA, and has worked for FINRA for almost 16 years. Prior to joining CPAG in 2006, Ms. Oremland worked as an investigator in the Enforcement Department of FINRA from approximately April 2005 to September 2006, and worked as a Senior Analyst in the Market Regulation section of FINRA from approximately October 2001 to April 2005. She graduated in 1996 from the University of Michigan with a Bachelor of Arts in Psychology, and graduated from the American University, Washington College of Law with a Juris Doctor *cum laude* in 2000.

Among other things, Ms. Oremland is expected to provide testimony concerning the nature, structure, and regulation of the securities markets, and the roles of FINRA and the SEC in such regulation. She may also define various terms for the jury including, but not limited to, Over-the-Counter ("OTC") markets, reverse merger, shell company, restricted shares, free-trading shares, float, transfer agent, beneficial ownership and blue sheets. Ms. Oremland may define other similar terms, including, but not limited to, terms as defined in Section 13(d) of the Securities and Exchange Act of 1934 ("Exchange Act") and the Rules promulgated thereunder, and other terms that arise during the course of the trial and on cross examination. Ms. Oremland may also explain the purpose of this section and further explain the public disclosures required by this section. The government anticipates that Ms. Oremland will also explain how control of a significant portion of a

---

[1] In the alternative, the government is prepared to qualify Ms. Oremland as an expert pursuant to FRE 702 on the topic of explaining certain SEC rules, regulations and forms, as well as the effect of ownership and control of a publicly-traded company's stock can have on trading volume and share price.

[2] Although the defendant objects to one aspect of Ms. Oremland's testimony, the government submits this more detailed summary of her anticipated testimony to provide the Court with context for this witness' role in the trial.

company's stock can affect the trading volume and price of that stock. In connection with describing these Exchange Act provisions, the government plans to introduce certain relevant SEC public filings concerning Retrophin through Ms. Oremland. The defendant does not object to the introduction of the public filings.

Finally, Ms. Oremland also is expected to summarize the trading prices and volumes of the publicly-traded stock of Retrophin. She will also summarize blue sheet and transfer agent records that have been produced in discovery to identify relevant trades in Retrophin shares as well as Retrophin share disbursements. In connection with this testimony, Ms. Oremland has prepared summary charts pursuant to FRE 1006. The government has provided copies of such charts to the defense.[3]

Ms. Oremland will not be providing any opinion testimony, including about the propriety of the defendant's trading in Retrophin stock or his disclosure of ownership or control of Retrophin stock. Notably, FINRA does not allow CPAG employees to render opinions when testifying.

C. The Defendant's Objection

The defendant has indicated that he will object to the portion of Ms. Oremland's anticipated testimony related to (1) the description of relevant SEC regulations and (2) the effect that control of a significant portion of a publicly-traded company's shares can affect trading volume and stock price.

ARGUMENT

Ms. Oremland's Testimony Is Admissible Under Federal Rule of Evidence 1006

As the anticipated testimony set forth above demonstrates, Ms. Oremland is a summary fact witness whose testimony should be admitted under FRE 1006. She is not a lay opinion or expert witness whose testimony would be subject to FRE 701 or 702.

Federal Rule of Evidence 1006 permits a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Courts routinely permit witnesses such as Ms. Oremland to summarize complex and voluminous financial information for the benefit of the jury. In United States v. Levy, for example, the defendants moved to preclude the testimony of a witness from FINRA who proposed to give testimony that was substantially the same as the proposed testimony of Ms. Oremland: "summarize voluminous records of price and trading volume information regarding certain of the stocks at issue in this case, trading records of certain brokerage accounts at issue . . ., business

---

[3] The government will provide copies of the three summary charts it intends to the introduce through Ms. Oremland under separate cover.

3

records of FINRA" and provide "definitions of common, generally understood terms that are incorporated into the summary charts[.]" No. 11-CR-62 (PAC), 2013 WL 815915, at *1 (S.D.N.Y. Mar. 5, 2013). Notably, the defendant argued that the FINRA witness was inappropriate lay opinion or expert testimony under Federal Rules of Evidence 701 and 702. The court denied the motion, concluding that the FINRA witness's "proposed testimony and charts are proper under Federal Rule of Evidence 1006" and did not stray into opinion testimony. Id. Indeed, the witness's testimony did "not reflect his specialized knowledge due to his extensive experience as a regulator, but rather [was] directed solely towards explaining the information drawn from voluminous records that are otherwise properly admissible." Id.

Similarly, in United States v. Afriyie, the Honorable Paul A. Engelmayer, United States District Judge, Southern District of New York, denied a motion in limine to preclude Ms. Oremland from giving substantially the same testimony as she is anticipated to give here. No. 16-CR-377 (PAE), Final Pretrial Conf. Tr. at 29-46 (S.D.N.Y. Jan. 12, 2017) (hereinafter "Afriye").[4] Judge Engelmayer allowed Ms. Oremland to, among other things, provide "the definition" of a "particular species of security and at a highly macro level how it works" without "delving into strategy and tactics or anything sophisticated[.]" Id. at 37. The court further permitted her to summarize otherwise admissible brokerage account records, bank records, press releases and stock price and trading volume data. It further permitted her to use graphs comparing the price and volume of a stock over time. It rejected the defendant's argument that Ms. Oremland was an expert who was disclosed in an untimely fashion by the defense.

Furthermore, Ms. Oremland and her colleagues at FINRA have provided similar summary testimony recently in this courthouse. Indeed, they have testified repeatedly in cases involving complex financial issues in the Eastern and Southern Districts of New York. Recently, Ms. Oremland's colleague Peter J. Melley testified in United States v. Louis Petrossi, No. 16-CR-234 (BMC) (E.D.N.Y.), and Ms. Oremland testified in United States v. Robert Schulman, No. 16-CR-442 (JMA) (E.D.N.Y.). In both cases, Ms. Oremland and her colleague summarized voluminous financial and trading records and defined specialized financial industry and regulatory terms for the benefit of the jury. Indeed, in Petrossi, the Honorable Brian M. Cogan, United States District Judge, denied an objection to the testimony, holding that "this is not expert testimony. This is personal knowledge by this witness and probably everybody here. So I am going to allow it." Petrossi, Apr. 20, 2017 Trial Tr.at 69:21-23.[5]

Ms. Oremland's role in this case will be substantially the same as in Afriyie, Petrossi and Schulman. This is a complex case involving two hedge funds, one company

---

[4] For the Court's convenience, a copy of this transcript is attached as Exhibit A.

[5] For the Court's convenience, a copy of the relevant excerpts from this transcript is attached as Exhibit B.

4

that was publicly-listed during the relevant time period and four fraudulent schemes. The jury has already heard some discussion of terms like "short sale," "reverse merger," "blue sheet," "unrestricted securities" and "restricted securities." The jury has also heard or will hear about various SEC rules, regulations and forms, including 10-K filings, 10-Q filings, Schedule 13D and Rule 144. Count Eight of the Superseding Indictment alleges that the defendant conspired to illegally control the price and trading of Retrophin shares by, among other things, concealing his beneficial ownership of those shares by giving them to employees and associates and then directing their trading in those shares. Definitions of the key terms, summary charts, regulatory filings and trading data, all drawn on admissible evidence, will be an indispensable aid to the jury as it sifts through the voluminous evidence in this case. That is the purpose Ms. Oremland's testimony will serve pursuant to Rule 1006.

Ms. Oremland will not be offering any conclusions drawn on the evidence in the case, especially as to the ultimate issues in the case. The government will not elicit conclusions as to whether there were any violations of, for example, Rule 144 or failures to properly file Schedule 13D forms. Rather, Ms. Oremland will explain the purpose of these provisions. For example, Ms. Oremland will give the jury the necessary context to understand why Schedule 13D requires the disclosure of beneficial ownership of more than 5% of a voting class of a company's shares—namely, that such a level of ownership could allow an individual to affect the share price upwards, downwards or not at all and thus the market should be aware of beneficial ownership issues. This testimony will not be linked specifically to the defendant.

Because, as set forth above, Ms. Oremland will not be offering any opinions or testifying beyond the limits of otherwise admissible evidence in this case, she is not a lay opinion or expert witness pursuant to FRE 701 or 702. The fact that Ms. Oremland will explain certain details about SEC forms or Rule 144 requirements does not render her an expert. Her testimony is analogous to that of an Internal Revenue Service ("IRS") tax agent who summarizes and analyzes the facts of record, but who does not directly address the ultimate question of whether the defendant committed the crime. See, e.g., United States v. McElroy, 587 F.3d 73, 82 (1st Cir. 2009); United States v. Barnwell, No. 15-CR-620 (NSR), 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017). In Barnwell, for example, the IRS agent did "no more than analyze facts already introduced into evidence and spell out the tax consequences that necessarily flow from those facts" and was merely testifying as to her "analysis of the transaction which may necessarily stem from the testimony of other witnesses." 2007 WL 1063457 at *2. This activity necessarily required evidence about the applicable tax rules and the application of those rules. Id. Although such cases acknowledged limits on the use of a summary witness, it was appropriate for the government to elicit "testimony by an IRS agent that allows the witness to apply the basic assumptions and principles of tax accounting to particular facts[.]" McElroy, 587 F.3d at 82.

In this case, Ms. Oremland's testimony will be even more circumscribed than the testimony allowed in tax cases like Barnwell and McElroy. She will be describing principles, rules and regulations as well as their purposes, but she will not be applying them to the specific facts of this case. Her testimony will provide the jury with necessary context

5

for understanding the complex financial and regulatory terms that the parties have used so far. She should be permitted to testify pursuant to Rule 1006.

## CONCLUSION

For these reasons, Ms. Oremland should be permitted to testify at trial, as outlined above.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By: /s/ Jacquelyn M. Kasulis
Jacquelyn M. Kasulis
Alixandra Smith
G. Karthik Srinivasan
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (KAM) (by ECF)
Counsel for Defendant (by ECF)