**BRAFMAN & ASSOCIATES, P.C.**

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

July 16, 2017

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

      Re:    **United States v. Martin Shkreli, Crim. No. 15-637 (KAM)**

Dear Judge Matsumoto:

Defendant Martin Shkreli submits this brief letter in response to the Government's letter and attachments filed last night. (Dkt. No. 267).

On July 13, 2017, the Government provided the defense with a summary of Deborah Oremland's anticipated trial testimony. The defense promptly contacted the Government and expressed concern that certain aspects of her testimony cross the line into expert opinion testimony under Federal Rule of Evidence ("FRE") 702. There is no dispute that the Government did not provide notice at any time, much less pre-trial notice, of its intent to use expert opinion evidence as part of this case. Despite the lack of notice, the defense agreed to confer by telephone and in person with the Government in an attempt to resolve any difference of opinion as to the nature of this testimony. We have resolved issues in regard to what I expect is the vast majority of the witness' testimony. However, there is still a dispute to that aspect of her testimony set forth in Point 3 below.

The full range of this witness' testimony, in our view, can be broken up into three subjects. First, there is testimony related to the defining of terms that we do not object to. Since we are not objecting, there is no need to categorize this testimony as opinion evidence or fact evidence, or if opinion evidence, whether it would be lay opinion evidence, under Rule 701, or expert opinion evidence, under Rule 702.

1

Second, there is summary-type evidence that seems appropriate under Rule 1006, and even it is not appropriate under that rule, we are not objecting to it.

Third, there is expert opinion evidence related to what seem to be four narrow areas or questions that we do object to.

The three subjects of this witness' testimony and our positions as to each are set forth below.

1. <u>We Have No Objection To The Witness Defining Terms</u>

During the trial, a number of terms have been discussed by several of the witnesses. We have no objection to Ms. Oremland discussing terms and concepts such as the following:

1. over-the-counter markets;
2. reverse mergers;
3. shell companies;
4. restricted shares;
5. free-trading shares:
6. floats;
7. transfer agents;
8. beneficial ownership; and
9. blue sheets.

We think that a discussion of these terms by someone qualified to discuss the meaning of these terms will be helpful to the jury. Regardless of whether this type of testimony would be fact evidence or opinion evidence, we do not object to it.

2. <u>We Have No Objection To The Witness Offering Summary Charts</u>

The second subject relates to summary charts and the generalized testimony surrounding these charts. Summary charts are clearly admissible under FRE 1006. We have been provided with three proposed charts and we agree that they are admissible so long as the underlying information has already been admitted into evidence.

We also have no objection to this witness testifying as to the trading price and volume of Retrophin stock based on information already stipulated to between the parties and admitted into evidence.[1] We likewise have no objection to this witness testifying as to various public documents filed by and on the behalf of Retrophin.

---

[1] We of course reserve the right to examine this witness to determine whether a chart omits relevant data that would impact on its completeness and accuracy. However, we believe, based on the proffers made to us thus far, that the charts are admissible.

2

### 3. We Object To Testimony That Is Expert Opinion Evidence

The third subject is testimony that is in the nature of expert opinion evidence, under FRE 702. On this point, the Government states that this witness will testify to the following:

1. She "will explain the purpose" of Rule 144;
2. She will explain "why Schedule 13D requires the disclosure of beneficial ownership of more than 5% of a voting class of a company's shares;"
3. She will explain that such ownership of more than 5% "could allow an individual to affect the share price upwards, downwards or not at all";
4. She will testify that as a result of such potential impact, "the market should be aware of beneficial ownership issues."

These four areas are in the realm of expert opinion testimony. The admissibility of lay and expert opinion testimony is determined by FRE 701-705. Under Rule 701, the rule regarding so-called lay opinion evidence, someone lacking in "scientific, technical or other specialized knowledge" may provide an opinion so long as three conditions are met. First, the opinion must be "rationally based on the witness's perception". Second, the opinion must be helpful to the jury. Third, the opinion must "not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

On the other hand, if a proffered opinion rests in any way on scientific, technical or other specialized knowledge, it is expert opinion and must satisfy the strictures and the notice requirement of Rule 702. In Bank of China, New York Branch v. NBM LLC, 359 F.3d 171 (2d Cir. 2004), the court addressed the distinction between fact or lay opinion testimony, on the one hand, and expert testimony, on the other. In Bank of China, the District Court permitted a Bank of China employee to testify as to certain transactions between the parties as well as the impact and propriety of some of those transactions. The District Court found that this testimony was admissible as lay opinion under Rule 701. The Second Circuit reversed, stating that the testimony was not based entirely on the witness' perception so as to qualify as lay opinion. The Second Circuit further stated that "(s)ubsection (c) of Rule 701, which was amended in 2000, explicitly bars the admission of lay opinions that are 'based on scientific, technical or other specialized knowledge within the scope of Rule 702.'" Id. at 181 quoting Fed. R. Evid. 701, advisory committee notes.

The Court went on to note that while some of the witness' testimony was in fact based on his perception, there was an aspect of his testimony that related to his specialized knowledge. Specifically, the Court held "to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was in error." The Court then noted that this testimony may be admissible as expert opinion evidence under Rule 702. However, the offering party failed to satisfy the notice requirement so as to admit the testimony as expert opinion evidence.

3

In the present case, the FINRA witness has opinions as to the four matters outlined above specifically because of her extensive experience with FINRA, which has provided her with specialized knowledge in these matters. Moreover, unlike merely providing definitions of terms, these questions require the witness to provide analysis of concepts in the realm of finances, securities and markets. For example, the interrelationship between stock ownership and the price of that stock are not matters of lay perception. Rather, they are the result of studying markets and market dynamics, specialized knowledge in the meaning of Rule 702. In addition, these questions require this witness to testify about concepts uniquely within the purview of professional regulators such as what information the market should be aware of.

For these reasons, and based on the holding in Bank of China, New York Branch v. NBM LLC, 359 F.3d 171 (2d Cir. 2004), this testimony is far beyond what is admissible under Rule 701.

In addition, this testimony is plainly not admissible under FRE 1006, a rule entitled "Summaries to Prove Content." Rule 1006 reads as follows:

> The proponent may use a summary chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

The four areas of testimony outlined above have no connection whatsoever to this rule, which is designed to allow a party to make summaries of content too voluminous to be comprehensible to a jury. Rather, for the reasons set forth above, these four areas are in the realm of opinion, specifically, expert opinion. As a result, we ask that the Government not be permitted to ask this witness anything related to the four areas outlined in this section.

The Government cites United States v. Barnwell, 2017 WL 1063457 (SDNY 2017) for the proposition that the proffered testimony is appropriate and admissible. However, there are several distinctions between this case and Barnwell. First, the IRS Agent in Barnwell was testifying as the summary witness in the case. We expect that at the end of the Government's direct case, it will call one of the FBI Special Agents who worked on the investigation as a summary witness. Ms. Oremland is not testifying as a summary witness and so the Barnwell decision is distinct from that point alone. Second, because Ms. Oremland was not involved in the investigation of this case, her testimony is not based on her own observations, as is the case with a summary witness. Rather, her testimony on the four points outlined here stem from her expertise alone. Therefore, while it may have been appropriate for the IRS Agent in Barnwell to testify as a non-expert summary witness, the same is not true for Ms. Oremland.

4

As an additional matter, the transcript attached to the Government's letter brief fails to address any of the issues raised in this letter. We have no idea how these matters were briefed in these prior cases, nor how they were argued either before or in advance of trial. As a result, the lengthy attachments to the Government's letter are, respectfully, not probative of this issue.

As a final point, the Government is likely to use the opinions of this witness as to the potential market-effect of someone owning or controlling more than 5% of a stock as the foundation for the eventual argument that Mr. Shkreli is guilty of Count 8 of the Indictment. We understand that the witness herself will not make that specific connection. However, her opinions about stock-ownership and it potential impact on the market undoubtedly comprise the heart of the Government's theory of guilt on Count 8. For the Government to avoid the expert opinion notice requirement, and to provide the defendant with notice of testimony of this type more than two weeks after the trial began, and a day or two before the witness was scheduled to testify is unfair, and should not be permitted.

We thank the Court for its attention.

Respectfully submitted,

/s/ Marc Agnifilo

Marc Agnifilo

Cc: All Counsel (via ECF)