# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

July 22, 2017

Via ECF
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re.   **United States v. Martin Shkreli, Crim. No. 15 Cr. 637 (KAM)**

Dear Judge Matsumoto:

The defendant Martin Shkreli respectfully submits this letter pursuant to the Court's Order of July 21, 2017 and in response to the government's motion to admit settlement agreements of ML and SS without offering ML and SS as testifying witnesses (Dkt. No. 277).

From the outset, we note that the government argues that not admitting the ML and SS settlement agreements will cause jury confusion and that the jury confusion will emanate from a lack of full information regarding "partial evidence" in their possession. (Govt. Letter at p. 2). We agree with the premise that "partial evidence" creates severe risk of juror confusion, and that is one of the many prejudices to the defendant that require these agreements to be precluded from evidence in the absence of ML and SS testimony. Introducing the agreements without the testimony of ML and SS is "partial evidence" as to the agreements and as to why the agreements exist.

In addition, the government indicates they will offer a host of additional emails through the case agent, which are hearsay and not admissible. (Govt. Letter at p. 2; GX 112-1, 112-4, 112-7, 112-16, 113-10, AND 113-14). While Mr. Shkreli's statements are statements of a party opponent, the statements by SS or ML are clearly hearsay. They cannot be admitted as they are offered for the truth of the matter asserted—"to express confusion and concern about the redemption process, including how the defendant was valuing their investments in MSMB Healthcare." (Govt. Letter at p. 2). The government has cherry-picked these emails to support their version of events, while preventing the jury from learning all the relevant facts.

**BRAFMAN & ASSOCIATES, P.C.**

In order to prevent Shkreli from cross-examining SS on his claims against Retrophin and MSMB, the government now seeks to admit four exhibits through the case agent in order to also admit the settlement agreement: 112-1, 112-4, 112-7, 112-16. By introducing these exhibits and the settlement agreement, the government is leaving out the full context of SS's investment into Mr. Shkreli's entities. It fails to account for the fact that SS invested "blindly" into MSMB because of Mulleady, and that SS told agents that he agreed to move his entire MSMB Healthcare investment to Retrophin. (3500-SS1-2). Furthermore, we are unable to cross-examine Agent Braconi on this point because he did not write the 3500-SS1-2. Therefore, the government is putting forth half of the story knowing full well that contrary statements are in their own 3500 material. The government should not be allowed to actively mislead the jury.[1]

To the degree that the government is relying on those emails to bootstrap the relevance of these settlement agreements, that argument assumes the admission of evidence that is inadmissible.

Fifth Amendment Right to Due Process

We do not want to repeat arguments contained in our thorough submission of July 20, 2017. (Dkt. No. 274). However, we do want to reiterate the most important aspects of those arguments.

The government presents the 3500 statements and email communications between Mr. Shkreli and others with SS and ML as if the only possible interpretation of those statements or understanding of the emails is the Government's interpretation and understanding. In doing so, the Government puts forth an argument that is dependent on its interpretation of the events and presents it to the Court as though the facts in the case have already been determined.

The facts in the case have not been determined. The jury will determine why SS and ML invested in MSMB Healthcare. The jury will determine if the NAV consulting and other performance estimates sent to SS and ML were fraudulent, inaccurate, or truthful. The jury will determine whether the settlement agreements and the fulfillment of the terms of the agreements required additional authorization, were unauthorized and whether they constitute a fraud on Retrophin.

The possibility that a narrative contrary to their interpretation of events may be true does not enter into the government's equation. The settlement agreements are not relevant because the government has failed to put forward any evidence as to how and why SS and ML invested. There is no evidence, nor can there be any evidence without them testifying, of what SS and ML understood following discussions and communications with Mulleady or Shkreli.

The government argues that the settlement agreements are relevant because they corroborate the fact that ML and SS were investors in MSMB Healthcare and not Retrophin

---

[1] To the extent that the government will argue that we have the ability to call these witnesses, that is beside the point. This Court should not allow the government to present misleading facts to the jury and shift the burden of proof by forcing the defense to call the witness.

BRAFMAN & ASSOCIATES, P.C.

(Govt. Letter at p. 5). We disagree. The settlement agreements are evidence <u>only</u> that there was a settlement and a release. The jury has heard no testimony and seen no evidence as to whether or not ML or SS knew about Retrophin; whether they received and reviewed the October 2011 revised PPM notifying investors that MSMB Healthcare had invested heavily in private equity; whether they saw the notice from NAV on performance estimates that advised investors of the change in the composition of the fund; whether they made a conscious decision to remain invested in MSMB Healthcare despite the change in composition of the Fund; whether they understand from telephone conversation or other communication that MSMB Healthcare was invested in Retrophin. Without evidence as to what prompted ML and SS to enter into and remain in the funds, and without evidence as to how and why these arms lengths business agreements with Retrophin came to exist, the agreements themselves are irrelevant.

The government cannot justify the admission of the settlement agreements and establish the relevance of the settlement agreements by relying on unchallenged representations contained in emails that have yet to be admitted and statements of the recipients in 3500 but that are not going to be before the jury or tested by cross examination. The government's relevance argument hinges on this Court's acceptance, absent cross examination, of the governments version of the facts as to ML and SS; a version that has not been put before the jury and which the government is seeking to introduce without subjecting it to any challenge by the defendant.

To illustrate the imperative of the Constitutional right to due process, and of witnesses appearing in court so that the defendant may challenge the evidence, we respectfully point to statements made in the Government submission regarding conclusions reached by Marcum, the Retrophin auditor (Govt. Letter at p. 3). From the government's view, Marcum determined that the settlement agreements and Retrophin's fulfillment of those agreements was improper. However, there is another view; our review of the 3500 material and the government's own exhibits indicate that a highly regarded partner at Marcum would say:

- The audit of Retrophin was one with a "standard degree of difficulty" for a start-up company
- Completeness over the company's equity was a "typical issue for start-up companies"
- He spoke to the Retrophin Board of Directors
- It would be hard to say the settlement agreements were a fraud when they were reported on the books and the analytics made them stick out
- It did not seem like Retrophin was trying to hide the transactions
- That the issue was appropriate treatment of the settlement agreements under GAAP accounting rules.

(3500-EH-1). In the end, Marcum identified the settlement agreements as expenses that required proper accounting treatment and a restatement of the financials. That is exactly why Retrophin needed and retained auditors – to identify issues and assist Retrophin in addressing those issues.

That the government understands Marcum's analysis of the settlement agreements in one way, and the defense understands Marcum's analysis of the settlement agreements in an entirely different way, perfectly highlights and explains why it is so important for the SS and ML

3

BRAFMAN & ASSOCIATES, P.C.

witnesses to be present in court for Mr. Shkreli to have an opportunity to extract from them though cross-examination his understanding of what happened during his business relationships with them. It is for the jury to decide what in fact happened, and the jury cannot do that from pieces of paper upon which there can be no cross examination.

It is critical to the Court's analysis that in this unusual case, each investor has an individual account of how and why they entrusted MSMB Capital or MSMB Healthcare or Martin Shkreli with their investment. Unlike other financial fraud prosecutions, the investments here were not all the result of one scripted cold call delivered a 1000 times, or one mass marketing plan. The same is true of investors who chose not to redeem their investment when receiving the notice from NAV that MSMB Healthcare was heavily invested in private equity. The Court and the jury do not know what lead to SS and ML investment and what then led them to enter into a settlement agreement. If ML and SS are not witnesses, the jury will be left with only pieces of paper selected by the government. The defense has no chance to effectively challenge what papers mean and how the papers and the statements they contain reflect, or do not reflect ML and SS's intent and understanding as well as Mr. Shkreli's intent. So the deprivation of the right to confront ML and SS is a very significant denial of Mr. Shkreli's constitutional right to due process.

Unfair Prejudice

As we argued in our original submission, the settlement agreements are irrelevant if the witnesses ML and SS do not testify and provide evidence that makes the agreements relevant. However, should the Court disagree with that position, we respectfully submit that the prejudice caused to Mr. Shkreli by the admission of the settlement agreements without ML and SS testimony is so highly prejudicial as to require that the documents be precluded from evidence.

The government cites United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 2000), that evidence is 'unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Govt. Letter at p. 5). Here, the evidence does have an adverse effect upon the defendant beyond tending to prove a fact or issue that justifies its admission. As discussed above and as detailed in our prior submission, the use of a document without the testimony of the witness in the unique circumstances of this fraud prosecution deprives Mr. Shkreli of his fundamental Constitutional right to due process under the Fifth Amendment by preventing him from confronting and challenging the two people who made a decision to invest, then made a decision to complain about their return, and then made a decision to enter into a settlement agreement.

Without question, the deprivation of a Fifth Amendment right falls within the ambit of an "adverse effect" on the defendant "beyond the tendency to prove the fact justified its admission into evidence." Id. The government states that it will not argue to the jury that Mr. Shkreli made misrepresentations to ML and SS at the time of investment. However, the government's appropriate willingness to refrain from such arguments does not prevent the prejudice that will result from the admission of the settlement agreements. It does not prevent the prejudice because the prejudice that befalls Mr. Shkreli if these settlement agreements are entered into evidence without testimony of ML and SS arises not just from the defense's inability

4

**BRAFMAN & ASSOCIATES, P.C.**

to cross examine ML and SS regarding their investment decision, but also from the risk that jurors will take the presentation of the evidence without the witness testimony as an invitation to conclude that the witness would have testified that Mr. Shkreli lied (despite the painstaking and thorough disclosures about risk in the PPM).

Moreover, the government vigorously argues that the settlement agreements are instrumentalities of the alleged fraud, (Govt. Letter at p. 1), while at the same time explains to the Court that it will not argue to the jury that ML and SS relied on misstatements or omissions of Mr. Shkreli. To the extent that the government intends to argue that the settlement agreements are instrumentalities of fraud, even if the government does not argue the investments were made as a result of alleged fraud, there is a grave risk that the jurors will reach that conclusion absent any evidence. The jurors will be confused as to where the fraud allegedly lies and may decide that the alleged fraud is complete when the funds are transferred to MSMB Healthcare for investment. The risk is exacerbated by the fact that the evidence will be introduced without any opportunity for the defendant to challenge it as his Constitutional right.

Conclusion

For the foregoing reasons and for the reasons detailed in our brief submitted on July 20, 2017 (Dkt. No. 274) the SS and ML settlement agreements should be precluded from evidence.

Respectfully submitted,

Andrea Zellan

cc:   All Counsel (via ECF)