UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

EVAN GREEBEL,

                 *Defendant.*

ECF Case

No. 15-cr-00637 (KAM)

<u>ORAL ARGUMENT REQUESTED</u>

**MR. GREEBEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO DISMISS COUNT SEVEN OF THE SUPERSEDING INDICTMENT**

**TABLE OF CONTENTS**

Page

I. Preliminary Statement ................................................................................................. 1

II. Count Seven Must Be Dismissed Because the Alleged "Orchestrat[or]" in the Two-Person Conspiracy Was Acquitted by the Jury ........................................................... 4

III. The Government's Theory That Retrophin Was Defrauded Because of the Alleged Transfer of Retrophin Shares to MSMB Capital Is Legally Impossible ............... 7

IV. There Was No Clear Duty to Disclose the Settlement and Consulting Agreements .......... 9

V. Count Seven Reflects Multiple Alleged Conspiracies Within One Count ....................... 10

## TABLE OF AUTHORITIES

Page

**Cases**

*Einaugler v. Supreme Court of State of N.Y.*,
 109 F.3d 836 (2d Cir. 1997)...................................................................................................11

*United States v. Acosta*,
 17 F.3d 538 (2d Cir. 1994).......................................................................................................6

*United States v. Ali*,
 561 F. Supp. 2d 265 (E.D.N.Y. 2008) ..................................................................................8, 9

*United States v. Batista*,
 2010 WL 1193314 (E.D.N.Y. Mar. 24, 2010).......................................................................5, 6

*United States v. Boisvert*,
 499 F. App'x 101 (2d Cir. 2012...............................................................................................8, 9

*United States v. Corsey*,
 512 F. App'x 6 (2d Cir. 2013) ................................................................................................8, 9

*United States v. Gagliardi*,
 506 F.3d 140 (2d Cir. 2007).....................................................................................................8

*United States v. Geibel*,
 369 F.3d 682 (2d Cir. 2004)...................................................................................................11

*United States v. Hoey*,
 No. S3 11-CR-337, 2014 WL 2998523 (S.D.N.Y. July 2, 2014)...........................................10

*United States v. MacKay*,
 20 F. Supp. 3d 1287 (D. Utah 2014).......................................................................................11

*United States v. Powell*,
 469 U.S. 57 (1984)....................................................................................................................6

*United States v. Rodriguez*,
 983 F.2d 455 (2d Cir. 1993).....................................................................................................5

*United States v. Trapilo*,
 130 F.3d 547 (2d Cir. 1997)..................................................................................................8, 9

**Statutes**

Delaware General Corporation Law § 144 ..............................................................................9, 10

I.      **Preliminary Statement**

In opposition to the motion to dismiss Count Seven, the government is reduced to arguing that "the jury's acquittal" of Martin Shkreli on Count Seven does not "necessarily mean[] that the jury exonerated Shkreli." Gov't Opp'n MTD, Dkt. No. 345, at 1. The government even has the audacity to argue that "a 'not guilty' verdict does not equate to exoneration. . . ." That is an astonishing proposition for the government to advance—and further evidence that something has gone terribly wrong here that this Court needs to correct.

The United States Department of Justice is arguing that just because a person was "acquitted" does not mean that person was "exonerated." And the government defends itself by arguing that inconsistent verdicts are "not unlawful or unconscionable; they are a potential byproduct of the jury system." *Id*.

These are hardly the lofty goals to which the Department of Justice ("DOJ") should aspire. These are hardly the words of a government respecting the Shkreli jury's verdict in acquitting the "orchestrat[or]" of what it told that jury was a two-person conspiracy (meaning the jury necessarily found no such conspiracy could have occurred between Mr. Shkreli and Mr. Greebel). *See* Shkreli Trial Tr. 856:17–23 (government's opening). And these are, in reality, propositions antithetical not only to the jury's verdict but also to case law in this very District (including Judge Irizarry's important *Batista* decision, discussed below). Thus, this Court should now dismiss Count Seven, based on the law and in the interests of justice.

In a trial where the government alleged that there was a conspiracy of two, where Martin Shkreli was the alleged "orchestrat[or]" and "dominant person," where they opened and summed up on that theory, it is simply neither equitable nor the right thing to do to proceed against Mr. Greebel. In its opposition, the government never tries to explain to this Court how it could be a just outcome to have Mr. Shkreli acquitted on Count Seven—the most important Count in

1

the Superseding Indictment (the "Indictment")—but to have the person whom the government claims participated through acquiescence to Mr. Shkreli's dominant role and directives be found guilty. The government avoids this question, because it has no good answer to the injustice it insists on perpetrating here.

Moreover, the government admits it never went to DOJ first before indicting a highly-respected lawyer but argues, in a footnote, that any violation of policy is none of this Court's business, nothing can be done about it now, and technically, the U.S. Attorneys' Manual ("USAM") § 9-2.032 requires approval only where the "client"—here, Retrophin—"will, or is likely to, testify against the attorney pursuant to a non-prosecution, cooperation, or similar agreement with the government." Gov't Opp'n MTD, Dkt. No. 345, at 3 n.1. It is frightening to think that the U.S. Attorney's Office ("USAO") parsed the language of the USAM so narrowly to mean that they did not have to seek and obtain DOJ approval, because no one who was an officer or director of Retrophin at the time of indictment would, or would likely, testify against Mr. Greebel pursuant to a non-prosecution, cooperation, or similar agreement. Given our understanding that the USAO had entered into proffer agreements with Steven Richardson (a former director of Retrophin), interviewed Stephen Aselage (Retrophin's current CEO and director during the conduct at issue), and continually sought to meet with, under the threat of criminal prosecution, at least one or more other officers and/or directors of Retrophin (putting aside Mr. Shkreli), the USAO's reading of Section 9-2.032 violates the spirit, and the express letter, of the USAM.

The government advances specious arguments to justify why it intends to proceed on Count Seven, including the claim that we are mistaken in assuming "that the evidence and argument presented during the trial of Shkreli constitutes the only evidence and argument

2

available" for the trial of Mr. Greebel. Gov't Opp'n MTD, Dkt. No. 345, at 1. We make no such assumption, and are mindful that the government did not proffer any such evidence. And if the government is telling this Court that it held back critical evidence in support of Count Seven at the high-profile trial of Mr. Shkreli—the supposed "dominant person" of this alleged scheme—to save it for the lower-profile Mr. Greebel, we submit that claim simply does not pass the smell test.

What the Court put its finger on—four weeks into the Shkreli trial when it understandably asked the government who the alleged conspirators were on Count Seven—is that the proof of a conspiracy was extremely thin. The jury obviously realized this fact in acquitting Mr. Shkreli on this count (and four other conspiracy counts).

The government now claims in conclusory fashion that it presented evidence of other potential co-conspirators at the Shkreli trial, even though they argued to that jury a conspiracy of two (Mr. Shkreli and Mr. Greebel). *See* Shkreli Trial Tr. 856:17–23; 5247:3–6; 5269:25–5270:7; 5515:5–13. But it does not direct the Court to such evidence. That is insufficient and contrary to the requirements of the co-conspirator case law. *See* Greebel MIL Regarding Alleged Co-Conspirators, Dkt. No. 335. While the government has discretion at the indictment stage to identify co-conspirators, in the trial stage the government bears the burden of proving such individuals' status as co-conspirators. The government did no such thing on Count Seven at the Shkreli trial. In light of the threadbare proof of conspiracy on Count Seven, and an utter lack of proof that anyone other than Mr. Shkreli and Mr. Greebel was supposedly involved, the government is trying to reposition its case and conjure up phantom co-conspirators to get a "second bite at the apple."

3

Finally, the government has no plausible response to the compelling case law—*United States v. Rodriguez* and *United States v. Batista*—that requires dismissal of Count Seven. It has no answer to the fact that certain conduct alleged in Count Seven is a legal impossibility. What the government is doing here is simply not fair. The government is acting in a manner contrary to the law and disregarding its obligation to do justice first. In light of this, it would be a miscarriage of justice to require Mr. Greebel to have to go to trial on this discredited, rejected conspiracy change. Thus, we respectfully request that this Court dismiss Count Seven now.

II.     **Count Seven Must Be Dismissed Because the Alleged "Orchestrat[or]" in the Two-Person Conspiracy Was Acquitted by the Jury**

At the Shkreli trial, the government—from opening statements all the way through to its rebuttal summation—made clear its position that Martin Shkreli was the mastermind and "orchestrat[or]" of the alleged wire fraud conspiracy in Count Seven. In its opening statement, the government noted that Mr. Shkreli "orchestrated" a plan. Shkreli Trial Tr. 856:17–23. And at the end of the trial, the government made its views of the relative roles of Mr. Shkreli and Mr. Greebel starkly clear: "**Martin was the dominant person in that relationship and that relationship was a criminal conspiracy.** There is no doubt about it." *Id*. 5515:5–13 (emphasis added). In opposition, the government confusingly appears reluctant to concede that it was very clear that Shkreli was the alleged mastermind and orchestrator in Count Seven. Gov't Opp'n MTD, Dkt. No. 345, at 6 n.3. Nonetheless, the government's past public statements speak for themselves. And now that the "dominant" leader of the putative conspiracy in Count Seven has been acquitted, it should be dismissed as to the only remaining, non-dominant alleged member.

In its opposition, the government recites the general proposition that inconsistent verdicts are allowed. But what it fails to do is distinguish the *Rodriguez/Batista* line of cases, which hold that inconsistent conspiracy verdicts cannot stand where there is an absence of evidence that the

4

remaining defendant conspired with anyone else to commit the charged offense. *Rodriguez*, 983 F.2d 455, 458–59 (2d Cir. 1993); *Batista*, 2010 WL 1193314, at *10–12 (E.D.N.Y. Mar. 24, 2010).

In addition, the government misses the key point of the Second Circuit's decision in *Rodriguez*. The government tries to make much of the fact that the trial judge—rather than a jury—found the evidence insufficient against Rodriguez's only indicted co-conspirator. *Rodriguez*, 983 F.2d at 458–59. But the thrust of *Rodriguez* is that inconsistent conspiracy determinations in the same proceedings "are permissible *if there is evidence that the defendant conspired with 'others unknown.'*" *Id.* at 459 (emphasis added). Noting that *Rodriguez* involved an international narcotics conspiracy, the Second Circuit understandably concluded that "[b]ecause a rational juror could find beyond a reasonable doubt that *Rodriguez has conspired with others, either in Venezuela or in the United States*, to possess and import cocaine, we cannot upset the jury's verdict." *Id.* (emphasis added). In contrast, here, unlike in a crime ring where the nature of the crime itself contemplates numerous participants in the supply chain, the only other co-conspirator about whom there was any evidence of guilt was already acquitted at trial. The government ignores this inconvenient point.

Applying the principle set forth in *Rodriguez*, Judge Irizarry granted Luis Batista's motion for a judgment of acquittal of conspiracy, because Batista could not be found guilty as a matter of law where his co-defendant had been acquitted and there was no evidence that any other person had conspired with Batista. *Batista*, 2010 WL 1193314, at *10–12.

While we discuss *Batista*—an important 2010 decision by a highly respected sister court in this very same District—extensively in our initial Motion to Dismiss, the government relegates this decision to a footnote, and attempts to portray *Batista* as bad law. Gov't Opp'n

MTD, Dkt. No. 345, at 8–9 n.6. The government derides Judge Irizarry's thoughtful 14-page decision as "unpublished," "contrary to the Second Circuit cases" the government relies on, "not supported by *Rodriguez*", and "citing only *Rodriguez*" for its holding. But this creative interpretation and wishful thinking are just plain wrong. *Batista* is indeed good law that thoughtfully applies the principles the Second Circuit laid down in *Rodriguez*. Reading the government's footnote, one would think that Judge Irizarry does not mention, much less discuss, other relevant decisions. But Judge Irizarry carefully discusses the Supreme Court's decision in *United States v. Powell*, 469 U.S. 57 (1984), the Second Circuit's decision in *United States v. Acosta*, 17 F.3d 538 (2d Cir. 1994), and inconsistent verdict cases from other circuits. Thus, the government has no persuasive response to the *Rodriguez/Batista* principle that inconsistent verdicts are allowed in the Second Circuit *only if* the evidence supports a conclusion that the defendant conspired with *someone other than the co-conspirator who was already acquitted*.

In its opposition, the government barely tries to refute the extensive record that the government did not call a single witness, and does not have a scintilla of evidence, that anyone other than Mr. Shkreli allegedly entered into an illegal agreement to commit wire fraud with Mr. Greebel. Without providing any details or that record, the government baldly claims that there was not only evidence that Lee Yaffe (who exculpated, not inculpated, Mr. Greebel) was a co-conspirator of Mr. Greebel's, but that somehow the "evidence at trial showed that Marek Biestek, Kevin Mulleady, and Thomas Fernandez" were also Mr. Greebel's co-conspirators.[1]

---

[1] This argument fails for another reason. It was the government's burden at the Shkreli trial to identify and prove that there were alleged co-conspirators. But they clearly failed to do so, leaving the Court asking near the end of trial for their identity. More importantly, by definition, since the jury acquitted Shkreli of the wire fraud conspiracy, the government failed to prove even that the alleged "orchestrat[or]" was a member. That is tantamount to a waiver and it should not have a second bite at the apple to prove now what they failed to prove at the Shkreli

6

*See* Gov't Opp'n MTD, Dkt. No. 345, at 9. Moreover, even if the government's argument were valid that Mr. Greebel conspired with Messrs. Biestek, Mulleady and Fernandez on backdating and Mr. Yaffe on consulting agreements, the government still has proffered no evidence—in its motions or during Mr. Shkreli's trial—to demonstrate that Mr. Greebel conspired with *anyone* else regarding the settlement agreements.

Accordingly, based on *Rodriguez* and *Batista*, Mr. Shkreli's acquittal on Count Seven mandates the dismissal of the charge where there is no probative evidence that *anyone other than* Mr. Shkreli allegedly entered into an illegal agreement with Mr. Greebel to defraud Retrophin.

### III. The Government's Theory That Retrophin Was Defrauded Because of the Alleged Transfer of Retrophin Shares to MSMB Capital Is Legally Impossible

In its opposition, the government misconstrues the point of our argument in this section, and focuses on why the Indictment is pled sufficiently. *See id.* at 11–14. But our concern is not whether this portion of Count Seven states an offense. Rather, our key argument is that the evidence at the Shkreli trial has demonstrated that the government's theory in Count Seven that Retrophin was defrauded by the alleged actions of Mr. Shkreli, along with Mr. Greebel, by causing Retrophin to "transfer Retrophin shares to MSMB Capital even though MSMB Capital never invested in Retrophin" is ***impossible as a matter of law***.

Even assuming that the government's factual allegations at the Shkreli trial are true, none of it changes the stubborn reality that the Retrophin shares at issue *were neither owned by Retrophin nor in its possession, custody, or control*. Rather, they were indisputably held by

---

trial. In short, the government should be estopped from now trying to claim that there were other co-conspirators in Count Seven since the clear focus of the government's proof on Count Seven during the Shkreli trial was limited to solely Mr. Shkreli and Mr. Greebel. See Greebel MTD, Dkt. No. 327, at 12 n.2 (where government names other alleged co-conspirators on the other seven counts in the eight-count indictment but fails to name any other alleged co-conspirators on Count Seven aside from Mr. Greebel).

7

*private individuals* (Messrs. Biestek, Mulleady, Fernandez, and Shkreli) and thus Retrophin could not have been "defrauded" as a result of these stock transfers. The government does not contest this critical point, nor could they, based on their own allegations.

The government contends that "neither factual nor legal impossibility is a defense to a conspiracy," relying on a footnote in the Second Circuit's decision in *United States v. Trapilo*, 130 F.3d 547, 552 n.9 (2d Cir. 1997), which the government misunderstands and misapplies. Gov't Opp'n MTD, Dkt. No. 345, at 12–13. The government is wrong.

In a lengthy discussion on the law of impossibility, a District Court in the Eastern District of New York addressed *Trapilo* directly. *See United States v. Ali*, 561 F. Supp. 2d 265, 267–68 (E.D.N.Y. 2008). While at first glance case law in the Second Circuit appears to hold that legal impossibility (or impossibility generally) is not a defense to conspiracy charges, Judge Vitaliano explains in detail that the majority—if not all—of these cases actually deal with factual impossibilities, not legal impossibilities. Additionally, some cases refer to "impossibility" without distinguishing legal versus factual.[2] *See, e.g., United States v. Corsey*, 512 F. App'x 6, 8–9 (2d Cir. 2013). Further, the cases all focus on the "ultimate success or failure of the planned scheme," *id.*, while taking for granted that success is possible.

The logic and reasoning in *Ali* underscores that, if the alleged crime is legally impossible, there can be no success or failure and thus there can be no conspiracy:

> [In the case at bar,] ***since the conduct allegedly underlying the conspiracy was not a crime, no § 371 conspiracy to commit that conduct can exist either.* . . .**

---

[2] As explained in *United States v. Boisvert*, "[c]ourts that have distinguished legal from factual impossibility confine the former to situations where the actions set in motion by the defendant, '***even if fully carried out as he desires, would not constitute a crime***.'" 499 F. App'x 101, 102 (2d Cir. 2012) (emphasis added). Factual impossibility exists when a defendant "could not have completed the intended crime [] because extraneous circumstances unknown to him rendered completion impossible." *Id.* (citing *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007)).

8

> ***The government, however, misses a crucial distinction between two very different obstacles to the successful commission of a crime: (1) the factual impossibility of achieving the offending conduct and (2) the actual legality of the conduct. . . . What distinguishes this case is that the underlying intended conduct at issue is not illegal. The defense does not argue that the goal was factually unattainable. They argue that the goal was not even criminal. . . .***
>
> The government, perhaps sensing the central flaw in its argument and the obvious distinction between impossibility due to fact and impossibility due to law, offers several instances in which courts have found "legal impossibility" no defense to a conspiracy. *See, e.g., United States v. Trapilo*, 130 F.3d 547 (2d Cir. 1997) . . . . ***Each of these cases uses the label "legal impossibility" to refer to the impossibility of actually accomplishing the intended plot, but in none was there any question that if the plot had succeeded the conduct itself would be criminal.***

*Ali*, 561 F. Supp. 2d at 267–68 (emphasis added).

Since even if the government's allegations about transferring shares to MSMB Capital were correct as alleged, there would be no crime, this Court should dismiss that theory as legally impossible.

**IV.  There Was No Clear Duty to Disclose the Settlement and Consulting Agreements**

The government also offers no response to our point that Mr. Shkreli and Mr. Greebel had no obligation or duty to seek the approval of Messrs. Aselage and Richardson before entering into the settlement agreements. The government mistakenly relied on Delaware General Corporation Law ("DGCL") § 144 for its theory. Unable to address this point head on, the government merely drops a footnote saying generally that "a duty to disclose exists irrespective of Section 144." Gov't Opp'n MTD, Dkt. No. 345, at 19–20 n.8. Accordingly, the fundamental premise of the government's theory in Count Seven is based on a fallacy of law. There was no clear duty to disclose the settlement and consulting agreements to Retrophin's board of directors.

Thus, since the government appears to have obtained an Indictment in Count Seven based on an incorrect understanding or misapplication of Delaware law, we respectfully submitted in our Motion to Dismiss that the Court should review the instructions of law the government gave

9

to the grand jury before it voted on the proposed Indictment.  Count Seven must be dismissed if in fact the grand jury indicted Mr. Greebel based on an incorrect premise of the law.  *See*, *e.g.*, *United States v. Hoey*, No. S3 11-CR-337, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014).

The government responded to this argument with a footnote, saying that it "never suggested that the sole basis for Shkreli's and the defendant's obligation to disclose arose from Section 144," claiming that Mr. Greebel's duties arose under, among other things, "Second Circuit and Delaware law, New York State common law and the New York Rules of Professional Conduct."3  Gov't Opp'n MTD, Dkt. No. 345, at 20 n.9.  Yet the first time the government raised this issue, it relied exclusively on DGCL § 144.  *See* Shkreli Trial Tr. 4580:8–11; 4587:4–8.

Moreover, the events of the Shkreli trial once again undercut the government's argument.  The government did not seek to call a witness at Shkreli's trial to testify about "New York State common law" or "the New York Rules of Professional Conduct."  Rather, it sought to call a witness on Section 144.

**V.      Count Seven Reflects Multiple Alleged Conspiracies Within One Count**

Count Seven alleges three different aspects of the alleged "Retrophin Misappropriation Scheme," only two of which could possibly relate to an alleged defrauding of Retrophin.  *See* Greebel MTD, Dkt. No. 327, at 28–29.  While the government dismisses this as "quibbl[ing]," we take it seriously.  The conduct alleged in the "Fabricated MSMB Capital Interest" scheme has

---

3      This latest argument appears to be nothing more than an attempt to make malpractice a felony.  Nationwide, malpractice (whether legal, medical, or accounting) is a civil tort claim, not a criminal one.  *See, e.g.*, *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 841 (2d Cir. 1997) (describing "New York civil tort actions for medical malpractice"); *United States v. MacKay*, 20 F. Supp. 3d 1287, 1297 (D. Utah 2014) ("whether such behavior constituted a kind of medical malpractice, which, although negligent, is not criminal . . .").

10

an entirely separate "common goal" from the other alleged schemes since it cannot be a scheme to defraud Retrophin. Thus, Count Seven is defective in that it fails to charge only a single conspiracy. *See United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004).

For all the reasons set forth above and in our initial Motion to Dismiss, we respectfully request the entry of an order dismissing Count Seven.


Dated:   New York, New York
         August 30, 2017

>                                     */s/* Reed Brodsky
>                                     Reed Brodsky
>                                     Winston Y. Chan
>                                     Randy M. Mastro
>                                     Lisa H. Rubin
>
>                                     GIBSON, DUNN & CRUTCHER LLP
>                                     200 Park Avenue
>                                     New York, NY 10166
>                                     (212) 351-4000
>                                     rbrodsky@gibsondunn.com
>                                     *Counsel for Defendant Evan Greebel*

11