United States District Court
Eastern District of New York

------------------------------------X

*United States*,

    - against -

Evan Greebel,

              Defendant.

------------------------------------X

**ORDER**

No. 15-cr-637 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

On August 24, 2018, this Court entered a judgment of conviction against Mr. Greebel that included, *inter alia*, mandatory restitution in favor of Retrophin, Inc., in the amount of $10,447,979.00. (ECF No. 674.)[1] To enforce the judgment's monetary aspects, the Government filed applications for writs of garnishment against Mr. Greebel's interest in two retirement accounts at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Charles Schwab Retirement Plan Services ("Charles Schwab" and together, "Garnishees"). (ECF Nos. 694, 703.) Mr. Greebel objected to the answers of Merrill Lynch and Charles

---

[1] The Second Circuit affirmed Mr. Greebel's conviction on November 22, 2019. (ECF No. 719.)

Schwab. (ECF No. 738.)

On April 16, 2021, this Court found Mr. Greebel's objections to be without merit and ordered the Government to submit orders of garnishment directing Merrill Lynch and Charles Schwab as to the disposition of the funds in the garnished accounts. (ECF No. 770.) Mr. Greebel appealed. (ECF No. 771.)

On August 24, 2022, the Second Circuit held that the Mandatory Victims Restitution Act permits the Government to garnish Mr. Greebel's retirement funds, and that the Consumer Credit Protection Act's 25-percent cap on garnishment does not apply to limit the Government's garnishment. The Second Circuit remanded for further proceedings to consider whether a potential ten-percent early withdrawal tax would apply upon seizure of funds by the Government and, if so, the amount subject to garnishment by the Government. *See United States v. Greebel*, 47 F.4th 65, 76 (2d Cir. 2022). The Second Circuit noted that "[t]o the extent the parties do not provide clarity on whether Greebel will be subject to the early withdrawal tax, the district court may wish to direct the liquidation of the retirement account and order the clerk to reserve a portion of the funds in escrow for the potential additional tax consequences of the early withdrawal." *Id.*

Since the Second Circuit's August 2022 decision remanding this case, the parties jointly requested multiple extensions of time to discuss a potential resolution of the matter. The Court

granted the parties' multiple requests, in light of the parties' representations of their continued efforts to resolve the dispute over the potential early ten-percent withdrawal tax and avoid further litigation. (ECF Nos. 789-792, 795-802.)

On January 31, 2025, the parties filed jointly proposed stipulations and orders of garnishment. (ECF No. 803 at 1; *see* 803-1, 803-2.) As noted in this Court's February 21, 2025 Order, despite having two-and-a-half years to research and determine whether the ten-percent early withdrawal tax will apply, the proposed stipulations and orders of garnishment failed to address whether Mr. Greebel will be subject to the ten-percent early withdrawal tax. (*See* ECF Nos. 803-1 ¶ 12; 803-2 ¶ 12.) Further, the proposed stipulations and orders of garnishment proposed that 40% of the cash value of Mr. Greebel's interests in the two retirement accounts would be paid toward his unspecified federal and state tax liability, with only 60% to be paid to the victim. (ECF Nos. 803-1 ¶¶ 2, 4-9; 803-2 ¶¶ 2, 4-9.) The Second Circuit decision discussed and remanded only to determine the potential ten-percent early withdrawal tax and not Mr. Greebel's other potential federal and state tax liabilities.

On February 21, 2025, this Court ordered, *inter alia*, that Mr. Greebel's retirement accounts at Merrill Lynch and Charles Schwab be liquidated and the proceeds be deposited into an interest-bearing account of the Clerk of this Court, and that the

3

Government submit revised garnishment orders for such accounts. The Court also ordered Mr. Greebel to submit verifiable documentation and legal support as to whether he will be subject to a ten-percent early withdrawal tax, and noted that Mr. Greebel may litigate any other tax liabilities before the Tax Court.

On February 25, 2025, the parties jointly filed a letter seeking, *inter alia*, adjournment of the government's deadline to file the revised garnishment orders. The parties further raised, for the first time, that if the Court ordered liquidation of the entire retirement accounts, the Garnishees may be liable to the IRS for 20% of the value of the garnisheed funds. (ECF No. 806.) On February 25, 2025, the Court suspended the government's deadline to submit revised garnishment orders.

Thereafter, Mr. Greebel and the government filed letters addressing the application of the ten-percent early withdrawal tax, whether the Garnishees must withhold 20% of the liquidated accounts, and whether the entirety of Mr. Greebel's tax obligations based on the liquidation should be paid using the garnished funds. The government contends that the ten-percent early withdrawal tax will apply, and Mr. Greebel contends otherwise. (ECF Nos. 810, 815.) The Garnishees also filed letters addressing the 20% withholding of the accounts. (*See* ECF Nos. 813-814.) The victim, Travere Therapeutics Inc. (formerly known as Retrophin, Inc.), filed a letter stating that it did not object to the parties'

4

January 31, 2025 proposed stipulations and orders of garnishment, but correctly noted that, as a general matter, non-governmental crime victims should be fully compensated before the government. (*See* ECF No. 812 at 1 (citing 18 U.S.C. § 3664(i).) The victim also proposed edits to the parties intending to clarify that amounts withheld for Mr. Greebel's tax liability should be used only to satisfy the tax liability created by the liquidation, and not any other tax debt. (*See id.*)

After consideration of the letters from the parties, the Garnishees, and the victim, the Court **ORDERS** that, by **April 18, 2025,** the government shall submit revised garnishment orders directing that (1) Mr. Greebel's Stable Value Fund accounts at Merrill Lynch and Charles Schwab be liquidated; (2) the Garnishees withhold 20% of the funds of the liquidated accounts, pursuant to 26 U.S.C. § 3405(c)(1)(B); (3) the remainder of the liquidated accounts be deposited with the Clerk of Court in an interest-bearing account; and (4) the Garnishees provide an accounting to the Court of the respective Merrill Lynch and Charles Schwab accounts at the time of liquidation, and reflecting the 20% withheld pursuant to 26 U.S.C. § 3405(c)(1)(B).

Further, after the Clerk of Court receives the deposited funds and the Garnishees provide an accounting of the liquidated accounts, this Court will "order the clerk to reserve" 10% of the liquidated funds "in escrow for the potential additional tax

5

consequences of the early withdrawal," given the parties' ongoing failure to provide "clarity on whether Greebel will be subject to the early withdrawal tax." *Greebel*, 47 F.4th at 76. The Court will order the Clerk of Court to distribute the remainder to Mr. Greebel's victim.

As noted in this Court's February 21, 2025 Order, Mr. Greebel may litigate any other tax liabilities before the Tax Court, as proposed by the parties.

**So ordered.**

Dated:    April 10, 2025
         Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York